UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT LLC, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED, WALKERS SPV LIMITED, as trustee for Ritchie Risk-Linked Life Strategies Trust I and Ritchie Life Strategies Master Trust, and RITCHIE RISK-LINKED STRATEGIES TRADING, LTD., | ) ) ) ) ) ) ) ) ) ) |

| | |
|---|---|
| Plaintiffs, | ) ) |
| v. | ) ) |
| COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., LST I LLC, ALAN BUERGER, CONSTANCE BUERGER, REID S. BUERGER, ANTONIO MUNIZ, ALEX SELDIN, NEAL JACOBS, EILEEN SHOVLIN, and JIM DODARO, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No. 07CV3494 (DLC) (DCF)

(ECF)

ORAL ARGUMENT REQUESTED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND TO STRIKE JURY DEMAND

WILLIAMS & CONNOLLY LLP

_____/s/_____
George A. Borden (GB-7091)

*Of Counsel*
Dane H. Butswinkas
Robert M. Cary
David A. Forkner

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)

Dated:  May 29, 2007                                    *Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.      THE COURT LACKS PERSONAL JURISDICTION OVER COVENTRY GROUP, MONTGOMERY CAPITAL, AND THE INDIVIDUAL DEFENDANTS. ................................................................................................ 2

II.     COUNTS I, II, AND III FAIL TO STATE RICO CLAIMS ............................................. 4

      A.      Plaintiffs Lack Standing to Assert RICO Claims. .................................................. 4

            1.      Plaintiffs' Alleged Injuries Were Not Proximately Caused by RICO Violations. .................................................................................. 4

            2.      Plaintiffs Have Failed to Allege A Clear and Direct Injury ...................... 6

      B.      Plaintiffs Fail To State A Claim Under § 1962(a). .................................................. 7

      C.      Plaintiffs Fail to State a Claim Under § 1962(c). .................................................... 9

      D.      Plaintiffs Fail to State A Claim Under § 1962(d). .................................................. 9

III.    COUNTS IV AND V FAIL TO STATE A FRAUD CLAIM. ....................................... 10

      A.      Plaintiffs' Fraud Allegations Do Not Satisfy Rule 9(b) ...................................... 10

      B.      Plaintiffs' Fraud Claims are Expressly Barred by the MPPAs. ........................... 13

      C.      Plaintiffs' Fraud By Omission Claims Should Be Dismissed Because Plaintiffs Have Not Pleaded Facts Giving Rise to a Duty to Disclose. ................ 15

            1.      Plaintiffs Fail to Plead With Particularity Facts Giving Rise to a Duty to Disclose as Required By Fed. R. Civ. P. 9(b). .......................... 15

            2.      The MPPAs Expressly Disclaim Any Duty To Disclose Beyond the Representations Made Therein. ............................................ 16

      D.      Plaintiffs Cannot State a Fraud Claim Based On LST I's Contractual Representations or Draft Contractual Language ..................................................... 17

V.      COUNT VII FAILS TO STATE A BREACH OF CONTRACT CLAIM ....................... 19

VI.    THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND. ............................ 23

CONCLUSION ......................................................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629 (E.D.N.Y. 2003) ....................12

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) .............................................4, 5

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130 (2d Cir. 1997) ..............................20

*Am. Home Mortgage Corp. v. UM Secs. Corp.*, No. 05 Civ. 2279, 2007 WL 1074837
(S.D.N.Y. Apr. 9, 2007).............................................................................................................7

*Am. Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988) .......................................................20

*Asian Vegetable Research Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169
(S.D.N.Y. 1996) .......................................................................................................................18

*At The Airport, LLC v. Isata, LLC*, 438 F. Supp. 2d 55 (E.D.N.Y. 2006) ......................................6

*Attick v. Valeria Assocs., L.P.*, 835 F. Supp. 103 (S.D.N.Y. 1992)................................................6

*BCCI Holdings (Lux.), Societe Anonyme v. Pharaon*, 43 F. Supp. 2d  359
(S.D.N.Y. 1999) .........................................................................................................................6

*Bell Atl. Corp. v. Twombly*, No. 05-1126, 2007 WL 1461066 (U.S. May 21, 2007) .....................1

*Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632 (S.D.N.Y. 2005)..................................19, 20, 21

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997)............................................................3

*Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026(WHP), 2002 WL 24305
(S.D.N.Y. Jan. 8, 2002)............................................................................................................16

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) ..............17

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005)......................................................8

*Brown v. Cushman & Wakefield, Inc.*, 235 F. Supp. 2d 291 (S.D.N.Y. 2002)..............................23

*Capital Nat. Bank of N.Y. v. McDonald's Corp.*, 625 F. Supp. 874 (S.D.N.Y. 1986)..................19

*Care Envtl. Corp. v. M2 Techs, Inc.*, No. CV-05-1600, 2006 WL 148913
(E.D.N.Y. Jan. 18, 2006) .........................................................................................................21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)........................................................8

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ........................................................2

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)...................................................3

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ......................................................20

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ...........................................................4

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003).....................................................19

*DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) ....................................................16

*Echostar DBS Corp. v. Gemstar-TV Guide Int'l., Inc.*, No. 05 Civ. 8510(DAB),
     2007 WL 438088 (S.D.N.Y. Feb. 08, 2007)........................................................................19

*Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*, 833 F.2d 418 (2d Cir. 1987) .................21

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615
     (S.D.N.Y. 2001) .................................................................................................................14

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003) ........16

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168
     (2d Cir. 2004).....................................................................................................................10

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)...................................6

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889 (8th Cir. 1999) ....................................................10

*Grumman Allied Indus. v. Rohr*indus, Inc. 748 F.2d 729 (2d Cir. 1984) ......................................18

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996)................................................................10, 14

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ..........................................5

*Herman Miller, Inc. v. Thom Rock Realty Co.*, 46 F.3d 183 (2d Cir. 1995)..................................23

*Int'l CableTel, Inc. v. LeGroupe Videotron Ltee*, 978 F.Supp. 483...............................................18

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)..............................................................3

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)...............................................................2

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992) ................................................................11

*Kirwin v. Price Comms. Corp.*, 391 F.3d 1323 (11th Cir. 2004)...................................................10

*Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413 (1996)................................................13

*Madeira v. Affordable Housing Found., Inc.*, 469 F.3d 219 (2d Cir. 2006)..................................19

*Maltz v. Union Carbide Chems. & Plastics Co., Inc.*, 992 F. Supp. 286 (S.D.N.Y. 1998)...........21

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ....................................................11

*Morgan Guar. Trust Co. v. Crane*, 36 F. Supp. 2d 602 (S.D.N.Y. 1999) ....................................23

*Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2nd Cir. 2003)......................................................6

*OHM Remediation Servs. Corp. v.  Hughes Envtl. Sys., Inc.*, 952 F. Supp. 120
     (N.D.N.Y. 1997) ...................................................................................................................18

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282
     (S.D.N.Y. 2000) ..............................................................................................10, 11, 15

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) .................................................................7

*Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438 (S.D.N.Y. 1994) .......................................18

*Persaud v. Bode*, No. 04 Civ. 4475, 2006 WL 1419397 (S.D.N.Y. Feb. 8, 2006)........................9

*Pfohl Brothers Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*,
     255 F. Supp. 2d 134 (W.D.N.Y. 2003) .............................................................................21

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478
     (2d Cir. 1995)......................................................................................................................15

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339 (2d Cir. 1994) ..................9

*Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097
     (S.D.N.Y. Feb. 21, 2007) ....................................................................................................10

*Simon v. Castello*, 172 F.R.D. 103 (S.D.N.Y.1997) ...................................................................11

*Skylon Corp. v. Guilford Mills, Inc.*, No. 93-5581, 1997 WL 88894
     (S.D.N.Y. Mar. 3, 1997) ...............................................................................................10, 12

*Sony Music Entm't, Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406
     (S.D.N.Y. Feb. 26, 2002) .....................................................................................................9

*Tenney v. Essex County/Horace NYE Home*, No. 1:05-CV0506, 2006 WL 126766
(N.D.N.Y. Jan. 17, 2006) ........................................................................................22

*Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F.Supp. 1033 (S.D.N.Y. 1993) ..........................22

*Udell v. Berkshire Life Ins. Co. of Am.*, No. CV032721SJFKAM, 2005 WL 1243497
(E.D.N.Y. May 25, 2005) ........................................................................................22

*United Artists Theatre Circuit v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342
(E.D.N.Y. 2005) .....................................................................................................14

*Matter of VMS Ltd. P'Ship Secs. Litig.*, 26 F.3d 50 (7th Cir. 1994) ...............................................12

*W. Intermodal Servs., Ltd. v. Singamas Container Indus. Co., Ltd.*,
No. 98 Civ. 8275(RPP), 2000 WL 343780 (S.D.N.Y. Mar. 31, 2000) .............................16

*Wm. Passalacqua Builders, Inc. v. Resnick*, 933 F.2d 131 (2d Cir. 1991) ...................................20

## STATE CASES

*Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.2d 152 (1980) ...........................................................20

*Golden W. Baseball Co. v. Talley*, 232 Cal. App. 3d 1294 (1991) ...............................................12

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210 (2000) .................................................................3

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28 (1990) ........................2

*Laufer v. Ostrow*, 55 N.Y.2d 305 (1982) .....................................................................................2

*Montes Serrano v. N.Y. Times Co., Inc.*, 19 A.D.3d 577 (2d Dep't 2005) ...................................20

*Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135 (1993) ..................................19, 21

## FEDERAL STATUTES

18 U.S.C. § 1962 .................................................................................................... *passim*

18 U.S.C. § 1964 ..............................................................................................................4, 7

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b) ......................................................................................................2, 4

Fed. R. Civ. P. 12(f)............................................................................................................23

## STATE STATUTES

N.Y. C.P.L.R. § 302(a) ...................................................................................................2, 3

N.Y. P'ship Law § 10(1)...................................................................................................21

## MISCELLANEOUS

Black's Law Dictionary (7th ed. 1999)..............................................................................8

This is an ordinary contract dispute between sophisticated commercial parties. But trying to steer clear of the terms of their contract and hoping to generate business leverage and investor relations cover for their financially frail companies, Plaintiffs have recast their contract claims into a series of scantily-pled fraud and RICO claims. And Plaintiffs have cast a wide net, suing eleven defendants who, for the most part, had no involvement in the transactions at issue.[1] The factual predicate alleged for their claims is exceedingly thin, consisting of little more than "labels and conclusions, and a formulaic recitation of the elements of cause[s] of action." *Bell Atl. Corp. v. Twombly*, No. 05-1126, 2007 WL 1461066, at *8 (U.S., May 21, 2007). As such, even at this early stage in the case, Plaintiffs' claims should be dismissed. *See id.* (deficiencies in the complaint should "be exposed at the point of minimum expenditure of time and money by the parties and the court").

## FACTUAL BACKGROUND

Coventry First LLC ("Coventry First") created, and remains the leading company in, the life settlement industry. Complaint ("Compl") ¶ 25. Its business operations include the purchase of life insurance policies ("Policies") from individuals, which it either holds or sells to third-parties. In cases where it holds Policies, Coventry First pays applicable premiums and collects the death benefits. Complaint ¶ 1. Here, by contrast, Coventry First sold Policies to LST I, LLC ("LST I"), which in turn sold them to Ritchie Risk Linked Strategies (Ireland) I ("Ritchie I") and Ritchie Risk Linked Strategies (Ireland) II ("Ritchie II"). The LST I-Ritchie sales were made pursuant to two Master Policy Purchase Agreements ("MPPAs"), which were negotiated at arm's length by experienced counsel representing each party. Compl. ¶¶ 35, 37. These transactions are the centerpiece of this dispute. LST I negotiated and performed the MPPAs in good faith, and Defendants made no misrepresentations to Plaintiffs. Nevertheless, as required, Defendants assume that Plaintiffs' factual allegations are true for the purpose of the motion to dismiss.

---

[1] These Defendants include Coventry First LLC ("Coventry First"), The Coventry Group, Inc. ("Coventry Group"), Montgomery Capital, Inc. ("Montgomery Capital"), and eight individuals.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER COVENTRY GROUP, MONTGOMERY CAPITAL, AND THE INDIVIDUAL DEFENDANTS.

Plaintiffs bear the burden of establishing personal jurisdiction over each Defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). They fail to carry that burden as to Coventry Group, Montgomery Capital, and the individual Defendants. The claims against these Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Initially, Plaintiffs fail to allege facts giving rise to general jurisdiction over these Defendants. New York courts have general jurisdiction over a non-domiciliary if it is engaged in a continuous and systematic course of business here. *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33-34 (1990) (citations omitted). Plaintiffs, however, do not allege that Coventry Group, Montgomery Capital, or the individual defendants conducted a continuous or systematic course of business in New York. Nor do Plaintiffs allege the individual defendants conducted business in New York in their individual capacity. *See Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982).

Plaintiffs also fail to allege adequately personal jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(2), or 302(a)(3). The statute provides several bases upon which to allege personal jurisdiction. Plaintiffs have not alleged an adequate factual basis for any of them.

First, § 302(a)(1) allows for personal jurisdiction over a non-domiciliary who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). A non-domiciliary transacts such business "when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Although Plaintiffs conclusorily recite the

elements of § 302(a)(1), *see* Compl. ¶ 5,[2] they do not allege any facts supporting those elements with respect to Coventry Group, Montgomery Capital, or the individual defendants. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (rejecting allegations regarding jurisdiction that were nothing more than a "restatement" of the standards laid out in the case law). Even where there is a showing that business was transacted, there must be a "substantial nexus" between that business and the cause of action. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006). Here, Plaintiffs have not identified business practices in New York by Coventry Group, Montgomery Capital, or the individual defendants that have a substantial nexus to Policies purchased by Ritchie I and Ritchie II or the claims in this litigation.

Second, § 302(a)(2) provides "personal jurisdiction over any non-domiciliary . . . who . . . commits a tortious act within the state . . . ." *Id.* To qualify, a defendant's tortious conduct must have occurred within New York. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). Plaintiffs do not allege Coventry Group, Montgomery Capital, or the individual defendants committed tortious acts while physically present in New York. *See id.* (defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)).

Third, § 302(a)(3)(ii) provides personal jurisdiction over non-domiciliaries who commit tortious acts outside New York. To invoke § 302(a)(3)(ii), Plaintiffs must show: (1) a tortious act outside New York, (2) a cause of action arising from that act, (3) the act caused injury to a person in New York, (4) the defendant expected or should reasonably have expected the act to have consequences in New York, and (5) the defendant derived substantial revenue from interstate or international commerce. *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000). Plaintiffs have alleged none of these elements for Coventry Group, Montgomery Capital, and the individual defendants.

---

[2] Although Plaintiffs allege that "Defendants regularly transact business in New York and have entered into contracts with Plaintiffs in New York," Compl. ¶ 5, the only contracts identified in the Complaint are the MPPAs with LST I, *id.* ¶¶ 35, 37.

## II.    COUNTS I, II, AND III FAIL TO STATE RICO CLAIMS.

### A.    Plaintiffs Lack Standing to Assert RICO Claims.

"A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]'" and only when his or her "actual loss becomes clear and definite." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).  Plaintiffs cannot satisfy either requirement, and their RICO claims consequently should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 1.    Plaintiffs' Alleged Injuries Were Not Proximately Caused by RICO Violations.

Section § 1964(c), which applies equally to Plaintiffs' claims under §§ 1962(a), (c) and (d), confers standing only to a "person" who is "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  This provision "limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation." *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994).

Here, Plaintiffs lack standing under RICO because their alleged harm was caused not by Defendants' purported RICO violations, but rather by the ***disclosure*** of Coventry First's alleged Policy origination practices to the market.[3]  The crux of Plaintiffs' allegations is that Defendants "induce[d] policy owners to sell their policies in an unfairly rigged bidding process and . . . induce[d] institutional investors . . . to partner with Defendants to obtain those policies."  Compl. ¶ 53.  The direct victims of this alleged conduct would be the individual policyholders, not Plaintiffs.  *See* Compl. ¶ 40 ("Defendants systematically defrauded the insureds from whom [they] purchased policies.").  Plaintiffs do not claim they were harmed by mere ownership of

---

[3]  To state a claim under § 1962(a), Plaintiffs must allege they were injured by the investment of racketeering income or proceeds in Ritchie I and Ritchie II.  Under § 1962(c), Plaintiffs' injuries must have been proximately caused by the operation of an enterprise through a pattern of racketeering activity.

these improperly originated Policies.[4]  Nor do they assert they purchased any of the Policies described in the Complaint.  Instead, Plaintiffs claim that all Policies purchased from LST I initially were valuable (despite having been improperly originated), but that their value declined after the NYAG filed a civil lawsuit against three of the Defendants.  *See* Compl. ¶ 58 ("The market value of those policies has greatly diminished since the [NYAG]'s action was commenced.").[5]  They allege that the lawsuit exposed the improper origination practices.  *See id.* ¶ 65 ("Defendants also knew that they were participating in fraud on the owners of the policies – fraud that, ***if it came to light***, would greatly diminish the salability and value of the policies and destroy the possibility of realizing a profit through the securitization.") (emphasis added).  This exposure, in turn, allegedly caused Moody's Investor Services to withdraw its investment rating for the sale of the Policies purchased by Ritchie I and Ritchie II.  *See id.* ¶ 60 ("When the [NYAG]'s action became public, Moody's withdrew its rating. . . .").  Plaintiffs claim the withdrawal of Moody's rating "interfered with the salability and value of the life insurance policies at issue."  Compl. ¶¶ 60-62.

Where, as here, the alleged injury is attributed to ***exposure*** of the alleged RICO violation, not the violation itself, plaintiffs lack standing to bring RICO claims.  *See Am. Express*, 39 F.3d at 400 (dismissing RICO claims because "the commission of the RICO violations was not what injured Plaintiffs, rather it was the ***exposure*** of those acts that caused the harm") (emphasis added); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (no proximate

---

[4]  Assuming solely for the sake of this motion that the practices alleged in fact occurred, they would have benefited Plaintiffs had they remained undisclosed:  Plaintiffs would have gained a larger, more diverse portfolio of policies than would have been available absent Defendants' purported anticompetitive conduct.  *See* NYAG Compl. ¶ 26 (purpose of bid rigging allegedly was to ensure Coventry First would win policy auctions).

[5]  The fact that Plaintiffs' alleged injury stems from NYAG's lawsuit is further demonstrated by the amount of time between the alleged predicate acts and the alleged harm.  Although Plaintiffs' Complaint does not specifically identify the approximate date of the predicate acts, the NYAG's complaint does – these acts were allegedly committed in 2003, 2004, and 2005.  *See e.g.*, NYAG Compl. ¶¶ 27, 30, 32, 34, 36, 37, 40, 43, 44.  Yet Plaintiffs claim that they were harmed in October 2006 when the NYAG's lawsuit was filed.  *See* Compl. ¶ 60-62.

causation where former employee alleged exposure of RICO scheme had resulted in his economic loss); *BCCI Holdings (Lux.), Societe Anonyme v. Pharaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) ("[C]ourts have repeatedly refused to find standing under RICO where the harm caused to the plaintiff is the result of the exposure of the alleged racketeering activity, rather than from the predicate acts underlying the scheme itself.") (citations omitted).[6]

### 2.     Plaintiffs Have Failed to Allege A Clear and Direct Injury.

Plaintiffs also lack standing to assert RICO claims because their actual loss (if any) has not become "clear and definite." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994); *see also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2nd Cir. 2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite.") (internal punctuation omitted). Here, Plaintiffs own the Policies at issue and stand to obtain the death benefits associated with those Policies. Compl. ¶¶ 22, 58. Rather than realize those benefits, Plaintiffs allegedly "*planned*" to sell "the policies in a securitization transaction." *Id.* ¶ 58 (emphasis added). Although Plaintiffs have never attempted to sell a single Policy, they claim they "anticipated a profit from the planned sale" and that, as a result of the NYAG's lawsuit and the resulting withdrawal of a Moody's rating, the "salability and value of the life insurance policies" declined. Compl. ¶¶ 59, 62. Plaintiffs allege no facts that would allow the Court to assess the extent of this loss. To the contrary, they concede both that "the salability of policies now is uncertain," *id.* ¶ 74, and that they "cannot yet calculate their damages with

---

[6]  In addition, Plaintiffs do not allege any interactions between Defendants and Ritchie Capital Management, LLC ("RCM"), Ritchie Risk-Linked Strategies Trading, Ltd. ("RRLST"), or Walkers SPV Ltd. ("Walkers"). Instead, Plaintiffs claims that these entities are "beneficially interested" in Ritchie I and Ritchie II. Compl. ¶ 62. An alleged "beneficial interest" in *someone else's* investment is insufficient to cloak a plaintiff with standing. *See At The Airport, LLC v. Isata, LLC*, 438 F. Supp. 2d 55, 62 (E.D.N.Y. 2006) ("This . . . generally prevents a party, such as a shareholder in a corporation or a member of a limited partnership, from asserting a RICO cause of action in his or her individual capacity based on claims of injury suffered by a third-party in which he or she has a financial interest."); *Attick v. Valeria Assocs., L.P.*, 835 F. Supp. 103, 110-11 (S.D.N.Y. 1992) (limited partner lacks standing to assert RICO claims if only injury suffered was diminution of value of investment in the limited partnership).

precision," *id.* ¶ 4.  This does not satisfy the "clear and definite" injury requirement under RICO.  *See Am. Home Mortgage Corp. v. UM Secs. Corp.*, No. 05 Civ. 2279, 2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007) (complaint dismissed for lack of standing where plaintiff alleged no facts to allow the court to assess lost opportunities to sell unforeclosed loans on secondary market).[7]

### B.    Plaintiffs Fail To State A Claim Under § 1962(a).

To state a claim under § 1962(a), Plaintiffs must allege harm not from the RICO predicate acts, but rather from the investment of racketeering income or proceeds in an "enterprise," which Plaintiffs define as Ritchie I and Ritchie II for purposes of this claim.  *See Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) ("[B]ecause the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from the defendant's investment of the racketeering income to recover under § 1962(a)."); Compl. ¶ 70 (defining enterprise).  Plaintiffs have failed to do so.

Plaintiffs have not alleged investment of income or proceeds in Ritchie I or Ritchie II.  As the Complaint makes clear, income or proceeds from Policies consist of either the collection of death benefits or profits earned when Policies are sold (*e.g.*, from LST I to Ritchie I or Ritchie II).  *See* Compl. ¶ 1 ("In a life settlement transaction, an investor buys a life insurance policy from the policy's owner at a discount, pays the policy's premiums as they come due, and then collects the death benefits."); Compl. ¶¶ 59, 65, 66 (profits are realized on sale of insurance policies).  Plaintiffs do not – and cannot – allege such income or proceeds were invested in Ritchie I or Ritchie II.  Instead, they portray the Policies themselves as "income" or "proceeds."

---

[7]  Indeed, as Defendants would show were the case to proceed, even Plaintiffs acknowledge that any damages they suffered do not rise to the level of a default under the MPPAs.  *See* Ex. 7 ¶ 7 (Amendment to Amended and Restated Intercreditor Agreement providing:  "[T]he Attorney General Action does not as of [January 29, 2007] constitute . . . an event of default (whether matured or unmatured) or termination event under any of the other Transaction Agreements.").

Compl. ¶ 73.[8]  Transforming the commodities in which Plaintiffs invested into the income or proceeds from that investment is circular and makes no sense.

Indeed, Plaintiffs ignore the fact that LST I did not invest in, but rather **sold** Policies to Ritchie I and Ritchie II.  *See* MPPAs § 2.01(a) ("the Seller agrees to sell to the Purchaser and the Purchaser agrees to purchase from the Seller. . . .");[9] MPPAs § 2.01(c) ("It is the intention of the Seller and the Purchaser that the conveyance, transfer and assignment of each Conveyed Life Settlement Policy contemplated by this Agreement shall constitute a sale of such Life Settlement Policy from the Seller to the Purchaser."); Compl. ¶ 30 (Ritchie I and Ritchie II were "the purchasers of the [life settlement] policies"); *id.* ¶ 32 ("Each month, pursuant to contractual arrangements, Coventry would notify Ritchie I and Ritchie II that Coventry had a certain dollar amount's worth of qualifying policies to sell.  Ritchie I and Ritchie II then would pay the necessary funds to Coventry, which would transfer the policies to Plaintiffs.").  These sales made Plaintiffs the sole owners of the Policies and no Defendant retained any beneficial interests in the Policies.  *See* MPPAs § 3.02(a)(ii)(C) ("[U]pon transfer of each Life Settlement Policy, the Purchaser shall acquire a valid and perfected ownership or security interest in such policy. . . .").  For LST I, these transactions were the exact opposite of an investment.  *See* Black's Law

---

[8]  Plaintiffs fail to allege that the insurance policies identified in the Complaint were purchased by Ritchie I or Ritchie II.  Thus, even if life insurance policies were "income" or "proceeds," Plaintiffs have failed to allege an investment of the specified income or proceeds in the "enterprise" that they have identified.

[9] The MPPAs – like other documents referenced in (but not attached to) Plaintiffs' complaint – may be considered on a motion to dismiss.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (under Rule 12(b)(6), court is "not limited solely to the allegations in the complaint . . . . Where a plaintiff has 'relied on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' we may consider its contents even if it is not formally incorporated by reference.") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  The Ritchie I, Ritchie II, and Ritchie IV MPPAs, including all amended and restated versions thereof, are attached as Exhibits 1-5 to the affidavit of George A. Borden in support of this motion, which is submitted herewith.

Dictionary (7th ed. 1999) at 831 (investment is "[a]n expenditure to acquire property or assets to produce revenue; a capital outlay").[10]

C.    **Plaintiffs Fail to State a Claim Under § 1962(c).**

Count II, which attempts to state a claim under § 1962(c), should be dismissed because Plaintiffs fail to define adequately the alleged "enterprise."  According to Plaintiffs, the enterprise for § 1962(c) purposes is "the individual Defendants, *or* any combination thereof, *or* any of the corporate defendants alone." Compl. ¶ 77 (emphasis added).  As currently described, the enterprise could take more than 40,000 different forms.  Plaintiffs' allegations, therefore, do not meet the notice pleading requirements of Rule 8(a).[11]  *See Persaud v. Bode*, No. 04 Civ. 4475, 2006 WL 1419397, at *6 (S.D.N.Y. Feb. 8, 2006) ("Plaintiff's vague and conclusory allegations that defendant acted through one or multiple criminal enterprises fail to satisfy even the liberal pleading requirements of 8(a)."); *Sony Music Entm't, Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406, at *5 (S.D.N.Y. Feb. 26, 2002) (dismissing complaint containing no allegations regarding "the specific identities or number of participants, the structure of the enterprise, or how the enterprise's activities are sufficiently distinguishable from the regular business activities of these entities").

D.    **Plaintiffs Fail to State A Claim Under § 1962(d).**

Plaintiffs' RICO conspiracy claim fails for two reasons.  First, because Plaintiffs have failed to state an actionable claim under §§ 1962(a) and (c), they cannot maintain a claim for

---

[10]  In addition, the individual Defendants should be dismissed from Count I because Plaintiffs do not allege that any of them invested anything – much less income or proceeds – in Ritchie I and Ritchie II.

[11]  This pleading requirement is significant because different enterprise structures would be subject to attack on varying grounds.  For example, a corporation likely cannot control an enterprise consisting of individuals; a corporation cannot control itself; and individual defendants may not participate in the conduct of other conceivable enterprises.  Moreover, the enterprise must be distinct from the RICO "person," which Plaintiffs define as all Defendants.  *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994); Compl ¶ 79 (Defendants were all RICO "persons").  Absent notice of the specific enterprise alleged, Defendants cannot know which of these (or other) arguments to make.

conspiracy under § 1962(d). *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 303 (S.D.N.Y. 2000) ("Where a RICO conspiracy claim is based on predicate acts that have been dismissed by the court, the conspiracy claim must be dismissed as well.") (quotation omitted).

Second, Defendants are incapable of conspiring with one another as a matter of law. Plaintiffs allege each individual defendant is an employee and/or owner of the corporate defendants, and the corporate defendants are related to or wholly owned by one another. Compl. ¶¶ 2, 11-20. Section 1962(d) does not apply to such related employees and corporate affiliates. *See Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097, at *5 (S.D.N.Y. Feb. 21, 2007) ("[A] corporation cannot conspire with its employees or attorneys."); *Skylon Corp. v. Guilford Mills, Inc.*, No. 93-5581, 1997 WL 88894, at *8 (S.D.N.Y. Mar. 3, 1997) (noting, in combined discussion of §§ 1962(c) and (d), "impossibility of an intracorporate conspiracy in the context of a RICO claim"); *see also Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 898 (8th Cir. 1999) ("[A]s a matter of law, a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another.").[12]

## III.  COUNTS IV AND V FAIL TO STATE A FRAUD CLAIM.

### A.  Plaintiffs' Fraud Allegations Do Not Satisfy Rule 9(b).

Plaintiffs must plead fraud with particularity. *See* Fed. R. Civ. P. 9(b). This requires that Plaintiffs "'(1) detail the statements (or omissions) that [they] contend[] are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the

---

[12] *But see Kirwin v. Price Comms. Corp.*, 391 F.3d 1323, 1326-27 (11th Cir. 2004) (recognizing circuit split on this issue).

complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 293 (citation omitted). Plaintiffs fail to meet these standards.[13]

Plaintiffs do not identify specific misrepresentations made by particular Defendants to any Plaintiff.[14] Instead, they attribute nearly all alleged misrepresentations to "Coventry" – an amalgam of all four corporate defendants, *see* Compl. ¶ 2 – or to "Defendants" collectively, *see* Compl. ¶¶ 3, 49, 50, 65. This violates Rule 9(b). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'") (citations omitted); *Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 293 ("When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant.") (citations omitted); *Simon v. Castello*, 172 F.R.D. 103, 105 (S.D.N.Y.1997) (same). Plaintiffs likewise fail to attribute alleged misrepresentations to specific individual defendants. *See* Compl. ¶¶ 87, 92 ("Reid S. Buerger, Alan Buerger, Constance Buerger, ***and/or*** Antonio Muniz acting for themselves and on behalf of Coventry First, Coventry Group, Inc., Montgomery Capital, Inc., ***and/or*** LST [allegedly made misrepresentations].") (emphasis added). Plaintiffs also violate Rule 9(b) by improperly defining themselves collectively, *see* Compl. ¶ 3, claiming that Defendants' purported misrepresentations were directed to "Richie Capital" or "Plaintiffs." *Id.* ¶¶ 28, 39, 49, 50, 51, 87, 92.

---

[13] The arguments in this section apply equally to Counts IV (fraud) and V (fraud in the inducement).

[14] Plaintiffs parrot the NYAG's erroneous allegations concerning fraud against insureds. *See* Compl. ¶ 56. However, Plaintiffs cannot state a claim for fraud based on alleged misrepresentations or omissions to third-parties. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 n.8 (S.D.N.Y. 1992) ("A plaintiff has failed to state a claim for fraud when he alleges merely that the misrepresentation in question was made to or relied on by a third party."), *aff'd*, 23 F.3d 398 (2d Cir. 1994). As such, this motion focuses on alleged misrepresentations to Plaintiffs.

In the few instances where Plaintiffs mention specific defendants, they fail to identify particular misrepresentations and provide none of the other details required by Rule 9(b).  *See* Compl. ¶ 28 ("In the spring and summer of 2005 and afterwards, Alan Buerger, Reid Buerger, Constance Buerger and Antonio Muniz, in connection with the negotiations with Ritchie Capital, represented to Ritchie Capital and its representatives . . . that the life insurance policies in which Coventry transacts have no legal taint and that Coventry purchases policies and otherwise conducts itself in accordance with law.");[15] *id.* ¶ 39 ("Reid Buerger, Antonio Muniz, and Alan Buerger . . . frequently assured Ritchie Capital that Coventry, unlike some of its competitors, was scrupulous about complying with regulatory requirements").[16]

Plaintiffs also fail to state a claim based on four statements by "Coventry's [unnamed] counsel," who is not a named Defendant, concerning the NYAG investigation.  Compl. ¶ 51. These statements are that the NYAG:  (1) was focused on "compensation arrangements between providers and brokers, as well as disclosure to sellers"; (2) "asked whether Coventry had paid fees to brokers to provide non-competitive bids"; (3) was "interested in suppression of competition through commissions"; and (4) "was looking for bid-rigging."  Compl. ¶ 51.  The NYAG's complaint – which is incorporated in Plaintiffs' Complaint – makes clear, however, that these statements were ***true***.  *See* NYAG Compl. ¶ 3 (allegations concerning compensation arrangements between providers and brokers, disclosure to sellers, suppression of compensation through commissions, and bid-rigging); *id.* ¶¶ 4, 5, 20 (allegations concerning disclosure to

---

[15]  Plaintiffs' account of statements made "[i]n the spring and summer of 2005 and afterwards" falls far short of the specificity required by Rule 9(b).  *See Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (allegations that statements made "in the Fall and Winter of 1996 and the first months of 1997" fail to satisfy Rule 9(b)); *Skylon Corp.*, 1997 WL 88894, at *8 ("Although plaintiff outlines a four-month window during which all of the misrepresentations occurred, this does not satisfy the pleading standard of Rule 9(b).").

[16]  Accepting Plaintiffs' vague account of these statements, it is unreasonable, as a matter of law, to rely on legal opinions expressed by non-lawyers.  *See Matter of VMS Ltd. P'Ship Secs. Litig.*, 26 F.3d 50, 52 (7th Cir. 1994) (noting "sheer unreasonableness" of reliance on non-lawyer's legal opinion); *Golden W. Baseball Co. v. Talley*, 284 Cal. Rptr. 53, 232 Cal. App. 3d 1294, 1307 (1991) (unreasonable for sophisticated party to rely on legal opinion of non-lawyer).

sellers); *id.* ¶¶ 25-58 (allegations concerning all of the above).

Nonetheless, Plaintiffs allege that unnamed counsel's statements were "false and misleading" in that "Coventry" – again, without identifying any specific Defendant – "did not disclose that it was engaged in precisely the conduct targeted by the subpoena, and in fact affirmatively implied the opposite." *Id.* Plaintiffs' claim appears to be that "Coventry" committed fraud by omission in "not disclos[ing] that it was engaged in precisely the conduct targeted by the subpoena." Compl. ¶ 51. This claim fails because, *inter alia*, Defendants had no duty to disclose any information. *See* Section III.C, *infra*.

To the extent the Complaint can be read to assert fraud by affirmative misrepresentation – *i.e.*, that "Coventry" "affirmatively implied" that it was not engaging in the conduct targeted by the NYAG, Compl. ¶ 51 – it fails to satisfy Rule 9(b). Again, Plaintiffs attribute the allegedly misleading "implication" to "Coventry" as opposed to any specific Defendant. Moreover, their entire "affirmative misrepresentation" claim consists of the vague, conclusory allegation that "Coventry . . . affirmatively implied the opposite." *Id.* Plaintiffs do not identify with particularity any false statement that created such an "implication." *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996) (to establish fraud "plaintiff must prove a misrepresentation . . . which was false . . ."). Rule 9(b) bars such generalized fraud claims.

Nor do Plaintiffs explain how Alan Buerger's e-mailing to Jeff Mulholland an article regarding the NYAG investigation (whose accuracy Plaintiffs do not question) somehow "led Mulholland to believe that the NYAG was interested only in [an unrelated entity], and that Coventry had nothing to do with the practices being investigated . . . ." *Id.* ¶ 52.

**B.    Plaintiffs' Fraud Claims are Expressly Barred by the MPPAs.**

Section 7.12 of the MPPAs is an integration clause of unusual breadth and clarity:

> This Agreement sets forth the entire understanding of the parties hereto relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Agreement . . . **The Purchaser** [*i.e.*, Ritchie I or Ritchie II, depending on the specific agreement] **expressly acknowledges that the Seller** [i.e., LST I] **has not made any**

13

> ***representations and warranties other than as set forth herein and in the
> other Transaction Documents.*** The Purchaser represents and warrants to
> the seller that, independently and without reliance upon the Seller (other
> than its reliance on the Seller's representations, warranties and covenants
> set forth in the Transaction Documents) and based upon such documents
> and information as it has deemed appropriate, it has made and will
> continue . . . to make its own appraisal of and investigation into the
> business, operations, . . . financial and other conditions . . . of the Seller,
> and its own decision to enter into this Agreement and to take, or omit to
> take, action under any Transaction Document. Except for items
> specifically required to be delivered hereunder, ***the Seller shall not have
> any duty or responsibility to provide the Purchaser or any of its
> Affiliates any information that comes into the possession of the Seller or
> any of its officers, directors, employees . . . or Affiliates***.

*Id.* (emphases added).

This provision, negotiated at arm's length by highly sophisticated, well-represented
commercial entities, makes clear that (1) Plaintiffs were not entering into the MPPAs or
purchasing Policies based on any non-contractual representations; and (2) neither LST nor any of
its officers or affiliates had a duty to provide information (except as specifically set forth in these
agreements). Plaintiffs' fraud claims directly contravene this provision. *See* Compl. ¶¶ 87, 89,
92, 94 (alleging misrepresentations that caused Plaintiffs to "invest[] in life insurance policies"
and to enter into the Ritchie I, Ritchie II, and Ritchie IV deals).[17] Indeed, in light of § 7.12,
Plaintiffs could not have justifiably relied on any of Defendants' alleged misrepresentations, and
their fraud claims should be dismissed. *See Harsco*, 91 F.3d at 345-46 ("relying on the
sophisticated context of [the subject] transaction" to dismiss fraud claims based on less extensive
integration clause than exists here); *United Artists Theatre Circuit v. Sun Plaza Enter. Corp.*, 352
F. Supp. 2d 342, 351 (E.D.N.Y. 2005) ("Based on the integration clause, Plaintiff, a
sophisticated corporation, has not alleged, nor can it, that it reasonably relied on any oral
representations . . . ."); *Emergent Capital Inv. Mgm't, LLC v. Stonepath Group, Inc.*, 165 F.
Supp. 2d 615, 622-23 (S.D.N.Y. 2001) (dismissing fraud claim based on far weaker integration
clause than here), *aff'd in pertinent part*, 343 F.3d 189 (2d Cir. 2003).

---

[17] Although Plaintiffs refer to the "Ritchie IV arrangement," this deal was governed by a MPPA
as well. *See* Ex. 5.

### C. Plaintiffs' Fraud By Omission Claims Should Be Dismissed Because Plaintiffs Have Not Pleaded Facts Giving Rise to a Duty to Disclose.

Plaintiffs' allegations of fraud by omission fail because they have not pleaded facts that, if proved, would create a duty for any Defendant to disclose any facts. *See Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,* 68 F.3d 1478, 1483 (2d Cir. 1995) ("[A] concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose.") (citations omitted).

### 1. Plaintiffs Fail to Plead With Particularity Facts Giving Rise to a Duty to Disclose as Required By Fed. R. Civ. P. 9(b).

Plaintiffs allege that Defendants had a duty to disclose because they were fiduciaries.[18] Plaintiffs rest this allegation on three grounds:  (1) that the parties were partners; (2) that the parties were joint venturers; and (3) that Defendants had "superior knowledge" of the NYAG investigation and of Coventry First's Policy origination practices.  Because this duty is an element of Plaintiffs' fraud claims, Rule 9(b) requires them to plead it with particularity.  *See Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 296.  Here, Plaintiffs fall far short of this standard in alleging without any factual predicate that the "Coventry" amalgam (a) "had a duty to disclose the omitted information," Compl. ¶ 93; (b) "occupied a position of superior knowledge with respect to the purchase and pricing of life insurance policies," *id.* ¶ 98; (c) "was the partner, joint venturer, and co-venturer of Ritchie Capital," *id.* ¶ 98; and (d) owed "Plaintiffs" collectively a fiduciary duty, *id.* ¶ 99.  *See Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 296 (rejecting claim that sixteen defendants collectively owed duty to disclose where plaintiffs failed to plead with particularity facts creating such a duty for each defendant).

---

[18]  Plaintiffs allege a fiduciary duty (and thus a duty to disclose) only as to the corporate defendants.  *See* Compl. at 31.  Their fraud by omission claims against the individual defendants consequently should be dismissed.

**2.     The MPPAs Expressly Disclaim Any Duty To Disclose Beyond the Representations Made Therein.**

Plaintiffs claim Defendants had a duty to disclose "(1) the circumstances under which owners of life insurance policies were induced to part with their policies, and (2) the existence and target of the [NYAG's] investigation."  Compl. ¶¶ 87, 92.  Regardless of the legal basis alleged – *i.e.*, partnership, the parties' purported status as joint venturers, or the "superior knowledge" doctrine – this claim is expressly barred by the MPPAs.

The MPPAs contain specific representations and warranties regarding (a) the lawfulness of Policy purchases contemplated by Ritchie I and Ritchie II, and (b) the disclosure of actions or proceedings "seeking any ruling that might materially and adversely effect the performance by [LST I] of its obligations under, or the validity or enforceability of, [the MPPAs.]."  MPPAs §§ 3.01(v) & (vi), 3.02(b).  Had Plaintiffs desired additional information, they could have contractually required LST I to provide it.  *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003) (sophisticated plaintiff did not reasonably rely on alleged misrepresentations or omissions where it could have contractually obligated defendant to disclose pertinent facts); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317-18 (S.D.N.Y. 2002) ("Sophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties."); *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026(WHP), 2002 WL 24305, at *5 (S.D.N.Y. Jan. 8, 2002) (same); *W. Intermodal Servs., Ltd. v. Singamas Container Indus. Co., Ltd.*, No. 98 Civ. 8275(RPP), 2000 WL 343780, at *3 (S.D.N.Y. Mar. 31, 2000) (same).

Instead, Plaintiffs negotiated contracts providing the exact opposite: "Except for items specifically required to be delivered hereunder, [LST I] shall not have any duty or responsibility to provide the Purchaser or any of its Affiliates any information that comes into the possession of the Seller or any of its officers, directors, employees, agents, attorneys-in-fact or Affiliates."

MPPAs § 7.12.[19]  This clause was included in every MPPA (including all amended versions) from June 30, 2005, forward.  *See* Exs. 1-5.  Plaintiffs cannot now circumvent the MPPAs by claiming Defendants had extra-contractual duties to disclose information concerning the Policy origination practices or the NYAG investigation.

> **D.    Plaintiffs Cannot State a Fraud Claim Based On LST I's Contractual Representations or Draft Contractual Language.**

Plaintiffs' fraud claims against the corporate defendants duplicate their breach of contract claim.  For these claims to co-exist, Plaintiffs must: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).  Here, Plaintiffs do not plead special damages, and have not adequately pleaded a legal duty separate from the MPPAs.  *See infra* Section IV.

Nor do Plaintiffs allege pre-contractual misrepresentations that are collateral to the MPPAs.  Plaintiffs claim the parties exchanged drafts of the MPPAs on June 20, 24, 30 and December 7, 2005.  Compl. ¶¶ 35 – 37.  Plaintiffs further claim those drafts contained four misrepresentations.  *See* Compl. ¶ 34.  The alleged misrepresentations, however, duplicate representations in the MPPAs.  *See* Compl. ¶¶ 35, 37 (representations are "substantially identical" to the ones in the MPPAs); *Compare* Compl. ¶¶ 34(a) – (d), *with* MPPAs pp. 4, 7, and Compl. ¶ 104-105 (breach of contract).  Indeed, Plaintiffs rely on substantively identical representations to support their fraud and breach of contract claims, which seek the same

---

[19]  Although LST I represented in the MPPAs that the transactions contemplated by these agreements would not violate any law, *see* MPPAs § 3.01(a)(v), that it was then unaware of any pending or threatened lawsuit or proceeding that would, *inter alia*, adversely affect the parties' life settlement transactions, *see id.* § 3.01(a)(vi), and that the life settlement policies being purchased by the Ritchie entities were lawfully originated, *see id.* § 3.02(b), the MPPAs do not require LST I to provide any information, going forward, to any Ritchie entity regarding life settlement origination practices (or, for that matter, lawsuits or proceedings).

measure of damages.  Under New York law, misrepresentations that become express terms of the contract are not collateral or extraneous to the contract.  *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 489 (S.D.N.Y. 1997) (noting "overwhelming majority view . . . that a false promise, whenever made, cannot give rise to a fraud claim where that promise is directly incorporated into a written contract between the parties"); *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc.*, 952 F. Supp. 120, 123 (N.D.N.Y. 1997) (misrepresentation not collateral if it is "integrated into the contract at issue").  Otherwise representations in draft contracts would give rise to fraud claims whenever drafts are exchanged.  That is not the law.

## IV.    COUNT VI FAILS TO STATE A BREACH OF FIDUCIARY DUTY CLAIM.

 "Under New York law, where parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Asian Vegetable Research Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169, 1179 (S.D.N.Y. 1996) (quotation omitted).  "'Further, a fiduciary relationship generally cannot be implied between parties to a commercial transaction when each party is represented by counsel and other professional advisors who have been retained to protect their best interests.'" *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 512 (S.D.N.Y. 1994) (citing *Grumman Allied Indus. v. Rohrindus*, Inc. 748 F.2d 729, 739 (2d Cir. 1984)).

Setting aside their "superior knowledge" allegations, which fail for reasons set forth above, Plaintiffs assert two bases for a fiduciary relationship between "Coventry" and "Ritchie Capital":  (1) they were partners; and (2) they were joint or co-venturers.  Compl. ¶ 98.  The MPPAs expressly disavow each theory.  *See* MPPAs § 7.14 ("Nothing contained in this Agreement is intended to or shall be deemed or construed by the parties hereto or by any third person to create the relationship of . . . a partnership[20] or joint venture."[21]).

---

[20]  A partnership is "an association of two or more persons to carry on as co-owners a business for profit."  N.Y. P'ship Law § 10(1).  Plaintiffs do not, and cannot, allege that any of the "Coventry" and "Ritchie Capital" entities formed a partnership, so defined.

[21]  "A joint venture pursuant to New York law requires five elements:  (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must

## V.    COUNT VII FAILS TO STATE A BREACH OF CONTRACT CLAIM.

Plaintiffs allege that Coventry First, Coventry Group, Montgomery Capital, and LST I breached the MPPAs, and that these breaches damaged Plaintiffs "in an amount believed to be not less than $700 million." Compl. ¶¶ 103, 106. This breach of contract claim is flawed for several reasons.

First, RCM, RRLST, and Walkers were not parties to the MPPAs and, therefore, lack standing to bring a breach of contract claim. *Echostar DBS Corp. v. Gemstar-TV Guide Int'l., Inc.*, No. 05 Civ. 8510(DAB), 2007 WL 438088, at *4 (S.D.N.Y., Feb. 08, 2007) ("Only parties to a contract have standing to assert a claim for breach of contract."); *Capital Nat. Bank of N.Y. v. McDonald's Corp.*, 625 F. Supp. 874, 883 (S.D.N.Y. 1986) ("Without a contractual relationship, there cannot be a contractual remedy"). Moreover, Plaintiffs do not – and cannot – allege these entities are intended beneficiaries of the MPPAs. *See Madeira v. Affordable Housing Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006).[22]

Second, Coventry First, Coventry Group, and Montgomery Capital are not proper breach of contract defendants. These entities are neither parties to the MPPAs nor subject to liability as the alter ego of LST I. Under New York law, "[t]he party who seeks to pierce the corporate veil of a parent company must make a two-part showing: '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 638 (S.D.N.Y. 2005) (quoting *Am. Fuel*

---

evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67 (2d Cir. 2003) (quotation omitted). Plaintiffs do not allege that these criteria are satisfied, nor could they.

[22] Indeed, the MPPAs provide: "This Agreement will inure to the benefit of and be binding upon the parties signatory hereto. Except as otherwise provided in this Agreement, no other Person will have any right or obligation hereunder." MPPAs § 7.11.

*Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)). "With regard to the first element, '[a] parent company will not be held liable for the torts of its subsidiary unless it can be shown that the parent exercises ***complete dominion and control*** over the subsidiary.' Such dominion and control is ***not*** established through a mere showing that one corporation is a wholly-owned subsidiary of the parent or that the parent owns a controlling interest in the shares of the subsidiary. *Id.* (quoting *Montes Serrano v. N.Y. Times Co., Inc.*, 19 A.D.3d 577, 578 (2d Dep't 2005) and citing *Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.2d 152, 153 (1980)) (emphasis in original). Plaintiffs do not sufficiently plead either of these elements or any other fact that could warrant piercing.

Plaintiffs make no allegations to support alter ego liability against Coventry Group or Montgomery Capital. As to Coventry First, Plaintiffs assert "[t]he affairs of LST . . . are completely dominated by Coventry First and Coventry Corporate family." Compl. ¶ 103. However, an unadorned assertion of dominion is not enough. Rather, courts consider ten factors, including the absence of corporate formalities, "inadequate capitalization," "whether the related corporations deal with the dominated corporation at arms length," and "whether the corporations are treated as independent profit centers." *Wm. Passalacqua Builders, Inc. v. Resnick*, 933 F.2d 131, 139 (2d Cir. 1991).

It is not necessary for this Court to analyze each factor, as Plaintiffs allege only that (1) "[o]n information and belief, LST I has no assets of its own;" (2) LST I and its officers and directors are "officers and directors of Coventry First and Coventry corporate family;" (3) "LST [I] conducts no business of its own;" and (4) LST I "was merely a conduit for Coventry's sale of life insurance policies to Ritchie I and Ritchie II." Compl. ¶ 103; *see also Beck*, 394 F. Supp. 2d at 638 ("It is not necessary for this Court to analyze each factor in turn, as Plaintiffs have themselves ignored most of them."). These conclusory assertions are insufficient as a matter of law. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (dismissing alter-ego claim where complaint was "devoid of any specific facts or circumstances supporting" conclusory allegations); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)

(existence of interlocking directorates is "commonplace circumstance of modern business [that] does not furnish such proof of control as will permit a court to pierce the corporate veil"); *Care Envtl. Corp. v. M2 Techs, Inc.*, No. CV-05-1600, 2006 WL 148913, at *12 (E.D.N.Y., Jan. 18, 2006) ("undercapitalization, without more, is an insufficient. . . .") (citations omitted);[23] *Beck*, 394 F. Supp. 2d at 638 (claim that subsidiary existed solely to serve parent's interest is insufficient); *Maltz v. Union Carbide Chems. & Plastics Co.*, Inc. 992 F. Supp. 286, 301 (S.D.N.Y. 1998) (allegation subsidiary "acting solely as a conduit for the performance of [their] business" is insufficient).

Nor will New York law impose alter ego liability absent a showing that complete domination was used to commit fraud or another wrong against Plaintiffs. *Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir. 1987). Plaintiffs do not suggest Coventry First, through its alleged domination, abused the corporate form to breach the MPPAs.

Third, Plaintiffs' breach of contract claim should be dismissed for failure to allege satisfaction of a condition precedent. Plaintiffs claim Defendants breached the MPPAs by making false representations and warranties "as to some or all of the policies purchased by Ritchie I and Ritchie II . . . ." Compl. ¶ 105. In particular, Plaintiffs claim Defendants falsely represented that Policies were acquired and conveyed to Ritchie I and Ritchie II in compliance with applicable laws and regulations. Compl. ¶ 105(i)-(iii).[24] Plaintiffs fail to mention, however,

---

[23]  Plaintiffs do not allege LST I was undercapitalized to purchase life insurance polices – the purposes for which Plaintiffs claim LST I was organized. *See* Compl. ¶ 103; *Pfohl Brothers Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 181 (W.D.N.Y. 2003) (citations omitted) ("[T]he inadequate capitalization factor pertains only to capitalization "in light of the purposes for which the corporation was organized.") (quotation omitted).

[24]  Plaintiffs do not appear to allege Defendants breached the MPPAs by failing to disclose the NYAG investigation. Nor can they. Ritchie I has contractually agreed that "the Attorney General Action does not as of [January 29, 2007] constitute . . . an event of default (whether matured or unmatured) or termination event under any of the other Transaction Agreements." Ex. 7 ¶ 7. By definition, Transaction Agreements include the MPPAs. Ex. 6 at 8 (Amended and Restated Intercreditor Agreement).

that the MPPAs contain the following notice requirement, which serves as a condition precedent to bringing suit:

> SECTION 3.05  Waiver of Breach.  If either party hereto has actual knowledge thereof, it will promptly notify the other (in all cases within 30 Business Days of obtaining such knowledge), of any breach or event or circumstance that, with the passage of time might become a breach, of any provision of any Transaction Document by such party.  Notwithstanding any provision of this Agreement to the contrary, ***if an Authorized Officer of either party has actual knowledge of any such breach, but does not deliver notice of its intention to invoke or avail itself of the remedies afforded by this Agreement with respect to such within 30 Business Days of obtaining such actual knowledge, then such breach (and all claims with respect to any resulting damages, losses relating thereto or arising therefrom or in connection therewith) shall have been waived by such party in all respects and such party will thereafter have no right to take any action, invoke any remedy, or recover any losses or damages with respect thereto.***

MPPAs § 3.05 (emphasis added).  By their terms, the MPPAs preclude Plaintiffs from initiating suit for breach of contract unless Plaintiffs first notify Defendants of the alleged breach within 30 Business Days of obtaining actual knowledge "of an event or circumstance that, with the passage of time, might become a breach." *Id.*  Here, Plaintiffs allege they learned of Defendants' alleged misconduct "when the Attorney General of New York brought suit against Coventry in October 2006." Compl. ¶ 48.  Because Plaintiffs do not allege they notified Defendants of the alleged breaches on which their claims are based within 30 business days of October 2006, their breach of contract claim must be dismissed.  *See Tenney v. Essex County/Horace NYE Home*, No. 1:05-CV0506, 2006 WL 126766, at *7 (N.D.N.Y. Jan. 17, 2006) ("Tenney has failed to plead affirmatively that she has filed a timely notice of claim . . . and her failure to comply with this condition precedent bars her claim."); *Udell v. Berkshire Life Ins. Co. of Am.*, No. CV032721SJFKAM, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) (failure to allege compliance with condition precedent requires dismissal of claim); *Three Crown Ltd. P'Ship v. Caxton Corp.*, 817 F. Supp. 1033, 1042-43 (S.D.N.Y. 1993) (same).

## VI.    THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND.

The Seventh Amendment right to trial by jury may be waived, and the waiver is enforceable so long as it is made "knowingly and voluntarily."  *Morgan Guar. Trust Co. v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999).  Here, Ritchie I and Ritchie II – the only named Plaintiffs who purchased Policies – contractually waived their right to a trial by jury on all claims "IN ANY WAY IN CONNECTION WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES . . . WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE."  MPPAs § 7.04(c) (emphasis in original). Accordingly, the Court should strike Plaintiffs' jury demand pursuant to Fed. R. Civ. P. 12(f). *See Herman Miller, Inc. v. Thom Rock Realty Co.*, 46 F.3d 183, 189 (2d Cir. 1995); *Brown v. Cushman & Wakefield, Inc.*, 235 F. Supp. 2d 291, 293-94 (S.D.N.Y. 2002); *Morgan Guar. Trust Co.*, 36 F. Supp. 2d at 603.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss and to Strike Jury Demand should be granted.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of May, 2007, I caused true and correct copies of Defendants' Notice of Motion, Memorandum of Law in Support of Motion to Dismiss and to Strike Jury Demand and Affidavit of George A. Borden with exhibits to be served electronically via the Court's ECF system on the following counsel:

Lawrence S. Robbins, Esq.
Gary A. Orseck, Esq.
Daniel R. Walfish, Esq.
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500
(202) 775-4510 (telecopy)
lrobbins@robbinsrussell.com
gorseck@robbinsrussell.com
dwalfish@robbinsrussell.com

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169
(212) 883-6383
(212) 883-6388 (telecopy)
tpuccio@lotpp.com

*Attorneys for Plaintiffs*

_____/s/_____
George A. Borden