# Exhibit 7

## AMENDMENT TO AMENDED AND RESTATED INTERCREDITOR AGREEMENT

THIS AMENDMENT TO THE AMENDED AND RESTATED INTERCREDITOR AGREEMENT, dated as January 29, 2007 (this "Amendment"), is entered into by RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) LIMITED, a private limited company incorporated under the laws of Ireland (the "Issuer"), ABN AMRO BANK N.V., a banking corporation organized under the laws of The Netherlands, acting out of its Chicago branch (the "Senior Lender"), WALKERS SPV LIMITED, a limited liability company incorporated under the laws of the Cayman Islands solely in its capacity as trustee of the RITCHIE LIFE STRATEGIES MASTER TRUST, a sub-trust of the RITCHIE RISK-LINKED STRATEGIES SERIES TRUST (a Cayman Islands exempted trust) ("Life Master Trustee"), SANDY RUN LTD., an exempted company limited by shares incorporated under the laws of the Cayman Islands ("Sandy Run"), WALKERS SPV LIMITED, a limited liability company incorporated under the laws of the Cayman Islands solely in its capacity as trustee of the RITCHIE RISK-LINKED LIFE STRATEGIES TRUST I, a sub-trust of the RITCHIE RISK-LINKED STRATEGIES SERIES TRUST (a Cayman Islands exempted trust) ("Life Trust I Trustee"), MONTGOMERY LIMITED, a corporation organized under the laws of Bermuda (the "Bermuda Servicer"), RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD., a corporation incorporated under the laws of Bermuda (the "Investment Manager"), COVENTRY FIRST LLC, a limited liability company organized under the laws of the State of Delaware (the "Servicer"), U.S. BANK NATIONAL ASSOCIATION, a national banking association ("U.S. Bank") as Policy Payment Agent under the Policy Payment Agency Agreement (the "Policy Payment Agent"), ABN AMRO BANK N.V., acting out of its London branch, as Principal Paying Agent (the "Paying Agent"), ABN AMRO TRUSTEES LIMITED, a corporation organized under the laws of England and Wales, as indenture trustee (the "Indenture Trustee") and each holder of Subordinated Securities or Junior Notes deemed to be a party hereto.

## R E C I T A L S

A.    The Issuer, the Senior Lender, Life Master Trustee, Sandy Run, Life Trust I Trustee, the Bermuda Servicer, the Investment Manager, the Servicer, U.S. Bank, the Policy Payment Agent, the Paying Agent and the Indenture Trustee are parties to the Amended and Restated Intercreditor Agreement, dated as of October 21, 2005 (as amended, supplemented or otherwise modified from time to time, the "Agreement");

B.    Life Master Trustee and Life Trust I Trustee joined the Agreement on October 20, 2006 pursuant to a Joinder Agreement.

C.    The Issuer has requested, and the Senior Lender has agreed, to amend that certain Senior Term Loan and Liquidity Agreement to increase the Liquidity Facility Limit to $52,000,000, on the terms and conditions set forth in the Second Amendment to Senior Term Loan and Liquidity Agreement ( the "Second Amendment") entered into contemporaneously herewith.

D.    Each holder of the Junior Notes and the Principal Holders acknowledge that it will derive benefit from increase in the Liquidity Facility Limit as provided in the Second Amendment.

17419305 05112951

E.    The parties hereto desire to amend the Agreement on the terms and conditions set forth herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Certain Defined Terms</u>.  Capitalized terms used but not defined herein shall have the meanings set forth for such terms in <u>Section 1.1</u> of the Agreement.

2.    <u>Amendments to the Agreement</u>.

(a)    Section 1.1 is hereby amended by:

(i)    deleting the reference to "Section 2.2(d)(viii) in the definition of "Borrowing Base Reserve Subaccount" and inserting in lieu thereof "Section 2.2(d)(x);"

(ii)    deleting the definition of "Senior Debt Maturity Date" in its entirety and inserting in lieu thereof the following:

""**Senior Debt Maturity Date**," with respect to the Senior Debt, the "Stated Maturity Date" as defined in the Senior Term Loan and Liquidity Agreement."; and

(iii)    inserting in alphabetical order, the following definitions:

""**Attorney General Action**" means the action commenced by the New York Attorney General against the Servicer and others filed with the Supreme Court of the State of New York, County of New York, Complaint Index No. 404620/06."

""**Security Account**" has the meaning specified in Section 2.1(c) of this Agreement."

""**Security Funds**" has the meaning assigned to such term in Section 2.9 of this Agreement."

(b)    Section 2.1 of the Agreement is hereby amended by inserting the following subsection (c) at the end thereof:

"(c)    The Paying Agent shall establish at the Paying Agent a segregated escrow account subject to the terms of Section 2.9 of this Agreement designated as the "Security Account" (the "**Security Account**").  The Paying Agent will deposit therein all amounts to be deposited into the Security Account pursuant to the Priority of Payments.  Withdrawals, transfers or applications of funds on deposit in the Security Account shall be in accordance with Section 2.9."

(c)     Section 2.2(d) of the Agreement is hereby amended by:

(i)     inserting at the beginning thereof, the clause "Subject to Section 2.9 of this Agreement and the release of the funds in the Draw Account as contemplated by any joint direction letter delivered to the Policy Payment Agent by the Issuer, the Seller and the Servicer, and acknowledged by the Senior Lender,";

(ii)     deleting clause (viii) in its entirety and inserting in lieu thereof the following:

> "(viii) (a) prior to the payment in full of the Obligations plus all other amounts payable to the Senior Lender (or any Affected Party), to deposit into the Security Account, the Administration and Servicing Fees determined in accordance with the provisions of the Bermuda Servicing Agreement and (b) following the payment in full of the Obligations plus all other amounts payable to the Senior Lender (or any Affected Party), to pay to the Bermuda Servicer the Administration and Servicing Fees determined in accordance with the provisions of the Bermuda Servicing Agreement;"

(iii)     renumbering clauses (x) through (xv) as numbers (xi) through (xvi);

(iv)     inserting the following new clause (x):

> "(x)     to pay interest plus the excess, if any, of the Accreted Principal Amount over the Original Principal Amount owing under the Junior Notes, except that on any Borrowing Base Reserve Allocation Date amounts otherwise available for payment pursuant to this clause (x) will instead be allocated as reserved in the Borrowing Base Reserve Subaccount of the Payment Account and will be released therefrom only pursuant to Section 2.8(b) of this Agreement;" and

(v)     deleting the reference to "clause (xii)" in the renumbered clause (xv) and inserting in lieu thereof "clause (xiii)".

(d)     Section 2.8 is hereby amended by deleting each reference to "Section 2.2(d)(viii)" inserting in lieu thereof "Section 2.2(d)(x)."

(e)     Article II is hereby amended by inserting the following Section 2.9 at the end thereof:

"Section 2.9.  *Security Account; Payments Therefrom.*     (a)     The Issuer, the Bermuda Servicer and the Senior Lender hereby appoint the Paying Agent to serve as escrow agent of the Security Account.   The Paying Agent hereby accepts such appointment and, upon receipt of any funds pursuant to Section 2.2(d)(viii)(x) of this Agreement (the "**Security Funds**"), agrees to hold, invest and disburse the Security Funds in accordance with this Section 2.9. The Bermuda Servicer hereby acknowledges that the deposit of the Security Funds into the Security Account shall satisfy the Paying

Agent's and the Issuer's obligations with respect to Section 2.2(d)(viii) of this Agreement and the payment of the Administration and Servicing Fees, respectively.

(b)    Notwithstanding anything to the contrary in Section 5.1(a), the Paying Agent shall release the Security Funds as follows: (i) upon receipt of a notice from the Senior Lender that the aggregate amount of principal owing under the Senior Debt plus all Obligations and other amounts payable to the Senior Lender have been repaid, the Paying Agent shall release the Security Funds to the Bermuda Servicer and (ii) upon the receipt of a notice from the Senior Lender stating either (A) that an Event of Default specified in Section 10.1.1, 10.1.4, 10.1.6, 10.1.7, 10.1.9, 10.1.10, 10.1.12 or 10.1.14 of the Senior Term Loan and Liquidity Agreement has occurred and is continuing or (B) the Senior Debt Maturity Date has occurred, the Paying Agent shall release the Security Funds to the Senior Lender (or any Affected Party), provided, if the Security Funds exceed the aggregate of all Obligations owed to the Senior Lender at such time, then the excess shall be distributed to the Bermuda Servicer.

(c)    The Security Funds and all other amounts on deposit in the Security Account shall be invested by the Payment Agent in such Permitted Investments (as defined in the Policy Payment Agency Agreement) as the Payment Agent may from time to time be directed in writing by the Senior Lender, and if not otherwise directed by the Senior Lender, in an overnight money market fund.

(d)    The Bermuda Servicer hereby assigns and pledges to the Senior Lender, and hereby grants to the Senior Lender, a security interest in, all right, title and interest in and to the Bermuda Servicer's right to the Security Funds and the Administration and Servicing Fees determined in accordance with the Bermuda Servicing Agreement. This grant of security interest secures the payment and performance of all obligations of the Issuer to the Senior Lender now or hereafter existing or arising under, or in connection with this Agreement, the Senior Term Loan and Liquidity Agreement and the Senior Note, whether for principal, interest, costs, fees, expenses, indemnities or otherwise and all other Obligations. The Bermuda Servicer, the Issuer and the Paying Agent hereby acknowledge the security interest granted hereunder and the Bermuda Servicer hereby authorizes, at the Bermuda Servicer's expense, the filing of any financing statements and any other action that may be necessary or desirable (in the discretion of the Senior Lender) to evidence, perfect or more fully protect the interest of the Senior Lender hereunder."

(f)    Section 4.4 of the Agreement is hereby amended by deleting the last sentence in its entirety and inserting in lieu thereof the following:

"The Paying Agent shall have no duty to investigate the accuracy of any statements contained in any certificate or notice delivered to it pursuant to the terms of the Junior Notes, the Subordinated Securities or this Agreement, its only duty being to receive such certificates and notices in accordance with the terms thereof."

(g)    Section 5.11 is hereby amended by attaching <u>Exhibit A</u> of this Amendment as "Exhibit A" to the Agreement.

(h)    Section 5.12(b) of the Agreement is hereby amended by deleting such clause in its entirety and inserting in lieu thereof the following:

"(b)    The Investment Manager on behalf of the Issuer shall cause the firm of independent accountants to deliver annual audited financial statements of the Issuer to the parties hereto within ninety (90) days of the end of the Issuer's fiscal year which shall be September 30 of each year, beginning September 30, 2006, <u>provided, that</u> with respect to the fiscal year ending September 30, 2006, such annual audited financial statements shall be delivered on or before July 1, 2007."

3.    <u>Conditions Precedent</u>.    The effectiveness of this Amendment is expressly conditioned upon:

(a)    the execution and delivery by all of the parties hereto of this Amendment;

(b)    receipt of by the following parties or account of the following amounts from the Draw Account: (i) the Senior Lender, $9,398,823 (which shall be applied to principal owing on the Senior Debt), (ii) Life Master Trustee, as holder of the Junior Notes, $3,488,035, (iii) Life Master Trustee, as holder of Subordinated Securities, $723,100, (iv) Life Trust I Trustee, as holder of Subordinated Securities, $1,066,572 and (v) Sandy Run, as holder of Subordinated Securities, $541,772 and (vi) the Servicing Account, the balance remaining after the foregoing distributions; and

(c)    the contemporaneous execution and delivery of (i) the Second Amendment by all parties to such amendment, (ii) an amendment to the Bermuda Servicing Agreement, reasonably satisfactory to the Senior Lender, by all parties to such amendment, (iii) a joint direction letter to the Policy Payment Agent by the Issuer, the Seller and the Servicer and acknowledged by the Senior Lender in the form attached hereto as Exhibit B (the "<u>Direction Letter</u>") and (iv) amended and restated Junior Notes and Subordinated Securities.

4.    <u>Conditions Subsequent; Further Assurances</u>.

(a)    The Bermuda Servicer shall, no later than 60 days following the date of this Amendment, deliver to the Senior Lender a favorable opinion of Bermuda counsel to the Bermuda Servicer, in form and substance satisfactory to the Senior Lender, as to the enforceability and perfection of the security interest granted by the Bermuda Servicer to the Senior Lender pursuant to Section 2.9 of the Intercreditor Agreement (as shall be amended by this Amendment).

(b)    The Bermuda Servicer agrees that from time to time, at its own expense, it will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that the Senior Lender may reasonably request, in order to perfect any pledge, assignment or security interest granted

or purported to be granted by them pursuant to Section 2.9 of the Intercreditor (as shall be amended by this Amendment). The Bermuda Servicer hereby authorizes the Senior Lender to file one or more financing or continuation statements, and amendments thereto, relating to all or any part of the collateral granted pursuant to Section 2.9 of the Intercreditor Agreement (as shall be amended by this Amendment) without the signature of the Bermuda Servicer (where permitted by law); provided however that the Senior Lender shall provide the Bermuda Servicer with a copy of any such financing continuation statements and amendments thereto. A photocopy or other reproduction of this Amendment or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

5.    Consents. (a) The parties to this Amendment consent to the execution and delivery of the documents and instruments referenced in Section 3(c) of this Amendment. The execution and delivery of this Amendment by each of the Principal Holders constitutes consent of each of the Principal Holders under Section 5.10 of the Agreement, including, but not limited to, the consent to the waiver by the Issuer of certain rights against the Senior Lender and the consent to the execution and delivery of the documents and instruments referenced in Section 3(c). The execution and delivery of this Amendment by each holder of the Junior Notes or Subordinated Securities, as applicable, constitutes consent of each such holder to the amendment and restatement of its Junior Notes or Subordinated Securities, as applicable, to reflect the amendment of Section 2 of the Agreement pursuant to Section 2(c) of this Amendment.

(b)    Notwithstanding anything to the contrary in Section 2.2(c) and 2.2.(d)(ii) of the Agreement, the Issuer may, during the months of January and February 2007, direct the Paying Agent to make the distributions described in Section 2.2(d)(ii) on any five Business Days during such months.

6.    Distributions of Funds in the Draw Account. The funds in the Draw Account will first be distributed to counsel to each of, the Paying Agent, the Custodian, the Policy Payment Agent, the Senior Lender and the Indenture Trustee in such amount as owing to each of them for reasonable attorneys fees incurred in connection with this Amendment and to the Policy Payment Agent in such amount owing to it for fees incurred. Second, the funds will be distributed to the parties and in the amount expressed in Section 3(b) of this Amendment in accordance with terms of the Direction Letter. As provided in Section 3(b) of this Amendment, the balance of the funds in the Draw Account shall be transferred and deposited into the Servicing Account. For the avoidance of doubt, the parties hereto acknowledge and agree that the funds so distributed from the Draw Account shall not be distributed in accordance with the Priority of Payments; provided, that subject to the first sentence of this Section 6, the Senior Lender will apply the funds distributed to it from the Draw Account to repayment of principal owing on the Senior Debt. The parties hereto acknowledge that the Issuer has no obligation to raise new funds for the acquisition of Life Settlement Policies or to purchase additional Life Settlement Policies with any of its existing funds, notwithstanding that not all Expected Capital was raised and not all funds in the Draw Account were used to fund either Acquisition Costs or reserves in accordance with the Transaction Agreements. If after the distributions described in this Section 6, the Policy Payment Agent receives any funds (such as Policy Proceeds) that are designated for deposit into the Draw Account, it shall promptly (and prior to any Payment Date) transfer such funds to the Paying Agent. The Paying Agent shall deposit such transferred funds into the Payment Account.

7.  <u>Attorney General Action</u>.  The parties hereto hereby (i) acknowledge that the Attorney General Action has been commenced by the New York Attorney General and (ii) acknowledge and agree that the Attorney General Action does not as of the date hereof constitute an Unmatured Event of Default or an Event of Default under the Senior Term Loan and Liquidity Agreement, or an event of default (whether matured or unmatured) or termination event under any of the other Transaction Agreements.

8.  <u>Effect of Amendment</u>.  Except as expressly amended and modified by this Amendment, all provisions of the Agreement shall remain in full force and effect.  After the date hereof, all references in the Agreement to "this Agreement", "hereof", or words of similar effect referring to such Agreement shall be deemed to be references to the Agreement as amended by this Amendment.  This Amendment shall not be deemed to expressly or impliedly waive, amend or supplement any provision of the Agreement other than as set forth herein.

9.  <u>Counterparts</u>.  This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute but one and the same instrument.

10.  <u>Governing Law</u>.  This Amendment shall be governed by, and construed in accordance with, the law of the State of New York without regard to any otherwise applicable principles of conflicts of law.

11.  <u>Section Headings</u>.  The various headings of this Amendment are included for convenience only and shall not affect the meaning or interpretation of this Amendment, the Agreement or any provision hereof or thereof.

[Signature pages follow]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first written above.

RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND) LIMITED

By: _John W Ketham_
Name: _JOHN KETHAM_
Title: _C.E.O._


WALKERS SPV LIMITED solely in its capacity as
trustee for the RITCHIE RISK-LINKED LIFE
STRATEGIES TRUST I

By: _____
Name: _____
Title: _____


WALKERS SPV LIMITED solely in its capacity as
trustee for the RITCHIE LIFE STRATEGIES
MASTER TRUST

By: _____
Name: _____
Title: _____


RITCHIE CAPITAL MANAGEMENT
(BERMUDA), LTD.

By: _____
Name: _____
Title: _____


*Amendment to Amended and Restated
Intercreditor Agreement*

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first written above.

RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND) LIMITED

By:_____
Name:_____
Title:_____


WALKERS SPV LIMITED solely in its capacity as
trustee for the RITCHIE RISK-LINKED LIFE
STRATEGIES TRUST I

By:_____
Name:_____
Title:_____


WALKERS SPV LIMITED solely in its capacity as
trustee for the RITCHIE LIFE STRATEGIES
MASTER TRUST

By:_____
Name:_____John Cullinane_____
Title:_____Director_____


RITCHIE CAPITAL MANAGEMENT
(BERMUDA), LTD.

By:_____
Name:_____
Title:_____


*Amendment to Amended and Restated*
*Intercreditor Agreement*

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first written above.

RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND) LIMITED

By:_____
Name:_____
Title:_____

WALKERS SPV LIMITED solely in its capacity as
trustee for the RITCHIE RISK-LINKED LIFE
STRATEGIES TRUST I

By:_____
Name:_____
Title:_____

WALKERS SPV LIMITED solely in its capacity as
trustee for the RITCHIE LIFE STRATEGIES
MASTER TRUST

By:_____
Name:_____
Title:_____

RITCHIE CAPITAL MANAGEMENT
(BERMUDA), LTD.

By:_____
Name:_____Elliot Lean_____
Title:_____Authorized Signatory_____

*Amendment to Amended and Restated*
*Intercreditor Agreement*

MONTGOMERY LIMITED

By: _____
Name: _Janita Burke Waldron_
Title: _Vice President_

SANDY RUN LTD.

By: _____
Name: _____
Title: _____

COVENTRY FIRST LLC

By: _____
Name: _____
Title: _____

U.S. BANK NATIONAL ASSOCIATION,
as Policy Payment Agent

By: _____
Name: _____
Title: _____

MONTGOMERY LIMITED

By:_____
Name:_____
Title:_____


SANDY RUN LTD.

By:_____
Name:_____
Title:_____


COVENTRY FIRST LLC

By:_____
Name:_____
Title:_____


U.S. BANK NATIONAL ASSOCIATION,
as Policy Payment Agent

By:_____
Name:_____
Title:_____


*Amendment to Amended and Restated*
*Intercreditor Agreement*

MONTGOMERY LIMITED

By:_____
Name:_____
Title:_____


SANDY RUN LTD.

By:_____
Name:_____
Title:_____


COVENTRY FIRST LLC

By:_____
Name:_____
Title:_____


U.S. BANK NATIONAL ASSOCIATION,
as Policy Payment Agent

By:_____
Name:_____Thomas S. Maple III_____
Title:_____Vice President_____

ABN AMRO BANK N.V. (London Branch),
as Paying Agent

By: _____
Name: _____
Title: _____


ABN AMRO TRUSTEES LIMITED,
as Indenture Trustee

By: _____
Name: _____
Title: _____


ABN AMRO BANK N.V.,
as Senior Lender

By: _____
Name: _____
Title: _____

ABN AMRO BANK N.V. (London Branch),
as Paying Agent

By:_____
Name:_____
Title:_____


ABN AMRO TRUSTEES LIMITED,
as Indenture Trustee

By:_____*7. 14*_____
Name:_____**TIM  HOUGHTON**___
Title:_____**Authorised Signatory**___


ABN AMRO BANK N.V.,
as Senior Lender

By:_____
Name:_____
Title:_____


*Amendment to Amended and Restated*
*Intercreditor Agreement*

ABN AMRO BANK N.V. (London Branch),
as Paying Agent

By: _____
Name: _____
Title: _____


ABN AMRO TRUSTEES LIMITED,
as Indenture Trustee

By: _____
Name: _____
Title: _____


ABN AMRO BANK N.V.,
as Senior Lender

By: _____
Name: _____
Title: _____
NEIL J. BIVONA
SENIOR VICE PRESIDENT


STEVEN C. WIMPENNY
GROUP SENIOR VICE PRESIDENT


*Amendment to Amended and Restated
Intercreditor Agreement*

Acknowledged and Accepted as of the date of the Amendment.

**LST I LLC**

By: _____
      Name:
      Title:

Exhibit A to Amendment
Form of Joinder Agreement—Exhibit A to Intercreditor Agreement

## JOINDER TO INTERCREDITOR AGREEMENT

This Joinder Agreement (this "Joinder Agreement") is made as of the date written below by the undersigned (the "Joining Party") in accordance with the Amended and Restated Intercreditor Agreement dated as of October 21, 2005, as amended as of _____, 2007 (the "Intercreditor Agreement") among RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) LIMITED, ABN AMRO BANK N.V., WALKERS SPV LIMITED, SOLELY IN ITS CAPACITY AS TRUSTEE OF RITCHIE LIFE STRATEGIES MASTER TRUST, SANDY RUN LTD., WALKERS SPV LIMITED, SOLELY IN ITS CAPACITY AS TRUSTEE OF RITCHIE RISK-LINKED STRATEGIES TRUST I, MONTGOMERY LIMITED, RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD., COVENTRY FIRST LLC, U.S. BANK NATIONAL ASSOCIATION, ABN AMRO BANK N.V., ABN AMRO TRUSTEES LIMITED, and each holder of Subordinated Securities or Junior Notes deemed to be a party thereto, as the same may be amended from time to time. Capitalized terms used, but not defined, herein shall have the meanings ascribed to such terms in the Intercreditor Agreement.

[NAME OF ASSIGNEE] has assigned all its right title and interest to the [Senior Debt] [Junior Notes] [and Subordinated Securities] to the Joining Party pursuant to an Assignment Agreement dated _____(the "Assignment Agreement"). The Joining Party, pursuant to Section 5.11 of the Intercreditor Agreement, hereby acknowledges, agrees, confirms that, by its execution of this Joinder Agreement, the Joining Party accepts all terms and conditions of the Intercreditor Agreement. The Joining Party shall be deemed to be a party to the Intercreditor Agreement as of the effective date of the Assignment Agreement and shall have all of the rights and obligations thereunder as if it had executed the Intercreditor Agreement. The Joining Party hereby agrees to be bound by, all of the terms, provisions and conditions contained in the Intercreditor Agreement.

This Joinder Agreement will be governed by and construed in accordance with the laws of the State of New York. The Joining Party hereby submit to the non-exclusive jurisdiction of the Federal and New York State courts sitting in the Borough of Manhattan in The City of New York with respect to suit or proceeding arising out of or relating to this Joinder Agreement or the transactions contemplated hereby.

IN WITNESS WHEREOF, the undersigned has executed this Joinder Agreement as of the date written below.

Date as of: _____, 200_

[Name of Assignee]

By:_____
      Name:
      Title:

Exhibit B to Amendment

Form of Joint Direction Letter to U.S. Bank National Association

January 29, 2007

U.S. Bank National Association
60 Livingston Avenue, EP MN WS3D
St. Paul, Minnesota 55107-2292
Attention: Life Settlement Manager

Gentlemen:

Please refer to the Amended and Restated Policy Payment Agency Agreement, dated as of September 8, 2005 (the "Agreement") among Ritchie Risk-Linked Strategies Trading (Ireland) Limited (the "Purchaser"), LST I LLC (the "Seller"), Coventry First LLC (the "Servicer") and you. Capitalized terms used in this letter not otherwise defined shall have the meaning attributable to those terms in the Agreement.

You are hereby directed to distribute the funds in the Draw Account as follows: to (i) the Senior Noteholder, $9,398,823; (ii) Mayer, Brown, Rowe & Maw LLP, as counsel to the Paying Agent, ABN AMRO Bank N.V. (London Branch), as custodian, ABN AMRO Bank N.V., as Senior Lender and ABN AMRO Trustees Limited, as indenture trustee, $131,605.75; (iii) Dorsey & Whitney LLP, as counsel to the Policy Payment Agent, $10,469.38, (iv) the Policy Payment Agent, $45,020.36, (v) Walkers SPV Limited solely in its capacity as trustee of Ritchie Life Strategies Master Trust, as holder of the Junior Notes, $3,488,035, (vi) Walkers SPV Limited solely in its capacity as trustee of Ritchie Life Strategies Master Trust, as holder of Subordinated Securities, $723,100, (vii) Walkers SPV Limited solely in its capacity as trustee of Ritchie Risk-Linked Life Strategies Trust I, as holder of Subordinated Securities, $1,066,572; (viii) Sandy Run Ltd., as holder of Subordinated Securities $541,772; and (ix) the Servicing Account, the balance remaining after the foregoing distributions.

Any future deposits into the Draw Account shall be immediately transferred into the Payment Account (as defined in the Amended and Restated Intercreditor Agreement dated as of October 21, 2005, as amended on January 29, 2007 and as may be amended, modified or supplemented from time to time).

Sincerely yours,

Ritchie Risk-Linked Strategies Trading (Ireland)
Limited

By: _____
Name:
Title:


LST I LLC

By: _____
Name:
Title:


Coventry First LLC

By: _____
Name:
Title:


Acknowledged and Agreed to:

ABN AMRO BANK N.V.


By: _____
Name:
Title: