UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RITCHIE CAPITAL MANAGEMENT, L.L.C.,
RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND), LIMITED, RITCHIE
RISK-LINKED STRATEGIES TRADING
(IRELAND) II, LIMITED, WALKERS SPV               07 Civ. 3494 (DLC)
LIMITED, as trustee for Ritchie Risk-Linked
Life Strategies Trust I and Ritchie Life Strategies    ECF Case
Master Trust, and RITCHIE RISK-LINKED
STRATEGIES TRADING, LTD.,

                              Plaintiffs,

            v.


COVENTRY FIRST LLC, THE COVENTRY
GROUP, INC., MONTGOMERY CAPITAL,
INC., LST I LLC, ALAN BUERGER,
CONSTANCE BUERGER, REID S.
BUERGER, ANTONIO MUNIZ, ALEX
SELDIN, NEAL JACOBS, EILEEN SHOVLIN,
and JIM DODARO,

                              Defendants.
-------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Lawrence S. Robbins (LR-8917)              Thomas P. Puccio
Gary A. Orseck                            LAW OFFICES OF THOMAS P.
Daniel R. Walfish                             PUCCIO
Rachel S. Li Wai Suen                     230 Park Avenue
ROBBINS, RUSSELL, ENGLERT, ORSECK &       New York, NY 10169
    UNTEREINER LLP                        Tel: (212) 883-6383
1801 K Street, N.W., Suite 411            Fax: (212) 883-6388
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

Dated: June 12, 2007                      *Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

   I.   Defendant's Attacks On Personal Jurisdiction Are Devoid Of Merit And
       Premature ............................................................................................................ 2

       A.   Montgomery Capital And Reid Buerger Have Conceded Personal
            Jurisdiction In New York ........................................................................ 2

       B.   Defendants "Transact Business" In New York ........................................ 3

       C.   Defendants Have Committed Tortious Acts Outside New York
            Causing Injury Within New York ........................................................... 5

   II.   Plaintiffs Properly Allege RICO Violations ........................................................ 7

       A.   Plaintiffs Have Standing To Assert RICO Claims .................................. 7

            1.   The RICO Violations Proximately Caused Plaintiffs' Injuries .......... 7

            2.   Plaintiffs' Injuries Are Clear And Definite ...................................... 9

       B.   Plaintiffs Properly Allege A Claim Under § 1962(a) ............................. 10

       C.   Plaintiffs Properly Allege A Claim Under § 1962(c) ............................. 11

       D.   Plaintiffs Properly Allege A Claim Under § 1962(d) ............................. 11

   III.   Defendants Properly Allege Fraud And Fraudulent Inducement ........................ 12

       A.   The Allegations Of Fraudulent Misrepresentations Are Sufficient .......... 13

            1.   Plaintiffs Have Satisfied Rule 9(b) ................................................. 13

            2.   Fraud Claims Can Be Based On Statements In Contracts ................ 15

       B.   The Allegations Of Fraudulent Omissions Are Sufficient ...................... 16

       C.   The Integration Clause Does Not Bar The Fraud Claims ........................ 18

   IV.   Plaintiffs Have Stated A Claim For Breach Of Fiduciary Duty .......................... 21

**TABLE OF CONTENTS—continued**

**Page**

V.    Plaintiffs Have Stated A Claim For Breach Of Contract....................................................22

VI.   There Is No Basis For Striking The Jury Demand............................................................23

CONCLUSION....................................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1199 Housing Corp. v. Int'l Fid. Ins. Co.*, 788 N.Y.S.2d 88 (1st Dep't 2005) ........................... 23

*Aetna Ins. Co. v. Kennedy*, 301 U.S. 389 (1937) ......................................................... 24

*Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227 (D. Del. 1984) .................... 22

*Allis-Chalmers Mfg. Co. v. Malan Constr. Corp.*, 30 N.Y.2d 225 (1972) .................................. 23

*Am. Chicle Co. v. Joint Council 16*, 18 F.R.D. 102 (S.D.N.Y. 1955) ......................................... 24

*Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1989) ................................................... 12

*Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916) ................................. 3

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) ................................................................ 8

*Bank of New York v. Cheng Yu Corp.*, 413 N.Y.S.2d 471 (2d Dep't 1979) ................................. 25

*Barash v. Penn. Terminal Real Estate Corp.*, 26 N.Y.2d 77 (1970) .......................................... 19

*BCCI Holdings (Luxembourg), S.A. v. Pharaon*, 43 F. Supp. 2d 359 (S.D.N.Y. 1999) ................. 8

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) .............. 15

*Brunetti v. Musallam*, 783 N.Y.S.2d 347 (1st Dep't 2004) .................................................. 17, 21

*Caiola v. Citibank, N.A.*, 295 F.3d 312 (2d Cir. 2002) ....................................................... 19

*Carr v. Equistar Offshore, Ltd.*, No. 94 Civ. 5567 (DLC), 1995 WL 562178
(S.D.N.Y. 1995) ....................................................................................................... 19, 20

*Cataldo v. E.I. du Pont de Nemours & Co.*, 39 F.R.D. 305 (S.D.N.Y. 1966) .............................. 24

*Civil v. Waterman S.S. Corp.*, 217 F.2d 94 (2d Cir. 1954) .................................................... 23

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) ............................................................... 16, 18

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ....................................... 12

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) .................................................................. 13

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) .................................................. 4

iii

# TABLE OF AUTHORITIES—continued

**Page(s)**

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) ........................................... 19, 20

*Darienzo v. Wise Shoe Stores, Inc.*, 427 N.Y.S.2d 831 (2d Dep't 1980) ...................... 6

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954 (1986) ...................... 15

*Detrick v. Panalpina*, 108 F.3d 529 (4th Cir. 1997), *cert. denied*, 522 U.S. 810 (1997) ............ 12

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ............................ 14

*Donovan v. Aeolian*, 270 N.Y. 267 (1936) ................................................................ 17

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y. 2004) ................................................................ 22

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) .................................................... 18, 23

*Ell Dee Clothing Co. v. Marsh*, 247 N.Y. 392 (1928) ................................................ 23

*Emergent Capital Inv. Mgm't, LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615 (S.D.N.Y. 2001) ................................................................ 20

*Erickson v. Pardus*, 127 S. Ct. 2197 (U.S. June 4, 2007) ......................................... 2

*Federal-Housecraft, Inc. v. Faria*, 216 N.Y.S.2d 113 (2d Dep't 1961) ...................... 24

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ............................ 7, 9

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ................................................ 22

*Fogie v. Thorn Americas, Inc.*, 190 F.3d 889 (8th Cir. 1999) .................................... 12

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 Civ. 342 (DLC), 1999 WL 544708 (S.D.N.Y. 1999) ................................................................ 5

*Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112 (1995) ............................ 15

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ...................................... 15

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ................................................ 20

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ........................ 8

*Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258 (1992) ................................ 10

iv

## TABLE OF AUTHORITIES—continued

**Page(s)**

*ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234 (S.D.N.Y. 1997) ................................................ 23

*In re Am. Express S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ...................................................... 8

*In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ...................................................... 14

*In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56 (2d Cir. 1998) .............................................. 9

*In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931 (1st Dep't 1984) ................................................ 17

*Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997) ................ 16

*J. Truett Payne & Co. v. Chrysler Motors*, 451 U.S. 557 (1981) .................................................. 10

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994) .......................... 2

*Kaufman v. Cohen*, 760 N.Y.S.2d 157 (1st Dep't 2003) ................................................................ 17

*Kern v. Cambridge Holdings, L.L.C.*, No. 99 Civ. 3602 (MBM), 2000 WL 1300400
(S.D.N.Y. Sept. 14, 2000) .............................................................................................................. 23

*Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323 (11th Cir. 2004) .............................................. 12

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ................................................................ 4

*LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993) .................................................................... 24

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012
(2003) ................................................................................................................................................ 7

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) .............................................................. 17

*Levinson Steel Co. v. Schiavone Constr. Co.*, 637 F. Supp. 164 (S.D.N.Y. 1986) ...................... 23

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) .............................................................................. 14

*M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652 (S.D.N.Y. 2006) ........................................ 3

*Meinhard v. Salmon*, 249 N.Y. 458 (1928) ................................................................................... 18

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 382 F. Supp. 2d 411 (S.D.N.Y. 2003) ............. 25

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................... 2

*Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993) ........................................... 19, 20

**Page(s)**

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ........................................... 8

*Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003) ...................................... 9

*Nassar v. Florida Fleet Sales Inc.*, 69 F. Supp. 2d 443 (S.D.N.Y. 1999) ..................... 2

*Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255 (2d Cir. 1977) .............................. 24

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Burger*, No. 86 Civ. 8633 (LLS), 1991 WL 197625 (S.D.N.Y. 1991) ...................................................................................... 25

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................................. 3

*News Am. Marketing, Inc. v. Lepage Bakeries, Inc.*, 791 N.Y.S.2d 80 (1st Dep't 2005) ............. 14

*Penato v. George*, 383 N.Y.S.2d 900 (2d Dep't 1976) .................................................. 21

*People v. Apple Health & Sports Clubs, Ltd.*, 80 N.Y.2d 803 (1992) .......................... 18

*Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613 (LAK), 2003 WL 21660339 (S.D.N.Y. 2003) ........................................................................................................ 16

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260 (4th Cir. 2001) .............. 9

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575 (1st Dep't 2003) ............................................................................................................... 21

*Sabo v. Delman*, 3 N.Y.2d 155 (1957) .......................................................................... 15

*Shapiro v. Marstone Distribs.*, 337 N.Y.S.2d 928 (2d Dep't 1972) ............................. 24

*Simler v. Connor*, 372 U.S. 221 (1963) ........................................................................ 24

*Simonson v. Int'l Bank*, 14 N.Y.2d 281 (1964) .............................................................. 3

*Smolik v. Philadelphia & Reading Coal & Iron Co.*, 222 F. 148 (S.D.N.Y. 1915) ...................... 3

*Sony Music Entm't Inc. v. Robison*, No. 01 Civ. 6415 (LMM), 2002 WL 272406 (S.D.N.Y. 2002) ................................................................................................... 11

*Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87 (2d Cir. 1971) ............................ 3

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) .................. 8

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*Tese-Milner v. Ad EFX Promotions, Inc.*, No. 06 Civ. 1630 (DLC), 2007 WL 196866
(S.D.N.Y. Jan. 26, 2007)................................................................................................ 2

*Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979) ............................ 16

*TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005) ........................... 17, 18

*United Artists Theatre Circuit v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342
(E.D.N.Y. 2005)............................................................................................................. 20

*Upjohn Co. v. Syntro Corp.*, 1990 WL 79232 (D. Del. 1990)........................................................ 22

*Webster v. Omnitriton Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996), *cert. denied*, 519 U.S.
865 (1996)....................................................................................................................... 12

*Wells Fargo Bank v. Stargate Films, Inc.*, 795 N.Y.S.2d 18 (1st Dep't 2005) ........................... 25

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .................................................... 2

*Wood & Selick v. Ball*, 190 N.Y. 217 (1907)................................................................................. 23

*Wright v. Lewis*, 76 F.3d 57 (2d Cir. 1996) ................................................................................. 24

*Xuchang Rihetai Human Hair Goods Co. v. Hanyu Int'l USA Inc.*, No. 00 Civ. 5585
(DLC), 2001 WL 8438 (S.D.N.Y. 2001) ...................................................................... 16

**STATUTES & RULES**

15 U.S.C. § 15.................................................................................................................... 10

18 U.S.C. § 1961.................................................................................................................. 1

18 U.S.C. § 1962.................................................................................................... 10, 11, 12

18 U.S.C. § 1964................................................................................................................ 10

Fed. R. Civ. P. 8.......................................................................................................... 22, 23

Fed. R. Civ. P. 9.......................................................................................................... passim

Fed. R. Civ. P. 12............................................................................................................... 2

Fed. R. Civ. P. 39............................................................................................................. 24

N.Y. C.P.L.R. § 301........................................................................................................... 3

**TABLE OF AUTHORITIES—continued**

**Page(s)**

N.Y. C.P.L.R. § 302 ...................................................................................................... 3, 5, 6

N.Y. C.P.L.R. § 3015(a) ..................................................................................................... 23

N.Y. C.P.L.R. § 3211(e) ....................................................................................................... 3

## OTHER AUTHORITIES

ABA SECTION ON ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS (6th ed. 2007) ............... 12

AMERICAN HERITAGE DICTIONARY (4th ed. 2000) ....................................................... 10

JED S. RAKOFF & HOWARD W. GOLDSTEIN, RICO: CIVIL AND CRIMINAL LAW AND
STRATEGY (2006) ........................................................................................................ 11

DAVID D. SIEGEL, NEW YORK PRACTICE (4th ed. 2005) .................................................. 3

WILLISTON ON CONTRACTS ........................................................................................ 23

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE (2d ed. 1995) .................... 24

Plaintiffs submit this Memorandum of Law, and the accompanying Declarations of Lawrence S. Robbins and A.R. Thane Ritchie, in opposition to Defendants' motion to dismiss.

## INTRODUCTION

This is a case about systematic deception. The Complaint alleges that Ritchie Capital Management, L.L.C. ("RCM") and its co-Plaintiffs (collectively "Ritchie Capital") entered into an arrangement with Coventry First LLC and its affiliates (collectively "Coventry") pursuant to which the two groups, funded largely by Ritchie Capital, jointly invested in life insurance products that Coventry had acquired on the open market. Compl. ¶¶ 3, 24, 30, 31. But even as Coventry represented to Plaintiffs that its policies had been lawfully acquired, *id.* ¶¶ 28, 34-39, Coventry was breaking the law by defrauding the elderly sellers of the policies. The result was enforcement action by the New York Attorney General ("NYAG"), *id.* Ex. A, and the Florida Office of Insurance Regulation. Robbins Decl. Ex. 6.[1] Coventry's misdeeds seriously harmed Plaintiffs.

Faced with a Complaint that lays all this out in clear, plain terms, it is notable what Defendants do not contest. They do not contest that the Complaint properly alleges acts of fraud on the sellers of life insurance policies. They do not contest that the Complaint sufficiently alleges a pattern of racketeering activity under 18 U.S.C. § 1961. They do not attack the allegation that their business practices resulted in harm to Plaintiffs. And they practically admit (indeed, have put before the court some of the very documents that demonstrate) that they made material misrepresentations on which Plaintiffs relied to their great detriment. *See* Def. Mem. 17 n. 19.

Nevertheless, in an "issue spotting," scattershot filing, Defendants contend that the Complaint lacks sufficient detail to warrant relief. With the exception of Rule 9, however, the Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing

---

[1]  The Court can take judicial notice of the Florida action, which was filed after the Complaint in this action.

that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (U.S. June 4, 2007). On a motion to dismiss, the court must accept as true the plaintiff's allegations, *id.*, "and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994).

## ARGUMENT

### I.    Defendant's Attacks On Personal Jurisdiction Are Devoid Of Merit And Premature

At this early stage, when no discovery has occurred, a plaintiff need only "plead[] in good faith . . . legally sufficient allegations of [personal] jurisdiction," that is, "mak[e] a 'prima facie showing' of jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Moreover, on a Rule 12(b)(2) motion, the court is not limited to the four corners of the complaint; either party may submit evidentiary materials,[2] and "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Id.* If the plaintiff makes the prima facie showing, the Court should permit discovery into jurisdictional matters and, if material facts are in dispute, adjudicate the defense only after a hearing. *See, e.g.*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996); *Tese-Milner v. Ad EFX Promotions, Inc.*, No. 06 Civ. 1630 (DLC), 2007 WL 196866, at *3 (S.D.N.Y. Jan. 26, 2007).

### A.    Montgomery Capital And Reid Buerger Have Conceded Personal Jurisdiction In New York

In the NYAG's action, Defendants flatly acknowledged that "Montgomery Capital is subject to personal jurisdiction in New York." Robbins Decl. Ex. 1 (memorandum on motion to dismiss) at

---

[2] *See, e.g.*, *Whitaker*, 261 F.3d at 208 (plaintiff can defeat a Rule 12(b)(2) motion "through affidavits and supporting materials"); *Nassar v. Florida Fleet Sales Inc.*, 69 F. Supp. 2d 443, 446 (S.D.N.Y. 1999) (same).

1, 8. Regardless of whether formal principles of judicial estoppel apply, *cf. New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001), the Court should not credit a directly contrary assertion here. Indeed, the basis for the concession is apparently that Montgomery Capital, Inc. has long been licensed to do business in New York, with a New York agent for service of process. *See* Robbins Decl. Ex. 2. Personal jurisdiction over Montgomery Capital therefore is beyond dispute.[3] Similarly, in the NYAG action, Reid Buerger did not contest personal jurisdiction. *See* Robbins Decl. Ex. 3. He thereby effectively acknowledged personal jurisdiction in New York for the events at issue in that case, *see* N.Y. C.P.L.R. § 3211(e) (personal jurisdiction defense waived if not raised in pre-answer motion to dismiss), which to a great extent are also at issue in this case.

## B.    Defendants "Transact Business" In New York

Defendants seem to be operating on the assumption that allegations of personal jurisdiction must be set forth with particularity at the pleading stage, when in fact the precise opposite is true.[4] In any event, Plaintiffs have established that as alleged in the Complaint, *see* ¶ 5, Defendants "transact[] business" in New York within the meaning of C.P.L.R. § 302(a)(1).

---

[3]  *See, e.g.*, *Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916) (appointment of New York agent for service of process sufficient to create personal jurisdiction over foreign corporation); *Smolik v. Philadelphia & Reading Coal & Iron Co.*, 222 F. 148 (S.D.N.Y. 1915) (Hand, J.) (same); N.Y. C.P.L.R. § 301 (incorporating the common law of personal jurisdiction as of 1962); *M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652, 658 (S.D.N.Y. 2006) ("New York courts are in general agreement that a foreign corporation submits itself to the jurisdiction of New York courts when it registers to do business within this state under [N. Y. BUS. CORP. LAW] § 1304"); DAVID D. SIEGEL, NEW YORK PRACTICE § 82, at 143 (4th ed. 2005) (basis for personal jurisdiction "automatically appears" if the defendant is a duly licensed foreign corporation). The two cases cited by Defendants (at 2) for the proposition that New York courts have general personal jurisdiction over a foreign corporation only if it is "engaged in a continuous and systematic course of business" stem from a line of cases that *presuppose* that the defendant is not authorized to do business in New York and has no New York agent for service of process. *See Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285 (1964).

[4]  A complaint need not even state the basis of personal jurisdiction, *see Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971), although of course Plaintiffs must eventually establish it.

For one thing, Coventry, acting through the individual defendants – who each have responsibility either for the overall management of Coventry or its purchases of life settlements – bought hundreds, if not thousands, of life insurance policies from New York sellers and through New York brokers. *See* Robbins Decl. Ex. 4 ("Axinn Aff.") ¶ 3, Ex. B (showing that Coventry purchased approximately 300 life insurance policies from New York sellers); Compl. Ex. A ¶¶ 30-32 (describing misdealings in conjunction with New York broker); Axinn Aff. ¶ 5, Ex. D (setting forth additional interactions with New York broker).

Under settled New York law, it is of no moment that some of the individual and corporate defendants may not have personally transacted the business in New York, so long as they had knowledge of, and some control over, the entity or persons transacting the business in New York, *Kreutter v. McFadden Oil Corp*., 71 N.Y.2d 460, 467 (1988). Such circumstances can be readily inferred for all of the defendants in question from their positions at Coventry and their status as the recipients of Coventry First's profits. The purchase of policies, moreover, has a "substantial nexus," *see* Def. Mem. 3; *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006), with claims arising out of (among other things) misconduct in connection with those purchases.

What is more, the Complaint alleges, *see* ¶ 5, that Defendants entered into contracts with Plaintiffs in New York and describes those contractual relationships throughout the Complaint. And although it may be, as Defendants contend (at 3 n.2), that only LST I LLC ("LST") elected to sign certain contracts,[5] the Complaint alleges that all of the Coventry entities dealt with Plaintiffs (whose representatives were in New York, Ritchie Decl. ¶¶ 2-5) through many of the individual defendants,

---

[5] Defendants imply throughout their memorandum that the purchase agreements that they have put before the Court are the only relevant agreements. In fact, the purchase agreements were just a few out of a large number to which Ritchie Capital and Coventry were party and that defined the relationship between the two sides.

including Alan Buerger, Reid Buerger, Constance Buerger, and Antonio Muniz. Compl. ¶¶ 28, 34, 36, 39, 50-51. Moreover, the very agreements before the Court were signed by Defendant Alex Seldin (Compl. ¶¶ 35-37; Borden Aff. Exs. 1, 2, 4), who, as Coventry's general counsel (Compl. ¶ 17), "cannot plausibly be analogized to a ministerial signer," *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 Civ. 342 (DLC), 1999 WL 544708, at *19 (S.D.N.Y. 1999).

### C.    Defendants Have Committed Tortious Acts Outside New York Causing Injury Within New York

Defendants state (correctly) that to satisfy C.P.L.R. § 302(a)(3)(ii), Plaintiffs must show: (1) a tortious act outside New York, (2) a cause of action arising from that act, (3) the act caused injury to a person in New York, (4) the defendant expected or should reasonably have expected the act to have consequences in New York, and (5) the defendant derived substantial revenue from interstate or international commerce. Def. Mem. 3. But then Defendants argue that "[p]laintiffs have alleged none of these elements" for the defendants in question. *Id.*[6]

That is a mysterious assertion. Paragraph 5 of the Complaint explicitly alleges <u>every one</u> of those elements for each of the defendants, and these allegations are readily substantiated by the rest of the Complaint and Plaintiffs' evidentiary submissions. First, the tortious acts outside New York include numerous instances of misconduct committed by the individual and corporate defendants and specified in great detail throughout the Complaint and the NYAG's complaint (which is attached to the Complaint and in large part incorporated by reference in it, *see* Compl. ¶ 43). Second, causes of action arising from these acts are clearly spelled out. *Id.* ¶¶ 68-107. Third, the Coventry group –

---

[6] Defendants do not claim that Plaintiffs have insufficiently pled the requirements of § 302(a)(3)(i), which has the same elements as § 302(a)(3)(ii), except that elements four and five as set forth above are replaced by the requirement that Defendant "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state." The Complaint alleges this element, *see* ¶ 5, and defendants satisfy it for the same reasons, discussed in the text, that they satisfy the "revenues from interstate commerce" requirement.

acting through the individual defendants – purchased insurance policies from approximately 300 persons in New York, at least some of whom are believed to have been defrauded. Axinn Aff. ¶ 3, Ex. B. Fourth, Defendants' reasonable expectation that their misconduct would have consequences in New York follows from, at a minimum, their dealings with Plaintiffs in New York, brokers in New York, and the hundreds of sellers of life insurance policies in New York. *See* Ritchie Decl. ¶¶ 2-5; Compl. Ex. A ¶¶ 30-32; Axinn Aff. ¶ 5, Ex. D.

Finally, the defendants in question derive substantial revenue from interstate commerce. As a threshold matter, there is no serious dispute that Coventry First and its executives transact in life settlements throughout the country. *See, e.g.*, Compl. Ex. A ¶¶ 27-45; *see also* Robbins Decl. Ex. 6 (action by Florida insurance authorities arising out of Coventry's activities in Florida). And Coventry First pays substantially all of its profits to defendants Montgomery Capital and The Coventry Group, Inc., *see* Robbins Decl. Ex. 5 ("Koh Aff.") ¶ 2, Ex. E, which are also owned and controlled by the Buergers, Compl. ¶¶ 11-15. When one corporation that transacts in interstate commerce turns the proceeds from its activities over to another corporation that is under identical or near-identical ownership, each entity equally satisfies the interstate commerce requirement of § 302(a)(3)(ii). *Darienzo v. Wise Shoe Stores, Inc.*, 427 N.Y.S.2d 831, 833 (2d Dep't 1980). Nor is there any doubt that, as the owners and executives of the enterprise, *see* Compl. ¶¶ 15-20, the individual defendants derive "substantial revenues" from interstate commerce.

Accordingly, Plaintiffs have made a prima facie showing of personal jurisdiction for all the defendants. To the extent any Defendant wishes to contest the Court's personal jurisdiction, it is at liberty to renew its motion after Plaintiffs have taken discovery into their contacts with New York.

**II.     Plaintiffs Properly Allege RICO Violations**

**A.     Plaintiffs Have Standing To Assert RICO Claims**

The Complaint alleges facts sufficient to establish that Defendants' RICO violations proximately caused injury to Plaintiffs' business or property.

**1.     The RICO Violations Proximately Caused Plaintiffs' Injuries**

The Complaint alleges that Defendants engaged in a scheme, pervaded by fraud and other unlawful conduct, that (1) was directly targeted at Plaintiffs (among others), and (2) had the direct, foreseeable, and intended effect of inducing Plaintiffs to transfer hundreds of millions of dollars to Defendants. This effect was not some incidental, indirect, or unintended consequence of Defendants' efforts to defraud others; rather, it was an essential component of Defendants' plan. Defendants could not make money simply by *acquiring* policies through fraudulent means; the success of their scheme required them, also, to *sell* those policies to Plaintiffs and others, and those sales could be accomplished only through fraud. The enormous financial losses suffered by Plaintiffs were the direct and foreseeable result of Defendants' RICO violations. *See* Compl. ¶¶ 53-65.

Proximate cause is established where, as here, the Defendants' acts "were 'a substantial factor in the sequence of responsible causation,'" and the injury to Plaintiffs was "'reasonably foreseeable or anticipated as a natural consequence.'" of those acts. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (quoting *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769 (2d Cir.1994)), *cert. denied*, 540 U.S. 1012 (2003). And injury is foreseeable when Plaintiffs are among the "targets . . . and intended victims of the racketeering enterprise." *Lerner*, 318 F.3d at 124.

Defendants rely on the near-frivolous argument that there can be no "proximate cause" if a victim will not be injured until the defendants' fraud is exposed. *See* Def. Mem. 4-6. But none of the cases cited by Defendants supports that proposition; indeed, that proposition is refuted by

7

considering "paradigmatic racketeering enterprises" such as Ponzi schemes or borrowers who defraud lenders by misrepresenting the value of collateral. *See Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003). Victims of such schemes have RICO standing even if their injury is not realized until the scheme is exposed. In these examples, the racketeering enterprise "causes harm by the creation of substantial risk of harm." *Id.*

Defendants' cases merely illustrate the unremarkable principle, irrelevant here, that standing is absent for third parties who suffer indirect and incidental injury as a result of violations targeted at others. Thus, shareholders lacked standing to sue a corporation because the corporation and its management engaged in wrongdoing directed against others (*In re Am. Express S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994)); an employee could not sue his employer because he was fired when he refused to aid and abet the employer's RICO violations targeted at others (*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990)); and a corporation lacked standing to sue a defendant who had conspired with the corporation itself, under prior management, to commit RICO violations targeted at a potential competitor (*BCCI Holdings (Luxembourg), S.A. v. Pharaon*, 43 F. Supp. 2d 359 (S.D.N.Y. 1999)). None of Defendants' cases involved misrepresentations directed at the plaintiff; with the direct, foreseeable, and intended effect of inducing the plaintiff to provide funds to the Defendants; and injury flowing directly from the plaintiff's mistaken understanding, based on the predicate RICO fraud, of value and risk. Those elements, all alleged here, are more than sufficient to establish proximate cause. *See, e.g.*, *Baisch*; *Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001).[7]

---

[7] Defendants incorrectly assert (at 6 n.6) that there are no allegations of interaction between Defendants and plaintiffs other than Ritchie I and Ritchie II. Plaintiffs have alleged such interaction, including fraudulent behavior by Defendants prior to, and in connection with, the formation of Ritchie I and Ritchie II. *See, e.g.*, Compl. ¶¶ 27-28, 30. Because Defendants' fraudulent scheme was directly targeted at, and directly injured,

### 2.     Plaintiffs' Injuries Are Clear And Definite

The Complaint also alleges clear and definite injury to Plaintiffs' business and property. Compl. ¶¶ 58-67. Relying on Defendants' truthfulness, Plaintiffs invested hundreds of millions of dollars to acquire assets that are worth much less, today, than they would be worth if Defendants' representations had been truthful. *E.g.*, Compl. ¶ 58 ("The market value of these policies has greatly diminished").

This injury has already occurred and, for that reason, is much different from the *potential* injuries that were alleged in the cases cited by Defendants. In *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994), the defendant's fraud allegedly induced plaintiff to extend loans that were secured by insufficient collateral. The plaintiff, however, had not yet exercised its right to foreclose in the event of a default. The Court of Appeals rejected plaintiff's argument "that it was damaged simply by being undersecured when, with respect to those loans not yet foreclosed, the actual damages it will suffer, *if any*, are yet to be determined." *Id.* at 768 (emphasis added). "[T]he fraud defendant is not liable for all losses that *may occur,* but only for those *actually suffered.*" *Id.* (emphases added). *Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003), applied the same principle. By contrast, here, as in *In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56, 59 (2d Cir. 1998), the injury to plaintiffs arises from "the difference between the value of the [asset] they were promised and the one they received." That is a concrete injury that has already occurred.

This concrete injury is sufficient to confer standing. Contrary to Defendants' implication, there is no requirement that Plaintiffs precisely measure the magnitude of this injury at the outset of litigation. *See Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260 (4th Cir. 2001).

---

these Plaintiffs (in addition to targeting and injuring Ritchie I and Ritchie II), this is *not* a case in which plaintiffs assert derivative standing, based merely on injury to a third party in which they have invested.

Indeed, Plaintiffs are not even required to *prove* (much less allege) the amount of damage with precision, once the *fact* of injury has been proved. *See, e.g.*, *J. Truett Payne & Co. v. Chrysler Motors*, 451 U.S. 557 (1981).[8]

### B.     Plaintiffs Properly Allege A Claim Under § 1962(a)

Defendants are simply wrong when they assert (at 7-8) that the Complaint does not allege investment of income or proceeds in Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") or Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II"). The Complaint alleges two such investments.

First, the Complaint alleges that "Defendants used or invested the . . . proceeds of this pattern of racketeering activity, namely insurance policies, in the acquisition of an interest in . . . Ritchie I and Ritchie II." Compl. ¶ 73. Defendants argue, citing only a dictionary definition, that Defendants' transfer of policies to Ritchie I and Ritchie II cannot be an investment, because it was a sale. That argument, however, overlooks that Defendants sought to profit in two ways by transferring the policies. They sought to profit by receiving the nominal purchase price, but they *also* sought to gain, as owners of subordinated securities (*id*. ¶ 30), by receiving a portion of the profits that Ritchie I and Ritchie II derived from these financial assets. The latter interest easily fits within the definition of "investment." *See* AMERICAN HERITAGE DICTIONARY 920 (4th ed. 2000) ("Invest: To commit (money or capital) in order to gain a financial return.").

Second, the Complaint alleges that Defendants invested income from their racketeering activities to acquire economic equity in Ritchie I and Ritchie II. Compl. ¶ 73 ("Defendants used or

---

[8] *J. Truett Payne* involved a suit filed under Section 4 of the Clayton Act, 15 U.S.C. § 15. The language of the RICO provision relevant here, 18 U.S.C. § 1964 (c), was drawn directly from Section 4 of the Clayton Act, and Congress intended its words "to have the same meaning that courts had already given them." *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

invested the [racketeering] income . . . in the acquisition of [subordinated securities] in . . . Ritchie I and Ritchie II."). The allegations that Defendants claim are absent are, in fact, plainly stated.

### C. Plaintiffs Properly Allege A Claim Under § 1962(c)

The Complaint alleges an "enterprise" consisting of some or all of the eight individual defendants, or any of the four corporate defendants. The Complaint also describes in considerable detail what each defendant did, as well as the structure and operation of the enterprise. *E.g.*, Compl. ¶¶ 11-20, 76-81. These allegations are more than sufficient to provide fair notice to Defendants and to state a claim under § 1962. *See* JED S. RAKOFF & HOWARD W. GOLDSTEIN, RICO: CIVIL AND CRIMINAL LAW AND STRATEGY (2006) § 704(1)(c) ("A number of items in the complaint, such as the enterprise . . . can be pleaded generally."); *id.* § 704(2)(a) ("[I]f appropriate, alternative enterprises should be alleged (for example, allege a legitimate entity as well as an association of individuals in fact)."). These allegations, moreover, are far more specific than the allegations in *Sony Music Entm't Inc. v. Robison*, the case on which Defendants rely (Def. Mem. 9).[9]

### D. Plaintiffs Properly Allege A Claim Under § 1962(d)

Defendants incorrectly claim that there can be no conspiracy involving the Defendants as a matter of law, because the individual defendants are owners or officers of the corporate defendants, and the corporate defendants are affiliated through common ownership. Def. Mem. 10. To Plaintiffs' knowledge, the Second Circuit has never endorsed this "intra-corporate conspiracy" defense in a § 1962(d) case, and the district court cases cited by Defendants concerned only "conspiracies" that arose when a corporation's agents performed acts in the ordinary course of business on behalf of

---

[9] The complaint in *Sony* merely alleged that the enterprises "include the various companies, societies, record clubs and other persons engaged in the distribution of sound recordings and/or the collection of monies generated from the distribution and sale of sound recordings." 2002 WL 272406, at *5 (S.D.N.Y. 2002).

11

their employer – *not* conspiracies involving distinct corporate entities. When other circuits have considered this purported defense, they have usually rejected it.[10]

And with good reason. The intra-corporate conspiracy doctrine originated in 1984, long after RICO's enactment, as an antitrust doctrine that serves substantive purposes that are irrelevant in the context of RICO cases. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984); I ABA SECTION ON ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 26-27 (6th ed. 2007) (explaining history of doctrine). As the Seventh Circuit explained:

> [T]he Sherman Act is premised, as RICO is not, on the basic distinction between concerted and independent action. Since a subsidiary and its parent theoretically have a community of interest, a conspiracy "in restraint of trade" between them poses no threat to the goals of antitrust law – protecting competition. In contrast, intracorporate conspiracies do threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers and separating racketeers from their profits.

*Ashland*, 875 F.2d at 1281 (citations omitted).[11] This Court should follow the better-reasoned, majority rule. Under that rule, Plaintiffs have properly alleged a violation of § 1962(d).

## III.    Defendants Properly Allege Fraud And Fraudulent Inducement

The Complaint alleges fraudulent misrepresentations and omissions. Both sets of allegations are sufficient, and neither is barred by the purchase agreement's integration clause.

---

[10] *See, e.g.*, *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323 (11th Cir. 2004) (parent corporation can conspire with wholly-owned subsidiary in violation of § 1962(d)); *Webster v. Omnitriton Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996), *cert. denied*, 519 U.S. 865 (1996) (same); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1989) (same). *But see Detrick v. Panalpina*, 108 F.3d 529 (4th Cir. 1997) (corporate affiliates may not conspire, but noting an exception to that rule when the parties have an independent personal stake in the conspiracy), *cert. denied*, 522 U.S. 810 (1997); *Fogie v. Thorn Americas, Inc.*, 190 F.3d 889 (8th Cir. 1999) (parent and wholly-owned subsidiary cannot conspire).

[11] In the RICO context, conspiracy is a matter of concern not because the existence of the conspiracy itself transforms a lawful objective into an unlawful objective (as under the Sherman Act), but because the concerted efforts of multiple parties to achieve an unlawful objective pose greater dangers than the efforts of an individual to achieve the same unlawful objective. That enhanced danger is not mitigated merely because the RICO conspirators are affiliated through corporate ties.

### A.    The Allegations Of Fraudulent Misrepresentations Are Sufficient

The Complaint alleges that on a series of specified dates, Coventry made a set of false representations in draft and executed agreements about its acquisition of life insurance policies, including that the acquisitions "in all material respects were in accordance with and in compliance with all applicable . . . laws, rules and regulations applicable to . . . the purchase and resale of life insurance policies." Compl. ¶¶ 34-37. The Complaint also alleges that during telephone conferences on June 26 and 27 in which specified individuals participated, Coventry, acting through its counsel, misled Plaintiffs by describing the NYAG's investigation in terms that implied that Coventry was not engaged in the very behavior being targeted by the NYAG. *Id.* ¶¶ 50-51.

### 1.    Plaintiffs Have Satisfied Rule 9(b)

"The particularity requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989) (citations omitted). A complaint, therefore (*id.*):

> must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.

The Complaint easily satisfies these requirements. Its narrative section sets forth the dates, circumstances, substance, and (in the case of the written statements), almost exact language of numerous misrepresentations. The *only* information not specified in the relevant portions of the complaint is the precise entity or individual making the representations. In the case of the emails, the narrative section of the Complaint usually refers to the speaker as "Coventry," and, in the case of the telephone call, it explains that Coventry's (unnamed) counsel was spokesman for Coventry.

All of this is for good reason. Financial negotiations frequently transpire through the exchange of documents. "Recognizing that plaintiffs charging fraud with respect to corporate utterances seldom have access, prior to . . . discovery, to information permitting identification of the particular officers, directors and employees who bear personal responsibility for the utterances in question," courts permit securities fraud plaintiffs to rely for pleading purposes on a presumption that group-published documents "are the collective work of those individuals with direct involvement in the everyday business of the company." *In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005); *see also Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (reference to a particular document satisfied Rule 9(b)'s "requirements as to identification of the time, place, and content of the alleged misrepresentations."); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987) (specification of "connection between insiders or affiliates and fraudulent representations in an offering memorandum" not required).

These principles have equal force here. The documents in question were drafted by counsel and represent, so far as Plaintiffs can determine at this stage, the collective statements of Coventry and the executives most likely responsible for those statements. Greater specificity is impossible without discovery, and permitting group pleading in this context contravenes none of the policies of Rule 9(b). Similar principles apply to statements in the telephone calls of June 26 and June 27 attributed to "counsel." It is common for attorneys to speak for their clients, but that does not immunize the client from liability for fraud, *see, e.g.*, *News Am. Marketing, Inc. v. Lepage Bakeries, Inc.*, 791 N.Y.S.2d 80, 82 (1st Dep't 2005), much less require a fraud plaintiff to identify which of the affiliates and insiders counsel actually was speaking for.

### 2.    Fraud Claims Can Be Based On Statements In Contracts

Defendants argue (at 17-18) that the fraud claims cannot be based on representations in draft and executed agreements. They are wrong. New York law has long distinguished between a failure to perform under a contract and misstatements made in connection with or as an inducement to enter into the contractual relationship. The Second Circuit has explained that merely "because acts constitute a breach of contract" does not mean "they cannot also give rise to liability in tort." *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (under New York law, misrepresentation about health of grape vines was actionable as both breach of contract and fraud).

Defendants, citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996), resort to the familiar maxim that a contract claim may not be converted into a fraud claim merely by alleging that the defendant misrepresented his intention to perform under the contract. But even assuming the maxim's correctness,[12] it does not apply. Plaintiffs have alleged that Defendants, in documents leading up to, and then in the warranties section of, the purchase agreements, misrepresented existing, external facts about, among other things, Coventry's wares and business practices. As another judge put it in practically identical circumstances:

> [P]aragraphs 96 and 97 do not claim fraud based on an alleged intention not to perform or a deliberate breach. Rather, they assert that Pfizer deliberately and knowingly misrepresented present, existing facts. That is a horse of an entirely different color. Where, as here, a party warrants and represents a present existing fact, there simply is no reason why it should not have a remedy in contract for breach of the warranty and a remedy in tort for deliberate, fraudulent misrepresentation, assuming the facts otherwise justify such relief. . . .

---

[12]  The New York Court of Appeals has consistently rejected the proposition despite its favor with lower courts. *E.g.*, *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 122 (1995); *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986) (fraud claim upheld based on misrepresentation of intent to perform under contract); *Sabo v. Delman*, 3 N.Y.2d 155, 160 (1957) ("a promise . . . made with a preconceived and undisclosed intention of not performing it, . . . constitutes a misrepresentation").

> *Bridgestone/Firestone* . . . dealt only with a claim of misrepresentation of an intention to perform and therefore does not bear on this question.

*Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613 (LAK), 2003 WL 21660339, at *1 (S.D.N.Y. 2003).

Defendants' contention (at 18) that "misrepresentations that become express terms of the contract are not collateral or extraneous to the contract," and therefore are barred by the *Bridgestone/Firestone* principles, is far too broad. Here Plaintiffs challenge misrepresentations that were made before the formation of the contracts, induced Plaintiffs to enter the contracts, and are reflected not as the "princip[al] obligation" of the contracts, *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 488 (S.D.N.Y. 1997), but, just as in *Pfizer*, *supra*, as representations and warranties within them. That is all that is needed:

> The case at bar does not involve any . . . attempt to dress up a contract claim in a fraud suit of clothes. The fraud Triangle alleges in Count I consisted of independent false representations, made before there ever was a contract between the parties, which led Triangle to enter into it. In other words, Triangle clearly alleges fraud that was extraneous to the contract . . . .

*Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979); *accord Xuchang Rihetai Human Hair Goods Co. v. Hanyu Int'l USA Inc.*, No. 00 Civ. 5585 (DLC), 2001 WL 8438, at *2 (S.D.N.Y. 2001) (misrepresentation sufficiently extraneous if it was "'made before the formation of the contract and . . . induced the plaintiff to enter the contract'" (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994))).

## B.    The Allegations Of Fraudulent Omissions Are Sufficient

The Complaint clearly alleges that Defendants concealed from Plaintiffs (1) that they were engaged in misconduct that jeopardized the value of the life insurance policies, and (2) that Defendants were under investigation for their misconduct. *See* Compl. ¶¶ 3, 39, 48-51. It is hornbook law that "a fraud cause of action may be predicated on acts of concealment where the

16

defendant had a duty to disclose." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291-92 (2d Cir. 2006).

Such a duty can arise from a fiduciary relationship, *e.g.*, *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165

(1st Dep't 2003), or "'where one party possesses superior knowledge, not readily available to the

other, and knows that the other is acting on the basis of mistaken knowledge,'" *TVT Records v.*

*Island Def Jam Music Group*, 412 F.3d 82, 91 (2d Cir. 2005); *accord Donovan v. Aeolian*, 270 N.Y.

267, 271-72 (1936).

Defendants do not contend that the Complaint fails to specify the fraudulent omissions

themselves. *See* Def. Mem. 15. As for the duty to disclose, here too the Complaint is entirely

sufficient. It explains that Coventry and Ritchie Capital "partner[ed]" with each other "for the

purpose of investing in life insurance products." Compl. ¶ 27, that three of the Ritchie Capital

plaintiffs and Coventry "jointly committed capital to," and became the ultimate stake-holders in,

Ritchie I and Ritchie II, *id*. ¶ 30, and that Ritchie Capital contributed the great majority of the

financing to the venture, whereas Coventry contributed its expertise and services. *Id.* ¶¶ 31-33. As a

result, "Plaintiffs reposed their trust and confidence in Defendants, who were in a position of

superior knowledge and information with respect to the purchase of the policies." *Id.* ¶ 38; *see also*

*id*. ¶ 66. There is nothing conclusory about these allegations.

Nor is there any serious question about whether such circumstances give rise to a duty to

disclose misconduct that threatened (and eventually damaged) the value of assets in which Ritchie

Capital invested, and a government investigation into that misconduct. First, equity investors in a

close corporation, like partners, owe one another fiduciary duties. *Brunetti v. Musallam*, 783

N.Y.S.2d 347, 349 (1st Dep't 2004) (The "'relationship between shareholders in a close corporation

. . . is akin to that between partners and imposes a high degree of fidelity and good faith.'"); *In re*

*T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931, 936 (1st Dep't 1984). Second, an arrangement in which

17

one party puts up funds for an investment, and another has responsibility for managing the investment, is literally a textbook example of a fiduciary relation. *See Meinhard v. Salmon*, 249 N.Y. 458, 462-64 (1928) ("The two were coadventurers, subject to fiduciary duties akin to those of partners . . . . The heavier weight of duty rested, however, upon Salmon. He was a coadventurer with Meinhard, but he was manager as well. . . . Joint adventurers, like copartners, owe to one another, . . . the duty of the finest loyalty.").

Third, the Complaint alleges that Coventry "possess[ed] superior knowledge" about the acquisition of the policies, and knew that Plaintiffs were "acting on the basis of mistaken knowledge." *TVT Records*, 412 F.3d at 91. There are thus a number of reasons, all alleged in specific terms, why Coventry was obligated to disclose what it instead concealed.[13]

### C.    The Integration Clause Does Not Bar The Fraud Claims

Defendants' contention that the integration clause in the purchase agreements bars the fraud claims (Def. Mem. 14, 16-17) is preposterous. To begin with, the purchase agreements on their face bind only LST, on the one hand, and Ritchie I and Ritchie II, on the other. The clause cannot possibly have, as Defendants suggest, any effect on the three plaintiffs not party to the contracts. "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Similarly, defendants are wrong to contend that the clause in question means that neither LST *nor any of its officers or affiliates* had a duty to provide information beyond what was

---

[13]   Defendants assert in cursory fashion that the fraud claims against the underlined individuals should be dismissed to the extent they are based on omissions because Plaintiffs allege a "fiduciary duty (and thus a duty to disclose) only as to the corporate defendants." Def. Mem. 15 n.18 (emphasis added). Putting aside (1) that the Complaint alleges a duty to disclose (if not actually a fiduciary duty) on the part of the individual fraud defendants, *see* ¶ 87, and (2) that the duty to disclose here arises not just from the companies' fiduciary relations but from the defendants' awareness that Plaintiffs were acting on the basis of a misapprehension, *see supra*, Defendants have the law wrong. *E.g., Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) ("'[o]fficers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it.'" (quoting *People v. Apple Health & Sports Clubs, Ltd.*, 80 N.Y.2d 803, 807 (1992))).

set forth in the agreements. "[T]he disclaimer provides no protection to those persons who were not

a party to the Agreement." *Carr v. Equistar Offshore, Ltd.*, No. 94 Civ. 5567 (DLC), 1995 WL

562178, at *7 n.3 (S.D.N.Y. 1995). In fact, the clause does not even purport to speak to, let alone to

alter, the duties of any entity or party other than LST. Borden Aff. Ex. 1 ("MPPA") § 7.12 ("[LST]

shall not have any duty or responsibility to provide the Purchaser or any of its Affiliates any

information that comes into the possession of [LST] or any of its officers . . . or Affiliates."). The

reference to "Affiliates" is plainly a reference to *information that LST was obligated to provide*

*Ritchie I and Ritchie II*, not to the duties of disclosure that LST's affiliates owe Ritchie Capital.

> Even as to LST, Defendants' argument is hopeless on the merits. It is uncontroversial that:
>
> a general merger clause is ineffective . . . to preclude parol evidence that a party was induced to enter the contract by means of fraud. Thus, even when the contract contains "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made," a party may escape liability under the contract by establishing that he was induced to enter the contract by fraud.

*Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (citations omitted) (quoting

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959)). Only when the clause "contain[s]

explicit disclaimers of the *particular representations that form the basis*" of the fraud claim will the

clause bar the claim. *Id*. at 316 (emphasis added); *accord Caiola v. Citibank, N.A.*, 295 F.3d 312,

330 (2d Cir. 2002) ("A disclaimer is generally enforceable only if it 'tracks the substance of the

alleged misrepresentations.'"); *Barash v. Pa. Terminal Real Estate Corp.*, 26 N.Y.2d 77, 86 (1970).

For instance, in the lone appellate decision cited by Defendant, the disclaimer – even if "less

extensive" (Def. Mem. 14) than the one here – included extremely specific language that directly

covered most of the alleged misrepresentations. *See Harsco Corp. v. Segui*, 91 F.3d 337, 345-47 (2d Cir. 1996).[14]

That is simply not this case. This clause, far from explicitly disclaiming "the particular representations that form of the basis of the fraud claim," does the opposite: it acknowledges that LST "has not made any representations and warranties *other than as set forth herein*," MPPA § 7.12 (emphasis added). It is, of course, statements "set forth herein" whose substance is at the heart of the claims of fraudulent representation. The rule on which Defendants seek to rely "precludes a party from alleging fraudulent inducement based on representations *contrary to the terms of the agreement*," and therefore operates to prevent "only the introduction of prior statements *that contradict the written agreement*." *Carr*, 1995 WL 562178, at *7 (emphasis added). And despite Defendants' characterization (at 13) of the integration clause as one "of unusual breadth and clarity," it is otherwise indistinguishable from what the cases say does <u>not</u> a bar a claim of fraud: "an omnibus statement that the written instrument embodies the whole agreement, [and] that no representations have been made." *Danann Realty*, 5 N.Y.2d at 320.[15]

---

[14] Of Defendants' two district-court cases (Def. Mem. 14), one says that a general integration clause will bar a fraud claim if, among other things, the claim "is inconsistent with other specific recitals in the contract." *Emergent Capital Inv. Mgm't, LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615, 622-23 (S.D.N.Y. 2001). Even if that is true (which is doubtful, given that the cases cited for that proposition do not support it, *see, e.g.*, 7 F.3d at 316), it is inapplicable here, as explained below. The other case is similarly flawed. *See United Artists Theatre Circuit v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342, 351 (E.D.N.Y. 2005).

[15] The clause (MPPA § 7.12) provides in pertinent part:

> <u>Merger and Integration.</u>    Except as specifically stated otherwise herein . . ., this Agreement sets forth the entire understanding of the parties hereto relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Agreement. . . . The Purchaser expressly acknowledges that [LST] has not made any representations and warranties other than as set forth herein.

20

## IV.    Plaintiffs Have Stated A Claim For Breach Of Fiduciary Duty

The Complaint alleges that Ritchie Capital and Coventry jointly invested in life insurance products as co-owners, in effect, of Ritchie I and Ritchie II. Compl. ¶ 30. Their status as co-investors in a corporation imposes a duty of "fidelity and good faith." *Brunetti*, 783 N.Y.S.2d at 349. Defendants' only response (at 18) is that the Purchase Agreements disclaimed a partnership or joint venture. But this disclaimer – which is directed only at <u>tax treatment</u>, *see* MPPA § 7.14 – is irrelevant. Even assuming the doubtful proposition that a mere disclaimer in a tax classification clause could affect an arrangement's legal status at the pleading stage, it would simply have no impact on the existence of a fiduciary relationship, which of course extends to more than just joint ventures and partnerships. *See Penato v. George*, 383 N.Y.S.2d 900, 904 (2d Dep't 1976) ("[E]ven if the facts alleged are insufficient to give rise to a joint venture, plaintiff has certainly set forth sufficient factual allegations to suggest the existence of a fiduciary relationship.").[16] Moreover, here, as elsewhere, Defendants overlook the fact that the clause in terms is addressed only to the relationship between LST, on the one hand, and Ritchie I and Ritchie II on the other, not to the duties that other entities under the Coventry umbrella owed Ritchie Capital.

Second, the Complaint also explains that fiduciary obligations arose by virtue of Coventry's position of superior knowledge and control with respect to the acquisition of the life insurance products. *See supra*; Compl. ¶¶ 31-33. Defendants contend (at 18) that these allegations "fail for reasons set forth above," but Defendants' only challenges to this theory are based on an asserted

---

[16]  Nor is there any need to dwell on Defendants' footnoted assertions that Plaintiffs have insufficiently alleged a partnership or joint venture. Def. Mem. 18 nn.20, 21. Defendants are correct that under New York law, a partnership is "an association of two or more persons to carry on as co-owners a business for profit," but the Complaint alleges precisely that. *See* Compl. ¶¶ 3, 27, 31. As for Defendants' suggestion that Plaintiffs have not alleged each of five elements required under New York law for a joint venture, for one thing, Defendants <u>have</u> alleged, either expressly or (as is permitted, *see Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 583-84 (1st Dep't 2003)) through implication, all of these elements. *See*

failure to comply with Rule 9(b) (which does not apply to a claim of breach of fiduciary duty) and

the integration clause (which, again, seems not so much to bar these claims as to invite them).

## V.    Plaintiffs Have Stated A Claim For Breach Of Contract[17]

Defendants challenge the allegation that LST functioned as a mere alter ego for other

members of the Coventry group, which therefore are liable for its breaches of contract. Again,

Defendants confuse the requirements of pleading and proof. The ten-factor test and Defendants'

other authorities hardly demand detailed particulars at the pleading stage. *E.g.*, *EED Holdings v.*

*Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) (veil-piercing claims

are governed by Rule 8, "which requires only 'a short and plain statement of the claim showing that

the pleader is entitled to relief.'"). The Complaint alleges in non-conclusory terms (*see* ¶ 103) that

LST was completely dominated by Coventry and had no independent existence. Moreover, rigid

adherence to corporate formalities here would be inequitable. It is reasonable to infer that Coventry

First conveyed the policies to LST before conveying them to Plaintiffs (*see* Def. Mem. 1) to protect

itself from the consequences of its fraud. Under Delaware law,[18] these allegations are sufficient.[19]

Second, Defendants' suggestion (at 21-22) that the contract claim should be dismissed

because Plaintiffs "fail[ed] to allege satisfaction of a condition precedent" is idle. As an aside,

---

Compl. ¶¶ 3, 27, 31-33. In any event, Defendants are fixating on the requirements of proof, not pleading.

[17] Defendants are probably correct that only Ritchie I and Ritchie II are proper breach of contract plaintiffs. Plaintiffs RCM, Ritchie Risk-Linked Strategies Trading, Ltd. ("Ritchie Risk-Linked"), and Walkers SPV Limited ("Walkers") did not and do not intend to prosecute the contract claim.

[18]  This issue is governed by the law of the state of incorporation, *see Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995), and LST is a Delaware limited liability company, MPPA § 3.01(i).

[19]  *Fletcher*, 68 F.3d at 1457 ("Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.'"); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) ("In order to find that a subsidiary is the alter ego or instrumentality of the parent, the Plaintiff must prove[] 'control by the parent to such a degree that the subsidiary has become its mere instrumentality.'"); *accord Upjohn Co. v. Syntro Corp.*, 1990 WL 79232, at *4 (D. Del. 1990) ("Whether the parent exercises 'complete domination' over the subsidiary is decisive.").

Plaintiffs did comply with the notice provision in question and are prepared to prove it. The only question is whether the claim should be dismissed at this stage because Plaintiffs did not *allege* it. Assuming for present purposes that the notice provision is, as Defendants say, a condition precedent,[20] Federal Rule of Civil Procedure 9(c) provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." Thus the only question is whether the failure to include a single sentence of boilerplate renders the entire contract claim insufficient at the pleading stage. It does not. Rule 9(c) does not say that the Plaintiff <u>must</u> plead satisfaction of conditions precedent. On the contrary, the failure to fulfill a condition precedent is an <u>affirmative defense</u> under New York law,[21] and therefore is for the <u>defendant</u> to plead and prove. Rule 8(c).

## VI.     There Is No Basis For Striking The Jury Demand

The motion to strike the jury demand is misplaced. As an initial matter, assuming for the moment that the jury waiver clause is enforceable, only Ritchie I and Ritchie II were even party to the agreements containing the clause. The Defendants' suggestion that RCM, Ritchie Risk-Linked, and Walkers have waived any Seventh Amendment rights is baseless. Again, "a contract cannot bind a nonparty." *Waffle House*, 534 U.S. at 294; *see also Civil v. Waterman S.S. Corp.*, 217 F.2d 94, 97

---

[20] The notice clause might more accurately be characterized as establishing a condition subsequent, *see, e.g.*, *Wood & Selick v. Ball*, 190 N.Y. 217, 223 (1907); *Kern v. Cambridge Holdings, L.L.C.*, No. 99 Civ. 3602 (MBM), 2000 WL 1300400, at *3 (S.D.N.Y. Sept. 14, 2000); WILLISTON ON CONTRACTS §§ 38:9, 38:10, which, like a condition precedent, *see infra*, is an affirmative defense that the defendant must plead and prove. *E.g.*, *Ell Dee Clothing Co. v. Marsh*, 247 N.Y. 392, 397 (1928); *Wood & Selick*, 190 N.Y. at 223.

[21] *See* N.Y. C.P.L.R. § 3015(a); *Allis-Chalmers Mfg. Co. v. Malan Constr. Corp.*, 30 N.Y.2d 225, 232-33 (1972); *1199 Housing Corp. v. Int'l Fid. Ins. Co.*, 788 N.Y.S.2d 88, 89 (1st Dep't 2005); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243 (S.D.N.Y. 1997) ("[T]he common law requirement that a contract plaintiff affirmatively allege the performance or occurrence of all conditions precedent has been abolished in New York practice and, it would appear, under Federal Rule 9(c) as well. The Rule does not in terms require the plaintiff to allege the performance or occurrence of conditions precedent; it simply permits a plaintiff to do so generally . . . ."); *Levinson Steel Co. v. Schiavone Constr. Co.*, 637 F. Supp. 164, 166 n.2 (S.D.N.Y. 1986).

(2d Cir. 1954) ("[T]he right of jury trial is personal to the litigant"); 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2321 (2d ed. 1995) ("A waiver [of the right to a jury trial] by one party cannot bind other parties. The right to a jury trial runs to every party."). In fact, when claims are asserted against multiple parties, and a jury trial has arguably been waived as to some but not all claims or defendants, courts often exercise their discretion under Rule 39(b) to submit to the jury *all* claims as to *all* parties so as to avoid choosing between depriving plaintiffs of their constitutional rights and creating duplication and confusion. *See, e.g.*, *Cataldo v. E.I. du Pont de Nemours & Co.*, 39 F.R.D. 305, 308 (S.D.N.Y. 1966); *Am. Chicle Co. v. Joint Council 16*, 18 F.R.D. 102, 102 (S.D.N.Y. 1955); *LaMarca v. Turner*, 995 F.2d 1526, 1547 (11th Cir. 1993).

In any event, the jury waiver clause is not enforceable against Ritchie I and Ritchie II. "It is elementary that the Seventh Amendment right to a jury is fundamental," and therefore "a presumption exists against its waiver." *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389 (1937)); *accord Wright v. Lewis*, 76 F.3d 57, 60 (2d Cir. 1996). Moreover, while the *right* to a jury in federal court is a matter of federal law, *Simler v. Connor*, 372 U.S. 221, 222 (1963), the *construction and effect* of a contractual waiver clause is a matter of contract, and therefore state, law.[22]

In New York, contractual jury waivers are strictly construed, *e.g.*, *Shapiro v. Marstone Distribs.*, 337 N.Y.S.2d 928, 930 (2d Dep't 1972), and are not enforced when there is a claim that the contract itself was fraudulently induced. "[O]ne who disaffirms for fraud a writing which contains a jury waiver clause should not be required to proceed to trial without a jury until there has been a determination as to the validity of the disputed instrument." *Federal-Housecraft, Inc. v.*

---

[22] *See* MPPA § 7.04(a) ("This Agreement shall in all respects be governed by and *construed in accordance with* [New York law] . . ., and the obligations, rights *and remedies* of the parties hereunder shall be determined in accordance with such laws." (emphasis added)).

*Faria*, 216 N.Y.S.2d 113, 114 (2d Dep't 1961); *accord Wells Fargo Bank v. Stargate Films, Inc.*, 795 N.Y.S.2d 18, 18-19 (1st Dep't 2005) (contractual jury waiver inapplicable to a claim of fraudulent inducement challenging the validity of the contract); *Bank of New York v. Cheng Yu Corp.*, 413 N.Y.S.2d 471, 472 (2d Dep't 1979) (same); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Burger*, No. 86 Civ. 8633 (LLS), 1991 WL 197625, at *3 (S.D.N.Y. 1991) (same).[23] So long as Ritchie I and Ritchie II's fraudulent inducement claim remains unadjudicated, there is no basis for striking their jury demand.

## CONCLUSION

Defendants' motion to dismiss and to strike jury demand should be denied.

Respectfully submitted,

ROBBINS, RUSSELL, ENGLERT, ORSECK &amp; UNTEREINER LLP

LAW OFFICES OF THOMAS P. PUCCIO

By: /s Lawrence S. Robbins
    Lawrence S. Robbins (LR-8917)
    Gary A. Orseck
    Daniel R. Walfish
    Rachel S. Li Wai Suen
1801 K Street, N.W., Suite 411
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

Thomas P. Puccio
230 Park Avenue
New York, NY 10169
Tel: (212) 883-6383
Fax: (212) 883-6388

Dated: June 12, 2007

*Counsel for Plaintiffs*

---

[23] To be sure, several cases in this District have enforced, apparently as a matter of federal common law, jury waiver clauses notwithstanding a claim of fraudulent inducement. *E.g.*, *Merrill Lynch &amp; Co. v. Allegheny Energy, Inc*., 382 F. Supp. 2d 411, 423-24 (S.D.N.Y. 2003) (but noting that "the law in this Circuit is not entirely clear."). Those cases, however, cite no appellate authority for the proposition that the *construction of a contractual waiver clause* – as opposed to the contours of the underlying Seventh Amendment right – is a matter of federal law. Nor have they explained why state law should be disregarded when (as here) the parties have chosen it to determine the construction of, and remedies under, the contract.