SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK by ELIOT SPITZER, Attorney General of the State of New York,

    Plaintiff,

–against–

COVENTRY FIRST LLC, MONTGOMERY CAPITAL, INC., THE COVENTRY GROUP, INC., and REID S. BUERGER,

    Defendants.

Index No.: 404620/06

**NOTICE OF MOTION TO DISMISS THE COMPLAINT BY DEFENDANTS THE COVENTRY GROUP, INC. AND MONTGOMERY CAPITAL, INC.**

**ORAL ARGUMENT REQUESTED**

PLEASE TAKE NOTICE, that upon the Memorandum of Law in Support of Joint Motion to Dismiss by The Coventry Group, Inc. and Montgomery Capital, Inc., the affidavits of Alan Buerger and Antonio Muniz sworn to on the 19th day of December, 2006, and all of the accompanying exhibits, The Coventry Group, Inc., and Montgomery Capital, Inc. will move this Court at 60 Centre Street, Room 130, New York, New York, on February 7, 2006 at 9:30 a.m., or as soon thereafter as counsel may be heard, for an Order pursuant to CPLR 2311(a)(7) & (8) to:

  a. Dismiss all claims against The Coventry Group, Inc. for lack of personal jurisdiction;

  b. Dismiss all claims against Montgomery Capital, Inc., for failure to allege any affirmative conduct by Montgomery Capital, relying instead exclusively on the supposition that Montgomery Capital can be held liable for the alleged conduct of its subsidiary Coventry First, LLC;

  c. For any claims that survive the motion to dismiss under (a) and (b), compel arbitration under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, and CPLR 7503(a), incorporating the motion to compel arbitration filed by their co-defendants Coventry First, LLC and Reid Buerger; and

d. Dismiss all remaining causes of action against The Coventry Group, Inc. and Montgomery Capital, Inc. for failure to state a cause of action; and

e. Grant such other and further relief as the Court may deem just and proper, including the costs and disbursements of this action.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR 2214(b), answering papers, if any, are required to be served upon the undersigned at least seven (7) days before the return date of this motion.

Dated: December 20, 2006

Respectfully submitted,

*[signature]*

Yosef Rothstein
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-2000

Brian P. Brooks
Arthur W.S. Duff
Sarah A. Goldfrank
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel: (202) 383-5300

*Attorneys for The Coventry Group, Inc., and Montgomery Capital, Inc.*

ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK by ELIOT SPITZER, Attorney General of the State of New York,

    Plaintiff,

–against–

COVENTRY FIRST LLC, MONTGOMERY CAPITAL, INC., THE COVENTRY GROUP, INC., and REID S. BUERGER,

    Defendants.

---

No.: 404620/06

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO DISMISS BY THE COVENTRY GROUP, INC. AND
<u>MONTGOMERY CAPITAL, INC.</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

I. THE COMPLAINT AGAINST THE COVENTRY GROUP SHOULD BE DISMISSED BECAUSE THE COVENTRY GROUP IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK ............................................................. 2

    A. The Court's Jurisdiction Over The Coventry Group Is Subject To Strict Statutory Limits ............................................................................................. 2

    B. Requiring The Coventry Group To Defend This Lawsuit In New York Would Violate Constitutional Due Process Principles ............................. 6

II. THE CLAIMS AGAINST MONTGOMERY CAPITAL SHOULD BE DISMISSED BECAUSE IT CANNOT BE HELD LIABLE SOLELY FOR THE ALLEGED CONDUCT OF ITS SUBSIDIARY COVENTRY FIRST ......................... 8

III. SHOULD THE COURT NOT DISMISS THE CLAIMS AGAINST THE COVENTRY GROUP AND MONTGOMERY CAPITAL FOR THRESHOLD REASONS, THOSE DEFENDANTS ARE ENTITLED TO COMPEL ARBITRATION ON THE SAME GROUNDS AS COVENTRY FIRST AND REID BUERGER ........................................................................................................ 10

IV. THE COVENTRY GROUP AND MONTGOMERY CAPITAL INCORPORATE HEREIN THE MOTION TO DISMISS FILED BY COVENTRY FIRST AND REID BUERGER ........................................................................................................ 11

CONCLUSION ............................................................................................................................... 12

## TABLE OF AUTHORITIES

Page

### Cases

*Asahi Metal Ind. v. Superior Court of California,*
  480 U.S. 102 (1988) .................................................................................................. 6, 7

*Brand v. Toraby,*
  273 A.D.2d 429, 710 N.Y.S.2d 115 (2d Dept. 2000) ................................................ 2

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ................................................................................................... 7

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,*
  271 F.3d 403 (2d Cir. 2001) ..................................................................................... 11

*Contec Corp. v. Remote Solution Co.,*
  398 F.3d 205 (2d Cir. 2005) ..................................................................................... 11

*Gartner v. Snyder,*
  607 F.2d 582 (2d. Cir. 1979) ..................................................................................... 9

*Huxley Barter Corp. v. Considar, Inc.,*
  216 A.D.2d 24, 627 N.Y.S.2d 639 (1st Dept. 1995) ................................................. 5

*Int'l Shoe Co. v. Washington Office of Unemployment Compensation & Placement,*
  326 U.S. 310 (1945) ................................................................................................... 7

*ITEL Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.,*
  909 F.2d 698 (2d Cir. 1990) ...................................................................................... 9

*JLM Indus. v. Stolt-Nielson SA,*
  387 F.3d 163 (2d Cir. 2004) ..................................................................................... 11

*Johnson v. Ward,*
  4 N.Y.3d 516, 829 N.E.2d 1201, 797 N.Y.S.2d 33 (2005) ....................................... 3

*Kreutter v. McFadden Oil Corp.,*
  71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988) ....................................... 3

*Lamarr v. Klein,*
  35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dept. 1970),
  aff'd, 30 N.Y.2d 757, 284 N.E.2d 576, 333 N.Y.S.2d 421 (1972) ........................... 2

*Moreau v. RPM, Inc.,*
  20 A.D.3d 456, 799 N.Y.S.2d 113 (2d Dept. 2005) .................................................. 4

*Morris v. NY State Dep't of Tax. & Finance,*
  82 N.Y.2d 135, 632 N.E.2d 1157, 603 N.Y.S.2d 807 (1993) ............................... 9, 10

*MS Dealer Serv. Corp. v. Franklin,*
  177 F.3d 942 (11th Cir. 1999) .................................................................................. 11

## TABLE OF AUTHORITIES
(cont'd)

Page

*Musman v. Modern Deb,*
   50 A.D.2d 761, 377 N.Y.S.2d 17 (1st Dept. 1975) ............................................................ 8

*People v. H&R Block, Inc.,*
   No. 401110/2006 (Sup. Ct. N.Y. County Nov. 29, 2006) .......................................... 1, 5, 9

*Rotoli v. Domtar, Inc.,*
   224 A.D.2d 939, 637 N.Y.S.2d 894 (4th Dept. 1996) ....................................................... 4

*Teplin v. Manafort,*
   81 A.D.2d 531, 438 N.Y.S.2d 84 (1st Dept. 1981) .......................................................... 2

*Vesligaj v. PMT Forklift Corp.,*
   213 A.D.2d 541, 624 N.Y.S.2d 54 (2d Dept. 1995) ......................................................... 5

*Walkovsky v. Carlton,*
   18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (1966) ................................................ 9

*Wm. Passalaqua Builders, Inc. v. Resnick Developers S.,*
   933 F.2d 131 (2d Cir. 1991) ......................................................................................... 9, 10

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) ......................................................................................................... 7

### Statutes

36 Okla. Stat. § 4087 ............................................................................................................ 10

CPLR 302(a) ....................................................................................................................... 2, 3

Ga. Code § 33-59-3 .............................................................................................................. 10

Or. Rev. Stat. § 744.001 ....................................................................................................... 10

Defendants The Coventry Group, Inc. ("The Coventry Group") and Montgomery Capital, Inc. ("Montgomery Capital") respectfully submit this memorandum in support of their motion pursuant to CPLR 3211(a)(7) and (8) to dismiss plaintiff's claims against them or, alternatively, to compel arbitration.

## INTRODUCTION

The complaint in this action is premised exclusively on allegations concerning the life settlement-related conduct of defendants Coventry First LLC ("Coventry First") and Reid S. Buerger. Yet the complaint also names two additional defendants – The Coventry Group, Inc. ("The Coventry Group") and Montgomery Capital, Inc. ("Montgomery Capital") – who are not alleged to have played any active part in the alleged conduct that forms the basis for the complaint. The sole asserted basis for their inclusion as defendants is that they are corporate affiliates of Coventry First. But as Justice Karla Moskowitz of this Court recently held in *People v. H&R Block, Inc.*, No. 401110/2006 (Sup. Ct. N.Y. County Nov. 29, 2006) (attached at Exh. A), that is not a sufficient basis for suing a separately incorporated entity. Here, as in *H&R Block*, The Coventry Group is incorporated and headquartered outside New York and has no direct contacts with New York; indeed, The Coventry Group is not even an affiliate of Coventry First except in the limited sense that the two shareholders of The Coventry Group are among the shareholders (but are not the sole shareholders) of Coventry First's parent company. The Attorney General's claims against The Coventry Group thus should be dismissed for lack of personal jurisdiction. (*See* Section I *infra.*)

While Montgomery Capital is subject to personal jurisdiction in New York, the complaint's utter lack of any allegation that Montgomery Capital participated in the challenged conduct requires that the Attorney General's claims against it be dismissed because a separately incorporated corporate affiliate cannot be held liable for the conduct of an affiliate company

1

except in extreme circumstances not presented here. (*See* Section II *infra*.) On this issue, too, Justice Moskowitz's recent *H&R Block* decision is directly on point.

If for any reason the Court should not agree that the Attorney General's claims against The Coventry Group and Montgomery Capital on the grounds set forth in Sections I and II herein, they join the pending motions filed by Coventry First and Reid S. Buerger to compel arbitration (*see* Section III *infra*) and to dismiss for failure to state a claim. (*See* Section IV *infra*.)

## ARGUMENT

### I. THE COMPLAINT AGAINST THE COVENTRY GROUP SHOULD BE DISMISSED BECAUSE THE COVENTRY GROUP IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.

#### A. THE COURT'S JURISDICTION OVER THE COVENTRY GROUP IS SUBJECT TO STRICT STATUTORY LIMITS.

The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the defendant. *See Brand v. Toraby*, 273 A.D.2d 429, 710 N.Y.S.2d 115 (2d Dept. 2000); *Lamarr v. Klein*, 35 A.D.2d 248, 250, 315 N.Y.S.2d 695, 697 (1st Dept. 1970), *aff'd*, 30 N.Y.2d 757, 284 N.E.2d 576, 333 N.Y.S.2d 421 (1972). The plaintiff must allege specific facts demonstrating that jurisdiction exists. *See Teplin v. Manafort*, 81 A.D.2d 531, 531, 438 N.Y.S.2d 84, 85 (1st Dept. 1981).

New York authorizes jurisdiction over a non-domiciliary only where its contacts with the state satisfy one of the enumerated grounds of the long-arm statute. CPLR 302(a). Pursuant to CPLR 302(a)(1), a New York court may exercise personal jurisdiction over a non-domiciliary who transacts business within the state or contracts to supply goods or services in the state, to the extent that the claims asserted arise from that transaction or contract. One transaction in New York is sufficient only so long as the defendant's activities in the state were purposeful and there

is a "substantial relationship" between the transaction and the asserted claim. *Johnson v. Ward*, 4 N.Y.3d 516, 519, 829 N.E.2d 1201, 1202, 797 N.Y.S.2d 33, 34 (2005); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195, 198 (1988).

Section 302(a)(2) authorizes personal jurisdiction over a non-domiciliary who commits a tortious act within the state. CPLR 302(a)(2). Section 302(a)(3) authorizes personal jurisdiction over a non-domiciliary who commits a tortious act without a state, causing injury to persons or property within the state, if it "(1) regularly does or solicits business, or engages in any other persistent court of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (2) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR 302(a)(3).

The Attorney General has not alleged that The Coventry Group has transacted any business in New York, nor could it. The Coventry Group is incorporated and has its principal place of business in Pennsylvania, not New York. (*See* Affidavit of Alan Buerger ("Buerger Aff.") ¶ 3.) Moreover, The Coventry Group is not registered to do business in New York, and has no registered agent to accept service of process in New York. (*Id.* ¶ 4.) The Coventry Group has no office, telephone number, or employees in New York. (*Id.* ¶ 5.) Indeed, The Coventry Group does not conduct any business in New York. (*Id.* ¶ 6.)

Lacking any New York contacts of its own, The Coventry Group certainly cannot be subjected to the jurisdiction of New York courts based solely on alleged acts by Coventry First. For one thing, The Coventry Group is not even a corporate affiliate of Coventry First. Coventry First is a subsidiary of Montgomery Capital. (*See* Affidavit of Antonio Muniz ("Muniz Aff.") ¶ 4.) The Coventry Group, however, is neither a direct nor an indirect subsidiary of Montgomery

Capital. (*See* Buerger Aff. ¶ 11.) Nor is there an identity of ownership between The Coventry Group and Coventry First; the sole shareholders of The Coventry Group are Alan and Constance Buerger, while the parent company of Coventry First's shareholders are Alan Buerger, Constance Buerger, Reid S. Buerger, and a trust entity. (*See id.* ¶ 12; Muniz Aff. ¶ 7.)

Even if a partial overlap in ownership could be considered "affiliation," however, the courts of this state have uniformly held that mere corporate affiliation is insufficient to establish jurisdiction over an out-of-state corporation in an action challenging the in-state acts of a separately incorporated affiliate. In *Moreau v. RPM, Inc.*, 20 A.D.3d 456, 799 N.Y.S.2d 113 (2d Dept. 2005), for example, the Second Department reversed a trial court's order refusing to dismiss claims against an out-of-state parent corporation on the ground that it had no active involvement in the alleged acts of its subsidiary. In dismissing the claims against the corporate parent, the Appellate Division noted that the parent corporation and the subsidiary defendant "were separate corporations, located in separate states"; that the parent corporation did not control the marketing or operational activities of the subsidiary; and that the parent corporation did not distribute products in New York or do any other business within the state. *See id.* at 457, 799 N.Y.S.2d at 114. So too here: The complaint admits that The Coventry Group is an entity incorporated separately from Coventry First, is devoid of any allegation that The Coventry Group controlled the life settlement operations of Coventry First, and alleges no affirmative conduct on the part of The Coventry Group whatsoever. Under *Moreau* and a long line of other authorities, it is clear that The Coventry Group cannot be subjected to personal jurisdiction in New York. *See also, e.g., Rotoli v. Domtar, Inc.*, 224 A.D.2d 939, 940-41, 637 N.Y.S.2d 894, 895-96 (4th Dept. 1996) (reinstating parent corporation's personal jurisdiction defense and stating that "[o]wnership, by itself, does not establish agency. Moreover, the fact that directors

and officers of the two entities overlap to an extent is intrinsic to the parent-subsidiary relationship and, by itself, is not determinative. Additionally, plaintiffs erroneously rely on the assertion that the parent derives up to 5% of its income from sales in New York. The record does not reveal whether such sales are direct or indirect, and the mere [indirect] sales of a manufacturer's product in New York, however substantial, has never made the foreign corporation amenable to suit in this jurisdiction.") (internal citations and quotations omitted; brackets in original); *Huxley Barter Corp. v. Considar, Inc.*, 216 A.D.2d 24, 24-25, 627 N.Y.S.2d 639, 639-40 (1st Dept. 1995) (to same effect); *cf. Vesligaj v. PMT Forklift Corp.*, 213 A.D.2d 541, 542, 624 N.Y.S.2d 54 (2d Dept. 1995) (service on New York subsidiary insufficient to confer personal jurisdiction over nonresident parent corporation).

The most recent New York decision on point makes clear why The Coventry Group may not be subjected to personal jurisdiction in New York. In *People v. H&R Block, Inc.*, the Attorney General sued H&R Block, a Michigan company, based on an alleged scheme in which retirement accounts were marketed to New York residents by direct and indirect H&R Block subsidiaries. Justice Moskowitz of this Court noted that H&R Block had no physical presence in New York, had no employees in New York, and had no registered agent for service of process in New York. She rejected the Attorney General's argument that H&R Block was "doing business in New York through unspecified subsidiaries that are acting as Block, Inc.'s agents," holding that "the mere existence of a parent-subsidiary relationship" is insufficient for one corporation to be subjected to personal jurisdiction based on the alleged acts of another. *See H&R Block*, No. 401110/2006, slip op. at 4. The rationale of *H&R Block* requires dismissal of the Attorney General's claims against The Coventry Group here.

The Attorney General's only attempt to connect The Coventry Group with the complaint allegations involves the allegation that, "[f]rom 2001 to 2005, Coventry [First] paid annual management fees roughly equaling its profits to Defendants The Coventry Group, Inc., and Montgomery Capital, Inc., . . . ." But this allegation is flatly wrong. The Coventry Group has not received management fees "roughly equaling" Coventry First's profits in any of the years 2001 through 2005. (*Id.* ¶ 7.) To the extent Coventry First paid management fees to affiliated entities, those fees were paid to Montgomery Capital, not The Coventry Group. (*Id.* ¶ 8.) Any money The Coventry Group received from Coventry First relates to rent on the Fort Washington, Pennsylvania office space for which The Coventry Group holds the lease, along with a small number of commissions and renewals on life insurance policies entirely unrelated to the life settlement business of Coventry First. (*See id.* ¶¶ 9, 10.) There is, in short, no factual basis for asserting personal jurisdiction over The Coventry Group in this action. The Attorney General's claims against The Coventry Group thus should be dismissed.

### B. REQUIRING THE COVENTRY GROUP TO DEFEND THIS LAWSUIT IN NEW YORK WOULD VIOLATE CONSTITUTIONAL DUE PROCESS PRINCIPLES.

Even if the Court were to find that The Coventry Group satisfied the requirements of the New York long-arm statute, The Coventry Group nonetheless lacks minimum contacts sufficient to satisfy constitutional due process requirements. For this additional reason, the Attorney General's claims against The Coventry Group should be dismissed for lack of personal jurisdiction.

The Due Process Clause of the Fourteenth Amendment limits the power of a court to exert personal jurisdiction over a nonresident defendant. The "constitutional touchstone" concerning personal jurisdiction and due process remains whether the defendant "purposefully established 'minimum contacts' in the forum State." *Asahi Metal Ind. v. Superior Court of*

*California*, 480 U.S. 102, 108-09 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).[1] These minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, this invoking the benefits and protections of its laws." *Asahi Metal*, 480 U.S. at 109 (citations omitted). The "purposeful availment" requirement insures that a defendant will not be haled into court solely as a result of "random, fortuitous, or attenuated contacts" with the forum in question. *Burger King*, 471 U.S. at 475. Here, as with New York's long-arm statute, plaintiff bears the burden of making a *prima facie* showing of the pertinent jurisdictional facts for the Court to exercise personal jurisdiction.

Constitutional due process principles ask whether a defendant has "purposefully directed" its activities at the forum state, whether the litigation results from alleged injuries that "arise out of or relate to" those activities, and whether the defendant thus has "fair warning" that its activities may subject it to jurisdiction in the forum state. *Burger King*, 471 U.S. at 472. Alternatively, jurisdiction is also proper if the defendant purposefully engages in significant activities within the state, creating a "substantial connection" with the forum state such that the defendant has "availed himself of the privilege of conducting business there" and has obtained "the benefits and protections" of the forum state's laws. *Id.* at 475.

As described at length above, The Coventry Group has had *no* contacts with New York, and therefore the constitutional "minimum contacts" test cannot be satisfied. The Coventry Group certainly has not "availed itself" of the privilege of doing business in New York, or

---

[1] The "minimum contacts" requirement performs two important functions: First, it protects a defendant against the burdens of litigating in a distant or inconvenient forum. Second, it ensures that the states, "through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The concept is based upon "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945).

"purposefully directed" its activities at New York, and indeed the complaint contains not a single allegation of conduct by The Coventry Group that occurred in or affected New York. For this independent reason, the Attorney General's claims against The Coventry Group must be dismissed for lack of personal jurisdiction.

## II. THE CLAIMS AGAINST MONTGOMERY CAPITAL SHOULD BE DISMISSED BECAUSE IT CANNOT BE HELD LIABLE SOLELY FOR THE ALLEGED CONDUCT OF ITS SUBSIDIARY COVENTRY FIRST.

Unlike The Coventry Group, Montgomery Capital is subject to personal jurisdiction in New York. Like The Coventry Group, however, Montgomery Capital is entitled to be dismissed from this case because the complaint alleges absolutely no affirmative conduct by Montgomery Capital, relying instead exclusively on the supposition that Montgomery Capital can be held liable for the alleged conduct of its subsidiary Coventry First. That is not the law.

New York law makes clear that one corporation cannot be held liable for the alleged conduct of another corporation solely because of an ownership or affiliate relationship. On the contrary, unless one company is the alter ego of another, its separate corporate form must be respected and the conduct of one cannot be imputed to the other. *See Musman v. Modern Deb*, 50 A.D.2d 761, 762, 377 N.Y.S.2d 17 (1st Dept. 1975). To establish liability on an alter ego theory, a plaintiff must show that "the corporation has been so dominated by an individual or another corporation . . ., and its separate identity so disregarded, that it primarily transacted the

8

dominator's business rather than its own"[2] and this domination was used "to commit a fraud or other wrong that causes the plaintiff's loss."[3]

Again, Justice Moskowitz's opinion in *H&R Block* provides a useful model. In *H&R Block*, the Attorney General sued not only H&R Block, which was not subject to personal jurisdiction in New York, but also an H&R Block affiliate that was amenable to suit in New York. While that affiliate was subject to personal jurisdiction here, Justice Moskowitz dismissed the Attorney General's claims against it because his "failure to name [the affiliate] as an actor in any of the alleged wrongdoing is fatal to [his] claims against that entity." *H&R Block*, No. 401110/2006, slip op. at 6. While noting that, on a motion to dismiss, the facts alleged are taken as true, Justice Moskowitz further noted that "when the complaint is devoid of any factual allegation of the underlying conduct for which plaintiff seeks to hold defendant liable, it is not entitled to the benefit of favorable inferences usually accorded." *Id.* (citation and quotations omitted). So too here: The Attorney General has alleged no affirmative conduct whatever on the part of Montgomery Capital, so there is no basis for subject Montgomery Capital to potential liability for the alleged conduct of Coventry First.

To be sure, the Attorney General alleges that Coventry First has paid management fees to Montgomery Capital – but all subsidiaries in all holding company structures provide financial benefits to their parent companies, so that cannot be sufficient by itself to justify vicarious liability on Montgomery Capital's part. Nor can the mere fact that Coventry First paid management fees to Montgomery Capital justify an alter ego finding that could subject

---

[2] *Wm Passalaqua Builders, Inc. v. Resnick Developers S.*, 933 F.2d 131, 138 (2d Cir. 1991) (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)); *see also ITEL Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd*, 909 F.2d 698, 703-04 (2d Cir. 1990); *Morris v. NY State Dep't of Tax. & Finance*, 82 N.Y.2d 135, 141, 632 N.E.2d 1157, 1160-61, 603 N.Y.S.2d 807, 810-11 (1993); *Walkovsky v. Carlton*, 18 N.Y.2d 414, 417-19, 223 N.E.2d 6, 8-10, 276 N.Y.S.2d 585, 587-89 (1966).

Montgomery Capital to vicarious liability. Montgomery Capital is separately incorporated from Coventry First. (*See* Muniz Aff. ¶ 3.) Montgomery Capital has fourteen separately organized direct and indirect subsidiaries. (*See id* ¶ 4.) Revenue and/or income or losses to Montgomery Capital are generated from each of these subsidiaries and from two other separately organized entities as well. (*See id.* ¶ 5.) In both 2005 and 2006, the majority of Montgomery Capital's revenue and/or income or losses was derived from sources other than Coventry First; indeed, in 2006, Coventry First has generated a loss to rather than income for Montgomery Capital. (*See id.* ¶ 6.)

If there were any question about the separate character of Coventry First and Montgomery Capital, the regulatory context supplies the answer. Coventry First operates as a life settlement provider, which requires a specific license in most states. *See, e.g.*, Ga. Code § 33-59-3; 36 Okla. Stat. § 4087; Or. Rev. Stat. § 744.001. Because Montgomery Capital is not licensed as a life settlement provider, it is actually prohibited in many states from conducting the business that is conducted by Coventry First. Thus, any suggestion that the two entities are "alter egos" is wrong as both a factual and legal matter.

Because the acts of Coventry First alleged in the complaint may not be imputed to Montgomery Capital, in short, Montgomery Capital is entitled to dismissal.

### III. SHOULD THE COURT NOT DISMISS THE CLAIMS AGAINST THE COVENTRY GROUP AND MONTGOMERY CAPITAL FOR THRESHOLD REASONS, THOSE DEFENDANTS ARE ENTITLED TO COMPEL ARBITRATION ON THE SAME GROUNDS AS COVENTRY FIRST AND REID BUERGER.

If for any reason the Court should disagree that the claims against both The Coventry Group and Montgomery Capital should be dismissed for the threshold reasons discussed above,

---

[3] *Wm Passalaqua Builders, Inc*, 933 F.2d at 138; *accord Morris*, 82 N.Y.2d at 141-42, 632 N.E.2d at 1161, 603 N.Y.S.2d at 811 ("[D]omination, standing along, is not enough; some showing of a wrongful or unjust act

The Coventry Group and Montgomery Capital hereby incorporate the motion to compel arbitration that has been filed by their co-defendants Coventry First and Reid Buerger. Although The Coventry Group and Montgomery Capital did not themselves sign the relevant arbitration agreements, they are entitled to compel arbitration because "'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement the [signatory] has signed.'" *JLM Indus. v. Stolt-Nielson SA*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)); *see also Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005) ("A useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw* . . . where we held that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." (internal quotation marks and citation marks omitted)); *see also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999).

### IV. THE COVENTRY GROUP AND MONTGOMERY CAPITAL INCORPORATE HEREIN THE MOTION TO DISMISS FILED BY COVENTRY FIRST AND REID BUERGER.

To the extent any claims asserted by the Attorney General against either The Coventry Group or Montgomery Capital survive to be adjudicated on the merits, The Coventry Group and Montgomery Capital incorporate in its entirety the motion to dismiss filed by Coventry First and Reid Buerger, and state that all claims against The Coventry Group and Montgomery Capital should be dismissed for the reasons stated therein.

---

toward plaintiff is required.")

## CONCLUSION

For the foregoing reasons, the claims against The Coventry Group and Montgomery Capital should be dismissed.

Dated: December 20, 2006

Respectfully submitted,

*[signature]*

Yosef Rothstein
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-2000

Brian P. Brooks
Arthur W.S. Duff
Sarah A. Goldfrank
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel: (202) 383-5300

*Attorneys for The Coventry Group, Inc., and Montgomery Capital, Inc.*