UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT LLC, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED, WALKERS SPV LIMITED, as trustee for Ritchie Risk-Linked Life Strategies Trust I and Ritchie Life Strategies Master Trust, and RITCHIE RISK-LINKED STRATEGIES TRADING, LTD.,<br><br>                        Plaintiffs,<br><br>          v.<br><br>COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., LST I LLC, ALAN BUERGER, CONSTANCE BUERGER, REID S. BUERGER, ANTONIO MUNIZ, ALEX SELDIN, NEAL JACOBS, EILEEN SHOVLIN, and JIM DODARO,<br><br>                        Defendants. | Civil Action No. 07CV3494 (DLC) (DCF)<br><br>(ECF)<br><br>ORAL ARGUMENT REQUESTED |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND TO STRIKE JURY DEMAND**

                                                    WILLIAMS & CONNOLLY LLP

                                                    _____/s/_____
                                                    George A. Borden (GB-7019)

                                                    *Of Counsel*
                                                    Dane H. Butswinkas
                                                    Robert M. Cary
                                                    David A. Forkner

                                                    725 Twelfth Street, N.W.
                                                    Washington, D.C. 20005
                                                    (202) 434-5000
                                                    (202) 434-5029 (facsimile)
Dated: June 19, 2007                            *Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE COVENTRY GROUP AND THE INDIVIDUAL DEFENDANTS. ................................. 1

II.  COUNTS I, II, AND III FAIL TO STATE RICO CLAIMS. ............................................ 3

    A.   RCM, RRLST, and Walkers SPV Lack Standing to Assert RICO Claims. ................................................................................................................. 3

    B.   Plaintiffs Fail To Allege Clear and Direct Injuries Proximately Caused by RICO Violations. ............................................................................. 4

    C.   Plaintiffs Fail to State a Claim Under § 1962(a). ....................................... 5

    D.   Plaintiffs Fail to State a Claim Under § 1962(c). ....................................... 5

III. COUNTS IV AND V FAIL TO STATE A FRAUD CLAIM. ........................................ 6

    A.   Plaintiffs' Fraud Allegations Do Not Satisfy Rule 9(b). ............................ 6

    B.   Plaintiffs' Fraud Claims are Expressly Barred by § 7.12 of the MPPAs. ................ 7

    C.   Plaintiffs Cannot State a Fraud Claim Based on Representations That Are Expressly Set Forth in the MPPAs. ................................................. 8

IV.  COUNT VI FAILS TO STATE A BREACH OF FIDUCIARY DUTY CLAIM. .......................................................................................................................... 8

V.   COUNT VII FAILS TO STATE A BREACH OF CONTRACT CLAIM. ........................ 9

VI.  THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND. ............................ 10

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*A.J. Simler v. Conner*, 372 U.S. 221 (1963) ...............................................................................10

*Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234 (2d Cir. 1996).................................................5

*Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991 (2006) ..............................................................4

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)..............................................................................5

*Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720 (2d Cir. 1992) ....................................................10

*Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006) ..............2

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .......................................................................1

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) .................8

*Chandradat v. Navillus Tile*, No. 03 Civ. 10093(RJH), 2004 WL 2186562
    (S.D.N.Y. Sept. 28, 2004)....................................................................................................3

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)..........................................................3

*Debussy LLC v. Deutsche Bank AG*, No. 05 Civ. 5550(SHS), 2006 WL 800956
    (S.D.N.Y. Mar. 29, 2006) ....................................................................................................8

*Drake v. Lab. Corp. of Am. Holdings*, No. 02-CV-1924 (FB) (RML), 2007 WL 776818
    (E.D.N.Y. Mar. 13, 2007) ....................................................................................................3

*Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476 (S.D.N.Y. 2005)................................................8

*Endovasc Ltd. v. J.P. Turner & Co.*, No. 02 Civ. 7313(LAP)
    2004 WL 634171 (S.D.N.Y. Mar. 30, 2004) .......................................................................7

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168
    (2d Cir. 2004).....................................................................................................................10

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996).................................................................8, 10

*In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) .....................................................7

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069
    (S.D. Ind. 2001) ...................................................................................................................4

*Int'l CableTel, Inc. v. LeGroupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997) .................. 8

*Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319 (S.D.N.Y. 1998) ...................................................... 1, 2

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992) ...................................................................... 6

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229
    (2d Cir. 1999) ............................................................................................................................ 3

*Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798 (S.D.N.Y. 1975) ................................ 3

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587
    (S.D.N.Y. 1990) ........................................................................................................................ 2

*Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402
    (S.D.N.Y. 2006) ........................................................................................................................ 2

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ........................................................ 7

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989) ........................................ 9

*Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003) ......................................................... 4

*NetJets Aviation, Inc. v. LHC Commc'ns LLC*, No. 02 CIV. 7441 (DAB)
    2006 WL 1627899 (S.D.N.Y. Jun. 12, 2006) ........................................................................ 10

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282
    (S.D.N.Y. 2000) ........................................................................................................................ 6

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) .................................................................... 5

*Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843 (2d Cir. 1986) ..................................................... 6

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285 (S.D.N.Y. 1995) .............. 10

*Rozenblat v. Sandia Corp.*, No. 05-1556, 2006 WL 678923 (Fed. Cir. Mar. 17, 2006) ................. 1

*Russell-Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252 (S.D.N.Y. 2002) ................... 10

*Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097
    (S.D.N.Y. Feb. 21, 2007) ......................................................................................................... 6

*Skylon Corp. v. Guilford Mills, Inc.*, No. 93-5581, 1997 WL 88894
    (S.D.N.Y. Mar. 3, 1997) .......................................................................................................... 6

*Sony Music Entm't, Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406
 (S.D.N.Y. Feb. 26, 2002) ..................................................................................................6

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428
 (S.D.N.Y. 2003) ................................................................................................................8

*Walther v. Maricopa Int'l. Inv. Corp.*, No. 97 CIV. 4816(HB), 1998 WL 186736
 (S.D.N.Y. Apr. 17, 1998) ..................................................................................................2

**STATE CASES**

*Benjamin Goldstein Prods., Ltd. v. Fish*, 198 A.D.2d 137 (1st Dep't 1993) ...................................8

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) ...................................................................7

*Landes v. Sullivan*, 235 A.D.2d 657 (3d Dep't 1997) ....................................................................8

*Salerno v. D'Alessandro*, 213 A.D.2d 391 (2d Dep't 1995) ..........................................................8

*Wallace ex rel. Cencom Cable Income Partners II, Inc.. v. Wood*, 752 A.2d 1175
 (Del. Ch. 1999) ................................................................................................................9

**FEDERAL STATUTES**

18 U.S.C. § 1962 ..........................................................................................................................5, 6

Fed. R. Civ. P. 9(b) .....................................................................................................................6, 7

**STATE STATUTES**

N.Y. C.P.L.R. § 302(a) ...............................................................................................................1, 2

This lawsuit is an ordinary contract dispute based on the purchase of life insurance policies ("Policies") by Ritchie I and Ritchie II. Plaintiffs' attempt to expand it to include fraud, breach of fiduciary duty, and RICO claims involving seventeen parties suffers from a host of basic pleading deficiencies. Plaintiffs cannot mask these deficiencies by glibly suggesting Defendants have engaged in an exercise of "issue spotting." Opposition ("Opp.") at 1. The issues Defendants have "spotted" are defects in personal jurisdiction, standing, and pleading that require dismissal of Plaintiffs' claims at this "point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007).

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE COVENTRY GROUP AND THE INDIVIDUAL DEFENDANTS.

Plaintiffs fail to make a prima facie showing of jurisdiction for The Coventry Group or Alan Buerger, Reid Buerger,[1] Constance Buerger, Antonio Muniz, Alex Seldin, Neal Jacobs, Eileen Shovlin, and Jim Dodaro (collectively "Individual Defendants"). As an initial matter, Plaintiffs make no allegations pertaining to The Coventry Group that would support personal jurisdiction. Plaintiffs do not allege or provide facts suggesting The Coventry Group either directly, or indirectly as an agent of Coventry First, transacted business in New York, committed a tort in New York, or committed a tort outside of New York that caused injury to a person here. Plaintiffs similarly fail to make sufficient factual allegations for the Individual Defendants under §§ 302(a)(1) and 302(a)(3)(ii).

First, Plaintiffs do not allege that the Individual Defendants personally transacted business in New York under C.P.L.R. § 302(a)(1). Opp. at 4. Rather, they claim the Individual Defendants controlled Coventry First. *Id.* To make a prima facie showing of control, however, Plaintiffs must "sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question." *Karabu Corp. v. Gitner*, 16

---

[1] Contrary to Plaintiffs' claim, a prior waiver of personal jurisdiction does not waive personal jurisdiction in future actions. *Rozenblat v. Sandia Corp.*, No. 05-1556, 2006 WL 678923, at *3 (Fed. Cir. Mar. 17, 2006).

1

F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (citations omitted).  Plaintiffs do not so allege.  Instead, they claim control "can be readily inferred from . . . [D]efendants' . . . positions at Coventry . . . ."  Opp. at 4.  But, titles or positions are, without more, insufficient to establish control.  *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006).[2]

Second, Plaintiffs fail to identify tortious acts by Individual Defendants outside of New York that caused injury to a person in New York as required by § 302(a)(3)(ii).  By its terms, § 302(a)(3)(ii) applies only to tort claims.  *Walther v. Maricopa Int'l. Inv. Corp.*, No. 97 CIV. 4816(HB), 1998 WL 186736, at *8 n.3 (S.D.N.Y. Apr. 17, 1998).  Plaintiffs do not allege tort claims against Neal Jacobs, Eileen Shovlin, Alex Seldin, or Jim Dodaro.  *See* Compl. ¶¶ 87, 92.  Plaintiffs also do not – and cannot – allege they were injured in New York.  *See* Compl. ¶¶ 7–10.  Plaintiffs are thus forced to argue that "[T]he Coventry [G]roup – through the individual defendants – purchased life insurance policies ("Policies") from approximately 300 persons in New York, at least some of whom are believed to have been defrauded."  Opp. at 5-6.

This allegation is insufficient to confer personal jurisdiction for a variety of reasons.  Plaintiffs do not indicate which if any of the Policy holders were injured, the identity of any Individual Defendants involved in the purchase of tainted Policies, whether Individual Defendants were primary actors in these transactions, *see Karabu Corp.*, 16 F. Supp. 2d at 324,

---

[2]  Even assuming all Individual Defendants were primary actors, their alleged New York contacts are insufficient to establish personal jurisdiction.  First, statements that unspecified "Coventry employees" communicated with Plaintiffs in New York by email and telephone is insufficient.  *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 388 (S.D.N.Y. 2006).  Second, a statement that Alan Buerger, Constance Buerger and Reid Buerger met with an executive of Ritchie Capital in New York on June 16, 2005 to discuss "the relationship" between Coventry and Ritchie Capital is equally insufficient.  Section 302(a)(1) requires that the Individual Defendants transacted business in New York *and* that Plaintiffs' claims arise out of that business activity.  Thus, to maintain jurisdiction against Alan Buerger, Constance Buerger and Reid Buerger, the June 16 meeting must have a "substantial or critical" connection to Plaintiffs' causes of action.  *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990).  Plaintiffs allege no facts about the substance of this meeting, let alone that their claims arise from that meeting.  *Id.* (no jurisdiction where defendants held one meeting in New York and plaintiffs alleged no facts concerning meeting's subject matter).

or whether Plaintiffs purchased policies from New York policy holders who were allegedly defrauded.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).  Additionally, Plaintiffs fail to allege the Individual Defendants derived substantial revenue from interstate commerce.  Plaintiffs claim only that as owners and executives, the Court can infer that the Individual Defendants derived substantial revenues from Coventry First's interstate activities.  Opp. at 6.  It cannot.  *See Drake v. Lab. Corp. of Am. Holdings*, No. 02-CV-1924 (FB) (RML), 2007 WL 776818, at *11 (E.D.N.Y. Mar. 13, 2007) ("revenues from interstate commerce derived by a corporation cannot be attributed to its non-domiciliary employee"); *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 805 (S.D.N.Y.) (same), *aff'd*, 527 F.2d 87 (2d Cir. 1975).

## II.     COUNTS I, II, AND III FAIL TO STATE RICO CLAIMS.

### A.     RCM, RRLST, and Walkers SPV Lack Standing to Assert RICO Claims.

Plaintiffs' theory of harm under RICO is that Defendants fraudulently originated Policies and then sold those Policies to Plaintiffs.[3]  Compl. ¶ 53; Opp. at 7.  Plaintiffs concede, however, that only Ritchie I and Ritchie II purchased Policies.  *See* Compl. ¶ 30.  Ritchie Capital Management, LLC ("RCM") and Ritchie Risk-Linked Strategies Trading, Ltd. ("RRLST") merely hold "subordinated securities" – *i.e.*, are investors – in Ritchie I and Ritchie II.  *Id.* ¶¶ 30, 62.  And Walkers SPV Ltd. ("Walkers SPV") lacks even this indirect interest in Ritchie I or Ritchie II.  These entities lack standing under RICO because they have no direct contractual or other relationship with any Defendant, and their alleged injuries are, at most, derivative of Ritchie I and Ritchie II's purported harm.  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236-37 (2d Cir. 1999); *Chandradat v. Navillus Tile*, No. 03 Civ. 10093(RJH), 2004 WL 2186562, at *5 (S.D.N.Y. Sept. 28, 2004) ("[I]t is well settled that

---

[3] Contrary to their argument, Plaintiffs do not allege in their complaint that their purported RICO injury resulted from representations made "prior to, and in connection with, the formation of Ritchie I and Ritchie II."  Opp. at 8 n.7.  *See* Compl. ¶ 74 (alleged injury under § 1962(a) is that Policies' value now uncertain and Policies worth less than expected), *id.* ¶ 80 (alleged injury under § 1962(c) is investment in Policies worth less than expected).  The only Plaintiffs to purchase (*i.e.* directly invest in) any such Policies were Ritchie I and Ritchie II.

3

shareholders . . . of a corporation lack standing to sue under RICO where their injuries derive from direct injuries to the corporation itself.") (quotation omitted).

### B. Plaintiffs Fail to Allege Clear and Direct Injuries Proximately Caused by RICO Violations.

The central question in establishing proximate causation under RICO is whether the alleged violation directly harmed Plaintiffs. *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1998 (2006). And even where proximate causation exists, the resulting injury must be "clear and definite." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (quotation omitted). Plaintiffs' allegations satisfy neither of these requirements. Indeed, their theory of harm under RICO is ***not*** that Ritchie I or Ritchie II purchased Policies that were improperly originated and thus devalued.[4] Assuming these entities had standing to assert such a claim, their damages, if any, would be limited to the affected Policies. Instead, in an effort to multiply their alleged damages, Plaintiffs argue that all Policies purchased by Ritchie I and Ritchie II – whether improperly originated or not – were devalued when Moody's Investor Services withdrew its proposed rating "on a certain number of policies," Compl. ¶ 59, "in light of the uncertainty surrounding the transaction in light of the complaint filed by the [NYAG]," *id.* ¶ 60.

Plaintiffs' theory of damages relies on an indirect injury that is entirely speculative. Ritchie I and Ritchie II do not dispute that they remain entitled to collect the Policies' full death benefits. Nor do they allege they have sold a single Policy for a loss. Moreover, Plaintiffs do not suggest how such a loss could be determined. At a minimum, their theory would require the Court to calculate the price Plaintiffs would have received for each Policy with and without Moody's rating. The direct, clear, and definite injury requirements are "meant to prevent exactly these types of intricate, uncertain inquiries from overrunning RICO litigation." *Anza*, 126 S.Ct. at 1998; *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1090-

---

[4] Indeed, Plaintiffs identify no improperly originated Policy within the Ritchie I/Ritchie II portfolios. Nor do Plaintiffs allege any original Policy owner has attempted to rescind the sale of any Policy, or that Ritchie I or Ritchie II has sold any Policy for a loss.

92 (S.D. Ind. 2001). Moreover, courts routinely hold that injury from the exposure of alleged misconduct (*e.g.*, Policy origination practices) to the market, as opposed to the misconduct itself, is insufficient to confer standing under RICO. *See Abrahams v. Young & Rubicam, Inc.* 79 F.3d 234, 239 (2d Cir. 1996) (dismissal where plaintiff injured only "by fallout from the scheme's exposure").[5]

### C. Plaintiffs Fail To State a Claim Under § 1962(a).

Plaintiffs' § 1962(a) claim alleges that the sale of Policies by LST I to Ritchie I and Ritchie II was an "investment" by LST I in these entities. Compl. ¶ 73 (describing "insurance policies" as the "income and/or proceeds of this pattern of racketeering activity"). Plaintiffs do not dispute, however, that a sale is not an investment. Opp. at 10. The § 1962(a) claim should therefore be dismissed.

Nor are Plaintiffs' alternate theories viable. <u>First</u>, they allege that as investors in Ritchie I and Ritchie II, Defendants sought to receive a share of these entities' profits. But § 1962(a) redresses only injuries from the investment of racketeering proceeds into – not the receipt of proceeds from – an enterprise. *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990). <u>Second</u>, Plaintiffs claim paragraph 73 of the Complaint says something it doesn't – namely, that Defendants invested racketeering income in Ritchie I and Ritchie II by acquiring subordinated securities therein. Opp. at 10. This theory fails. Plaintiffs' complaint identifies the proceeds of racketeering income only as the Policies, Compl. ¶ 73, not monies used to buy subordinated securities in Ritchie I and Ritchie II. Additionally, Plaintiffs do not allege they were ***injured by*** the purchase of such subordinated securities. *See Ouaknine*, 897 F.2d at 83.

### D. Plaintiffs Fail To State a Claim Under § 1962(c).

Plaintiffs do not dispute that, as defined, the "enterprise" could take over 40,000 forms

---

[5] *Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003), is consistent with this conclusion. There, the defendants obtained loans from the plaintiff by lying about their financial reliability, *id.* at 369-70, and the plaintiff was directly harmed when defendants defaulted. *Id.* at 370. There is no dispute that such a direct injury satisfies RICO's standing requirements.

for the Individual Defendants alone (8 x 7 x 6 x 5 x 4 x 3 x 2 x 1 = 40,320), each subject to different defenses. Nor do they cite a case allowing such a vague allegation. Rather, they claim the Complaint is "far more specific" than *Sony Music Entm't, Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002), in which a § 1962(c) claim was dismissed because *no* parties to the alleged enterprise were identified, *id.* at *6. Plaintiffs' argument seems to be that "something is better than nothing." Here, their allegations are not nearly enough.[6]

### III. COUNTS IV AND V FAIL TO STATE A FRAUD CLAIM.

#### A. Plaintiffs' Fraud Allegations Do Not Satisfy Rule 9(b).

Plaintiffs concede they have not identified specific individuals or entities that allegedly made or received misrepresentations. Opp. at 13 (admitting failure to specify "the precise entity or individual making the representations"). Plaintiffs do not defend their collective definition of themselves, *see* Compl. ¶¶ 28, 39, 49, 50, 51, 87, 92,[7] or their inadequately pleaded fraud claims against the Individual Defendants, Compl. ¶¶ 87, 92. Instead, they say it is necessary to engage in "group pleading" against the corporate defendants because misrepresentations were made in e-mails or by counsel. Opp. at 13-14. Plaintiffs' argument is contrary to law. E-mails have senders.[8] And Plaintiffs cannot circumvent Rule 9(b)'s particularity requirement by claiming

---

[6] Because Plaintiffs have not stated a claim under § 1962(a) or (c), they cannot state a claim under § 1962(d). *Odessey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 303 (S.D.N.Y. 2000). And as several courts in this District have confirmed, the § 1962(d) claim is also barred under the intracorporate conspiracy doctrine. *Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097, *5 (S.D.N.Y. Feb. 21, 2007); *Skylon Corp. v. Guilford Mills, Inc.*, No. 93-5581, 1997 WL 88894, *8 (S.D.N.Y. Mar. 3, 1997).

[7] By defining themselves collectively, Plaintiffs attempt to conceal that only Ritchie I and Ritchie II entered into the MPPAs or purchased Policies (the sole bases on which Plaintiffs allege any harm in their fraud claims, *see* Compl. ¶¶ 89, 94). The remaining Plaintiffs lack standing to state a fraud claim. *See, e.g., Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986).

[8] The vast majority of the e-mails identified in the complaint were sent to third parties, not any Plaintiff. Plaintiffs cannot allege fraud based on purported misrepresentations to third parties. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 n.8 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994).

counsel made misrepresentations on behalf of the corporate defendants. *Endovasc Ltd. v. J.P. Turner & Co.*, No. 02 Civ. 7313(LAP), 2004 WL 634171, at *6 (S.D.N.Y. Mar. 30, 2004) ("[i]nsofar as the Complaint implies that [an individual] spoke on behalf of . . . nine defendants . . . the reader is left to guess on which entity's or entities' behalf he was speaking"), *aff'd in pertinent part* 169 Fed. Appx. 655, 656 (2d Cir. 2006). Indeed, the "group pleading" doctrine applies, if at all, only where a corporation issues a writing to the public at large – such as "statements in prospectuses, registration statements, annual reports, press releases" – without identifying the individual responsible for its issuance. *In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) (quotation omitted). Here, by contrast, Plaintiffs allege fraud based on misrepresentations made directly to them in the context of an arm's length relationship. Compl. ¶¶ 87, 92. Rule 9(b) prohibits "group pleading" under these circumstances. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

   **B.**  **Plaintiffs' Fraud Claims Are Expressly Barred by § 7.12 of the MPPAs.**

  Plaintiffs' fraud claims are also barred by § 7.12 of the MPPAs. This provision is not a boilerplate, "'omnibus statement that the written instrument embodies the whole agreement, [and] that no representations have been made.'" Opp. at 20 (quoting *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959)). Rather, it provides that the Purchaser "independently and without reliance upon the Seller [other than Seller's representations, warranties and covenants in the Transaction Documents] . . . ***has made and will continue . . . to make its own appraisal of and investigation into the business, operations, property, prospects, financial and other conditions and creditworthiness of the Seller, and its own decision to enter into this Agreement and to take, or omit to take, action under any Transaction Document***." MPPAs § 7.12 (emphasis added). This specific language precludes Plaintiffs' claims that Defendants fraudulently induced Ritchie I and Ritchie II to enter into the MPPAs or to purchase Policies.[9]

---

[9] It is true that § 7.12 binds the parties to the MPPAs (although it does relieve LST of any obligation to provide information to any affiliate of Ritchie I and Ritchie II). This does not mean, however, that Ritchie I and Ritchie II's affiliates, none of which bought a single Policy,

7

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 460-61 (S.D.N.Y. 2003); *Landes v. Sullivan*, 235 A.D.2d 657, 658-59 (3d Dep't 1997); *Salerno v. D'Alessandro*, 213 A.D.2d 391, 392 (2d Dep't 1995). In addition, § 7.12 separately bars Plaintiffs' claims for failure to provide information not expressly called for by the MPPAs. Plaintiffs cannot avoid the consequences of these limitations, especially since they resulted from arm's length negotiations between sophisticated parties. *Harsco Corp. v. Segui*, 91 F.3d 337, 343 (2d Cir. 1996); *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 491-92 (S.D.N.Y. 2005); *Benjamin Goldstein Prods., Ltd. v. Fish*, 198 A.D.2d 137, 137 (1st Dep't 1993).

### C. Plaintiffs Cannot State a Fraud Claim Based on Representations That Are Expressly Set Forth in the MPPAs.

Plaintiffs concede that "[i]t is, of course, statements 'set forth [in the MPPAs]' whose substance is at the heart of the claims of fraudulent representation." Opp. at 20. They contend that fraud claims based on contractual representations (and pre-contractual representations later incorporated into the MPPAs) are acceptable because the representations were of existing fact. Opp. at 15-16. The law, however, is contrary. Absent special damages (which Plaintiffs do not allege) or a separate legal duty (which is expressly negated by § 7.12 of the MPPAs), Plaintiffs' fraud claims cannot be based on representations – even of existing fact – that are expressly incorporated into the MPPAs. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *Int'l CableTel, Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 488-89 (S.D.N.Y. 1997) (principle that present statements of fact actionable in fraud yields to "overwhelming majority view that a false promise, ***whenever made***, cannot give rise to a fraud claim where that promise is directly incorporated into a written contract") (emphasis added).

### IV. COUNT VI FAILS TO STATE A BREACH OF FIDUCIARY DUTY CLAIM.

Because RCM, RRLST, and Walkers SPV were, at best, investors in Ritchie I and Ritchie II, they cannot state a breach of fiduciary duty claim. *Debussy LLC v. Deutsche Bank AG*, No.

---

have standing to sue for the failure to provide information that the MPPAs say LST I has no duty to provide.

8

05 Civ. 5550(SHS), 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006) (shareholders may not bring breach of fiduciary duty claim predicated on injury to corporation).  Additionally, LST I did not owe Ritchie I or Ritchie II a fiduciary duty.  The MPPAs unmistakably disclaim any partnership or joint venturer relationship between these entities.[10]  *See* MPPAs § 7.14.  And Plaintiffs' allegation that LST I had a duty to disclose information based on its superior knowledge of life settlements is barred by § 7.12 of the MPPAs, which eliminates any obligation to provide information to any Defendant.

## V.     COUNT VII FAILS TO STATE A BREACH OF CONTRACT CLAIM.

Plaintiffs admit "that only Ritchie I and Ritchie II are proper breach of contract plaintiffs."  Opp. 22 n.17.  This claim should be dismissed as to RCM, RRLST, and Walkers SPV.

Nor do Plaintiffs allege facts sufficient to establish that LST I "functioned as a mere alter ego" for Coventry First, Coventry Group, and Montgomery Capital.  Opp. at 22.  Under Delaware law, the act of LST I is not regarded as the act of another corporation merely because LST I is a wholly owned subsidiary, because of common management, or because LST I is part of a single economic venture.  *See* Compl. ¶ 103; Opp. at 22 n.18 (advocating Delaware law).  Rather, to pierce LST I's corporate veil, Plaintiffs must allege facts demonstrating Coventry First, Coventry Group, or Montgomery Capital completely dominated and controlled LST I "to the point that [LST I] no longer ha[s] legal or independent significance of [its] own."  *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (quotation omitted).  Plaintiffs make no such allegations as to Coventry Group or Montgomery Capital and their allegations against Coventry First are both conclusory and insufficient as described in the MTD.  Piercing the corporate veil also requires not only a showing of complete domination, but also a showing of fraud or injustice in "the use of the corporate form."  *Mobil*

---

[10] The fact that this language falls within a section of the contracts entitled "Tax Classification" is irrelevant.  See MPPAs § 7.13 ("The headings herein are for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof.").

9

*Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989) ("underlying cause of action does not supply the necessary fraud or injustice"); *NetJets Aviation, Inc. v. LHC Commc'ns LLC*, No. 02 CIV. 7441 (DAB), 2006 WL 1627899, at *6 (S.D.N.Y. Jun. 12, 2006). Plaintiffs do not so allege.

Ritchie I and Ritchie II likewise fail to state a breach of contract claim. Indeed, they concede their failure to allege compliance with the MPPAs' written notice requirement (§ 3.05). Opp. at 23. Whether this provision is a condition precedent or condition subsequent, Plaintiffs must allege its satisfaction.[11] A viable breach of contract claim requires Plaintiffs to allege their "adequate performance of the contract." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp.*, 91 F.3d at 348). At a minimum, this requires Plaintiffs to allege they performed their contractual obligations. *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 291 (S.D.N.Y. 1995). Here, Plaintiffs do not allege generally that they performed their contractual duties, much less that they satisfied the notice provision.

## VI.  THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND.

Plaintiffs' argument that RCM, RRLST and Walkers SPV are not bound by the jury waiver is irrelevant because, as explained above, these entities lack standing to assert any claims. Moreover, Plaintiffs cannot void the MPPAs' jury waiver clause by asserting the underlying contract was induced by fraud. *Russell-Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252, 257-58 (S.D.N.Y. 2002). Rather, they must allege the ***waiver provision itself*** was procured through fraud. *Id.* at 257.[12] Plaintiffs make no such allegation.

---

[11] Plaintiffs' characterization of the notice clause as a condition subsequent is not supported by law. *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727 (2d Cir. 1992) (written notice for breach of contract is condition precedent).

[12] Contrary to Plaintiffs' assertion, "[w]hether the [jury] right has been waived is governed by federal law." *Russell-Stanley*, 327 F. Supp. 2d at 257 (citation omitted); *see also A.J. Simler v. Conner*, 372 U.S. 221, 222 (1963) ("Only through a holding that the jury trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved.").

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on this 19th day of June, 2007, I caused true and correct copies of Defendants' Reply in Support of Motion to Dismiss and to Strike Jury Demand to be served electronically via the Court's ECF system on the following counsel:

Lawrence S. Robbins, Esq.
Gary A. Orseck, Esq.
Daniel R. Walfish, Esq.
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500
(202) 775-4510 (telecopy)
lrobbins@robbinsrussell.com
gorseck@robbinsrussell.com
dwalfish@robbinsrussell.com

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169
(212) 883-6383
(212) 883-6388 (telecopy)
tpuccio@lotpp.com

*Attorneys for Plaintiffs*

                                                                                            _____/s/_____
                                                                                            George A. Borden