UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT, L.L.C., RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED, WALKERS SPV LIMITED, as trustee for Ritchie Risk-Linked Life Strategies Trust I and Ritchie Life Strategies Master Trust, and RITCHIE RISK-LINKED STRATEGIES TRADING, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., LST I LLC, ALAN BUERGER, CONSTANCE BUERGER, REID S. BUERGER, ANTONIO MUNIZ, ALEX SELDIN, NEAL JACOBS, EILEEN SHOVLIN, and JIM DODARO, <br><br> Defendants | 07 Civ. 3494 (DLC) <br><br> ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION**

Lawrence S. Robbins, (LR-8917)
Gary A. Orseck
Rachel S. Li Wai Suen
Daniel R. Walfish
ROBBINS, RUSSELL, ENGLERT,
  ORSECK & UNTEREINER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20006
Tel: (202)775-4500
Fax: (202)775-4510

Thomas P. Puccio
LAW OFFICES OF THOMAS P. PUCCIO
230 Park Avenue
New York, NY 10169
Tel:  (212) 883-6383
Fax:  (212) 883-6388

Dated:  August 1, 2007               *Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

I.    Breach of Fiduciary Duty: The Opinion Failed To Recognize That The Contractual Disclaimer Of A Partnership Relation Cannot Possibly Bind *Non-Contracting* Parties And, In Any Event, Did Not Constitute A General Disclaimer Of A Fiduciary Relationship In This Case................................ 2

II.    Fraud: The Opinion Failed To Consider Claims By And Against Non-Contracting Parties And Overlooked Misrepresentations "Collateral" To The Contract ........................................................................................................ 4

III.    Fraudulent Inducement: The Opinion Misapplied Controlling Law And Misapprehended The Claims By and Against Entities Not Party To the MPPAs ..................................................................................................... 8

IV.    Personal Jurisdiction: The Court Overlooked That Montgomery Capital, Inc. Is Subject To Personal Jurisdiction On Any Claim, A Point Implicitly Conceded by Defendants .................................................... 10

CONCLUSION.......................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bagdon v. Phil. & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916) ........................................... 10

*Bd. of Managers of 411 E. 53rd St. Condo. v. Dylan Carpet, Inc.*, 582 N.Y.S.2d 1022 (1st Dep't 1992) ........................................................................................................ 6-7

*Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291 (1st Dep't 2002) ............................................................................................................................... 4

*Brunetti v. Musallam*, 783 N.Y.S.2d 347 (1st Dep't 2004) ............................................................ 3

*Cassata v. Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552 (2nd Dep't 1998) ............................. 4

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ........................................... 2

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ........................................................................ 9

*First Bank of the Americas v. Motor Car Funding, Inc.,* 690 N.Y.S.2d 17 (1st Dep't 1999) ................................................................................................................................... 6

*Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F. Supp. 2d 419 (S.D.N.Y. 2004) ................................................................................................................................... 7

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ........................................................ 5

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ...................................................................... 8

*In re T.J. Ronan Paint Corp.,* 469 N.Y.S.2d 931 (1st Dep't 1984) ................................................ 3

*M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652 (S.D.N.Y. 2006) ...................................... 10

*Meinhard v. Salmon*, 249 N.Y. 458 (1928) ................................................................................... 3

*Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993) .................................................. 8

*Monahan v. New York City Dep't. of Corrections,* 214 F.3d 275 (2d Cir. 2000) .......................... 2

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004) ................................................ 2

*Pross v. Katz*, 784 F.2d 455 (2d Cir. 1986) ............................................................................... 1-2

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ........................................................... 1

*Spodek v. Neiss*, 756 N.Y.S.2d 903 (2nd Dep't 2003) .................................................................. 4

*Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175 (2d Cir. 2001) ......................................... 5

*Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir. 1979) ............................... 7

**STATUTES AND LEGISLATIVE HISTORY**

Fed. R. Civ. P. 15(a) ..................................................................................................................... 2

Fed. R. Civ. P. 59(e) ..................................................................................................................... 1

Local Civ. R. 6.3 ........................................................................................................................... 1

Plaintiffs submit this Memorandum of Law in support of its motion for reconsideration of the Court's July 17, 2007 Opinion and Order ("Opinion").

### INTRODUCTION

On July 17, 2007, this Court issued its Opinion granting Defendants' motion to dismiss the Complaint as to all counts, and granting leave to amend the Complaint as to the breach of contract claim on behalf of two plaintiffs and the Section 1962(c) and 1962(d) claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of all Plaintiffs. We respectfully ask that the Court reconsider its dismissal of the fraud and fiduciary duty claims without leave to amend, as well as its ruling that personal jurisdiction over Defendant Montgomery Capital, Inc. has not been established in relation to the remaining RICO claims.

A motion for reconsideration under Fed. R. Civ. P. 59(e) should be granted if "the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Local Civ. R. 6.3. We believe that the Opinion misapplied several precedents and overlooked key factual allegations (which, in retrospect, could have been more artfully drafted) in the Complaint. As a result, the Opinion also did not make sufficient distinctions among the Plaintiffs and Defendants; that is, it did not recognize that *some* Plaintiffs have claims that others may lack, while some Defendants lack defenses that others may have.[1]

We believe that, with repleading, allegations that the Court found incurably deficient are remediable. "The deficiency in the complaint arguably involves a failure to plead fraud with particularity . . . , a circumstance in which leave to amend is usually afforded." *Pross v. Katz*,

---

[1] The First Amended Complaint, served July 31, 2007, contains only the contract and RICO claims, with the cures called for by the Court. Plaintiffs nevertheless have made a number of other amendments in an effort to highlight and clarify some of the matters that the Court may have overlooked in the Complaint, and in particular the fact that the non-contracting plaintiffs jointly invested with Coventry entities in the securities of the contracting plaintiffs.

1

784 F.2d 455, 459 (2d Cir. 1986); *see also Monahan v. New York City Dep't. of Corrections,* 214 F.3d 275, 283 (2d Cir. 2000) (absent evidence of undue delay, futility, bad faith on the part of the movant, or "undue prejudice" to the opposing party, leave to amend should be freely granted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); Fed. R. Civ. P. 15(a) ("leave [to amend a pleading] shall be freely given when justice so requires"). Although we believe that the Court erred with regard to its ruling on all of the claims in the Complaint,[2] we respectfully ask the Court to reconsider the dismissal of Counts Four, Five, and Six, and, if necessary, to permit repleading on those claims.

**I.     Breach of Fiduciary Duty: The Opinion Failed To Recognize That The Contractual Disclaimer Of A Partnership Relation Cannot Possibly Bind *Non-Contracting* Parties And, In Any Event, Did Not Constitute A General Disclaimer Of A Fiduciary Relationship In This Case**

The Court dismissed the claim of breach of fiduciary duty (Count Six of the Complaint) based on a clause in the Master Policy Purchase Agreements ("MPPAs") that provides that "[n]othing contained in this Agreement is intended to . . . create the relationship of . . . a partnership or joint venture." Opinion at 15. We submit that this ruling overlooks several essential points.

The basic nature of the arrangement here – as Plaintiffs have endeavored to make clearer in the First Amended Complaint (*e.g.*, First. Am. Compl. ¶¶ 4-8) – is that Ritchie Capital Management, L.L.C. ("RCM"), as adviser and fiduciary to (as well as holder of beneficial interests in) Ritchie Risk-Linked Life Strategies Trust I, Ritchie Life Strategies Master Trust, and Ritchie Risk-Linked Strategies Trading, Ltd. (all three entities collectively, the "Investing

---

[2] In light of the rule that parties are not required to replead a dismissed claim in order to preserve the right to appeal the dismissal (*see P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004)), we have not repleaded the counts dismissed by the Court.

Plaintiffs"), caused the Investing Plaintiffs to become, together with Coventry, the de facto equity shareholders in Plaintiffs Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") (collectively, the "Contracting Plaintiffs").

Ritchie I and Ritchie II in turn each entered into a contract – an MPPA – with Coventry's special-purpose subsidiary LST I LLC ("LST") for the purchase of life insurance policies. These MPPAs were only two out of a large number of pertinent agreements governing the whole arrangement. Thus, accepting for present purposes that, in the MPPAs, Ritchie I and Ritchie II disclaimed a partnership or joint venture relation with LST, (1) *the non-contracting Plaintiffs did no such thing*, and (2) *the disclaimer does not apply to the non-contracting Defendants*.

The Court states that the Investing Plaintiffs "have pleaded no adequate bases for establishment of a fiduciary relationship absent one between the defendants and Ritchie I and II." Opinion at 15. But the Complaint alleges several grounds for a fiduciary relationship between, on the one hand, the Investing Plaintiffs and, on the other, LST's parents and affiliates, including: (a) the joint equity-like investment in Ritchie I and Ritchie II, and (b) the fact that Plaintiffs (specifically, the Investing Plaintiffs) provided the funding for an investment arrangement that Defendants in practice had the responsibility for managing. *See* Compl. ¶¶ 30-33. Plaintiffs cited several cases in its brief in opposition (*see* Pl. Mem. in Opp'n ("Pl. Mem.") 17-18, 21-22) demonstrating that these arrangements are textbook bases for a fiduciary relationship (*see Brunetti v. Musallam*, 783 N.Y.S.2d 347, 349 (1st Dep't 2004) (relationship between investors in a close corporation "imposes a high degree of fidelity"); *In re T.J. Ronan Paint Corp.,* 469 N.Y.S.2d 931, 936 (1st Dep't 1984) (same); *Meinhard v. Salmon*, 249 N.Y. 458, 462-64 (1928) (arrangement where one party provides the funding and the other manages the investment is

3

"subject to fiduciary duties akin to those of partners")); there is also extensive additional authority supporting a finding of a fiduciary relationship in the circumstances presented by this case. *E.g., Spodek v. Neiss*, 756 N.Y.S.2d 903 (2nd Dep't 2003) (finding a fiduciary relationship between shareholders in a close corporation); *Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291, 294 (1st Dep't 2002) (co-venturer managing the investment owed fiduciary duty to other co-venturer); *Cassata v. Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552, 553 (2nd Dep't 1998) ("The shareholders of a close corporation owe each other a duty to act in good faith"). The Opinion overlooks these factual allegations and legal authorities.

Similarly, the Opinion does not address the fact that the disclaimer does not apply to any of the non-contracting *Defendants*. The Complaint fairly alleges – although the First Amended Complaint strives to make it clearer (*see* First Am. Compl. ¶¶ 2, 6-8) – that LST's parents were equity stake-holders in Ritchie I and Ritchie II and therefore owed the Investing Plaintiffs fiduciary duties. By the same token, the Coventry entities' role as de facto decision-makers with respect to the funds contributed by Plaintiffs also grounds a fiduciary relationship.

Even beyond these points, the disclaimer provision at issue says only that the parties have not formed a "partnership" or "joint venture." As Plaintiffs' Memorandum in Opposition explained (at 21), a fiduciary relation may be formed even when a "partnership" or "joint venture" is not. The allegations described in the preceding paragraphs allege circumstances that would create a fiduciary relation even without a partnership or a joint venture.

  **II.** **Fraud: The Opinion Failed To Consider Claims By And Against Non-Contracting Parties And Overlooked Misrepresentations "Collateral" To The Contracts**

The Court dismissed the fraud claims (Count Four of the Complaint) based on the theory that "a fraud claim will not lie if it arises 'out of the same facts as plaintiff's breach of contract

4

claim.'" Opinion at 17 (quoting *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)).[3] Citing this principle, the Court held that Plaintiffs did not identify a "separate legal duty" in support of the fraud claim, nor had Plaintiffs pointed to representations "collateral" to the contract. *Id.* at 18. Concluding that the fraud claim "appears to rest entirely on the subjects covered in the representations and warranties" contained in the two Master Policy Purchase Agreements ("MPPAs"), the Court ruled that any misrepresentations or omissions relating to the contracts must be pleaded as a breach of contract claim. *Id.* This reasoning overlooks several key points.

First, the Opinion misreads *Telecom International*, which did not make the sweeping pronouncement that under New York law, a contract claim and a fraud claim can never cover the same facts or subject matter. Rather, in that case the Second Circuit stated the well-settled (but here inapplicable) principle that an ordinary contract claim cannot be converted into a fraud claim merely by alleging that at the time of contracting, the defendant misrepresented its intention to perform the contract. *See Telecom Int'l,* 280 F.3d at 196.  That rule is not so broad that an act that grounds a breach of contract claim can never be the basis for a claim sounding in tort. *E.g.*, *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (misrepresentation was actionable as both breach of contract and fraud); *see also* Pl. Mem. 15-16.

Second, the Opinion overlooks the fact that the fraud claim is asserted by a number of *non-contracting* Plaintiffs against a number of *non-contracting* Defendants. Even if the Court's reading of *Telecom International* were correct – and we believe that it is not – that would have

---

[3] The Court also stated that Counts Four and Five suffered from Rule 9(b) pleading defects. Opinion at 17, 19. Plaintiffs respectfully disagree but seek by this motion leave to replead Counts Four and Five of the original Complaint to cure any Rule 9(b) deficiencies. At the same time, Plaintiffs have included in the First Amended Complaint certain amendments designed to alleviate potential Rule 9(b) difficulties.

5

nothing to do with the Investing Plaintiffs' fraud claims against the Coventry entities, or with the Contracting Plaintiffs' fraud claims against Coventry First LLC (the main operating vehicle for Defendants' dealings with Plaintiffs) and the other non-contracting entities. The Opinion makes no mention of these claims.

Third, the Opinion overlooks the fact that Plaintiffs *have* identified a separate legal duty to disclose. As the opposition brief explained, the Complaint alleged that the Coventry entities owed Plaintiffs a duty of disclosure. Pl. Mem. 16-18. That duty arose either from the fiduciary relation created by the joint investment, partnership, or joint venture, or simply from the fact that the Coventry entities and their officers possessed superior knowledge even as the Plaintiffs were acting on the basis of mistaken information. Compl. ¶¶ 30-33, 38, 66, 87-89.

Fourth, Plaintiffs *have* alleged misrepresentations and omissions apart from and "collateral" to the main duty to perform under the contracts. To begin with, the Complaint alleges misrepresentations made *after* the execution of the purchase agreements relating to the New York Attorney General's investigation during a June 2006 telephone call. *Id.* ¶¶ 50-51. In an amended pleading, Plaintiffs could give – indeed, have strived in the First Amended Complaint to give (*see* First Am. Compl. ¶¶ 70-79) – greater specificity to these allegations. If not for the June 2006 misrepresentations, Plaintiffs would have terminated the arrangement with Defendants, and thereby saved significant sums of money. If permitted to replead, Plaintiffs could explain that the statements in the June 2006 call constituted misrepresentations of present facts collateral to the contract. *See First Bank of the Americas v. Motor Car Funding, Inc.,* 690 N.Y.S.2d 17, 21 (1st Dep't 1999) (fraud claim predicated on post-contract representation was not duplicative of breach of contract claim) (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954 (1986)); *Bd. of Managers of 411 E. 53rd St. Condo. v. Dylan Carpet,*

6

*Inc.*, 582 N.Y.S.2d 1022, 1023 (1st Dep't 1992) (false statement of fact made after execution of contract was collateral to the contract).

Additionally, in documents sent to the Plaintiffs, including the Investing Plaintiffs, *before* the formation and execution of the purchase agreements, the non-contracting Defendants misrepresented existing, external facts about their products and business practices. *See* Compl. ¶¶ 27-33, 35-39, 87. These misrepresentations are clearly "collateral" to the MPPAs; the misrepresentations do not form any part of the primary performance obligation under the MPPAs, and they were made prior to the existence of the MPPAs. *See, e.g.*, *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979) (the fraud was collateral or extraneous to the contract because it consisted of "independent false representations, made before there ever was a contract between the parties, which led [plaintiff] to enter into it"); *see also* Pl. Mem. 15-16.

Finally, Plaintiffs are prepared to prove that at least some of them *did* suffer special damages. If Plaintiffs are granted leave to replead the fraud (and fraudulent inducement) claims, they could properly allege the special damages that RCM and the Investing – as opposed to Contracting – Plaintiffs in particular suffered. Plaintiffs will explain that the costs that RCM and the Investing Plaintiffs incurred in connection with setting up the Ritchie IV arrangement and the securitization transaction, *see* First. Am. Compl. ¶ 92; *see also* Compl. ¶ 64, are out-of-pocket expenses that are unrecoverable as damages for breach of contract and were a direct and proximate result of Defendants' fraudulent conduct. *See Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F. Supp. 2d 419, 430 (S.D.N.Y. 2004) (special damages flow "directly and proximately from the fraud, rather than from the breach of contract").

### III. Fraudulent Inducement: The Opinion Misapplied Controlling Law And Misapprehended The Claims By and Against Entities Not Party To the MPPAs

The essence of the fraud-in-the-inducement claim is that, had Plaintiffs known that the relevant representations were false, they never would have contracted with Defendants. The Court dismissed the fraudulent inducement claim (Count Five of the Complaint) on the strength of the integration clause in the MPPAs. Opinion at 19-20. In this connection, the Court also ruled that:

> [s]ince the acts which the plaintiffs allege the fraud induced were the entry into the two agreements that Ritchie I and II executed, the [integration clause] . . . is sufficient to bind not just the signatories but the other plaintiffs.

*Id.* at 20. This ruling overlooks three points.

First, as the Opinion recognizes (at 19), under New York law, an integration clause will bar a claim of fraudulent inducement only in the special case that the clause "contain[s] *explicit disclaimers of the particular representations that form the basis*" of the fraud claim. *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993) (emphasis added) (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959)); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996) ("where a party specifically disclaims reliance upon a particular representation in a contract, that party cannot . . . claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon").

What the Opinion overlooks is that the integration clause in this case does not disclaim reliance on the representations that Plaintiffs have put at issue. To the contrary, it does the exact opposite: the clause states that LST I "has not made any representations or warranties *other than as set forth herein*." MPPA § 7.12 (emphasis added). Plaintiffs have alleged that they were relying on (among other things) the very representations and warranties "set forth herein." As Plaintiffs have never disclaimed reliance on the representations in the contract, the integration

8

clause cannot possibly bar them from claiming fraudulent inducement based on those very representations.[4]

Second, the dismissal rests on the premise that the MPPAs were the only contracts alleged by Plaintiffs to be fraudulently induced. *See* Opinion at 20. But that is not true. The Complaint alleges (at ¶ 94) that the induced acts include the execution of *multiple* agreements between Plaintiffs and Defendants, not just the MPPAs, as well as the abortive Ritchie IV arrangement (*see id*. ¶ 64). These allegations could be made even clearer in an amended pleading. Accordingly, the Court's conclusion that the integration clause bars the fraudulent inducement claims by the Investing Plaintiffs, or any of the Plaintiffs' claims against a Defendant other than LST, is mistaken.

Third, a contract cannot bind a non-party (*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)), and the Investing Plaintiffs, as well as most of the Coventry Defendants, are *not* signatories to the MPPAs. Therefore, these parties cannot possibly be affected one way or the other by the integration clause in the MPPAs. The integration clause is addressed only to information being furnished by LST to Ritchie I and Ritchie II. The Complaint, by contrast, is fairly read to allege that Defendants other than LST (the contracting Defendant) are responsible for misrepresentations and omissions, and not just to Ritchie I and Ritchie II, but also to the Investing Plaintiffs.[5]

---

[4] The Court also held as to the fraudulent inducement count that the alleged misrepresentations and omissions are "not extraneous to the contract" and should be pleaded as a breach of contract claim. Opinion at 21. This conclusion is incorrect for the reasons expressed above (at pp. 6-7) in relation to the fraud claim: The Complaint alleges misstatements and omissions that are plainly collateral or extraneous to the contracts. Many of Defendants' misrepresentations took place well before the formation of the MPPAs and induced the Plaintiffs to enter into the MPPAs.

[5] Plaintiffs have attempted to make this point even clearer in the First Amended Complaint. *See* First Am. Compl. ¶¶ 53-57.

### IV. Personal Jurisdiction: The Court Overlooked That Montgomery Capital, Inc. Is Subject To Personal Jurisdiction On Any Claim, A Point Implicitly Conceded by Defendants

The Opinion states that personal jurisdiction as to Montgomery Capital, Inc. "has not sufficiently been pled . . . as to the remaining RICO claims." Opinion at 26. The Opinion does not indicate precisely what is deficient about the relevant allegations and evidentiary submissions. In any event, we submit that the Court has overlooked at least one point so incontestable that even Defendants have ceased to challenge it.

It is a completely settled matter of civil procedure that a corporation licensed to do business in New York is subject to personal jurisdiction in New York on *any* claim. Pl. Mem. 3 & n.3 (citing, *inter alia*, *Bagdon v. Phil. & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916), and *M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652, 658 (S.D.N.Y. 2006) ("New York courts are in general agreement that a foreign corporation submits itself to the jurisdiction of New York courts when it registers to do business within this state under [N.Y. Bus. Corp. L.] § 1304")). Montgomery Capital, Inc. is such a corporation, which is undoubtedly why in the New York Attorney General action, Montgomery Capital expressly conceded that it is subject to personal jurisdiction in New York. *See id*. at 2-3. Indeed, after Plaintiffs' opposition brief called all of these points to the attention of Defendants' counsel (who did not represent Montgomery Capital in the Attorney General action), their reply brief quite pointedly *refrained from contesting* the Court's jurisdiction over Montgomery Capital. *See* Def. Reply Br. 1.

**CONCLUSION**

For the foregoing reasons, the Court should reconsider its Opinion and Order of July 17, 2007, insofar as it dismisses Counts Four, Five, and Six of the Complaint without leave to amend and rules that personal jurisdiction has not been established over Defendant Montgomery Capital, Inc.

Respectfully submitted,

LAW OFFICES OF THOMAS P. PUCCIO

Thomas P. Puccio (TPP-8403)
230 Park Avenue
New York, NY 10169
Tel: (212) 883-6383
Fax: (212) 883-6388


ROBBINS, RUSSELL, ENGLERT,
   ORSECK & UNTEREINER LLP

By:   /s/ Lawrence S. Robbins
Lawrence S. Robbins (LR-8917)
Gary A. Orseck
Rachel S. Li Wai Suen
Daniel R. Walfish
1801 K Street, N.W. Suite 411L
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

*Counsel for Plaintiffs*

Dated: August 1, 2007