UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT LLC, ) | |
| RITCHIE RISK-LINKED STRATEGIES ) | |
| TRADING (IRELAND), LIMITED, RITCHIE ) | |
| RISK-LINKED STRATEGIES TRADING ) | |
| (IRELAND) II, LIMITED, WALKERS SPV ) | |
| LIMITED, as trustee for Ritchie Risk-Linked ) | Civil Action No. 07CV3494 (DLC) (DCF) |
| Life Strategies Trust I and Ritchie Life Strategies ) | |
| Master Trust, and RITCHIE RISK-LINKED ) | (ECF) |
| STRATEGIES TRADING, LTD., ) | |

                              Plaintiffs,        )
                                                 )
               v.                                )
                                                 )
COVENTRY FIRST LLC, THE COVENTRY                 )
GROUP, INC., MONTGOMERY CAPITAL, INC., )
LST I LLC, ALAN BUERGER, CONSTANCE               )
BUERGER, REID S. BUERGER, ANTONIO                )
MUNIZ, ALEX SELDIN, NEAL JACOBS,                 )
EILEEN SHOVLIN, and JIM DODARO,                  )
                                                 )
                              Defendants.        )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE THEIR PROPOSED AMENDED COMPLAINT**

WILLIAMS & CONNOLLY LLP

_____/s/_____
        Katherine G. Lindsey (0902)
        Dane H. Butswinkas
        Robert M. Cary
        David A. Forkner
        Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)
*Attorneys for Defendants*

Dated:  September 21, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

BACKGROUND ........................................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.    THE COURT PROPERLY DISMISSED PLAINTIFFS' BREACH OF
      FIDUCIARY DUTY CLAIM ............................................................................. 2

      A.   The Court Did Not Overlook Controlling Decisions or Data ................... 2

      B.   Plaintiffs' New Allegations and Authorities Also Fail ........................... 6

II.   THE COURT PROPERLY DISMISSED PLALINTIFFS' FRAUD CLAIM ........ 10

      A.   The Court Did Not Misread *Telecom Int'l Am. Ltd. v. AT&T
           Corp.* ..................................................................................................... 10

      B.   The Court Properly Rejected the Non-Contracting Plaintiffs' Fraud Claims ........ 11

      C.   The Court Did Not Disregard Plaintiffs' Claims of a Separate Legal Duty ........ 12

      D.   The Court Properly Rejected Plaintiffs' Collateral Statements Argument ........ 14

      E.   The Court Did Not Overlook Plaintiffs' Claim for Special Damages ........ 16

           1.   Plaintiffs Did Not Incur Special Damages Related to Ritchie IV ........ 17

           2.   Plaintiffs Did Not Incur Special Damages in Connection With the
                Securitization ................................................................................. 20

III.  THE COURT PROPERLLY DISMISSED PLAINTIFFS' FRAUDULENT
      INDUCEMENT CLAIM .................................................................................. 22

IV.   THE COURT PROPERLY CONCLUDED PLAINTIFFS FAILED TO PLEAD
      PERSONAL JURISDICTION OVER MONTGOMERY CAPITAL .................. 24

CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ades v. Deloitte & Touche*, 843 F. Supp. 888 (S.D.N.Y. 1994) .................................................7

*Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375 (S.D.N.Y. 1998) ........17

*Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, No. 07 Civ. 891(DLC), 2007 WL 2412257
(S.D.N.Y. Aug. 27, 2007) ...........................................................................................9

*Argonaut P'ship L.P. v. Bankers Tr. Co. Ltd.*, No. 96 Civ. 1970(LLS), 2001 WL 585519
(S.D.N.Y. May 30, 2001).............................................................................................6

*Barrett v. U.S. Banknote Corp.*, No. 91 Civ. 7420(RPP), 1992 WL 232055
(S.D.N.Y. Sept. 2, 1992)........................................................................................18, 21

*Bates Adver. USA, Inc. v. McGregor*, 282 F. Supp. 2d 209 (S.D.N.Y. 2003) ...............................14

*Big East Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788 (S.D.N.Y. 2006) ...................11

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996)...........5, 21

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005)...............................................6

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ...............................................................18

*Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731 (S.D.N.Y. 2000).......................9

*Crigger v. Fahnestock & Co.*, 443 F.3d 230 (2d Cir. 2006).........................................................13

*DIRECTV Group, Inc. v. Darlene Inv., LLC*, No. 05 Civ. 5819 (WHP)
2006 WL 2773024 (S.D.N.Y. Sept. 27, 2006)....................................................................3

*Donoghue v. Casual Male Retail Group, Inc.*, 427 F. Supp. 2d 350 (S.D.N.Y. 2006) ...................7

*Draskicevic v. Entersport Mgmt., Inc.*, No. 03 Civ. 8447(DLC), 2004 WL 1575393
(S.D.N.Y. Jul 15, 2004) .........................................................................................10, 17

*Dunkin' Donuts Inc. v. Got-A-Lot-A-Dough, Inc.*, No. 04CV4100(DRH)(MLO),
2006 WL 3725340 (E.D.N.Y. Dec. 18, 2006) ..................................................................10

*DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) ...................................................13

*Employers Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815 (2d Cir. 1996)........................................19

*In re Enron Corp.*, No. 04 Civ. 1367(NRB), 2005 WL 356985 (S.D.N.Y. Feb 15, 2005) ...........14

*Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195 (2d Cir. 2006)..................................................19

*Feinberg v. Katz*, No. 99 Civ. 0045(CSH), 2005 WL 2990633 (S.D.N.Y. Nov. 7, 2005)...........11

*Four Finger Art Factory, Inc. v. Dinicola*, No. 99 Civ. 1259(JGK), 2000 WL 145466 (S.D.N.Y. Feb. 9, 2000) ................................................................................14

*Fried v. Kelly*, No. 06 Civ. 1528(HB), 2007 WL 1821697 (S.D.N.Y. Jun 26, 2007) ...................8

*Frota v. Prudential-Bache Secs., Inc.*, 639 F. Supp. 1186 (S.D.N.Y. 1986) ..................................2

*Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558(GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) .........................................................4

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ........................................10

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ........................................................21

*In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613 (S.D.N.Y. 2000) ............................1

*Hogan v. Wal-Mart Stores, Inc.*, 167 F.3d 781 (2d Cir. 1999) ....................................................18

*Holloway v. King*, 361 F. Supp. 2d 351 (S.D.N.Y. 2005) ................................................................3

*Info. Superhighway, Inc. v. Talk Am., Inc.*, No. 03 Civ. 1995(RWS), 2003 WL 22705132 (S.D.N.Y. Nov. 17, 2003) .........................................................7

*Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997) ......14, 15, 22

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ........................................................................19

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698 (2d Cir. 1990) ..............8

*John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, No. 99 Civ. 9905(SHS), 2001 WL 910405 (S.D.N.Y. Aug. 13, 2001) ................................................14

*Jones v. Niagara Frontier Trans. Auth.*, 836 F.2d 731 (2d Cir. 1987) .........................................11

*Kamen v. A.T. & T. Co.*, 791 F.2d 1006 (2d Cir. 1986) ........................................................25

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004) ......................7

*Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557 (S.D.N.Y. 1996), *aff'd*, 1998 WL 406036 (2d Cir. 1998) ........................................................................14

*Korry v. Int'l Tel. & Tel. Corp.*, 444 F. Supp. 193 (S.D.N.Y. 1978) ......................................18, 21

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ................................................12, 13

*Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993) ......................................................................11

*Meadowlands Inv., LLC v. CIBC World Mkts. Corp.*, No. 04 Civ. 7328 (DAB), 2005 WL 2347856 (S.D.N.Y. Sept. 22, 2005) .................................................23

*In re Mid-Island Hosp., Inc.*, 276 F.3d 123 (2d Cir. 2002) ...........................................................3

*Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341 (S.D.N.Y. 2002) ..........................................1

*Muller Boat Works, Inc. v. Unnamed 52' House Barge*, 464 F. Supp. 2d 127
(E.D.N.Y. 2006) ..................................................................................................20

*Nat'l Petrochem. Co. v. M/T Stolf Sheaf*, 930 F.2d 240 (2d Cir. 1991)............................................1

*Nat'l Union Fire Ins. Co. v. Stroh Cos., Inc.*, 265 F.3d 97 (2d Cir. 2001) ................................7, 16

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) ................................................................12

*Project Hope v. M/V IBN SINA*, NO. 97-CV-3853, 2001 WL 1875854
(S.D.N.Y. Jul. 17, 2001) ...................................................................................20

*Ritchie Capital Mgmt., LLC v. Coventry First LLC*, No. 07 Civ. 3494, 2007 WL 2044656
(S.D.N.Y. July 17, 2007) ............................................................................. *passim*

*Ross v. FSG PrivatAir, Inc.*, No. 03 Civ. 7292(NRB), 2004 WL 1837366
(S.D.N.Y. Aug. 17, 2004) ...................................................................................9

*In re Rubin Brothers Footwear, Inc.*, 119 B.R. 416 (S.D.N.Y. 1990)..........................................13

*Rush v. Oppenheimer & Co.,* 681 F. Supp. 1045 (S.D.N.Y. 1988) ...............................................9

*San Francisco v. Tutor-Saliba Corp.*, No. C 02-5286 CW, 2005 WL 645389
(N.D. Cal. Mar. 17, 2005) .................................................................................18

*Secs. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000) ...........................13

*Seinfeld v. WorldCom, Inc.*, No. 06 Civ. 13274(DLC), 2007 WL 1573870
(S.D.N.Y. May 31, 2007) ...................................................................................1

*Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998) .....................................................2, 9, 11

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ...........................................1, 11, 12, 25

*Sommer v. PMEC Assoc.*, No. 88 Civ. 2537, 1992 WL 196748 (S.D.N.Y. Aug. 5, 1992) .....18, 21

*Spang Indus., Ft. Pitt Bridge Div. v. Aetna Cas. & Sur. Co.*, 512 F.2d 365 (2d Cir. 1975)..........20

*Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) .........................................10

*Toussaint v. JJ Weiser & Co.*, No. 04 Civ. 2592(MBM), 2005 WL 356834
(S.D.N.Y. Feb. 13, 2005).....................................................................................2

*Trell v. Am. Ass'n of Advancement of Sci.*, No. 04-CV-0030ESR, 2007 WL 1500497
(W.D.N.Y. May 21, 2007) .................................................................................10

*Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979) ............................14

*U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc.*, No. 04 Civ. 1233(DLC),
2005 WL 2230454 (S.D.N.Y. Sept. 12, 2005)..................................................12

*United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999)..............................................................4

*United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) ...........................................................4

iv

*Valjean Mfg., Inc. v. Michael Werdiger, Inc.*, No. 03 Civ. 6185(HB), 2004 WL 1948752 (S.D.N.Y. Sep 2, 2004) ........................................................................................................10

*Warner Theatre Assoc. Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 Civ. 4914(SS), 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) .......................................................................14

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ..................................................................3

*Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224 (2d Cir. 2000)..........................................19

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 210 (2d Cir. 2002) .....................20

*WestRM-West Risk Markets, Ltd. v. XL Reinsurance Am., Inc.*, No. 02 Civ. 7344(MGC), 2006 WL 2034627 (S.D.N.Y. July 19, 2006) .......................................................................13

*Young v. Dep't of Justice*, 882 F.2d 633 (2d Cir. 1989) ..............................................................21

*Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 Civ. 7778(DLC), 2004 WL 1328215 (S.D.N.Y. Jun. 15, 2004) .....................................................................................................25

## STATE CASES

*Abrams v. Donati*, 489 N.E.2d 751 (N.Y. 1985) ........................................................................11

*Alpert v. 28 Williams St. Corp.*, 473 N.E.2d 19 (N.Y. 1984) .......................................................4

*Bd. of Mgrs. of 411 E. 53rd St. Condo. v. Dylan Carpet, Inc.*, 582 N.Y.S.2d 1022 (N.Y. App. Div. 1992) .......................................................................................................15

*Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291 (N.Y. App. Div. 2002) .........................................................................................................7

*Brunetti v. Musallam*, 783 N.Y.S.2d 347 (N.Y. App. Div. 2004) .............................................3, 6

*Cassata v. Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552 (N.Y. App. Div. 1998) ...................7

*Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003 (N.Y. 1986)................15

*First Bank of the Americas v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17 (N.Y. App. Div. 1999) .......................................................................................................14

*Friedman v. Anderson*, 803 N.Y.S.2d 514 (N.Y. App. Div. 2005) ...............................................3

*Glenn v. Hoteltron Sys., Inc.*, 547 N.E.2d 71 (N.Y. 1989) .......................................................11

*Hart v. Gen. Motors Corp.*, 517 N.Y.S.2d 490 (N.Y. App. Div. 1987) ........................................4

*Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370 (N.Y. 1996) ....................................17

*Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928) ....................................................................3, 6

*Northeast Gen. Corp. v. Wellington Adver., Inc.*, 624 N.E.2d 129 (N.Y. 1993) ...........................3

*Sager Spuck Statewide Supply Co. v. Meyer*, 710 N.Y.S.2d 429 (N.Y. App. Div. 2000) ..............7

*Spodek v. Neiss*, 756 N.Y.S.2d 903 (N.Y. App. Div. 2003) ............................................................7

*In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931 (N.Y. App. Div. 1984) ..................................3, 6

## FEDERAL STATUTES

18 U.S.C. § 1962(c) .........................................................................................................................1

18 U.S.C. § 1962(d) .........................................................................................................................1

18 U.S.C. § 1965(a) .......................................................................................................................25

Fed. R. Civ. P. 6(b) .......................................................................................................................19

Fed. R. Civ. P. 9(b) ...................................................................................................................2, 14

Fed. R. Civ. P. 9(g) ..................................................................................................................17, 18

Fed. Civ. P. 59(e) ................................................................................................................. *passim*

Fed. R. Civ. P. 60(b) ...................................................................................................................1, 19

Fed. R. Evid. 902 ..........................................................................................................................24

## BACKGROUND

"This is essentially a breach of contract claim governed by two complex agreements negotiated between sophisticated parties." *Ritchie Capital Mgmt., LLC v. Coventry First LLC*, No. 07 Civ. 3494(DLC), 2007 WL 2044656, at *1 (S.D.N.Y. July 17, 2007) ("*Ritchie*"). Accordingly, the Court dismissed with prejudice Plaintiffs' claims for fraud, fraudulent inducement, and breach of fiduciary duty. Plaintiffs now seek reconsideration of that dismissal and leave to replead these claims as Counts III, IV, and V of their proposed second amended complaint ("SAC").[1] Plaintiffs, however, did not request leave to amend their Complaint prior to entry of the Court's Order. Thus, Plaintiffs can revive their claims only by satisfying the exacting standards of Federal Rule of Civil Procedure Rule 59(e). Plaintiffs fall far short of that standard, and may not rely on Rule 59(e) to relitigate issues resolved against them.

## STANDARD OF REVIEW

Once a claim has been dismissed, it cannot be repleaded until the dismissal "is set aside or vacated pursuant to Fed. R .Civ. P. 59(e) or 60(b)." *Nat'l Petrochem. Co. v. M/T Stolf Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991). Reconsideration pursuant to Rule 59(e) and Local Civil Rule 6.3 is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Montanile v. Nat'l Broad, Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Indeed, the standard for such a motion "is strict, and 'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Seinfeld v. WorldCom, Inc.*, No. 06 Civ. 13274(DLC), 2007 WL 1573870, at *1 (S.D.N.Y. May 31, 2007) (Cote, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (other quotation omitted). A party seeking reconsideration

---

[1] The Cour previously granted Plaintiffs leave to replead their §§ 1962(c) and (d) RICO claims. *Ritchie*, 2007 WL 2044656, at *10. Consistent with the Court' opinion, Defendants address these claims (repleaded as Counts I and II of the SAC) in a separate motion to dismiss.

bears this heavy burden because such motions may not "present[] the case under new theories, secur[e] a rehearing on the merits, or otherwise tak[e] a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## ARGUMENT

## I.    THE COURT PROPERLY DISMISSED PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM.

The Court did not miss controlling law or facts when it dismissed Plaintiffs' breach of fiduciary duty claim. Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") contracted with LST I, LLC ("LST") to purchase life settlement policies ("Policies"). *Ritchie*, 2007 WL 2044656, at *1. The controlling Master Policy Purchase Agreements ("MPPAs") contain express disclaimers stating: "Nothing contained in this Agreement is intended to . . . create . . . a partnership or joint venture." *Id.* at **5-6. The Court held that, *inter alia*, the express disclaimer precluded Ritchie I and II from establishing a fiduciary duty between the contracting parties. *Id.* at *6. The Court also concluded that the non-contracting Plaintiffs "pleaded no adequate bases for establishment of a fiduciary relationship absent one between defendants and Ritchie I and II." *Id.*[2]

### A.    The Court Did Not Overlook Controlling Decisions or Data.

The non-contracting Plaintiffs disagree with the Court's conclusion and claim Defendants owed them a fiduciary duty as *de facto* equity shareholders in Ritchie I and II. *See* Revised Mem. in Supp. of Plaintiffs' Mot. for Reconsideration ("Rev. Mem.") at 2-3 (describing a "joint equity-like investment in Ritchie I and Ritchie II," and claiming "Plaintiffs . . . provided the funding for an investment arrangement that Defendants in practice had the responsibility for managing."). Plaintiffs' argument largely duplicates one previously made to the Court. In their

---

[2] The breach of fiduciary duty claim must be pleaded with particularity because it is based in fraud. *See Toussaint v. JJ Weiser & Co.*, No. 04 CIV. 2592 (MBM), 2005 WL 356834, at *8 (S.D.N.Y. Feb. 13, 2005) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty – statutory, common law, tort, contractual, or fiduciary.") (quoting *Frota v. Prudential-Bache Secs., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986)); *compare* Compl. ¶ 100 (Breach of Fiduciary Duty) *with* ¶ 87 (Fraud).

Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp."), Plaintiffs argued (1) "Ritchie Capital" and the corporate defendants "jointly invested in life insurance products as co-owners, in effect, of Ritchie I and Ritchie II," s*ee* Opp. at 21; and (2) "Their status as co-investors in a corporation imposes a duty of 'fidelity and good faith." *Id.* To support that argument, Plaintiffs cited the following decisions: *Brunetti v. Musallam*, 783 N.Y.S.2d 347 (1st Dep't 2004); *In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931 (N.Y. App. Div. 1984); and *Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928). *See* Opp. at 17-18. The Court properly considered these authorities and rejected Plaintiffs' arguments. It should do so again.

First, Plaintiffs' conclusory allegations that they and Defendants were "partner[s], joint-venturer[s], and co-venturer[s]" *see* Complaint ("Compl.") ¶ 31, are insufficient to transform an ordinary arms length commercial relationship into a fiduciary one. *See DIRECTV Group, Inc. v. Darlene Inv., LLC,* No. 05 Civ. 5819 (WHP), 2006 WL 2773024, at *5 (S.D.N.Y. Sept. 27, 2006); *Holloway v. King*, 361 F. Supp. 2d 351, 361 (S.D.N.Y. 2005); *Friedman v. Anderson*, 803 N.Y.S.2d 514, 516 (N.Y. App. Div. 2005) ("A conventional business relationship, without more, does not become a fiduciary relationship by mere allegation").

Second, Plaintiffs' factual allegations fail to establish a fiduciary relationship. Where, as here, "parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002); *see also Weinberger v. Kendrick*, 698 F.2d 61, 79 n.16 (2d Cir. 1982) (fact that relationship was product of "arm's-length bargaining" constitutes "serious obstacle[ ]" to extension of fiduciary principles); *Northeast Gen. Corp. v. Wellington Adver., Inc.*, 624 N.E.2d 129, 131 (N.Y. 1993) (unless parties "create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship. . . .").

Plaintiffs do not allege extraordinary circumstances that would give rise to fiduciary duties. To the contrary, they concede that only Ritchie I and II purchased Policies, and that these purchases were made pursuant to the MPPAs. Compl. ¶ 30; SAC ¶¶ 6, 45. Not only do the

MPPAs disavow any partnership or joint venture relationship, *Ritchie*, 2007 WL 2044656, at

**5-6, but any alleged fiduciary duty is negated by those contracts' expansive integration clause,

*id.* at *2.  *See also* Exhibits ("Exs.") 1-4 § 7.12 (Plaintiffs warranting that "independently and

without reliance upon the Seller . . . [they] made . . . [their] own appraisal of and investigation

into the business, operations, property, prospects, financial, and other conditions and

creditworthiness of the Seller, and [their] own decision to enter into th[e] Agreement[s] and to

take, or omit to take, action under any Transaction Document.").  By their terms, the MPPAs

reflect only an arms-length business transaction between sophisticated parties, not a fiduciary

relationship.

　　　　Nonetheless, Plaintiffs insist that even if Defendants do not owe fiduciary duties to

Ritchie I and II, Defendants owe the non-contracting Plaintiffs fiduciary obligations because they

"jointly committed capital to, and became owners of subordinated securities in Ritchie I and

Ritchie II. . . ."  Compl. ¶ 30; SAC ¶ 45.  Fiduciary duties, however, do not arise from mere stock

ownership.  *See Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558(GEL),

2006 WL 2212776, at *18 (S.D.N.Y. Aug. 3, 2006) (stockholders are not in trust relation with

each other or the corporation merely by virtue of owning stock) (citations omitted).[3]  Instead,

Plaintiffs must set forth factual allegations establishing Defendants' "*de facto* control and

dominance" of Ritchie I and II.  *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (en

banc); *see also United States v. Brennan*, 183 F.3d 139, 150 (2d Cir. 1999) (elements of

domination or control are of particular importance where sophisticated parties deal in arms-

length transactions); *Alpert v. 28 Williams St. Corp.*, 473 N.E.2d 19, 25 (N.Y. 1984) ("Because

the power to manage the affairs of a corporation is vested in the directors and majority

shareholders, they are cast in the fiduciary role as 'guardians of the corporate welfare.'").

---

[3] Nor may the non-contracting Plaintiffs, which were (at best) investors in Ritchie I and II, bring
a breach of fiduciary duty claim based on injury to these entities.  *Hart v. Gen. Motors Corp.*,
517 N.Y.S.2d 490, 492 n.2 (N.Y. App. Div. 1987) (shareholders may not bring breach of
fiduciary duty claim predicated on injury to corporation).

The Complaint does not allege Defendants dominated or controlled Ritchie I or II.  *See, e.g.,* Compl. ¶ 31; SAC ¶¶ 8, 46 ("Investing Plaintiffs contributed the great majority of financing. . . .").  To the contrary, it describes a standard arm's length commercial relationship.  Each non-contracting Plaintiff and corporate Defendant is a separately-incorporated, sophisticated entity.  *See* Compl. ¶¶ 7-10; SAC ¶¶ 21-24.  The transactions at issue involve the Policies valued in excess of $700 million.  Compl. ¶¶ 4, 101.  And, the relationship among the parties is controlled by a series of lengthy contracts negotiated by counsel for both sides.  *See id.* ¶¶ 27, 35, 37; Rev. Mem. at 3 ("MPPAs were only two out of a large number of pertinent agreements governing the whole relationship.").  Pursuant to those contracts, Defendants allegedly were responsible for acquiring Policies for Ritchie I and II that met certain contractually-defined criteria "that the parties had agreed on."  Compl. ¶ 32; SAC ¶ 45.  These contractual criteria obligated LST I to sell Policies to Ritchie I and II that, "in the aggregate [would] not cause [Ritchie I or II] to have purchased [Policies] as to which . . . more than 15% of the Portfolio were issued by any one Issuing Insurance Company that is rated at or below 'A+' by Standard & Poor's, or more than 20% of the Portfolio were issued by any one Issuing Insurance Company that is rated above 'A+' by Standard & Poor's. . . ."  Exs. 1, 3, 4 § 3.03(d), & Annex A.  Such obligations do not create a fiduciary relationship.  *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (dismissing claim where whatever trust was placed had solely to do with carrying out contractual obligations).

Alternatively, Plaintiffs claim a fiduciary relationship arose from Coventry First's obligation to service Policies purchased by Ritchie I and II.  Compl. ¶ 33; SAC ¶ 48.  Plaintiffs describe these obligations as "tracking premium payments and claims for death benefits from the issuing life insurance companies, determining when a claim for a death benefit could be made and placing the claim, monitoring the health of the insureds, and maintaining current information in the issuing life insurance companies."  Compl. ¶ 33; SAC ¶ 48.[4]  Such actions are unrelated to

---

[4] The SAC cites – for the first time –  to the Servicing and Monitoring Agreements ("Monitoring Agreements") between Coventry First and Ritchie I and II.  SAC ¶ 48.  But, those agreements

Plaintiffs' alleged harm. *See* Compl. ¶ 62 (claiming "Defendants' misconduct . . . interfered with the salability and value of the life insurance policies" purchased by Ritchie I and II). Nor do they provide Defendants with control or dominance over Ritchie I and II. They establish nothing more than an ordinary commercial relationship between two sophisticated entities involved in the secondary market for life insurance. *See* Compl. ¶¶ 21-22; SAC ¶¶ 36, 37; *see Argonaut P'ship L.P. v. Bankers Tr. Co. Ltd.*, No. 96 Civ. 1970(LLS), 00 Civ. 4244(LLS), 2001 WL 585519, at *3 (S.D.N.Y. May 30, 2001) (servicing agreement a conventional business relationship).[5]

Third, none of the authorities cited in Plaintiffs' Opposition support a fiduciary duty in this case. Rather, those cases stand for the unremarkable proposition that majority shareholders, officers, directors and others who control or dominate a closely held corporation owe fiduciary obligations to minority shareholders or others under their dominance or control. *See Brunetti*, 783 N.Y.S.2d at 349 (plaintiff sought relief against defendants in their capacities as officers and directors of a close corporation); *In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d at 936 (suit involved 50% shareholders in a closely held corporation, who were sole directors and only officers of the company); *Meinhard*, 164 N.E. at 546 (sole manager in a co-adventure leasing arrangement had fiduciary duty). Plaintiffs do not (and cannot) allege that Ritchie I and II – two Irish hedge funds listed on the Irish Stock Exchange – are close corporations or that Defendants have a controlling interest therein.

### B.    Plaintiffs' New Allegations and Authorities Also Fail.

Plaintiffs now seek to repair this claim with new factual allegations, *see* Rev. Mem. at 3

---

expressly state that nothing contained therein "shall be deemed or construed by the parties . . . or by any third person to create the relationship of principal and agent (including dependent agent) or of a partnership or joint venture." Exs. 5, 6 § 8.15 (ellipses in original). The Monitoring Agreements– like other documents referenced in (but not attached to) Plaintiffs' complaint – may be considered by the Court in evaluating Plaintiffs' Second Amended Complaint. *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

[5] The Monitoring Agreements provide that "the Servicer shall service the Conveyed Life Settlement Policies in accordance with its customary practices and procedures, using procedures effected in a manner substantially identical to those it would use in servicing Life Settlement Policies for other third parties and those held for its own account. . . ." Exs. 5, 6 § 3.11.

(citing to SAC ¶¶ 4-8, 45-53), and "additional authorit[ies]" from New York's intermediate appellate courts. *Id.* at 4 (citing *Spodek v. Neiss*, 756 N.Y.S.2d 903 (N.Y. App. Div. 2003); *Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291 (N.Y. App. Div. 2002); *Cassata v. Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552 (N.Y. App. Div. 1998)).[6] For procedural and substantive reasons, the Court should reject Plaintiffs' claim.

Procedurally, on a motion for reconsideration, Plaintiffs cannot point to new factual allegations or legal authorities. *See Nat'l Union Fire Ins. Co. v. Stroh Cos., Inc.,* 265 F.3d 97, 115 (2d Cir. 2001) (party may not advance new facts, issues, or arguments not previously presented to the Court); *Donoghue v. Casual Male Retail Group, Inc.*, 427 F. Supp. 2d 350, 354 (S.D.N.Y. 2006) ("[C]ontrolling decisions or factual matters presented by a litigant for reconsideration must have been put before the court in the underlying motion."). Moreover, for purposes of Rule 59(e) and Local Civil Rule 6.3, controlling authority does not include decisions from New York's intermediate appellate courts. It is limited to decisions from the Second Circuit Court of Appeals. *See Info. Superhighway, Inc. v. Talk Am., Inc.*, No. 03 Civ. 1995(RWS), 2003 WL 22705132, at *1 (S.D.N.Y. Nov. 17, 2003) (citing *Ades v. Deloitte & Touche*, 843 F. Supp. 888, 892 (S.D.N.Y. 1994)).

Nor do these new factual allegations substantively support the existence of fiduciary obligations. Plaintiffs claim that "pursuant to a set of Intercreditor Agreements, among other instruments, [Coventry through a company known as Sandy Run was entitled] to receive the profits of Ritchie I and Ritchie II after other debts have been paid." SAC ¶¶ 5, 45. Under New York law, an agreement to share profits may give rise to a fiduciary duty in the context of a partnership or joint venture. *See Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164,

---

[6] None of these authorities support Plaintiffs' claim. *See Spodek*, 304 A.D.2d 557 (2d Dep't 2003) (citing *Sager Spuck Statewide Supply Co. v. Meyer*, 710 N.Y.S.2d 429 (N.Y. App. Div. 2000) ("stockholders who dominate and control a corporation, occupy a position of 'partial trust'")); *Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291, 293-94 (N.Y. App. Div. 2002) (Defendants who were 50% owners and manager of co-venture owed plaintiffs fiduciary duties); *Cassata v. Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552 (N.Y. App. Div. 1998) (issue as to whether actions by a minority shareholder to force judicial dissolution of corporation to aid in competing business gave rise to fiduciary duty claim).

171 (S.D.N.Y. 2004).  To establish a partnership or joint venture, however, Plaintiffs must

establish, *inter alia*, control and mutual intent.  *See Itel Containers Int'l. Corp. v. Atlanttrafik*

*Exp. Serv. Ltd.*, 909 F.2d 698, 701-02 (2d Cir. 1990) (elements of a joint venture); *Fried v. Kelly*,

No. 06 Civ. 1528(HB), 2007 WL 1821697, *5 (S.D.N.Y. Jun 26, 2007) (elements of a

partnership).  Here, Plaintiffs fail to allege Sandy Run (a distinctly minority investor) controlled

Ritchie I and II or that the parties intended a partnership or joint venturer relationship.  Nor could

they.  The Intercreditor Agreements reflect only arms length commercial transactions between

sophisticated parties and, by their terms, "are intended solely for the purpose of defining the

relative payment rights of the parties [thereto]."  Exs. 7, 9 § 7.3.  Moreover, when executing the

Intercreditor Agreements, the parties expressly disclaimed any intent to "enter[] into a

partnership or joint venture."  *Id.* § 7.12; *see also id.* ("[*N*]*one of the provisions of this Agreement*

*shall be deemed to constitute a partnership or joint venture between or among the parties*.")

(emphasis added).  To the extent Plaintiffs claim the Intercreditor Agreements create or imply

fiduciary obligations for Sandy Run as a *de facto* shareholder of Ritchie I and II, such claims are

barred by § 7.11 of the Intercreditor Agreements.  That section provides:

> *No Recourse*.  No recourse for or under any obligation, covenant or agreement of
> the parties hereto contained in this Agreement, or any other agreement, document
> or instrument executed in connection herewith, shall be had against any member,
> shareholder . . . or agent of the parties hereto, by any proceeding, by virtue of any
> statute or otherwise; *it being expressly agreed and understood that this Agreement*
> *is a corporate obligation of the parties hereto, and that no personal liability shall*
> *attach to or be incurred by the members, shareholders . . . or agents of the parties*
> *hereto, as such, or any of them under or by reason of any of the obligations,*
> *covenants or agreements of the parties hereto contained in this Agreement or*
> *implied therefrom,* and *that any and all personal liability* for breaches of any such
> member, shareholder, . . . or agent of any of such obligations, covenants or
> agreements; *either at law or in equity is hereby expressly waived by the parties*
> *hereto* as a condition of and in consideration for the execution of this Agreement.

Exs. 7, 9 § 7.11 (emphases added).

Alternatively, Plaintiffs claim – for the first time – that in a set of Investment

Administration and Servicing Agreements ("Servicing Agreements"), a Coventry affiliate named

Montgomery Limited agreed "to give advice and make recommendations" to Ritchie I and II

concerning the identification of potential purchasers, the value and marketability of their portfolio of life settlement policies, and the selection of intermediaries through whom such transactions might be executed. SAC ¶ 51.[7]   However, Plaintiffs do not claim Montgomery Limited failed to perform these services.  Nor does Plaintiffs' breach of fiduciary claim arise from matters allegedly entrusted to Montgomery Limited.  *See* Compl. ¶ 99; SAC ¶ 120 (Defendants obligated "to make full disclosure of all material circumstances surrounding the purchase of life insurance policies, and of the existence of the [NYAG's] investigation."); *see also Ross v. FSG PrivatAir, Inc.*, No. 03 Civ. 7292(NRB), 2004 WL 1837366, at *6 (S.D.N.Y. Aug. 17, 2004) (plaintiff must show that breach claimed involved "matters within the fiduciary obligation."); *Rush v. Oppenheimer & Co.*, 681 F. Supp. 1045, 1055 (S.D.N.Y. 1988) (finding of breach is "limited to matters relevant to affairs entrusted. . . .").

Moreover, "[u]nder New York law, parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000); *see also Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, NO. 07 CIV 891 DLC, 2007 WL 2412257, at *7 (S.D.N.Y. Aug. 27, 2007) (Cote, J.) ("conventional business relationship 'without more' is not converted into a fiduciary relationship 'by mere allegation'"); *Ross*, 2004 WL 1837366, at *6 ("where the parties' contract forms both the foundation and boundary of their relationship, fiduciary responsibilities have not attached").  Here, the Servicing Agreements do not establish a fiduciary relationship.  To the contrary, they prohibit Montgomery Limited from "effect[ing] any transactions for the account of [Ritchie I or II] as principal or agent." Exs. 11, 12 § 2(b).  Ritchie I and II also retained their own agent, and the Servicing Agreements required Montgomery Limited to cooperate with that agent.  *See, e.g.*, Ex. 13 § 1(a).  Finally, the parties agreed that "[f]or all purposes of this Agreement, [Montgomery Limited] shall be an independent contractor

---

[7] Plaintiffs claim – for the first time – that Montgomery Limited and Sandy Run are mere alter egos of the corporate defendants. SAC ¶¶ 5, 52.  These allegations may not be considered on a motion for reconsideration.  *See Sequa Corp.*, 156 F.3d at 144.

and not an employee or dependent agent of [Ritchie I and II]; *nor shall anything herein be construed as making [Ritchie I and II] a partner or co-venturer with [Montgomery Limited] or any of its affiliates or other Clients.*" Ex. 11, 12 § 6 (emphasis added).

## II.    THE COURT PROPERLY DISMISSED PLAINTIFFS' FRAUD CLAIM.

The Court correctly held that Plaintiffs' fraud claim rests on the representations encompassed by the MPPAs. *Ritchie*, 2007 WL 2044656, at *7. Thus, "[t]o the extent that there was a misrepresentation or omission in connection with those contractual representations and commitments, then that conduct must be pleaded as a breach of contract claim." *Id.* Plaintiffs' assertion that the Court "overlook[ed] several key points" lacks merit.

### A.    The Court Did Not Misread *Telecom Int'l American Ltd. v. AT&T Corp.*

In *Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001), the Second Circuit concluded that, under New York law, a fraud claim will not lie when it is "simply a breach of contract claim in the tort clothing." *Id.* at 196. The Second Circuit held that "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, [even] with the addition . . . of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Id.* The Court's dismissal of Plaintiffs' fraud claim is consistent with that holding and with other courts that have relied on *Telecom Int'l Am. Ltd.* to dismiss fraud claims that duplicate breach of contract claims. *See Trell v. Am. Ass'n of Advancement of Sci.*, No. 04-CV-0030(ESR), 2007 WL 1500497, *7 (W.D.N.Y. May 21, 2007); *Dunkin' Donuts Inc. v. Got-A-Lot-A-Dough, Inc.*, No. 04CV4100 (DRH)(MLO), 2006 WL 3725340, *6 (E.D.N.Y. Dec. 18, 2006); *Valjean Mfg., Inc. v. Michael Werdiger, Inc.*, No. 03 Civ. 6185(HB), 2004 WL 1948752, *5 (S.D.N.Y. Sep. 2, 2004).[8]

---

[8] The Court gave the same reading to *Telecom Int'l Am. Ltd.* in *Draskicevic v. Entersport Mgmt., Inc.*, No. 03 CIV. 8447(DLC), 2004 WL 1575393, *1 (S.D.N.Y. Jul 15, 2004). Moreover, *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) does not compel a contrary result. *See id.* at 899 ("If the only interest at stake is that of holding the defendant to a promise, the claim sounds in contract.").

**B.      The Court Properly Rejected the Non-Contracting Plaintiffs' Fraud Claims.**

Plaintiffs previously argued that the MPPAs do not bar fraud claims by the non-contracting Plaintiffs.  *See* Opp. at 19.  The Court, however, considered and rejected this argument, holding that Plaintiffs failed to allege a separate legal duty owed to the non-contracting Plaintiffs.  *Ritchie*, 2007 WL 2044656, at *8.  In their motion for reconsideration, Plaintiffs identify no controlling authority or data the Court missed, *see* Rev. Mem. at 5-6, and on that basis, it should be rejected.  *See Sequa*, 156 F.3d at 144; *Shrader*, 70 F.3d at 256-257.

On the merits, Plaintiffs' argument also fails.  The Complaint makes clear that Ritchie I and II were the only entities that purchased Policies.  Compl. ¶¶ 30, 58; SAC ¶¶ 6, 45.  The alleged misrepresentations on which the non-contracting Plaintiffs base their fraud claims were made during the negotiation of the MPPAs, pertain to representations encompassed by those agreements, and are the basis for Ritchie I's and II's contract claims.  *Compare* Compl. ¶ 28 *with id.* ¶¶ 34-35, and 104.  The non-contracting Plaintiffs' sole connection to Ritchie I and II was derivatively through their purchase of "subordinated securities" in these entities.  *Id* ¶ 30; SAC ¶ 45 ("The Investing Plaintiffs . . . committed capital to, and became owners of subordinated securities in, Ritchie I and Ritchie II, which entitled [them] . . . to receive the profits of Ritchie I and Ritchie II after other debts have been paid."); *see also* Compl. ¶ 62 ("Defendants' misconduct therefore harmed not only Ritchie I and Ritchie II, but the entities . . . that own or are beneficially interested in Ritchie I and Ritchie II. . . ."); *Id.* ¶ 89 (plaintiffs harmed by "investing in life insurance policies worth much less than Plaintiffs had reason to believe they were worth").

Such allegations do not state a claim for fraud as a matter of law.  As investors in a corporation, the non-contracting Plaintiffs cannot sue in their individual capacity to redress wrongs inflicted upon a corporation.  *See Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993); *Jones v. Niagara Frontier Trans. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987); *Big East Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 797 (S.D.N.Y. 2006); *Feinberg v. Katz*, No. 99 Civ. 0045(CSH), 2005 WL 2990633, at *4 (S.D.N.Y. Nov. 7, 2005); *Glenn v. Hoteltron Sys., Inc.*, 547 N.E.2d 71, 74 (1989); *Abrams v. Donati*, 489 N.E.2d 751, 751 (N.Y. 1985).  Nor

have Plaintiffs alleged facts establishing an independent duty to the non-contracting Plaintiffs. *Ritchie*, 2007 WL 2044656, at *6 (Plaintiffs "have pleaded no adequate bases for establishment of a fiduciary relationship absent one between Ritchie I and II"); *id.* at *7 ("plaintiffs have not pointed to any separate legal duty to support the fraud claim").

### C.    The Court Did Not Disregard Plaintiffs' Claims of a Separate Legal Duty.

Plaintiffs' argument that they "*have* identified a separate legal duty to disclose" repeats their prior contention, which the Court properly rejected.  Rev. Mem. at 6 (emphasis in original); *see also* Opp. at 16-18 (same); *Ritchie*, 2007 WL 2044656, at *7 (rejecting "separate duty" argument).  Rule 59(e) requires that it be rejected again.  *See Shrader*, 70 F.3d at 256-257.[9]

Nonetheless, even if the Court could ignore Rule 59(e)'s restrictions, Plaintiffs' arguments are unpersuasive.  As discussed *supra*, Defendants do not owe a fiduciary duty to the non-contracting Plaintiffs.  As to Plaintiffs' passing reference to Defendants' purported superior knowledge, Plaintiffs' claim is belied by their own allegations that: (1) Ritchie I and II purchased Policies, Compl. ¶¶ 30, 58; (2) each of the non-contracting Plaintiffs is affiliated with Ritchie I and II through, at most, the purchase of subordinated securities therein, *id.* ¶ 30; and (3) Defendants' alleged misstatements and omissions induced Ritchie I, II and IV to enter into MPPAs.  *Id.* ¶ 94; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (superior knowledge "usually arises . . . in the context of business negotiations where parties are entering a contract").  But § 7.12 of the MPPAs expressly disclaims Plaintiffs' reliance on Defendants' purported superior knowledge and provides that, "without reliance upon the Seller,"

---

[9] Plaintiffs allege – for the first time – in the SAC that once Defendants chose to speak about the NYAG investigation, they "had a duty to speak completely and truthfully about the investigation and the likely consequences of it."  SAC ¶ 72.  However, Plaintiffs did not make this claim in their Complaint or Opposition.  *See U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc.*, NO. 04 CIV. 1233DLC, 2005 WL 2230454, at *1 (S.D.N.Y. Sept. 12, 2005) (Cote, J.) (plaintiffs may not "advance new facts, issues or arguments not previously presented to the Court.").  Nor do Plaintiffs address this theory in their Revised Memorandum.  And they may not do so for the first time in their Reply.  *See id.* ("New arguments first raised in reply papers in support of a motion will not be considered."); *see also Patterson v. Balsamico*, 440 F.3d 104, 113 n.5 (2d Cir. 2006) ("This Court generally will not consider arguments raised for the first time in a reply brief").

the Purchaser "has made and will continue . . . to make its own appraisal of and investigation into the business, operations . . . financial and other conditions . . . of the Seller, and its own decision to enter into this Agreement and to take, or omit to take, action under any Transaction Document." Exs. 1-4 § 7.12. Furthermore, this provision expressly dispels any duty of Defendants to "provide the Purchaser *or any of its Affiliates* any information." *Id.* (emphasis added); *see DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) (sophisticated parties "cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties").

Although § 7.12 bars all Plaintiffs' fraud claims, the non-contracting Plaintiffs, as affiliates of Ritchie I, II, and IV face additional hurdles. The only non-contracting Plaintiff alleged to have any direct dealings with Defendants regarding the purchase of Policies is Ritchie Capital Management ("RCM"). SAC ¶ 17 (Coventry employees communicated with RCM employees); *see also WestRM-West Risk Markets, Ltd. v. XL Reinsurance Am., Inc.*, No. 02 Civ. 7344(MGC), 2006 WL 2034627, at *10 (S.D.N.Y. July 19, 2006) ("[T]hird-party duty to disclose has only been found where the third-party to the transaction has had some direct communication with the fraud victim regarding the fraudulent transaction."). RCM, however, is not an Investing Plaintiff, *i.e.*, did not purchase subordinated securities in Ritchie I, II or IV. SAC ¶ 4. Nor is it a party to any agreement identified by Plaintiffs. *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (fraud requires proof of detrimental reliance).[10]

---

[10] As to the remaining non-contracting Plaintiffs, there are no allegations (especially ones pleaded with particularity) that Defendants knew these entities were "acting on the basis of mistaken knowledge," *see Lerner*, 459 F.3d at 292, that these entities were aware of Defendants' alleged misrepresentations, or that Defendants intended RCM to convey the alleged misrepresentations to them. *See Secs. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71-72 (2d Cir. 2000) ("[P]laintiff may state a claim for fraudulent misrepresentation made to a third party if . . . the defendant intended the misrepresentation to be conveyed to him."). Rather statements identified in ¶¶ 55-58 are drawn directly from the MPPAs (and drafts thereof), to which the non-contracting Plaintiffs were not parties. And the representations set forth in ¶¶ 71-79 allegedly were made to "[Jeff] Mulholland of RCM," as well as RCM's counsel. *See* SAC ¶¶ 55-58, 71, 73, 75, 76, 77, 78. Nor does Plaintiffs' vague statement that RCM "represented" the Investing Plaintiffs, *id.* ¶ 71, allege an agency relationship. *See In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 421-22 (S.D.N.Y. 1990) (setting forth elements of agency relationship). Additionally, where fraud claims are based on a claim of agency, the pleading of the alleged

**D.     The Court Properly Rejected Plaintiffs' Collateral Statements Argument.**

Plaintiffs insist they alleged misrepresentations "'collateral' to the main duty to perform under the [MPPAs]."  Rev. Mem. at 6-7.  This argument – which the Court previously rejected, *see Ritchie*, 2007 WL 2044656, at *7 – lacks merit.

Under New York law, "the majority view – an overwhelming majority view – [is] that a false promise, *whenever made*, cannot give rise to a fraud claim where that promise is directly incorporated into a written contract between the parties."  *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 489 (S.D.N.Y. 1997) (emphasis added); *see also Bates Adver. USA, Inc. v. McGregor*, 282 F. Supp. 2d 209, 220 (S.D.N.Y. 2003) (misrepresentations "cannot serve as a basis for a fraud claim because they concern the same matter as the terms of the Purchase Agreement"); *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, No. 99 Civ. 9905(SHS), 2001 WL 910405, at*5 (S.D.N.Y. Aug. 13, 2001) ("[P]re-contractual representation . . . was the very same promise expressly incorporated into the contract, and [plaintiff] therefore may not recover for fraud based upon those pre-contractual representations."); *Four Finger Art Factory, Inc. v. Dinicola*, No. 99 Civ. 1259(JGK), 2000 WL 145466, at *5 (S.D.N.Y. Feb. 9, 2000) (plaintiff's fraud claims were not collateral because contract contained specific provisions at issue); *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 Civ. 4914(SS), 1997 WL 685334, at *5 (S.D.N.Y. Nov. 4, 1997) ("[M]isrepresentations . . . are in no sense 'collateral' to the Agreement. . . .   [T]hey involve a term negotiated by the parties – a matter at the very heart of the Agreement.").[11]

---

agency relationship must itself meet the requirements of Rule 9(b).  *See Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569-70 (S.D.N.Y. 1996), *aff'd*, 1998 WL 406036 (2d Cir. 1998).

[11] None of the cases cited by Plaintiffs holds that a statement appearing in a contract can be collateral to that contract.  Such a holding would defy logic and would be irreconcilable with the weight of authority set forth above.  In *First Bank of the Ams. v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 22 (N.Y. App. Div. 1999), for example, the relevant contract contained a general requirement that loans would meet certain underwriting criteria.  The representations on which the fraud claim was based, by contrast, were statements concerning the attributes of individual loans not addressed by the general contractual warranty.  *See In re Enron Corp.*, No. 04 Civ. 1367(NRB), 2005 WL 356985, at *11 n.44 (S.D.N.Y. Feb 15, 2005) (distinguishing *First Bank of the Ams.* on this basis).  Nor do the opinions in *Triangle Underwriters, Inc. v. Honeywell, Inc.*,

Here, Defendants' alleged misrepresentations are encompassed by express provisions of the MPPAs. Plaintiffs admit that "[i]t is, of course, statements 'set forth [in the MPPAs]' whose substance is at the heart of the claims of fraudulent representation." Opp. at 20; Rev. Mem. at 8 ("Plaintiffs have alleged they were relying on . . . several of the very representations and warranties set forth [in the MPPAs]"). Nonetheless, they seek reconsideration by claiming certain pre- and post-contractual statements were collateral to the MPPAs. Rev. Mem. at 6-7. There are several flaws with that argument. First, the timing of the alleged misrepresentations – *i.e.*, whether it is pre- or post-contractual – is irrelevant. "A false promise, whenever made, cannot give rise to a fraud claim where that promise is directly incorporated into a written contract between the parties." *Int'l CableTel*, 978 F. Supp. at 489.

Second, each alleged pre-contractual misrepresentation, *see* Rev. Mem. at 7 (citing Compl. ¶¶ 27-33, 35-39, 87), is encompassed by express terms of the MPPAs (or drafts thereof, which Plaintiffs admit are "substantially identical" to the final, executed versions). *See, e.g,* SAC ¶ 35 (Ritchie I MPPA); *id.* ¶ 37 (Ritchie II MPPA); *id.* ¶ 36 (draft of Ritchie II MPPA); *id.* ¶ 104 (Count VI of Compl.). Indeed, a comparison of the those alleged misrepresentations with the express terms of the MPPAs reveals the duplication and the flaw in Plaintiffs' arguments. *Compare* alleged misstatements found in Compl. ¶ 28 ("[P]olicies in which Coventry transacts have no legal taint . . ."); *id.* ¶ 39 ("Coventry . . . was scrupulous about complying with regulatory requirements."); and *id.* ¶ 87 (representations concerning circumstances under which policies were obtained and existence and target of the [NYAG's] investigation); *with* Exs. 1-4 § 3.02(a)(ii)(A) ("Seller shall have taken all reasonable actions . . . to protect and perfect the ownership of the Seller in such policy . . . ."); *id.* § 3.02(b) (Life Settlement Policies were, to Seller's knowledge, lawfully originated); *id.* § 3.01(a)(v) (transactions contemplated by MPPAs

---

604 F.2d 737 (2d Cir. 1979), *Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003 (N.Y. 1986) and *Bd. of Mgrs. of 411 E. 53rd St. Condo. v. Dylan Carpet, Inc.*, 582 N.Y.S.2d 1022, 1023 (N.Y. App. Div. 1991), consider the proposition – much less hold – that a representation appearing in a contract can be collateral to that contract.

will not violate any applicable law); and *id.* § 3.01(a)(vi) ("There is no action, suit or proceeding before any . . . governmental agency . . . seeking any determination or ruling that might materially and adversely [a]ffect the performance by the Seller of its obligations under . . . this Agreement.").

<u>Third</u>, the post-contractual misrepresentations alleged by Plaintiffs are likewise encompassed by the MPPAs. Plaintiffs claim: (1) Coventry failed "to disclose or describe a subpoena received from the NYAG in a manner that would have revealed it to be a target of the investigation," Compl. ¶ 50; (2) Defendants stated they were not a likely target of that investigation, *id.* ¶ 51; and (3) "Coventry implied that Defendants were not engaging in the type of Policy origination practices targeted by the NYAG. *Id.* Each these alleged misrepresentations are covered by the MPPAs. *See* Exs. 1-4 § 3.01(a)(vi) ("There is no action, suit or proceeding before or by any court . . . or other governmental agency . . . against or affecting the Seller or its assets or properties . . . seeking any determination or ruling that might materially and adversely [a]ffect the performance by the Seller of its obligations under, or the validity or enforceability of, this Agreement."); *id.* ¶ 3.02(b) (Policies were lawfully originated).

### E.    The Court Did Not Overlook Plaintiffs' Claim for Special Damages.

Plaintiffs did not plead special damages in their Complaint.[12] When Defendants noted Plaintiffs' failure to allege special damages, *see* Mot. to Dismiss at 17, Plaintiffs did not respond. *See* Opp. at 16-18. The Court likewise recognized Plaintiffs' failure to allege special damages. *Ritchie*, 2007 WL 2044656, at *7 ("The plaintiffs have not pointed to . . . any special damages."). Nonetheless, to revive their fraud claim, the Investing Plaintiffs claim – for the first time – "they are prepared to prove that at least some of them *did* suffer special damages." Rev. Mem. at 7 (emphasis in original). Not only is it too late to raise this argument, s*ee Nat'l Union Fire Ins.*

---

[12] This is evidenced by the fact that Plaintiffs' citations for this argument are almost entirely to their proposed Second Amended Complaint. *See* Rev. Mem. at 7 (citing SAC ¶¶ 92-94, 110, 116). Indeed, Plaintiffs have not previously alleged they incurred transaction costs from the securitization transaction.

*Co.,* 265 F.3d at 115, but the argument is substantively flawed.

### 1.    Plaintiffs Did Not Incur Special Damages Related to Ritchie IV.

The Investing Plaintiffs claim they "were induced to enter into the Ritchie IV arrangement by Coventry's fraudulent conduct in connection with Ritchie I and Ritchie II." SAC ¶ 92; *see also id.* (identifying "fraudulent conduct" as alleged misrepresentations set forth in SAC ¶¶ 55-58 and 71-79). These Plaintiffs allege they incurred "substantial transaction costs and opportunity costs"[13] in "setting up" Ritchie IV. SAC. ¶ 92; Rev. Opp. at 7. The Investing Plaintiffs incorrectly claim these transactions costs constitute special damages. *Id.* ¶ 94.

First, the Ritchie IV "arrangement" was actually a MPPA between LST I and Ritchie IV, the terms of which are materially identical to the Ritchie I and II MPPAs. *See* Ex. 4. The Investing Plaintiffs did not "enter into" this contract at all. *Id.* Instead, these entities are linked to Ritchie IV through their commitment of capital, *i.e.*, their investment in Ritchie IV. *See* SAC ¶ 92. And the alleged representations on which they base their claim for special damages – like those underlying all of Plaintiffs' fraud allegations – are directly incorporated in the MPPAs. *Compare* SAC ¶¶ 55-58, 71-79 *with* Ex. 1-4 §§ 3.01(a)(v), 3.01(a)(vi), 3.02(a)(ii)(A), and 3.02(b). Accordingly, any losses incurred by the Investing Plaintiffs are properly sought by Ritchie IV through a breach of contract action.[14]

Second, the Investing Plaintiffs fail to allege special damages with specificity. Federal Rule of Civil Procedure 9(g) requires special damages to be "specifically stated." Fed. R. Civ. P. 9(g); *Draskicevic*, 2004 WL 1575393, at *2; *Advanced Marine Techs., Inc. v. Burnham Sec.,*

---

[13] Under New York law, the measure of damages for fraud is governed by the "out-of-pocket" rule, which permits "indemnity for the actual pecuniary loss sustained as a direct result of the wrong," and bars "recovery of profits which would have been realized in the absence of fraud." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1374 (N.Y. 1996) (citations and internal quotation marks omitted). Thus, lost opportunity costs cannot constitute special damages, as they are not recoverable under Plaintiffs' fraud claims.

[14] At least two of the three Investing Plaintiffs, by signing an amendment to the Ritchie IV Intercreditor Agreement, agreed to hold Defendants "harmless" and agreed that "no party shall have any right to make any claim or seek remedies relating to any liabilities arising from the Transaction Documents." Ex. 10 at § 8.1(b); *see also* SAC ¶ 4 (defining "Investing Plaintiffs").

*Inc.*, 16 F. Supp. 2d 375, 383 (S.D.N.Y. 1998) (special damages under *Bridgestone* must be pleaded specifically under Rule 9(g)).[15]  That requires the non-contracting Plaintiffs to "allege actual damages with particularity and specify facts showing that such special damages were the natural and direct result of the defendant's conduct . . . ."  *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (quotation and internal punctuation omitted).  Here, the non-contracting Plaintiffs ignore Rule 9(g) by failing to identify (1) the Plaintiff that allegedly incurred "substantial transaction costs" associated with Ritchie IV, *see* SAC ¶¶ 92-94 (special damages allegedly incurred by "Investing Plaintiffs" collectively); (2) the nature and type of these transaction costs; and (3) the amount of the alleged transaction costs, *see id.* ¶ 92 (characterizing transaction costs merely as "substantial").  The only dollar amount identified by Plaintiffs is their allegation of "damages in an amount believed to be not less than $700 million," which, notably, matches the amount claimed under their breach of contract theory.  Comp. ¶¶ 90, 96, 101, 106; SAC ¶¶ 12, 103, 106,111, 117, 121, 128.  Such allegations fail to satisfy Rule 9(g).  *See San Francisco v. Tutor-Saliba Corp.*, No. C 02-5286 CW, 2005 WL 645389, at *17 (N.D. Cal. Mar. 17, 2005) ("A specific statement of special damages requires not just the total lump sum, but a statement of the specific items which make up the lump sum."); *Barrett v. U.S. Banknote Corp.*, No. 91 Civ. 7420(RPP), 1992 WL 232055, at *8 (S.D.N.Y. Sept. 2, 1992) (denying leave to amend where amendment offered neither a specific number nor a specific method of computing special damages); *Sommer v. PMEC Assocs.*, No. 88 Civ. 2537, 1992 WL 196748, at *8 (S.D.N.Y. Aug. 5, 1992) ("Round sums without any attempt at itemization are not sufficient allegations of special damages."); *Korry v. Int'l Tel. & Tel. Corp.*, 444 F. Supp. 193, 197 (S.D.N.Y. 1978) (undifferentiated damages insufficient).

Third, the Investing Plaintiffs cannot claim, for the first time in their SAC, that the "fraudulent conduct" that allegedly induced them to enter the Ritchie IV arrangement included statements regarding the NYAG investigation.  *See* SAC ¶ 92 (citing ¶¶ 71-79).  As an initial

---

[15] *Hogan v. Wal-Mart Stores, Inc.*, 167 F.3d 781, 783 (2d Cir. 1999) ("The form in which claims for special damages must be stated is a procedural question governed by Fed. R. Civ. P. 9(g).").

18

matter, that claim was not made within 10 days after the Court entered its July 18, 2007 Order
and, therefore, must satisfy Rule 60(b).  *Compare* SAC ¶ 92 (filed on August 8, 2007) *with* First
Am. Compl. ¶ 92 (timely filed but citing only ¶¶ 55-58).  *See also Weissman v. Dawn Joy
Fashions, Inc.*, 214 F.3d 224, 230 (2d Cir. 2000) (court may not extend time to file a motion for
reconsideration as Rule 59(e) is jurisdictional); *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195,
197 (2d Cir. 2006) ("[p]ermitting the [party] to supplant the[ ] timely yet insufficient
'placeholder' Rule 59(e) motion . . . with the[ ] subsequent augmented filing . . . would afford [ ]
an easy way to circumvent Rule 6(b)'s prohibition on granting an enlargement of time for filing
motions under Rule 59(e)").

    "A movant under Rule 60(b) must demonstrate 'exceptional circumstances' justifying the
extraordinary relief requested."  *Employers Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824-25
(2d Cir. 1996).  Here, Plaintiffs have not demonstrated exceptional circumstances.  Nor is their
Plaintiffs newly-minted claim plausible.  *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)
(factual allegations must render the claim plausible).  Indeed, any transaction costs in
establishing Ritchie IV must have been incurred in the eight days between June 22, 2006 (the
date of the first alleged misrepresentation, *see* SAC ¶ 73) and June 30, 2006, by which time
"Ritchie IV [was] an Irish private limited company, duly organized, validly existing and in good
standing under the laws of the Republic of Ireland . . . ."  *See* Ex. 4 § 3.01(b)(i).  Moreover, fraud
claims founded on the NYAG investigation conflict with an express disclaimer in the Amended
and Restated Intercreditor Agreement.  Section 7 of that Agreement provides that the "the
Attorney General Action[16] . . . does not . . . constitute . . . an event of default (whether matured or
unmatured) or termination event under any of the . . . Transaction Agreements."  Ex. 8 ¶ 7.
"Transaction Agreements" are defined to include, *inter alia*, the Intercreditor Agreement and the
MPPA.  *See* Ex. 7 § 1.1.  Signatories to the Intercreditor Agreement include all of the so-called

---

[16] The "'Attorney General Action' means the action commenced by the New York Attorney
General against the Servicer and others filed with the Supreme Court of the State of New York,
County of New York, Complaint Index No. 404620/06."  Ex. 8 at 2(a)(iii).

"Investing Plaintiffs." *See* SAC ¶ 4; Exs. 7, 8. These entities cannot credibly claim that

representations incorporated into the MPPAs *see* SAC ¶¶ 56, 58, 123, give rise to fraud claims

when they do not give rise to a breach of contract claims.

       <u>Fourth</u>, Plaintiffs do not allege the parties contemplated the Investing Plaintiffs would

incur transaction costs in connection with Ritchie IV when the Ritchie I and II MPPAs were

negotiated and signed. *See Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 210

(2d Cir. 2002) (special damages must have been contemplated by parties at time of contracting);

*Spang Indus., Ft. Pitt Bridge Div. v. Aetna Cas. & Sur. Co.*, 512 F.2d 365, 368 (2d Cir. 1975)

(same). Indeed, such a claim would require Plaintiffs to allege the parties anticipated in 2005

that Ritchie IV would come into existence in June 2006,[17] and that the non-contracting Plaintiffs,

as opposed to any other entity, would incur specific transaction costs in connection therewith.[18]

Because Plaintiffs make no such allegations, their claim for special damages fails. *See Muller*

*Boat Works, Inc. v. Unnamed 52' House Barge*, 464 F. Supp. 2d 127, 148 (E.D.N.Y. 2006) (no

special damages where defendant had no reason to believe they would be incurred); *Project*

*Hope v. M/V IBN SINA*, NO. 97-CV-3853, 2001 WL 1875854, at *2 (S.D.N.Y. Jul. 17, 2001)

(special damages only recoverable upon a showing that they were foreseeable and within the

contemplation of the parties at time contract was made); *Kenford Co., Inc. v. County of Erie*, 537

N.E.2d 176, 178-80 (N.Y. 1989) (same).

       **2.**     **Plaintiffs Did Not Incur Special Damages in Connection With the
Securitization.**

       The Investing Plaintiffs claim for the first time that they incurred "substantial transaction

costs in connection with the contemplated securitization transaction, which was the subject of

---

[17] The original Ritchie I MPPA was executed on June 30, 2005, *see* Ex. 1, and the Amended and
Restated Ritchie I MPPA was executed on September 8, 2005, *see* Ex. 2. The Ritchie II MPPA
was executed on December 15, 2005. *See* Ex. 3. The Ritchie IV MPPA was not executed until
June 30, 2006. *See* Ex. 4.

[18] Plaintiffs' sole allegation relating to the foreseeability of Plaintiffs' damages is that it was
foreseeable the Policies would diminish in value when Defendants' alleged fraud in originating
the Policies was disclosed. SAC. ¶ 95. Plaintiffs do not allege the parties foresaw the creation of
Ritchie IV, or that the Investing Plaintiffs would incur any transaction costs related to this entity.

over a year's worth of legal, financial, and accounting work." SAC ¶ 93. These allegations do not satisfy Rule 9(g), as Plaintiffs do not identify (1) which of the non-contracting Plaintiffs allegedly bore the "substantial transaction costs" associated with contemplated securitization, *see* SAC ¶¶ 93-94 (special damages allegedly incurred by "Investing Plaintiffs" collectively); or (2) the amount of those alleged costs. *See Barrett*, 1992 WL 232055, at *8; *Sommer*, 1992 WL 196748, at *8; *Korry*, 444 F. Supp. at 197.

Moreover, any transaction costs in connection with the securitization would be recoverable by Ritchie I and II (if they prevailed) under a breach of contract theory. *Bridgestone/Firestone*, 98 F.3d at 20 (special damages must be "unrecoverable as contract damages"). Indeed, Plaintiffs allege each element of such a claim: (1) the Policies to be securitized were purchased and owned solely by Ritchie I and II pursuant to the MPPAs, *id.* ¶¶ 6, 45, 86; (2) Plaintiffs performed under these agreements, *id.* ¶ 125; (3) Defendants purportedly breached certain representations in these contracts, *id.* ¶¶123-29; (4) when Ritchie I and II purchased Policies the parties were aware that Ritchie I and II intended to "re-sell[] them at a future point through a securitization transaction," *Id.* ¶¶ 42, 87, 95; and (5) it was foreseeable that "Defendants' misconduct would damage" Ritchie I and II. *Id.* ¶ 95. These allegations are consistent with a claim for breach of contract. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (breach of contract claim under New York law requires "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."); *Young v. Dep't of Justice*, 882 F.2d 633, 640 n.9 (2d Cir. 1989) (damages in contract actions include those that "may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.").

Contract damages recoverable by Ritchie I and II do not, however, become "special damages" simply because the Investing Plaintiffs are investors in Ritchie I and II and, therefore, lack standing to sue Defendants directly for breach of contract. *See id.* ¶ 90 (Defendants' alleged misconduct "harmed not only the Contracting Plaintiffs, but the Investing Plaintiffs, which are

beneficially interested in the Contracting Plaintiffs. . . ."); *id.* ¶ 45 (Investing Plaintiffs are "owners of subordinated securities in Ritchie I and Ritchie II"); *id.* (non-contracting Plaintiffs entitled "to receive the profits of Ritchie I and Ritchie II after other debts have been paid"); *id.* ¶ 4 (Investing Plaintiffs are "de facto equity shareholders in [Ritchie I and II]"); *see also* discussion at *supra* section II.B.[19] Any harm allegedly suffered by the Investing Plaintiffs in connection with the securitization is derivative of that incurred by Ritchie I and II and recoverable only by those entities. *See* SAC ¶ 45.

## III.    THE COURT PROPERLY DISMISSED PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM.

The Court did not disregard controlling law or facts when it dismissed Plaintiffs' fraudulent inducement claim on the ground that it is barred by the MPPAs' integration clause. *See Ritchie*, 2007 WL 2044656, at **7-8. Plaintiffs attack the Court's conclusion on several grounds, none of which is persuasive.

First, Plaintiffs claim the Court failed to recognize that (1) the integration clause provides that LST I "has not made any representations or warranties other than as set forth herein." Rev. Mem. at 8; and (2) Plaintiffs have alleged "they were relying on . . . several of the very representations and warranties "set forth [there]in" to support their fraudulent inducement claims. Plaintiffs' allegation that Defendants violated the express terms of the MPPAs may be pursued, if at all, only by the contracting parties under a breach of contract theory. *See* discussion *supra* at II.D; *Int'l CableTel Inc.*, 978 F. Supp. at 489 ("[A] false promise, *whenever made*, cannot give rise to a fraud claim where that promise is directly incorporated into a written contract between the parties.") (emphasis added); *Ritchie*, 2007 WL 2044656, at **7-8 ("These

---

[19] A contrary conclusion would trigger the indemnification and hold harmless provisions of the MPPAs, in which Ritchie I, II, and IV agreed to: indemnify the Seller and its Affiliates, and agree[d] to hold each of them harmless, with respect to any issuance of debt or equity securities of the Purchaser or its subsidiaries or the marketing, offer or sale thereof or of any Life Settlement Policies to any persons not affiliated with Coventry First. . . ." Exs. 1-4, Ex. B at B-2.

representations or concealments are not extraneous to the contract, and therefore must be asserted as a breach of contract claim and not as a fraudulent inducement claim.").

      Second, Plaintiffs claim the Court disregarded their allegation that Defendants' alleged misrepresentations induced not only the Ritchie I and II MPPAs, but other contracts and the "Ritchie IV arrangement" as well. Rev. Mem. at 9. To support this claim, Plaintiffs cite to paragraphs 64 and 94 of their Complaint. *Id.* These paragraphs, however, do not identify any contract besides the MPPAs as having allegedly been induced by Defendants. Paragraph 64 simply repeats Plaintiffs' allegation that Defendants induced them to enter into the Ritchie IV "arrangement," which is a euphemism for the Ritchie IV MPPA. *See* Ex. 4. Paragraph 94 says only that Defendants' alleged misrepresentations induced Ritchie I and II to enter into "among other agreements, the policy purchase agreements." Plaintiffs do not say what these other agreements were or, more significantly, how Plaintiffs were harmed by entering into them. *See Meadowlands Inv., LLC v. CIBC World Mkts. Corp.*, No. 04 Civ. 7328(DAB), 2005 WL 2347856, at *5 (S.D.N.Y. Sept. 22, 2005) (fraudulent inducement must be pleaded with particularity).[20] To the contrary, Plaintiffs' damages theory is based on the alleged devaluation of Policies purchased by Ritchie I and II under the MPPAs, not any action taken pursuant to any other agreement. *See* Compl. ¶ 58 ("The market value of those policies has greatly diminished since the [NYAG]'s action was commenced."); ¶ 59 ("Each of the [P]laintiffs anticipated a profit from the planned sale of the policies in a secured transaction); ¶ 62 ("Defendants' misconduct has thus directly interfered with the salability and value of the life insurance policies at issue."). Whether Defendants' alleged misrepresentations also caused Plaintiffs to enter into other agreements is irrelevant to their theory of harm, does not form the basis of Plaintiffs' fraud claims, is not pleaded with particularity, and is insufficient to salvage their fraud claims.

---

[20] Plaintiffs' attempts "to make these allegations clearer," Rev. Mem. at 9, do not save their claims. *See* SAC ¶ 80 (Plaintiffs continued purchasing policies and entered into the Ritchie IV arrangement); *Id.* ¶ 92 (Plaintiffs induced to enter the Ritchie IV arrangement); *id.* ¶ 113 (MPPAs and agreements relating to Ritchie IV); *id.* ¶ 115 (Contracting Plaintiffs entered into MPPAs and Investing Plaintiffs entered into the Ritchie IV arrangement).

Finally, Plaintiffs claim the MPPAs' integration clause cannot bind the Investing Plaintiffs, which are not parties to those agreements. *See* Rev. Mem. at 9 ("[T]he Investing Plaintiffs, as well as most of the Coventry Defendants are not signatories to the MPPAs [and] cannot possibly be affected . . . by the integration clause in the MPPAs."). This argument fails, however, because the Investing Plaintiffs' inability to state a claim under the MPPAs reflects that they are mere investors in Ritchie I, II, and IV, and that their alleged harm is derivative of that purportedly suffered by these entities. *See supra* section II.B; SAC ¶ 45 ("The Investing Plaintiffs. . . committed capital to, and became owners of subordinated securities in, Ritchie I and Ritchie II, which entitled the Investing Plaintiffs . . . to receive the profits of Ritchie I and Ritchie II after other debts have been paid.").

## IV.  THE COURT PROPERLY CONCLUDED PLAINTIFFS FAILED TO PLEAD PERSONAL JURISDICTION OVER MONTGOMERY CAPITAL.

The Court did not miss controlling law or facts when it allowed Plaintiffs to replead personal jurisdiction under RICO. Plaintiffs challenge the Court's determination that "[p]ersonal jurisdiction has not sufficiently been pled in the complaint as to the . . . RICO claims. . . ." *Ritchie*, 2007 WL 2044656, at *10. Plaintiffs allege the Court ignored the fact that Montgomery Capital, Inc. is "licensed to do business in New York [and] is subject to jurisdiction in New York on any claim." Rev. Mem. at 10. The Complaint, however, is devoid of allegations suggesting Montgomery Capital is licensed to do business in New York or that it is otherwise subject to jurisdiction under the RICO statute. *See* Compl. ¶¶ 2, 5, 12. Instead, Plaintiffs argued for the first time in their Opposition that Montgomery Capital "has long been licensed to do business in New York, with a New York agent for service of process." Opp. at 3. For this proposition, Plaintiffs rely on an affidavit from their counsel. *See id.* (citing Robbins Decl. Ex. 2). That affidavit, however, does not purport to be based on personal knowledge and the exhibits attached thereto are not self-authenticating. *See id.*[21] Consequently, it does not provide a basis for

---

[21] A domestic public document is self-authenticating if it satisfies Fed. R. Evid. 902. Here, the only document that potentially satisfies that rule is the Delaware Secretary of State Certificate of Good Standing attached as exhibit two to the Declaration of Lawrence S. Robbins. *See* Fed. R.

establishing personal jurisdiction over Montgomery Capital.  *See Kamen v. A.T. & T. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986) (refusing to consider attorney affidavit that is not based on personal knowledge).; *Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 Civ. 7778(DLC), 2004 WL 1328215, at *1 n.2 (S.D.N.Y. Jun. 15, 2004) (Cote, J.) (same).

Moreover, to prevail on their motion for reconsideration, Plaintiffs must show the Court overlooked controlling decisions or data that would have altered the outcome of the original ruling.  *See Shrader*, 70 F.3d at 257.  Here, the outcome would not have changed, as the Court expressly granted Plaintiffs an opportunity to "replead on the personal jurisdiction under RICO. . . ."  *Ritchie*, 2007 WL 2044656, at *10.  Thus, even if the Court erred – which it did not – Plaintiffs are free to amend their Complaint to allege Montgomery Capital is subject to jurisdiction under the RICO statute.  *See* 18 U.S.C. § 1965(a).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration and for Leave to File Counts III, IV, and V of Their Proposed Second Amended Complaint should be denied.

---

Evid. 902(1).  That document, however, simply indicates Montgomery Capital is a Delaware corporation in good standing and does not provide a basis for conferring personal jurisdiction over Montgomery Capital in New York.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 21st day of September, 2007, I caused true and correct copies

of the foregoing to be served electronically via the Court's ECF system on the following counsel:

Lawrence S. Robbins, Esq.
Gary A. Orseck, Esq.
Daniel R. Walfish, Esq.
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500
(202) 775-4510 (telecopy)
lrobbins@robbinsrussell.com
gorseck@robbinsrussell.com
dwalfish@robbinsrussell.com

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169
(212) 883-6383
(212) 883-6388 (telecopy)
tpuccio@lotpp.com

*Attorneys for Plaintiffs*

_____/s/_____
Rachel R. Shanahan