**EXHIBIT 6**

# SERVICING AND MONITORING AGREEMENT

by and between

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED,
as Purchaser

and

COVENTRY FIRST LLC,
as Servicer

Dated as of December 15, 2005

of the claim application. The Servicer will, in accordance with its customary practices and procedures, using procedures effected in a manner substantially identical to those it would use in servicing Life Settlement Policies for other third parties and those held for its own account, and in compliance with all applicable laws, continue to contact the Issuing Insurance Company to facilitate the processing of such claim until the claim is processed and the proceeds thereof are collected by the Purchaser. Also, in the case of any Conveyed Life Settlement Policy that contains a provision for double or additional indemnity for the accidental death of the related Insured which provision has not been terminated (pursuant to applicable law, provisions of the related Conveyed Life Settlement Policy or the Underlying Sale Agreement) such that the related portion of any proceeds is in fact required to be paid to the last known beneficiary of the policy (*i.e.*, the policy beneficiary immediately prior to the Origination or acquisition thereof by Coventry or an Affiliate thereof), the Servicer will identify to the Purchaser the portion of such proceeds that is to be paid to such beneficiary, use commercially reasonable efforts to identify such last known beneficiary and shall supply to the Purchaser instructions for the payment of the required portion of such proceeds to such beneficiary.

SECTION 3.09   Actions on Behalf of the Purchaser. Without limiting the generality of the foregoing, the Servicer is authorized and empowered to request, execute and deliver, on behalf of itself and the Purchaser or the Purchaser's Securities Intermediary, any and all requests for information, policy service forms and similar documents necessary and appropriate to the performance of its duties and obligations hereunder with respect to the Conveyed Life Settlement Policies. The Purchaser shall, or shall cause the Purchaser's Securities Intermediary as the owner (or holder of record of title) or other agent or holder of title to, furnish the Servicer any and all powers of attorney and other documents or instruments reasonably necessary or appropriate to enable the Servicer to carry out its duties and obligations hereunder and/or to pursue, through litigation or otherwise, the timely payment of claims thereunder.

SECTION 3.10   Appointment of Sub-Servicer. The Servicer may at any time, if and as permitted by applicable law, with the consent of the Purchaser (not to be unreasonably withheld, delayed or conditioned) subcontract any or all of its duties under this Agreement; provided that, the Servicer may, at its sole discretion, at any time, if and as permitted by applicable law, subcontract any or all of its duties under this Agreement to any of its appropriately licensed and qualified Affiliates; provided further, that no such delegation or subcontracting shall relieve the Servicer of its responsibilities with respect to such duties as to which the Servicer shall remain primarily responsible with respect thereto.

SECTION 3.11   Standard of Care. Unless otherwise expressly stated herein, the Servicer shall service the Conveyed Life Settlement Policies in accordance with its customary practices and procedures, using procedures effected in a manner substantially

10

identical to those it would use in servicing Life Settlement Policies for other third parties and those held for its own account, including compliance with all applicable laws. Nothing in the foregoing or in any other Section of this Agreement shall be construed to prevent the Servicer from implementing new servicing programs, whether on an intermediate, pilot or permanent basis, or on a regional or nationwide basis, or from modifying its servicing standards, policies and procedures as long as, in each case, the Servicer does or would implement such programs or modify such standards, policies and procedures in respect of comparable policies serviced for other third parties and for itself in the ordinary course of business and consistent with all applicable law.

## ARTICLE IV

### SERVICING FEE AND EXPENSES

SECTION 4.01    Servicing Fees. As compensation for the performance of its obligations hereunder, the Purchaser shall cause to be paid to the Servicer the Servicing Fees and Servicer's Extraordinary Expenses described below. For so long as Coventry or an Affiliate thereof is the Servicer hereunder, such Servicer will be responsible for paying the fees of the Purchaser's Securities Intermediary and for advancing or reimbursing to the Purchaser's Securities Intermediary from its own funds any extraordinary out-of-pocket expenses incurred by the Purchaser's Securities Intermediary in the performance of its duties under the Purchaser's Securities Account Control Agreement.

Accrued and unpaid Servicing Fees shall be paid without withholding or deduction for or on account of any present or future taxes. If any such withholding or deduction is so required, the Purchaser shall make the withholding or deduction, pay the amount withheld or deducted to the appropriate authority before penalties attach thereto or interest accrues thereon and pay such additional amount as may be necessary to ensure that the net amount actually received by the Servicer free and clear of any such taxes (including such taxes on such additional amount) is equal to the amount that the Servicer would have received had such taxes not been imposed. If the Servicer or any of its direct or indirect members pays any such taxes, penalties or interest the Purchaser shall reimburse the Servicer or such direct or indirect members, as applicable, for that payment on demand, which demand shall be conclusive absent manifest error. If the Purchaser pays (or causes to be paid) any such taxes, penalties or interest, it shall deliver official tax receipts evidencing that payment or certified copies thereof to the Servicer on whose account such withholding was made on or before the thirtieth (30th) day after payment.

SECTION 4.02    Servicer Extraordinary Expenses. In addition to the payment of the fee specified in Section 4.01, the Purchaser shall cause to be reimbursed to the Servicer amounts advanced or expended by the Servicer in respect of its out-of-pocket extraordinary expenses in connection with its servicing activities under this Agreement,

employee or agent of the Purchaser. The agreements in this Section 8.12(a) shall survive the termination of this Agreement.

(b) The obligations of the Servicer under this Agreement are solely the obligations of the Servicer and payable from and recourse only to the assets of the Servicer. No recourse shall be had for the payment of any amount owing by the Servicer hereunder, or for the payment by the Servicer of any fee in respect hereof or any other obligation or claim of or against the Servicer arising out of or based on this Agreement, against any partner, owner, beneficiary, agent, officer, director, employee or agent of the Servicer. The agreements in this Section 8.12(b) shall survive the termination of this Agreement.

SECTION 8.13   Merger and Integration. This Agreement and the other Transaction Documents to which all of the parties hereto are parties set forth the entire understanding of the parties relating to the subject matter hereof, and all prior understandings, written or oral, are superseded thereby. This Agreement may not be modified, amended, waived or supplemented except as provided herein. The Purchaser expressly acknowledges that the Servicer has not made any representations and warranties other than as set forth herein. The Purchaser represents and warrants to the Servicer that, independently and without reliance upon the Servicer (other than its reliance on the Servicer's representations, warranties and covenants set forth in the Transaction Documents) and based upon such documents and information as it has deemed appropriate, it has made and will continue (to the extent permitted hereunder) to make its own appraisal of and investigation into the business, operations, property, prospects, financial and other conditions and creditworthiness of the Servicer, and its own decision to enter into this Agreement and to take, or omit to take, any action under any Transaction Document. Except for items specifically required to be delivered hereunder, the Servicer shall not have any duty or responsibility to provide the Purchaser or any of its Affiliates any information that comes into the possession of the Servicer or any of its officers, directors, employees, agents, attorneys-in-fact or Affiliates.

SECTION 8.14   Headings. The headings herein are for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof.

SECTION 8.15   Tax Classification. Nothing contained in this Agreement shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent (including dependent agent) or of a partnership or joint venture. The parties hereto agree that they will not take any action contrary to the foregoing intention and agree to report the transaction for all tax purposes consistent with the foregoing intention unless and until determined to the contrary by an applicable tax authority. The agreement in this Section 8.15 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers as of the day and year first above written.

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED,
as Purchaser

By: *John W Perham* (signature)
Name: JOHN PERHAM
Title: CEO

COVENTRY FIRST LLC,
as Servicer

By: _____
Name:
Title:

S-1

Signature Page – Servicing and Monitoring Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers as of the day and year first above written.

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED,
as Purchaser

By:_____
   Name:
   Title:

COVENTRY FIRST LLC,
as Servicer

By:_____
   Name: Alan E. Seldin
   Title: Senior Vice President

S-1

Signature Page – Servicing and Monitoring Agreement