**EXHIBIT 7**

Execution Copy

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED

ABN AMRO BANK N.V.

RITCHIE RISK-LINKED STRATEGIES TRADING, LTD.

RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD.

SANDY RUN LTD.

COVENTRY FIRST LLC

RITCHIE RISK-LINKED STRATEGIES, L.L.C.

MONTGOMERY LIMITED

U.S. BANK NATIONAL ASSOCIATION,
*as Policy Payment Agent*

ABN AMRO BANK N.V. (LONDON BRANCH),
*as Paying Agent,*

ABN AMRO TRUSTEES LIMITED,
*as Indenture Trustee*

and

Each holder of Subordinated Securities or Junior
Notes deemed to be a party hereto

AMENDED AND RESTATED INTERCREDITOR AGREEMENT

*October 21, 2005*

NYB619600.4

WHEREAS, the Issuer, Ritchie, Sandy Delaware, Ritchie U.S., the Investment Manager, the Servicer and U.S. Bank entered into an Intercreditor Agreement dated as of June 30, 2005 (the "Original Agreement"); and

WHEREAS, the Issuer, ABN Amro Bank N.V. (London Branch), Ritchie, Sandy Delaware, Ritchie U.S., the Investment Manager, the Servicer, U.S. Bank, the Policy Payment Agent, the Paying Agent and the Indenture Trustee amended and restated the Original Agreement by entering into an Amended and Restated Intercreditor Agreement dated as of September 8, 2005 (the "Amended Agreement"); and

WHEREAS, the parties hereto wish to amend and restate the Amended Agreement in its entirety and to amend the parties thereto;

NOW, THEREFORE, for full and fair consideration, the parties hereto agree as follows:

## ARTICLE I

### DEFINITIONS

Section 1.1.  *Defined Terms.*  As used herein, the following terms have the following meanings set forth below, and each shall include the singular as well as the plural. Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings set forth in the Glossary of Defined Terms appended to the Master Policy Purchase Agreement.

"**Accreted Principal Amount**," with respect to any Junior Note, has the meaning specified therein.

"**Administration and Servicing Fee**" has the meaning set forth in the Bermuda Servicing Agreement.

"**Affected Party**" has the meaning specified in the Senior Term Loan and Liquidity Agreement.

"**Agreement**" has the meaning specified in the recitals hereto.

"**Bermuda Servicing Agreement**" means that certain Servicing Agreement entered into between the Bermuda Servicer and the Issuer date as of September 8, 2005.

"**Bermuda Servicer**" means Montgomery Limited.

"**Borrowing Base Reserve Allocation Date**" means any date prior to the Stated Maturity Date on which any Advances are outstanding on which the outstanding principal amount of the Subordinated Securities is less than 14.9% of the outstanding principal amount of all Term Loan Advances and Liquidity Advances, all Junior Notes and all Subordinated Securities.

"**Borrowing Base Reserve Release Date**" means the earliest to occur of (i) an Event of Default on or after the Stated Maturity Date, (ii) the date as of which all outstanding Term Loan

"**Transaction Agreements**" means this Agreement, the Junior Notes, the Subordinated Securities, each Junior Note Purchase Agreement, each Subordinated Security Purchase Agreement, the Master Policy Purchase Agreement, the Policy Payment Agency Agreement, the LST Securities Account Control Agreement, the Purchaser's Securities Account Control Agreement, the Coventry First Guaranty, the Ritchie Guaranty, the Ritchie U.S. Guaranty, the Servicing Agreement, the Bermuda Servicing Agreement, the Investment Management Agreement, the Indenture and the Subordinated Indenture.

## ARTICLE II

### PRIORITY OF PAYMENTS

Section 2.1. *Establishment of Payment Account.*

(a) The Paying Agent shall establish at the Paying Agent a segregated account, designated as the "Payment Account" (the "**Payment Account**"), over which the Paying Agent shall have control and dominion and the sole right of withdrawal. The Paying Agent shall thereafter maintain the Payment Account and deposit all Policy Proceeds received by the Paying Agent from the Issuer or otherwise into the Payment Account for the purpose of allocating funds and making payments as specified in the Priority of Payments. In addition, the Issuer may in its discretion deposit additional amounts to the Payment Account. Any and all funds at any time on deposit in, or otherwise to the credit of, the Payment Account shall be segregated on the books and records of the Paying Agent and shall be held by the Paying Agent for the sole and exclusive benefit of the Issuer and the Senior Lender, as a secured party, subject to the terms of this Agreement. Except as provided in this Agreement, the Paying Agent shall make no withdrawal from or application of funds on deposit in, or otherwise to the credit of, the Payment Account. Funds held in the Payment Account shall be invested by the Paying Agent in such Permitted Investments as directed by the Issuer or, following any Event of Default, the Senior Lender.

(b) The Policy Payment Agent shall establish the Servicing Account pursuant to the Policy Payment Agency Agreement. The Paying Agent will deposit therein all amounts to be deposited into the Servicing Account pursuant to the Priority of Payments. The Paying Agent shall make no withdrawal from or application of funds on deposit in, or otherwise to the credit of, the Servicing Account.

Section 2.2. *Deposits; Priority of Payments.*

(a) The Issuer shall (i) on the Closing Date, deposit into the General Account and Servicing Account, respectively, from the proceeds of the sale of the Junior Notes and the Subordinated Securities the reserve amount specified in item (d)(vi) below and (ii) on and after the Closing Date, deposit into the Payment Account any and all Policy Proceeds.

(b) On each Calculation Date, the Issuer, or its agent, shall calculate as of such Calculation Date the funds available in the Payment Account for distribution in accordance with the Priority of Payments on the immediately following Payment Date and shall instruct the Paying Agent in writing as to the amounts to be paid, distributed or deposited pursuant to each

9

Section 7.2. *Amendments; Waivers.* No amendment or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the parties hereto. Each such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise of that right, power or privilege or the exercise of any other right, power or privilege.

Section 7.3. *Continuing Rights.* The provisions of this Agreement are intended solely for the purpose of defining the relative payment rights of the parties hereto. Nothing contained herein is intended to or shall impair the obligations of the Issuer to the holders of the Junior Notes, the Subordinated Securities, the Senior Lender or the other parties to the Transaction Agreements; nor shall anything herein prevent any of the parties hereto from accepting any payment from the Issuer or from exercising all remedies otherwise permitted by applicable law and any agreements with the Issuer upon default by the Issuer under such agreements, subject only to the rights, if any, of the parties under this Agreement.

Section 7.4. *Successors and Assigns; Third Party Beneficiaries.* The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement shall not be transferred or assigned under any circumstances without the prior written consent of the parties hereto; *provided, however,* that any permitted transferee of any Junior Note or Subordinated Securities shall automatically become a party hereto without such prior written consent. Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto and their respective successors and permitted transferees) any legal or equitable right, remedy or claim under or by reason of this Agreement.

Section 7.5. *Severability.* Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

Section 7.6. *Binding Effect.* This Agreement shall remain in full force and effect until such time as all of the obligations under the Transaction Agreements have been paid in full.

Section 7.7. *Governing Law; Consent to Jurisdiction.* THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO ITS CONFLICTS OF LAWS PROVISIONS (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW). EACH PARTY HERETO AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS AGREEMENT MAY BE BROUGHT IN ANY NEW YORK STATE COURT OR ANY FEDERAL COURT, IN EITHER CASE, SITTING IN THE BOROUGH OF MANHATTAN, AND CONSENTS TO THE EXCLUSIVE JURISDICTION OF SUCH COURT AND TO SERVICE OF PROCESS IN ANY SUCH SUIT BEING MADE UPON SUCH PARTY BY MAIL AT THE ADDRESS SPECIFIED IN

SECTION 6.1. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT COURT.

Section 7.8. *Trial by Jury Waived.* Each party hereby waives, to the fullest extent permitted by law, any right to a trial by jury in respect of any litigation arising directly or indirectly out of, under or in connection with any of the Transaction Agreements or any of the transactions contemplated thereunder. Each party hereto (a) certifies that no representative, agent or attorney of any party hereto has represented, expressly or otherwise, that it would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it has been induced to enter into the Transaction Agreements to which it is a party by, among other things, this waiver.

Section 7.9. *Execution in Counterparts.* This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page of this Agreement by telecopy shall be effective as delivery of a manually executed counterpart of this Agreement.

Section 7.10. *Entire Agreement.* This Agreement constitutes the entire contract among the parties relating to the subject matter hereof and supersedes any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

Section 7.11. *No Recourse.* No recourse for or under any obligation, covenant or agreement of the parties hereto contained in this Agreement, or any other agreement, document or instrument executed in connection herewith, shall be had against any member, shareholder, officer, director, employee or agent of the parties hereto, by any proceeding, by virtue of any statute or otherwise; it being expressly agreed and understood that this Agreement is a corporate obligation of the parties hereto, and that no personal liability shall attach to or be incurred by the members, shareholders, officers, directors, employees or agents of the parties hereto, as such, or any of them under or by reason of any of the obligations, covenants or agreements of the parties hereto contained in this Agreement or implied therefrom, and that any and all personal liability for breaches of any such member, shareholder, officer, director, employee or agent of any of such obligations, covenants or agreements, either at law or in equity is hereby expressly waived by the parties hereto as a condition of and in consideration for the execution of this Agreement.

Section 7.12. *No Partnership or Joint Venture.* The parties are not entering into a partnership or joint venture, and none of the provisions of this Agreement shall be deemed to constitute a partnership or joint venture between or among the parties

Section 7.13. *Headings.* Article and Section headings used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first above written.

    RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED

By: _____*[signature]*_____
    Name: Peter Hughes
    Title: Director

ABN AMRO BANK N.V., as Senior Lender

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

RITCHIE RISK-LINKED STRATEGIES TRADING, LTD.

By: _____
    Name:
    Title:

SANDY RUN LTD.

By: _____
    Name:
    Title:

S-1

Signature Page – Amended and Restated Intercreditor Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first above written.

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED

By: _____
   Name:
   Title:

ABN AMRO BANK N.V., as Senior Lender

By: _____Neil R. Stein_____
   Name: Neil R. Stein
   Title: Director

By: _____[signature]_____
   Name: Michael DeMarco
   Title: Assistant Vice President

RITCHIE RISK-LINKED STRATEGIES TRADING, LTD.

By: _____
   Name:
   Title:

SANDY RUN LTD.

By: _____
   Name:
   Title:

S-1

Signature Page – Amended and Restated Intercreditor Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first above written.

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED

By: _____
    Name:
    Title:

ABN AMRO BANK N.V., as Senior Lender

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

RITCHIE RISK-LINKED STRATEGIES TRADING, LTD.

By: _____/s/ John Mulholland_____
    Name: John Mulholland
    Title:

SANDY RUN LTD.

By: _____
    Name:
    Title:

S-1

Signature Page – Amended and Restated Intercreditor Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first above written.

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED

By: _____
Name:
Title:

ABN AMRO BANK N.V., as Senior Lender

By: _____
Name:
Title:

By: _____
Name:
Title:

RITCHIE RISK-LINKED STRATEGIES TRADING, LTD.

By: _____
Name:
Title:

SANDY RUN LTD.

By: _____
Name: Alex E. Seldin
Title:

S-1

Signature Page – Amended and Restated Intercreditor Agreement

RITCHIE RISK-LINKED STRATEGIES, L.L.C.

BY: _____
Name: John Mulholland
Title:

MONTGOMERY LIMITED

BY: _____
Name:
Title:

RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD.

BY: _____
Name: John Mulholland
Title:

COVENTRY FIRST LLC

By: _____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION,
as Policy Payment Agent

By: _____
Name:
Title:

S-2

Signature Page – Amended and Restated Intercreditor Agreement

RITCHIE RISK-LINKED STRATEGIES, L.L.C.

BY: _____
    Name:
    Title:

MONTGOMERY LIMITED

BY: _____
    Name: Jancta Burke Waldron
    Title: Vice-President

RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD.

By: _____
    Name:
    Title:

COVENTRY FIRST LLC

By: _____
    Name:
    Title:

U.S. BANK NATIONAL ASSOCIATION,
    as Policy Payment Agent

By: _____
    Name:
    Title:

S-2

Signature Page – Amended and Restated Intercreditor Agreement

RITCHIE RISK-LINKED STRATEGIES, L.L.C.

BY: _____
     Name:
     Title:

MONTGOMERY LIMITED

BY: _____
     Name:
     Title:

RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD.

By: _____
     Name:
     Title:

COVENTRY FIRST LLC

By: _____
     Name: Alex E. Seldin
     Title:

U.S. BANK NATIONAL ASSOCIATION,
as Policy Payment Agent

By: _____
     Name:
     Title:

S-2

Signature Page – Amended and Restated Intercreditor Agreement

RITCHIE RISK-LINKED STRATEGIES, L.L.C.

By: _____
    Name:
    Title:

MONTGOMERY LIMITED

By: _____
    Name:
    Title:

RITCHIE CAPITAL MANAGEMENT (BERMUDA), LTD.

By: _____
    Name:
    Title:

COVENTRY FIRST LLC

By: _____
    Name:
    Title:

U.S. BANK NATIONAL ASSOCIATION,
as Policy Payment Agent

By: _____
    Name:  Judith M. Zuzek
    Title: Assistant Vice President

S-2

Signature Page – Amended and Restated Intercreditor Agreement

ABN AMRO BANK N.V. ACTING OUT OF ITS
LONDON BRANCH, as Paying Agent

By: _____
Name:
Title:   JACQUI TATE
         Authorised Signatory

By: _____
Name:  PETER ELSWOOD
Title:  Authorised Signatory

ABN AMRO TRUSTEES LIMITED,
as Indenture Trustee

By: _____
Name:
Title:   JACQUI TATE
         Authorised Signatory

By: _____
Name: PETER ELSWOOD
Title:  Authorised Signatory

S-3

Signature Page – Amended and Restated Intercreditor Agreement