**EXHIBIT 12**

Case 1:07-cv-03494-DLC    Document 57-13    Filed 09/21/2007    Page 1 of 6

EXECUTION COPY

# INVESTMENT ADMINISTRATION AND SERVICES AGREEMENT

by and between

Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited

and

Montgomery Limited

As of December 15, 2005

EXECUTION COPY

THIS INVESTMENT ADMINISTRATION AND SERVICING AGREEMENT (the "Agreement") is made effective as of the 15th day of December, 2005, by and between **RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED**, an Irish corporation (the "Company") and **MONTGOMERY LIMITED**, a Bermuda company (the "Bermuda Servicer").

**WITNESSETH:**

**WHEREAS**, the Company wishes to appoint the Bermuda Servicer to advise on the management and trading of its assets, and the Bermuda Servicer wishes to accept such appointment, in each case on the terms set forth herein.

**NOW THEREFORE**, in consideration of the premises and the mutual covenants contained herein, the parties hereto agree as follows:

1. **Confirmation of Appointment.**

Subject to the ultimate supervision of the Board of Directors of the Company (the "Directors"), the Company hereby confirms the appointment of the Bermuda Servicer as the Bermuda Servicer with respect to the assets of the Company, and the Bermuda Servicer hereby confirms its acceptance of such appointment and agrees to perform its obligations in accordance with the terms set forth herein.

2. **Authority and Duties of the Bermuda Servicer.**

(a) The Bermuda Servicer shall serve as the Bermuda Servicer to the Company and shall in that capacity consult with, give advice to and make recommendations to the Company concerning (i) the identification of potential purchasers of, and the conduct of any sale by it of, life insurance policies it has acquired from time to time, (ii) the value and marketability of its portfolio of life settlement policies or of individual policies or groups of policies, (iii) the selection of brokers, dealers, banks and other intermediaries by or through whom such transactions might be executed or carried out, (iv) the issuance of notes or debt obligations whose payment may secured by or depend in part or in whole on the proceeds of such life insurance policies, and the identification of potential investors or lenders with respect thereto, insofar as such advice does not amount to investment activities pursuant to the Investment Business Act 2003 or an exemption notification has been filed in accordance with the Investment Business (Exemptions) Order 2004, and (v) such other related or ancillary matters as the Company and Bermuda Servicer may identify from time to time.

(b) The Bermuda Servicer shall not effect any transactions for the account of the Company as principal or agent.

3. **Other Activities and Investments.**

(a) This Agreement shall not restrict in any way the ability of the Bermuda Servicer, its affiliates and their principals and employees to engage in any other business or investment activities. It is expressly understood that the Bermuda Servicer, its affiliates and their principals

in respect of interest and accreted principal amounts pursuant to Section 2.2(d)(vii) of the Intercreditor Agreement, an amount equal to 25% of the aggregate amount of such payment (computed without regard to any VAT or similar taxes or charges that are imposed on the Company).

"Subordinated Administrative and Servicing Fees" means, on each Interest Payment Date (as defined in the Intercreditor Agreement) on and after the date on which the principal amount of all Subordinated Securities has been repaid in full, 20% of the Net Return (as defined in the Subordinated Securities, and computed without regard to any VAT or similar taxes or charges that are imposed on the Company) on such Interest Payment Date.

(c)     All amounts payable to the Bermuda Servicer in respect of compensation or expense reimbursements shall be paid by wire transfer of immediately available funds in US Dollars within three Business Days of the date when due. Any such amounts due but not timely paid (for whatever reason) shall bear interest at one-month LIBOR plus 200 basis points beginning with the fourth Business Day after the date when due. Any failure to make timely payment shall constitute a material breach of the Agreement by the Company. In the event of any dispute concerning any amounts so due, the Company shall, at the request of the Bermuda Servicer, immediately pay over to the Bermuda Servicer the full amount not the subject of dispute, pending final resolution of the exact amount due. For purposes hereof, Business Days shall be days other than Saturdays, Sundays and days on which banks in Ireland are authorized or required to close.

5.     **Scope of Liability.**

The Company agrees that the Bermuda Servicer shall not be liable to it or any of its shareholders, officers, directors or affiliates for any losses, damages, expenses or claims occasioned by any act or omission of the Bermuda Servicer in connection with the performance of its services hereunder, other than as a result of the Bermuda Servicer's gross negligence, bad faith, willful misconduct or reckless disregard of any of the Bermuda Servicer's obligations under this Agreement or as otherwise prescribed by applicable law. The Company explicitly recognizes that the investment advisory services of the Bermuda Servicer will be based on advice and information deemed to be reliable, but not independently verified or guaranteed by the Bermuda Servicer.

6.     **Independent Contractor.**

For all purposes of this Agreement, the Bermuda Servicer shall be an independent contractor and not an employee or dependent agent of the Company; nor shall anything herein be construed as making the Company a partner or co-venturer with the Bermuda Servicer or any of its affiliates or other Clients. Except as provided in this Agreement, the Bermuda Servicer, in its capacity as such, shall have no authority to bind, obligate or represent the Company.

7.     **Term; Termination.**

This Agreement shall commence on the date hereof and shall continue in effect until (a) dissolution of the Company; (b) the bankruptcy, liquidation or dissolution of the Bermuda Servicer; or (c) the sale of all life insurance policies owned by the Company and payment of all

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

Executed by:

RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND) II, LIMITED

By: _____John W Perham_____
  Name: JOHN PERHAM
  Title: CEO


MONTGOMERY LIMITED

By: _____
  Name:
  Title:

S-1

Signature Page – Investment Administration and Services Agreement

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

Executed by:

**RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED**

By: _____
    Name:
    Title:

**MONTGOMERY LIMITED**

By: _____
    Name: JANITA BURKE WALDRON
    Title: VICE PRESIDENT