UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT LLC, ) | |
| RITCHIE RISK-LINKED STRATEGIES ) | |
| TRADING (IRELAND), LIMITED, RITCHIE ) | |
| RISK-LINKED STRATEGIES TRADING ) | |
| (IRELAND) II, LIMITED, WALKERS SPV ) | |
| LIMITED, as trustee for Ritchie Risk-Linked ) | Civil Action No. 07CV3494 (DLC) (DCF) |
| Life Strategies Trust I and Ritchie Life Strategies ) | |
| Master Trust, and RITCHIE RISK-LINKED ) | (ECF) |
| STRATEGIES TRADING, LTD., ) | |

                          Plaintiffs,                )
                                                     )
            v.                                       )
                                                     )
COVENTRY FIRST LLC, THE COVENTRY      )
GROUP, INC., MONTGOMERY CAPITAL, INC., )
LST I LLC, ALAN BUERGER, CONSTANCE     )
BUERGER, REID S. BUERGER, ANTONIO      )
MUNIZ, ALEX SELDIN, NEAL JACOBS,       )
EILEEN SHOVLIN, and JIM DODARO,        )
                                                     )
                          Defendants.               )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS COUNTS I & II OF PLAINTIFFS'
## PROPOSED SECOND AMENDED COMPLAINT

WILLIAMS & CONNOLLY LLP

_____/s/_____
Katherine G. Lindsey (KL-0902)
Dane H. Butswinkas
Robert M. Cary
David A. Forkner
Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)

Dated:  September 21, 2007          *Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

FACTUAL BACKGROUND ....................................................................................................1

ARGUMENT ...........................................................................................................................2

I.  THE COURT LACKS PERSONAL JURISIDCTION OVER THE
    INDIVIDUAL DEFENDANTS..........................................................................................2

II. PLAINTIFFS LACK STANDING TO ASSERT RICO CLAIMS ....................................7

    A.  Plaintiffs' Alleged Injuries Were Not Proximately Caused by RICO
        Violations................................................................................................................7

    B.  Plaintiffs Fail Properly to Allege Clear and Definite RICO Damages ....................10

    C.  The "Investing Plaintiffs' Lack Standing to Assert RICO Claims............................12

III. PLAINTIFFS FAIL PROPERLY TO ALLEGE A PATTERN OF TWO OR
     MORE PREDICATE ACTS ...........................................................................................14

    A.  Plaintiffs Fail Adequately to Plead Two Predicate Acts...........................................15

        1.  Plaintiffs Fail To Allege Certain Predicate Acts of Mail and Wire
            Fraud with Particularity as Required by Rule 9(b) ...........................................15

        2.  Plaintiffs Fail To Allege Wire Fraud Based on LST I's Pre- and
            Post-Contractual Dealings with Ritchie I and II ...............................................17

        3.  Intra-Office E-Mails Among Defendants Fail To Satisfy the Interstate
            Transmission Requirement of 18 U.S.C. § 1343 ...............................................18

        4.  Plaintiffs Fail To Establish Reliance on Communications Between
            Defendants and Third-Party Brokers .................................................................19

    B.  Plaintiffs Fail To Establish Continuity....................................................................20

        1.  Plaintiffs Fail To Allege Closed-Ended Continuity...........................................20

        2.  Plaintiffs Fail To Allege Open-Ended Continuity .............................................21

IV. THE CORPORATE DEFENDANTS CANNOT BE RICO "PERSONS" GIVEN
    THE ENTERPRISES IDENTIFIED BY PLAINTIFFS...................................................23

V.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(d).....................24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234 (2d Cir. 1996)...................................9

*Alex Brown & Sons, Inc. v. Marine Midland Banks, Inc.*, No. 96 Civ. 2549 RWS,     1997
    WL 97837 (S.D.N.Y. Mar. 6, 1997) ................................................................1

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06 Civ.
    5383(JGK), 2007 WL 2077153 (S.D.N.Y. July 20, 2007) ...............................18

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994)............................8, 9

*Am. Home Mortgage Corp. v. UM Sec. Corp.*, No. 05 Civ. 2279, 2007 WL 1074837
    (S.D.N.Y. Apr. 9, 2007)...................................................................................12

*Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999).......................15

*Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F. Supp. 2d 126
    (S.D.N.Y. 2003) ...............................................................................................11

*Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006)...................................7, 10, 12

*At The Airport, LLC v. Isata, LLC*, 438 F. Supp. 2d 55 (E.D.N.Y. 2006) ....................13

*Avecmedia, Inc. v. Gottschalk*, No. 03 Civ. 7831, 2004 WL 1586411
    (S.D.N.Y. July 14, 2004) ...................................................................................5

*Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) ........................................19

*BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon*, 43 F. Supp. 2d 359
    (S.D.N.Y. 1999)...............................................................................................13

*Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006) .....................4

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................................1

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997)............................................5

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069
    (S.D. Ind. 2001) ...............................................................................................12

*Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36 (S.D.N.Y. 1983)..............................3

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)...................................23

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F. Supp. 213 (S.D.N.Y. 1992).........18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)....................................18

*Chandradat v. Navillus Tile*, No. 03 Civ. 10093(RJH), 2004 WL 2186562
    (S.D.N.Y. Sept. 28, 2004) ................................................................................13

*Chong v. Healthtronics, Inc.*, No. CV-06-1287 SJF MLO, 2007 WL 1836831
(E.D.N.Y. June 20, 2007) ................................................................................6

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999).............14, 18, 21

*CPF Premium Funding, Inc. v. Ferrarini*, No. 95 Civ. 4621(CSH), 1997 WL 158361
(S.D.N.Y. Apr. 3, 1997).................................................................................25

*Crab House of Douglaston, Inc. v. Newsday*, Inc., 418 F. Supp. 2d 193, 206
(E.D.N.Y. 2006)............................................................................................24

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ........................................4

*Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250 (S.D.N.Y. 2006)...........................3

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ........................................................20

*Defazio v. Wallis*, No. 05-CV-5712 (ADS)(ARL), 2007 WL 2193929
(E.D.N.Y. July 14, 2007) ..........................................................................16, 19

*Dietrich v. Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999)................................................24

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ...........................................7

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)................................5, 6

*Drake v. Lab. Corp. of Am. Holdings*, No. 02-CV-1924 (FB) (RML), 2007 WL 776818
(E.D.N.Y. Mar. 13, 2007) ..............................................................................6

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168
(2d Cir. 2004)............................................................................................15

*FD Property Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362 (E.D.N.Y. 2002).......22, 23

*Fezzani v. Bear, Stearns & Co., Inc.*, No. 99CIV0793RCC, 2005 WL 500377
(S.D.N.Y. Mar. 2, 2005) ...............................................................................14

*Finnegan v. Univ. of Rochester Med. Ctr.*, 180 F.R.D. 247 (W.D.N.Y. Jun 30, 1998)...................1

*First Capital Asset Memt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ........................ *passim*

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).......................7, 11, 12

*Fogie v. THORN Ams., Inc.*, 190 F.3d 889 (8th Cir. 1999) ...........................................25

*Gates v. Wilkinson*, No. 01 Civ. 3145 GBD, 2003 WL 21297296, at *1
(S.D.N.Y. Jun. 4, 2003) ................................................................................3

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) ....................20, 21, 22

*Greenwald v. Hall*, No. 01 Civ. 5405(RO), 2003 WL 164279 (S.D.N.Y. Jan. 23, 2003).............13

*Gross v. Bare Escentuals, Inc.*, No. 03 Civ. 3089(RLC), 2005 WL 823889
(S.D.N.Y. Apr. 8, 2005)..............................................................................3

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996)................................................15, 17

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................9, 24

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)..............................7, 10, 13

*Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997)..................17

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)........................................4

*Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319 (S.D.N.Y. 1998)..................................5, 6

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).........................................2

*Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976 (S.D.N.Y. 1992) ...........................5

*Kirwin v. Price Comms. Corp.*, 391 F.3d 1323 (11th Cir. 2004)..................................25

*Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798 (S.D.N.Y.), *aff'd*, 527 F.2d 87
(2d Cir. 1975)...............................................................................6

*Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002).............................................1

*Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993)..............................................13

*Mathon v. Feldstein*, 303 F. Supp. 2d 317 (E.D.N.Y. 2004) .....................................18

*McCoy v. Goldberg*, 748 F. Supp. 146 (S.D.N.Y. 1990)..........................................18

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992)..........................................23

*Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006)............5

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ..................................16

*Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003)....................................12

*Nader v. Getschaw*, No. 99 Civ. 11566 (LAP), 2000 WL 1471553
(S.D.N.Y. Sept. 29, 2000)..................................................................4

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514
(S.D.N.Y. 2001)..........................................................................15, 24

*Nat'l Group for Commc'ns. & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253
(S.D.N.Y. 2006)...........................................................................24

*Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*, No. 03 Civ. 0613 (GBD),
2004 WL 2848524 (S.D.N.Y. Dec. 09, 2004) ..................................................2

*Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139 (2d Cir. 2003), *rev'd
on other grounds*, 544 U.S. 197 (2005) ......................................................1

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000)................................25

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)....................11

*Plount v. Am. Home Assurance Co., Inc.*, 668 F. Supp. 204 (S.D.N.Y. 1987)............22

*PT United Can Co. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2d Cir. 1998) .......2

*Puerto Rico Maritime Shipping Auth. v. Almogy*, 510 F. Supp. 873 (S.D.N.Y. 1981)...................4

*Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843 (2d Cir. 1986)..............................13, 14

*Regency Capital, LLC v. Corpfinance Int'l, Inc.*, No. 02 Civ. 5615 (KTD), 2003 WL 22400200 (S.D.N.Y. Oct. 20, 2003) ....................................................2

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, N0. 07 Civ. 3494, 2007 WL 2044656 (S.D.N.Y. July 17, 2007) ............................................. *passim*

*Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) .......................................................................25

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ..................................................7

*Singh v. Parnes*, 199 F. Supp. 2d 152 (S.D.N.Y. 2002) .........................................21, 22

*Skylon Corp. v. Guilford Mills, Inc.*, No. 93-CV-5581, 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997) .........................................................................22, 25

*Sobek v. Quattrochi*, No. 03 Civ. 10219(RWS), 2004 WL 2809929 (S.D.N.Y. Dec. 8, 2004)...........................................................................14

*Societe Anonyme v. Pharaon*, 43 F. Supp. 2d 359, 365-66 (S.D.N.Y. 1999) ..............13

*Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997 (2d Cir. 1988) ......................................16

*United Artists Theatre Circuit v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342 (E.D.N.Y. 2005)....................................................................17

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082 (2d Cir. 1995)..........................................................................6

*Utz v. Correa*, 631 F. Supp. 592 (S.D.N.Y. 1986) ......................................................19

*Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216 (S.D.N.Y. 2002)...........9, 16

*Wachovia Bank v. Schmidt*, 126 S. Ct. 941 (2006) ......................................................2

*Walther v. Maricopa Int'l Inv. Corp.*, No. 97 Civ. 4816(HB), 1998 WL 186736 (S.D.N.Y. Apr. 17, 1998)............................................................................6

*Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234 (S.D.N.Y. 2002)...................21

*Welsh v. Servicemaster Corp.*, 930 F. Supp. 908 (S.D.N.Y. 1996) .............................6

*Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544 (E.D.N.Y. 2005) .......................................21

## STATE CASES

*Lama Holding Co. v. Smith Barney, Inc.*, 688 N.E.2d 1370 (N.Y. 1996) ....................................11

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488 (N.Y. 1990)..............3

*Laufer v. Ostrow*, 434 N.E.2d 692 (N.Y. 1982)............................................................3

*People v. Byrne*, 570 N.E.2d 1066 (N.Y. 1991) ...........................................................24

## FEDERAL STATUTES

15 U.S.C. § 22.............................................................................................................3

18 U.S.C. § 1341.................................................................................................15, 16

18 U.S.C. § 1343.............................................................................................15, 16, 18

18 U.S.C. § 1962(c) ............................................................................................. *passim*

18 U.S.C. § 1962(d) ............................................................................................. *passim*

18 U.S.C. § 1964(c) .................................................................................................14

18 U.S.C. § 1965.....................................................................................................2, 3

Fed. R. Civ. P. 8(a) ................................................................................................23

Fed. R. Civ. P. 9(b) ............................................................................................. *passim*

Fed. R. Civ. P. 12(b)(2).............................................................................................2, 6

Fed. R. Civ. P. 12(b)(6)..........................................................................................7, 18

Fed. R. Civ. P. 16(b) ...............................................................................................25

## STATE STATUTES

N.Y. C.P.L.R. § 301 ...............................................................................................3, 4

N.Y. C.P.L.R. § 302................................................................................................3, 4, 5, 6

On July 17, 2007, the Court dismissed Plaintiffs' complaint in its entirety.  As to

Plaintiffs' §§ 1962(c) and (d) RICO claims, the Court noted that "[i]t [was] impossible to assess

whether the complaint states a claim without having a more definite statement of the claim."

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC), 2007 WL

2044656, at *10 (S.D.N.Y. July 17, 2007) ("*Ritchie*").  Consequently, the Court granted

Plaintiffs leave to replead these claims, which Plaintiffs have attempted to do in Counts I and II

of their proposed second amended complaint ("SAC").[1]  Like its predecessor, however, the SAC

contains RICO allegations that are legally insufficient and implausible, consisting of little more

than "labels and conclusions, and a formulaic recitation of the elements of cause[s] of action."

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  As such, Plaintiffs' repleaded

RICO claims should be rejected.  *See id.* (deficiencies in the complaint should "be exposed at the

point of minimum expenditure of time and money by the parties and the court").[2]

## FACTUAL BACKGROUND

Coventry First LLC ("Coventry First") created, and remains the leading company in, the

life settlement industry.  SAC ¶ 40.  Its business operations include the purchase of life insurance

policies ("Policies"), which it either holds or sells to third-parties.  In cases where it holds

Policies, Coventry First pays applicable premiums and collects the death benefits.  *Id.* ¶ 37.

Here, by contrast, Coventry First sold Policies to LST I, LLC ("LST I"), which in turn sold them

---

[1]  The Court also permitted Plaintiffs to replead their breach of contract claim.  *See* SAC ¶¶ 122-
29 (Count V).  Because a partial motion to dismiss extends the time to answer, Defendants have
not answered Plaintiffs' breach of contract claim.  *See Finnegan v. Univ. of Rochester Med. Ctr.*,
180 F.R.D. 247, 250 (W.D.N.Y. June 30, 1998); *Alex Brown & Sons, Inc. v. Marine Midland
Banks, Inc.*, No. 96 Civ. 2549 RWS, 1997 WL 97837, at *7 (S.D.N.Y. Mar. 6, 1997).

[2]  These repleaded claims are not part of Plaintiffs' motion for reconsideration.  Therefore,
Defendants have filed this motion (1) to dismiss those claims in the event the Court allows
Plaintiffs to file Counts I and II of the SAC or (2) to demonstrate the futility of  Plaintiffs'
proposed amendments.  *See Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139,
168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005) ("A proposed amendment to a
pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule
12(b)(6)."); *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (same).

to Ritchie Risk Linked Strategies (Ireland) I ("Ritchie I") and Ritchie Risk Linked Strategies (Ireland) II ("Ritchie II"). The LST I-Ritchie sales were made pursuant to two Master Policy Purchase Agreements ("MPPAs"), which were negotiated at arm's length by experienced counsel representing each party. SAC. ¶ 6. These transactions are the centerpiece of this dispute. LST I negotiated and performed the MPPAs in good faith, and Defendants made no misrepresentations to Plaintiffs. Nevertheless, as required, Defendants assume that Plaintiffs' factual allegations are true for the purpose of the motion to dismiss.

## ARGUMENT

### I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

Plaintiffs bear the burden of separately establishing personal jurisdiction over each defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum state must be assessed individually."). They fail to carry that burden for the individual defendants. Thus, Plaintiffs' RICO claims against these defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Title 18 U.S.C. § 1965 controls the exercise of personal jurisdiction under RICO. Pursuant to § 1965(a), "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *PT United Can Co. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). Jurisdiction over the remaining defendants can be obtained under § 1965(b), but only on a "showing that the 'ends of justice' so require." *Id.* To satisfy that requirement, Plaintiffs must establish that no district court could exercise personal jurisdiction over all Defendants. *Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*, No. 03 Civ. 0613 (GBD), 2004 WL 2848524, at *7 (S.D.N.Y. Dec. 9, 2004); *Regency Capital, LLC v. Corpfinance Int'l., Inc.*, No. 02 Civ. 5615 (KTD), 2003 WL 22400200, at *1 (S.D.N.Y. Oct. 20, 2003).

This impossibility of trial in one action does not apply here, as the Eastern District of Pennsylvania could exercise personal jurisdiction over all Defendants. Each Defendant is either

a resident of, incorporated in, or has its principal place of business and members in Pennsylvania. *See* SAC ¶¶ 25–35; *Wachovia Bank v. Schmidt*, 126 S.Ct. 941, 952 (2006) (corporation's citizenship stems from its state of incorporation and principal place of business); *see also Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 258 (S.D.N.Y. 2006) ("[C]itizenship of a limited liability corporation is determined by reference to the citizenship of its members.") (citations omitted). Consequently, to maintain personal jurisdiction over the individual defendants, Plaintiffs must establish each of them has minimum contacts with New York.

Plaintiffs seek to establish minimum contacts for the individual defendants under § 1965(a) by citing to New York law – specifically caselaw concerning general jurisdiction, as codified in N.Y. C.P.L.R. § 301 and New York's long-arm statute, N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(2), and 302(a)(3). *See* SAC. ¶ 13.[3] Initially, Plaintiffs fail to allege facts giving rise to general jurisdiction over these Defendants under § 301. New York courts have general jurisdiction over a non-domiciliary if it is engaged in a continuous and systematic course of business there. *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990) (citations omitted). Plaintiffs, however, do not allege the individual defendants conducted a continuous or systematic course of business in New York. Nor can they. To satisfy § 301, the individual defendants must conduct business in New York in their individual capacity. *See Laufer v. Ostrow*, 434 N.E.2d 692, 696 (N.Y. 1982). Plaintiffs must also allege the individual defendants were conducting business "at the time the action is brought." *Gross v.*

---

[3] Under the RICO statute, any civil RICO case "may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). None of these statutory factors provides for personal jurisdiction over the individual defendants. The individual defendants do not reside in this district. Likewise, none of the individual defendants may be "found" in this district or has an agent in this district. Finally, the "transacts his affairs" language of § 1965(a) has been held to be synonymous with the "transacts business" language of § 12 of the Clayton Act, 15 U.S.C. § 22. *Gates v. Wilkinson*, No. 01 Civ. 3145 GBD, 2003 WL 21297296, at *1 (S.D.N.Y. Jun. 4, 2003). The test for transacting business for venue purposes under the antitrust laws, in turn, is co-extensive with the test for jurisdiction under New York C.P.L.R. § 302. *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 39-40 (S.D.N.Y. 1983). Plaintiffs have failed to establish jurisdiction under § 302, as discussed, *infra*.

*Bare Escentuals, Inc.*, No. 03 Civ. 3089(RLC), 2005 WL 823889, at *3 (S.D.N.Y. Apr. 8, 2005); *Puerto Rico Maritime Shipping Auth. v. Almogy*, 510 F. Supp. 873, 878 (S.D.N.Y. 1981). The SAC is devoid of such allegations.

Plaintiffs also fail to allege personal jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(2), or 302(a)(3). The statute provides several bases upon which to allege personal jurisdiction. Plaintiffs have not alleged an adequate factual basis for any of them. First, § 302(a)(1) allows for personal jurisdiction over a non-domiciliary who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). A non-domiciliary transacts such business "when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Although Plaintiffs recite the elements of § 302(a)(1), *see* Compl. ¶ 5, they do not allege sufficient facts to support those elements with respect to the individual defendants. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (rejecting allegations regarding jurisdiction that were nothing more than a "restatement" of the standards laid out in the case law).

Plaintiffs claim "Coventry employees and executives frequently communicated by email and telephone with RCM employees in New York," including Alan Buerger, Reid Buerger, Antonio Muniz, and Alex Seldin. SAC ¶ 17. But unspecified e-mail and telephone communications by "Coventry employees" are insufficient. *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 388 (S.D.N.Y. 2006); *see also Nader v. Getschaw*, No. 99 Civ. 11556 (LAP), 2000 WL 1471553, at *5 (S.D.N.Y. Sept. 29, 2000) (mere fact that parties discussed terms of services over the telephone while plaintiff was in New York, in and of itself, does not confer jurisdiction over defendants).[4] Even where there is a showing that business was

---

[4] Here, LST I – a Delaware Corporation with its principal place of business in Pennsylvania – contracted to sell Policies to Ritchie I and II, two "Irish corporations with offices in Ireland." SAC ¶ 22. To the extent plaintiffs purchased subordinated securities from these Irish corporations, those plaintiffs are not domiciled in New York, and the purchases would have taken place in Ireland. *See id.* ¶¶ 21, 23-24.

transacted, there must be a "substantial nexus" between that business and the cause of action. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006); *Avecmedia, Inc. v. Gottschalk*, No. 03 Civ. 7831, 2004 WL 1586411, at *5 (S.D.N.Y. July 14, 2004) (cause of action "arises from" a defendant's New York contacts if the contacts are "substantially proximate to the allegedly unlawful acts"). Here, Plaintiffs have not identified e-mail or telephone communications in New York by individual defendants that have a substantial nexus to Policies purchased by Ritchie I and II or the claims in this litigation.

Alternatively, Plaintiffs claim the individual defendants controlled Coventry First. *Id.* To make a prima facie showing of control, however, Plaintiffs must "sufficiently detail the Defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (citations omitted). Importantly, "control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Id.*; *see also Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992). Plaintiffs also fail to allege facts suggesting the individual defendants exercised control over Coventry First or LST I in the transaction at issue – the sale of Policies to Ritchie I and II. *See Karabu*, 16 F. Supp. 2d at 325 (dismissing complaint against individual defendants that was "devoid of any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played").

Second, § 302(a)(2) provides "personal jurisdiction over any non-domiciliary . . . who . . . commits a tortious act within the state . . . ." *Id.* To qualify, a defendant's tortious conduct must have occurred within New York. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). Plaintiffs do not allege the individual defendants committed tortious acts while physically present in New York. *See id.* (defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)).

Third, Plaintiffs fail to identify tortious acts by individual defendants outside of New York that caused injury to a person in New York as required by § 302(a)(3)(ii). By its terms, § 302(a)(3)(ii) applies only to tort claims – not RICO. *Walther v. Maricopa Int'l. Inv. Corp.*, No. 97 Civ. 4816(HB), 1998 WL 186736, at *8 n.3 (S.D.N.Y. Apr. 17, 1998). Moreover, Plaintiffs do not – and cannot – allege they were injured in New York. *See* SAC ¶¶ 21-24. Plaintiffs are thus forced to argue that individual defendants "bought hundreds, if not thousands, of life insurance policies – including on information and belief policies procured by fraud and bid-rigging. . . ." SAC ¶ 18. But that allegation is insufficient to confer personal jurisdiction for a variety of reasons.

Conclusory allegations stated only upon "information and belief" do not establish personal jurisdiction. *Chong v. Healthtronics, Inc.*, No. CV-06-1287 SJF MLO, 2007 WL 1836831, at *6 (E.D.N.Y. June 20, 2007); *see also United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir. 1995) (refusing to consider attorney affidavit not based on personal knowledge for the purposes of Rule 12(b)(2) motion); *Welsh v. Servicemaster Corp.*, 930 F. Supp. 908, 909 (S.D.N.Y. 1996). Nor do Plaintiffs specify which if any of the Policy owners were allegedly injured, which, if any, individual defendants were allegedly involved in the sale of tainted Policies, whether individual defendants were primary actors in these transactions, *see Karabu Corp.*, 16 F. Supp. 2d at 324, or whether Plaintiffs purchased policies from New York policy holders who were allegedly defrauded. *See D.H. Blair & Co.*, 462 F.3d at 105. Finally, Plaintiffs fail to allege that any individual defendant derived substantial revenue from interstate commerce as required under § 302(a)(3)(ii). *See Drake v. Lab. Corp. of Am. Holdings*, No. 02-CV-1924 (FB) (RML), 2007 WL 776818, at *11 (E.D.N.Y. Mar. 13, 2007) ("revenues from interstate commerce derived by a corporation cannot be attributed to its non-domiciliary employee"); *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 805 (S.D.N.Y.) (same), *aff'd*, 527 F.2d 87 (2d Cir. 1975).

## II.    PLAINTIFFS LACK STANDING TO ASSERT RICO CLAIMS.

"A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and only when his or her 'actual loss becomes clear and definite.'" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994)). Plaintiffs cannot satisfy either requirement, and their RICO claims consequently should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.    Plaintiffs' Alleged Injuries Were Not Proximately Caused by RICO Violations.

Under 18 U.S.C. § 1962(c), Plaintiffs must allege they were harmed directly by the conduct constituting the RICO violation, *i.e.*, the predicate acts. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.") (footnote omitted). Plaintiffs must show the predicate acts "not only [were] a 'but for' cause of [their alleged] injury, but [were] the proximate cause as well." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1998 (2006); *First Nationwide*, 27 F.3d at 769 ("[T]o have standing under RICO, the plaintiff must allege that the defendant's violations were a proximate cause of the plaintiff's injury, *i.e.*, that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct.") (quotation omitted).

Here, the connection between the alleged predicate acts and the injury alleged is too attenuated to satisfy the proximate cause requirement. The alleged predicate acts consist almost entirely of mail and wire fraud against Policy owners. *See* SAC ¶¶ 84(e)-(q).[5] As in their

---

[5] Indeed, Plaintiffs' allegations concerning predicate acts are based almost entirely on the allegations made by the NYAG, whose lawsuit is unrelated to any Plaintiff in this case. The only exceptions are (1) allegations so devoid of specifics as to plainly violate Fed. R. Civ. P. 9(b), *see* SAC ¶¶ 84(a)-(d); and (2) two allegations of fraud against one or more Plaintiffs that fail to state

7

original complaint, Plaintiffs' theory of harm is *not* that Ritchie I or II were directly harmed by purchasing specific Policies tainted by alleged fraud. That theory would limit Plaintiffs' recovery, if any, to the affected Policies. Instead, Plaintiffs theorize that the value of all Policies purchased by Ritchie I and II declined after the NYAG filed a civil lawsuit that exposed Defendants' allegedly unlawful Policy origination practices. *See id.* ¶ 86 ("The market value of those policies has greatly diminished since the [NYAG]'s action was commenced."); *id.* ¶ 95 ("Defendants also knew that they were participating in fraud on the owners of the policies – fraud that, *if it came to light*, would greatly diminish the salability and value of the policies and destroy the possibility of realizing a profit through the securitization.") (emphasis added). This exposure, in turn, allegedly caused Moody's Investor Services ("Moody's") to withdraw a preliminary securitization rating for a small number of the Policies purchased by Ritchie I and II. *See id.* ¶ 88 ("When the [NYAG]'s action became public, Moody's withdrew its rating. . . ."). Plaintiffs claim the withdrawal of Moody's rating "interfered with the salability and value of the life insurance policies at issue." *Id.* ¶ 90.

Plaintiffs' alleged harm does not flow directly from the predicate acts. <u>First</u>, Plaintiffs claim they were injured by disclosure of the alleged predicate acts to the market, rather than the acts themselves. If, as Plaintiffs allege, Moody's withdrew its rating due to the filing of the NYAG complaint, *see* SAC ¶ 88 (rating alleged withdrawn due to "uncertainty surrounding the transaction in light of the complaint filed by the [NYAG]"); *id.* ¶ 86 ("The market value of those policies has greatly diminished since the [NYAG]'s action was commenced."), then Plaintiffs were harmed by a market reaction to the filing of a civil suit alleging misconduct. Such harm does not establish proximate causation as a matter of law. *See In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994) (dismissal of RICO claims brought by corporate shareholders whose alleged injuries were not proximately caused by the alleged predicate acts of

---

a mail or wire fraud claim for the same reason they fail to state a common law fraud claim, *see* SAC ¶¶ 84(r) and (s). *See* Section IV.A.2, *infra*.

fraud and bribery, but rather by the fact that those activities did not have their intended effect and instead were uncovered and exposed); *Abrahams v. Young & Rubicam, Inc.* 79 F.3d 234, 239 (2d Cir. 1996) (dismissal where plaintiff injured only "by fallout from the scheme's exposure"); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (no proximate causation where former employee alleged exposure of RICO scheme had resulted in his economic loss). Indeed, under their theory, Plaintiffs would be harmed whether or not Defendants engaged in improper Policy origination practices, *i.e.*, whether or not the NYAG suit was ultimately resolved in Defendants' favor. Proximate causation plainly does not exist under these circumstances. *See Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002) (dismissing RICO claim where the alleged injury "happened, or could have happened" even absent the predicate acts).

Second, Plaintiffs stood to benefit from the alleged predicate acts. Under Plaintiffs' theory, Defendants and the Investing Plaintiffs were "co-owners" of Ritchie I and II. SAC ¶ 8. Defendants sold Policies to Ritchie I and II, "intend[ing] all along that [Ritchie I and II] would re-sell the life insurance products at a profit in a securitization transaction." *Id.* ¶ 7. Those profits were allegedly to be shared by Defendants and the Investing Plaintiffs. *Id.* ¶¶ 8, 45 ("[P]rofits and losses would be shared."). Had the NYAG suit never been filed, under Plaintiffs' theory, the Plaintiffs and Defendants would have *benefited* from the alleged predicate acts by gaining a larger, more diverse portfolio of policies than would have been available for sale absent Defendants' alleged misconduct. *See* NYAG Compl. ¶ 26 (purpose of bid rigging allegedly was to ensure Coventry First would win policy auctions). Where, as here, Plaintiffs claim to be harmed by conduct from which they would have benefited, they cannot establish proximate causation. *See In re Am. Express Co.*, 39 F.3d at 400 (dismissing claims where defendants' actions, "however misguided and injurious to American Express in the end, were undertaken to further American Express's competitive interests").

Third, Plaintiffs do not sufficiently allege Ritchie I or II actually purchased improperly originated Policies. Nor can they. Plaintiffs claim "Coventry" sells Policies to a number of

institutional investors, including American International Group ("AIG"), Citigroup, and Berkshire Hathaway. SAC ¶ 41. According to Plaintiffs, "[b]y 2005, Coventry First or its affiliates had purchased 1,318 life insurance policies representing more than $3 billion in death benefits." *Id.* ¶ 40. Yet Plaintiffs identify less than 25 policies that allegedly were originated unlawfully. *Id.* ¶¶ 61-62. Most of these policies, in turn were originated before Plaintiffs began negotiating with LST I to buy Policies. *Id.* ¶¶ 42-44, 84(e)-(j). Nonetheless, even assuming Plaintiffs purchased these Policies – a claim they do not make – there is no basis for Plaintiffs' claim that these Policy purchases diminished the market value of all other policies owned by Ritchie I and II. *See id.* ¶¶ 86-87.

<u>Finally</u>, Plaintiffs are not direct victims of the alleged predicate acts. This conclusion is confirmed by the purposes underlying RICO's proximate cause requirement, including (1) the difficulty of determining damages attributable to the alleged RICO violation; (2) the difficulty of apportioning damages among injured parties, and (3) the ability of other parties to vindicate the aims of the statute. *Holmes,* 503 U.S. at 269; *see also Anza*, 126 S.Ct. at 1998. Here, it would be difficult, if not impossible, to determine what portion of Plaintiffs' alleged damages are attributable to alleged RICO violations. Plaintiffs allege the Policies declined in value since the NYAG suit was initiated. SAC ¶ 86. But market fluctuations can occur for many reasons, and it would require a complex assessment to establish that a decline was the product of Defendants' alleged misconduct. *See, e.g.*, *Anza*, 126 S.Ct. at 1998. The Court would need to calculate the portion of decline attributable to the alleged pattern of racketeering activity as opposed to market forces, Plaintiffs' own financial mismanagement, and the like. The requirement of a direct injury "is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Id.*

###    B.    Plaintiffs Fail Properly To Allege Clear and Definite RICO Damages.

Plaintiffs do not dispute that Ritchie I and II are entitled to over $2.5 billion in death benefits under the Policies. *See* SAC ¶ 37 ("The buyer of the policy continues to pay premiums until the insured's death, at which point the buyer claims the death benefit."). Instead, they

concoct a damages theory that ignores the value of the death benefits. Plaintiffs assert Ritchie I and II never intended to hold the Policies until the death benefits accrued. Rather, they claim "Coventry and the Investing Plaintiffs intended all along that the Contracting Plaintiffs would re-sell the life insurance products for a profit in a securitization transaction." *Id.* ¶ 7. Plaintiffs say they "anticipated a profit" from the securitization, *id.* ¶ 87, but that their ability to realize such a profit was thwarted by the NYAG lawsuit and Moody's subsequent withdrawal of a preliminary securitization rating on a small number of Policies. *Id.* ¶¶ 88-90. In other words, Plaintiffs' RICO damages theory is that, despite retaining the right to billions of dollars in death benefits, the Policies were not fit to be sold in the secured transaction contemplated by Ritchie I and II, and that Plaintiffs lost the profits they anticipated from that transaction.

This theory suffers from at least three defects. <u>First</u>, Plaintiffs may not recover their anticipated profits. Rather, because their RICO claim is based on fraud, Plaintiffs may recover only demonstrable, out-of-pocket losses. *See, e.g., First Nationwide*, 27 F.3d at 768; *see also Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F. Supp. 2d 126, 133 (S.D.N.Y. 2003) ("RICO's damages provisions only apply to actual, out-of-pocket financial loss") (quotation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("New York law precludes the recovery of lost profits in fraud actions, and the RICO claim . . .is predicated on fraud."); *Lama Holding Co. v. Smith Barney, Inc.*, 688 N.E.2d 1370, 1373-74 (N.Y. 1996) (no lost profits for fraud).

<u>Second</u>, the notion that Plaintiffs should be permitted to sue Defendants because the Policies allegedly were unfit for a securitized transaction contradicts § 3.02(c) of the MPPAs, which provides: "Seller makes no representation or warranty as to (i) the fitness of any Life Settlement Policy for any particular use or business purpose of the Purchaser, . . . [or] (iv) the amount the Purchaser ultimately will recover as proceeds of any Life Settlement Policy or the timing of its receipt of any such amounts . . . ." MPPAs § 3.02(c) (emphasis added).

<u>Third</u>, Plaintiffs' alleged damages are impermissibly speculative. Under § 1964(c), RICO plaintiffs must allege damages that are "clear and definite." *First Nationwide*, 27 F.3d at

767; *see also id.* at 769 (plaintiff did not state a claim because its losses could not yet be determined); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite.") (internal punctuation omitted); *Am. Home Mortgage Corp. v. UM Secs. Corp.*, No. 05 Civ. 2279, 2007 WL 1074837, at *4 (S.D.N.Y. Apr. 9, 2007) (complaint dismissed for lack of standing where plaintiff alleged no facts to allow the court to assess lost opportunities to sell unforeclosed loans on secondary market). Here, Plaintiffs' allegations concerning lost profits are entirely speculative. *See* SAC ¶ 12 (Plaintiffs "cannot yet calculate their damages with precision"). Indeed, Plaintiffs do not suggest how their purported damages could be determined. At a minimum, their theory would require the Court to calculate the price Plaintiffs would have received for each Policy with and without Moody's rating, a conjectural exercise involving a host of complex economic factors. Such conjecture will not support a RICO claim. *See Anza*, 126 S. Ct. at 1998; *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1090-92 (S.D. Ind. 2001).

### C.    The "Investing Plaintiffs" Lack Standing To Assert RICO Claims.

Plaintiffs claim Policies purchased by Ritchie I and II were devalued when Defendants' alleged fraudulent origination practices were revealed by the NYAG lawsuit. SAC ¶¶ 88-90 (Moody's Investor Services withdrew preliminary securitization rating based on the NYAG action, which "directly interfered with the salability and value of the life insurance policies at issue"). The SAC makes clear, however, that only Ritchie I and  II, as the Policies' purchasers, have standing to claim a RICO violation. *Id.* ¶ 6 (Policies purchased by Ritchie I and II only); *id.* ¶ 86 ("Ritchie I and Ritchie II own the life insurance policies at issue."). By contrast, the entities Plaintiffs call "Investing Plaintiffs" – *i.e.*, Ritchie Risk-Linked Life Strategies Trust I, Ritchie Life Strategies Master Trust, and Ritchie Risk-Linked Strategies Trading, Ltd. – were merely "equity shareholders in" Ritchie I and II. *Id.* ¶ 4.[6] As Plaintiffs explain: "[t]he

---

[6] Plaintiffs claim Ritchie Capital Management, LLC ("RCM") is an advisor and fiduciary to the Investing Plaintiffs and holds a pecuniary interest therein. SAC ¶ 4. None of these roles,

purchasers of the policies were Plaintiffs Ritchie I and Ritchie II.  The Investing Plaintiffs . . . committed capital to, and became owners of subordinated securities in, Ritchie II and Ritchie II, which entitled the Investing Plaintiffs . . . to receive the profits of Ritchie I and Ritchie II after other debts have been paid."  *Id.* ¶ 45.

The law is clear that the Investing Plaintiffs lack RICO standing because their alleged harm – *i.e.*, the reduced value of their subordinated securities in Ritchie I and II – is merely derivative of the harm allegedly suffered by these entities.  As the Second Circuit has observed:

> A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock.  This is true even when the plaintiff is the sole shareholder of the injured corporation.  Since the shareholder's injury, like that of the creditor, generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct.

*Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) (citing *Holmes*, 503 U.S. at 268-69 and *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986)) (other citation omitted); *see also Rand*, 794 F.2d at 849 ("We agree with the district court that plaintiffs lack standing to sue under RICO . . . .  The legal injury, if any, was to the firm.  Any decrease in value of plaintiffs' shares merely reflects the decrease in value of the firm as a result of the alleged illegal conduct."); *At The Airport, LLC v. Isata, LLC*, 438 F. Supp. 2d 55, 62 (E.D.N.Y. 2006) ("This . . . generally prevents a party, such as a shareholder in a corporation or a member of a limited partnership, from asserting a RICO cause of action in his or her individual capacity based on claims of injury suffered by a third-party in which he or she has a financial interest."); *Chandradat v. Navillus Tile*, No. 03 Civ. 10093(RJH), 2004 WL 2186562, at *5 (S.D.N.Y. Sept.

---

however, provide RCM with standing to assert a RICO claim.  *See, e.g., BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon*, 43 F. Supp. 2d 359, 365-66 (S.D.N.Y. 1999) (fiduciaries lacks standing under RICO); *Greenwald v. Hall,* No. 01 Civ. 5405(RO), 2003 WL 164279, at *1 (S.D.N.Y. Jan. 23, 2003) (trust beneficiaries lack RICO standing to sue for injuries allegedly sustained by trust).

28, 2004) ("[I]t is well settled that shareholders . . . of a corporation lack standing to sue under RICO where their injuries derive from direct injuries to the corporation itself.").[7]

Because any harm suffered by the Investing Plaintiffs is merely derivative of Ritchie I's and II's alleged harm, their recourse is not to sue on their own behalf.  Instead, it is to allow Ritchie I and II to pursue a breach of contract claim against any appropriate Defendants, and to then collect the portion of these entities' recovery (if any) to which they are entitled by virtue of their ownership interest.  *See Rand*, 794 F.2d at 849 ("In RICO case, an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief.") (internal punctuation and quotation omitted).

## III.  PLAINTIFFS FAIL PROPERLY TO ALLEGE A PATTERN OF TWO OR MORE PREDICATE ACTS.

Plaintiffs' RICO claims should be dismissed because they fail adequately to allege a pattern of racketeering activity.  "[A] 'pattern of racketeering activity' consists of 'at least two [predicate] acts of racketeering activity' committed in a ten-year period, which 'amount to or pose a threat of continued criminal activity.'"  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (internal citation omitted).

---

[7] Elsewhere, Plaintiffs assert they "were fraudulently induced to invest . . . in life insurance policies that, because of Defendants' racketeering activity, actually were worth . . . either nothing or a tiny fraction of what Plaintiffs paid for the policies."  SAC ¶ 102.  To the extent Plaintiffs are attempting to portray the Investing Plaintiffs as having invested directly in Policies, their effort fails.  By Plaintiffs' own admission, only Ritchie I and II purchased Policies.  *Id.* ¶ 6.  To the extent the Investing Plaintiffs are alleging they were fraudulently induced to purchase subordinated securities in Ritchie I and II, their claim is barred by the Private Securities Litigation Reform Act ("PSLRA").  *See* 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [§] 1962."); *Sobek v. Quattrochi*, No. 03 Civ. 10219 (RWS), 2004 WL 2809989, at *3 (S.D.N.Y. Dec. 8, 2004) (PSLRA "prohibits RICO claims based on allegations of fraud in connection with the purchase or sale of securities"); *see also Fezzani v. Bear, Stearns & Co., Inc.*, No. 99CIV0793RCC, 2005 WL 500377, at *3 (S.D.N.Y. Mar. 2, 2005) (same).

### A.    Plaintiffs Fail Adequately To Plead Two Predicate Acts.

Plaintiffs claim Defendants committed several predicate acts, all of which allegedly violated 18 U.S.C. § 1343 (wire fraud) or 18 U.S.C. § 1341 (mail fraud).  *See* SAC ¶ 84.  These predicate acts consist of:  (1) actions alleged in generalized terms that fail the pleading requirements of Rule 9(b), *see id.* ¶¶ 84 (a)–(d), (g), (p), and (q); (2) statements this Court found insufficient to constitute common law fraud, now denominated wire fraud, *see id.* ¶¶ 84(r), (s); (3) intra-office e-mails between Coventry employees that do not satisfy § 1343's interstate commerce requirement, *see id.* ¶¶ 84(h)–(o); and (4) wire transmissions between Coventry employees and third-parties on which Plaintiffs do not (and cannot) claim they reasonably relied, *see id.* ¶¶ 84(e), (f), (k), (p), (q).

### 1.    Plaintiffs Fail To Allege Certain Predicate Acts of Mail and Wire Fraud With Particularity As Required By Rule 9(b).

Mail and wire fraud must be alleged with particularity.  *See* Fed. R. Civ. P. 9(b); *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999); *Satinwood*, *Inc.*, 385 F.3d at 178 ("[A]ll allegations of fraudulent predicate acts [under RICO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").  This requires that Plaintiffs "'(1) detail the statements (or omissions) [they] contend[ ] are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).  In addition, Plaintiffs must "identify the purpose of the mailing within the defendant's fraudulent scheme."  *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (citation omitted).

It is unclear whether Plaintiffs intend for paragraphs 84(a)–(d) and (g) to constitute separate predicate acts.  *Compare, e.g.*, SAC ¶ 84(g) (alleging specific e-mail message "constitutes a predicate act of racketeering") *with id.* ¶ 84(d) (no such allegation).  To the extent this is Plaintiffs' intent, the allegations in these paragraphs do not provide the information

required by Rule 9(b). *See* SAC ¶¶ 84(a)–(d) (generalized allegations of fraud, devoid of any particulars required by Rule 9(b)); *id.* ¶ 84(g) (failing to identify the sender of documents to third-party brokers or the brokers receiving such documents).[8]  Indeed, Plaintiffs almost uniformly attribute the statements in these paragraphs to "Defendants" collectively. *See, e.g.*, *id.* ¶¶ 84(a)–(d). This "group pleading" violates Rule 9(b). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'").

Similarly, in paragraphs 84(p) and (q) of the SAC, Plaintiffs do not affirmatively plead that alleged payments to third-party brokers and agreements with policy sellers were transmitted by mail or wire. *See* SAC ¶ 84(p) ("*To the extent that* any of those 'co-broker' payments were made by interstate wires or mail, defendants violated 18 U.S.C. § 1343 and 18 U.S.C. § 1341, respectively.") (emphasis added); *id.* ¶ 84(p) ("*To the extent that* any of those purchase agreements were transmitted by interstate wires or mail, defendants violated 18 U.S.C. § 1343 and 18 U.S.C. § 1341, respectively.") (emphasis added).  The use of the mail or wires, however, is an indispensable element of mail or wire fraud. *See Defazio v. Wallis*, No. 05-CV-5712 (ADS)(ARL), 2007 WL 2193929, at *5 (E.D.N.Y. July 14, 2007).  Plaintiffs' allegations concerning this element are not specific and do not rise even to the level of a pleading "on information and belief," which is not permitted under Rule 9(b). *See Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1003-04 (2d Cir. 1988).[9]

---

[8] Paragraph 62 of the NYAG complaint, which is referenced in ¶ 84(g) of the SAC, likewise fails to identify the sender or recipient of the referenced documents.  Nor do (or could) Plaintiffs allege they reasonably relied on these communications. *See* Section IV(A)(4), *infra*.  Paragraph 84(g) also fails because "[a] predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act." *Vicon Fiber Optics*, 201 F. Supp. 2d at 219; *see also* NYAG Compl. ¶ 62 (false offer sheets created to hide compensation).

[9] Nor could Plaintiffs have reasonably relied on such payments or agreements, which they never received. *See* Section IV(A)(4), *infra*.

### 2.    Plaintiffs Fail To Allege Wire Fraud Based on LST I's Pre- and Post-Contractual Dealings With Ritchie I and II.

In paragraphs 84(r) and (s) of the SAC, Plaintiffs attempt to base predicate acts of wire fraud on the same allegations the Court held insufficient to constitute common law fraud. *See* SAC ¶ 84(r) (alleged wire fraud based on statements in draft contracts between LST I and Ritchie I and II); *id.* ¶ 84(s) (alleged wire fraud based on post-contractual statements regarding matters expressly addressed by MPPAs); *Ritchie,* 2007 WL 2044656, at *7 (Plaintiffs failed to state common law fraud claims).  These predicate acts fail for largely the same reasons the common law fraud claims failed.

First, the statements in question "rest entirely on the subjects covered in the representations and warranties contained in the agreements." *Ritchie,* 2007 WL 2044656, at *7. Where a party allegedly makes false statements that are contained in a contract, the proper claim is for breach of contract, not fraud. *Id.*; *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 489 (S.D.N.Y. 1997) (noting "overwhelming majority view . . . that a false promise, whenever made, cannot give rise to a fraud claim where that promise is directly incorporated into a written contract between the parties").

Second, the MPPAs' integration clause disclaims reliance on the specific representations on which Plaintiffs rely. *See Ritchie*, 2007 WL 2044656, at *8 ("[T]he plaintiffs expressly disclaimed reliance on the very representations they now claim were fraudulent."); *Harsco*, 91 F.3d at 345–46 ("relying on the sophisticated context of [the subject] transaction to dismiss fraud claims based on less extensive integration clause than exists here); *United Artists Theatre Circuit v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342, 351 (E.D.N.Y. 2005) ("Based on the integration clause, Plaintiff, a sophisticated corporation, has not alleged, nor can it, that it reasonably relied on any oral representations . . . .").

Third, Plaintiffs have expressly disavowed any claim based on alleged misrepresentations concerning the fact or nature of the NYAG investigation or lawsuit. *See* Exhibit ("Ex.") 1 ¶ 7 (Amendment to Amended and Restated Intercreditor Agreement providing:  "[T]he Attorney

General Action does not as of [January 29, 2007] constitute . . . an event of default (whether matured or unmatured) or termination event under any of the other Transaction Agreements.").[10]

### 3. Intra-Office E-Mails Among Defendants Fail To Satisfy the Interstate Transmission Requirement of 18 U.S.C. § 1343.

In paragraphs 84(h)–(o) of the SAC, Plaintiffs claim intra-office e-mails between Defendants Jim Dodaro, Reid Buerger, Neal Jacobs, Eileen Shovlin, and an unnamed "Coventry[] accountant" constitute predicate acts of wire fraud. Such intra-office communications do not satisfy § 1343's interstate transmission requirement.

"The wire fraud statute [18 U.S.C. § 1343] requires that the defendant communicate by wire in interstate or foreign commerce in furtherance of a scheme to defraud. Purely intrastate communication [is] beyond the statute's reach." *Cofacredit*, 187 F.3d at 243 (emphasis added) (quotation and citation omitted). This requirement that a plaintiff allege and prove that the wire communication actually crossed state lines makes the wire fraud statute more stringent than the mail fraud statute. *See Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F. Supp. 213, 227 (S.D.N.Y. 1992) ("Wire fraud requires the additional element of a communication crossing state lines."). Moreover, the law enacts a presumption that wire communications among residents of the same state are purely intrastate. *McCoy v. Goldberg*, 748 F. Supp. 146, 154 (S.D.N.Y. 1990) ("Where all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated."); *see also Mathon v. Feldstein*, 303 F. Supp. 2d 317, 324 (E.D.N.Y. 2004) ("Because all of the defendants are New York residents, and no interstate calls are alleged in the complaint, it is

---

[10] Plaintiffs expressly reference the Intercreditor Agreement in the SAC, and as such it may be considered in connection with this motion. *See* SAC ¶ 45; *Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06 Civ. 5383(JGK), 2007 WL 2077153, at *1 (S.D.N.Y. July 20, 2007) ("In deciding a [Rule 12(b)(6)] motion . . ., the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))) (other citations omitted).

unreasonable to assume that interstate use of the wires occurred.") (quotation omitted); *Utz v. Correa*, 631 F. Supp. 592, 595-96 (S.D.N.Y. 1986) ("[T]he only inference that can be made from the complaint is that . . . [a]ll the telephone calls . . . were *intrastate* in nature, while the predicate act of wire fraud requires an interstate telephone call.  Such communications are insufficient to constitute a violation of the wire fraud statute.") (emphasis in original).  Here, Plaintiffs claim all parties to the predicate acts alleged in paragraphs 84(h)–(o) are Pennsylvania residents working for businesses with their principal places of business in Pennsylvania.  *See* SAC ¶¶ 30, 33–35 (Buerger, Jacobs, Dodaro, and Shovlin all Pennsylvania residents), *id.* ¶¶ 25–29 (Defendants Coventry First, Montgomery Capital, and The Coventry Group have principal place of business in Fort Washington, Pennsylvania, and Defendant LST I is mere alter ego of Montgomery Capital).  Moreover, the SAC contains no other allegation that the communications referenced in these paragraphs crossed state lines.  As such, Plaintiffs cannot overcome the legal presumption that the referenced communications were purely intrastate, and thus not actionable as wire fraud. *Defazio*, 2007 WL 2193929, at *5 ("[T]he plaintiffs do not allege that any wire communications occurred in interstate or foreign commerce. . . .  Thus, . . . the plaintiffs' wire fraud allegations are insufficient to serve as a predicate act under the RICO statute.").

### 4.    Plaintiffs Fail To Establish Reliance on Communications Between Defendants and Third-Party Brokers.

"[T]o prevail in a civil RICO action predicated on any type of fraud, . . . the plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions."  *Bank of China v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004).  Here, Plaintiffs identify as predicate acts of mail *or* wire fraud (they do not specify which):  (1) a small number of e-mails between two Defendants and two third-party brokers, *see* SAC ¶¶ 84(e), (f), (k); (2) payments allegedly made by Coventry First to these brokers, *see id.* ¶ 84(p); and (3) purchase agreements between Coventry First and unnamed Policy sellers, *see id.* ¶ 84(q).[11]  Plaintiffs

---

[11] For purposes of this paragraph, these e-mails, payments and agreements collectively are referred to as "transmissions."

concede, however, that they neither received nor relied on any of these transmissions. *Id.* ¶ 53 ("Plaintiffs were not involved in the purchase of the policies from the insureds and had no information about what the insureds were told and what they knew in connection with the sale of their policies."). Indeed, "Plaintiffs learned of [this alleged] misconduct only when the [NYAG] brought suit against Coventry in October 2006." *Id.* ¶ 68. In fact, Plaintiffs apparently still have not seen these transmissions, as they cannot say they were made by mail or wire. *See id.* ¶¶ 84(p) and (q). Nor do Plaintiffs claim they purchased any of the specific Policies to which these transmissions pertained. Plaintiffs cannot have reasonably relied on transmissions they never received concerning Policies that Ritchie I and II did not purchase.

### B. Plaintiffs Fail To Establish Continuity.

Besides requiring that Plaintiffs allege at least two predicate acts within a ten-year period, RICO's pattern requirement also includes a "continuity" component, obliging Plaintiffs to allege that the pattern "amount[s] to or pose[s] a threat of continued criminal activity." *Satinwood*, *Inc.* 385 F.3d at 178. To satisfy the continuity requirement, Plaintiffs must allege "either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)." *Id.* at 180. Here, Plaintiffs fail to adequately allege either a closed-ended or open-ended continuity.

### 1. Plaintiffs Fail To Allege Closed-Ended Continuity.

A closed-ended pattern of racketeering activity involves a series of related predicate acts "extending over a substantial period of time." *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995); *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001). The Second Circuit has "never found a closed-ended pattern where the predicate acts spanned fewer than two years." *Satinwood*, *Inc.*, 385 F.3d at 181; *see also DeFalco*, 244 F.3d at 321 ("[T]his Court has never held a period of less than two years to constitute a 'substantial period of time.'"). Excluding intrastate e-mails and, for the sake of argument, retaining all other alleged predicate acts pleaded by Plaintiffs, the predicate acts lasted for 19 months from November 2004 to June

20

2006.  *See* SAC ¶¶ 84(e)–(f), (k), (r), (s).  *See GICC Capital Corp.*, 67 F.3d at 467 (actions that do not qualify as predicate racketeering activity are not included in the calculation); *Cofacredit*, 187 F.3d at 243 (omitting intrastate wire-fraud communications from continuity analysis).  This nineteen month period is not enough to meet the minimum two year threshold for establishing a closed-ended pattern.  *See Satinwood*, *Inc.*, 385 F.3d at 181; *Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544, 550 (E.D.N.Y. 2005) ("nineteen-month period of predicate activity is . . . insufficient under Second Circuit precedent to establish closed-ended continuity").  Accordingly, the only way Plaintiffs' RICO claims can survive is if they allege an open-ended pattern.

### 2.    Plaintiffs Fail To Allege Open-Ended Continuity.

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Satinwood*, *Inc.*, 385 F.3d at 181 (quoting *Cofacredit*, 187 F.3d at 242).  Here, Plaintiffs' allegations are insufficient to establish open-ended continuity.

First, Plaintiffs' SAC contains no allegation that there was a threat of continuing criminal activity, much less facts demonstrating such a threat.  Absent such allegations, Plaintiffs' RICO claims should be dismissed.  *See Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 n.30 (S.D.N.Y. 2002) (conclusory allegations regarding open-ended continuity are insufficient); *Singh v. Parnes*, 199 F. Supp. 2d 152, 161 (S.D.N.Y. 2002) ("continuity standard must be met by factual assertions").

Second, this case involves legitimate business activities.  *See* SAC ¶¶ 39-41 ("Coventry First is a leading player in the secondary market for life insurance policies.").  Where, as here, Defendants "primarily conduct[] a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, S.A.*, 187 F.3d at 243.  Plaintiffs allege neither requirement.  To be sure, Plaintiffs do not allege unlawful origination practices were Defendants' regular way of conducting business.

Instead, Plaintiffs claim that by 2005, Defendants originated over 1,318 Policies with a total death benefit exceeding $3 billion.  SAC ¶ 40.  Of these Policies, Plaintiffs have identified a handful of policies which they claim were originated unlawfully.  Plaintiffs have identified even fewer alleged predicate acts committed by a small number of  Coventry First employees.  *See id.* ¶ 84(e)-(q).[12]  Moreover, the alleged predicate acts in this case are not inherently unlawful.  *See Skylon Corp. v. Guilford Mills, Inc.*, No. 93-CV-5581, 1997 WL 88894, at *6 (S.D.N.Y. Mar. 3, 1997) (holding that predicate acts of "verbal and written misrepresentations made over the telephone and in letters, constituting wire and mail fraud" are not "inherently unlawful," but rather are "typical of garden-variety fraud claims.").[13]

Third, the alleged scheme against Plaintiffs was inherently terminable.  Plaintiffs claim "Coventry First in substance was using Plaintiffs' capital to acquire assets that, because of Coventry First's own misconduct, turned out to be worth far less than what Plaintiffs had reason to believe they were worth."  *See* SAC ¶¶ 94.  But the amount of capital Plaintiffs had agreed to provide was finite.  In each contract, Ritchie I and II agreed to limit the "Expected Capital" for purchasing policies to certain sum.  *See, e.g.*, Exs. 2-4 at Glossary of Defined Terms (defining "Expected Capital" for each agreement).  Once that sum was exhausted, Ritchie I and II fulfilled their purchasing obligations and Defendants' alleged representations and warranties regarding the origination of those policies expired.  *Id.* at § 302(d).  Thus, once Ritchie I and II exhausted their Expected Capital, the alleged scheme would have ended.  *See, e.g., GICC Capital Corp.*, 67 F.3d at 466; *FD Property Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 371

---

[12]   This number is reduced further when deficient alleged predicate acts are eliminated from the Court's consideration.

[13]   Plaintiffs cannot establish predicate acts were a way of conducting Defendants' business by claiming the alleged acts are examples of Defendants' unlawful activities.  *See Singh*, 199 F. Supp. 2d at 162.  Moreover, such diffuse, speculative and conclusory pleadings are insufficient to satisfy the particularity required to plead a RICO action grounded in fraud.  *See Plount v. Am. Home Assurance Co., Inc.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987).

(E.D.N.Y. 2002) ("Allegations of conduct that by its nature or design has an intended and foreseeable endpoint will not constitute open-ended continuity.") (citation omitted).[14]

## IV.  THE CORPORATE DEFENDANTS CANNOT BE RICO "PERSONS" GIVEN THE ENTERPRISES IDENTIFIED BY PLAINTIFFS.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  Plaintiffs claim the alleged RICO enterprise is either "(a) Coventry First or, in the alternative, . . . (b) all of the Individual Defendants."[15]  Under either formulation, the corporate defendants cannot be RICO "persons."

Indeed, to the extent the alleged enterprise consists of Coventry First, Plaintiffs claim it is not distinct from any of the other corporate defendants.  *See* SAC ¶ 2 ("Coventry First is the main operating subsidiary for Coventry's activities in the life settlement field.  Montgomery Capital is a holding company, and LST is a special-purpose vehicle that serves as an alter ego for Montgomery Capital and Coventry First."); *Ritchie,* 2007 WL 2044656, at *5  (Plaintiffs pursuing alter ego liability against "the three corporate defendants who did not sign the [MPPAs]").  The corporate defendants cannot simultaneously be the RICO person and the RICO enterprise.  *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 161.

By contrast, insofar as the alleged enterprise consists of the individual defendants collectively, it is illogical to suggest that the corporate defendants "conduct[ed] or participate[d],

---

[14]  Alternatively, to the extent Plaintiffs conclusorily assert Defendants sold tainted policies to other institutional investors, such allegations fail to comply with Fed. R. Civ. P. 9(b).  *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) ("Allegations of mail fraud [as RICO predicate acts] must be made with the particularity required by [Rule 9(b) ]."); *FD Property Holding*, 206 F. Supp. 2d at 371 (conclusory allegations defendants regularly conduct their business through similar fraudulent schemes insufficient).

[15] Defendants assume that in identifying "all of the individual defendants" as the alleged RICO enterprise, Plaintiffs mean "all of the individual defendants collectively."  If not, and Plaintiffs continue to claim any combination of the individual defendants may constitute the enterprise, the allegation violates Fed. R. Civ. P. 8(a).  *See Ritchie,* 2007 WL 2044656, at *10.

directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(d).[16]  This

construct disregards the fundamental corporate law principle that "corporations, which are legal

fictions, can operate only through their designated agents and employees." *People v. Byrne*, 570

N.E.2d 1066, 1068 (N.Y. 1991).  Indeed, Plaintiffs allege that certain individual defendants

control the Corporate Defendants, SAC ¶ 30, and that other individual defendants were

employed by these entities, *id.* ¶¶ 31-35.  Here, as in every corporation, the individuals

participate in the corporations' affairs, not vice versa.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(d).

Plaintiffs' RICO conspiracy claim fails for three reasons.  <u>First</u>, because Plaintiffs have

failed to state an actionable claim under § 1962(c), they cannot maintain a claim for conspiracy

under § 1962(d).  *See Satinwood*, *Inc.*, 385 F.3d at 182 ("[B]ecause Plaintiffs did not adequately

allege a substantive violation of RICO . . . the District Court properly dismissed [their claim]

alleg[ing] a RICO conspiracy in violation of 18 U.S.C. § 1962(d).").

<u>Second</u>, Plaintiffs' allegations of a conspiratorial agreement are entirely conclusory.

SAC ¶ 81 ("Defendants conspired with one another to defraud the Plaintiffs"); *id.* ¶ 82

("Defendants conspired together to devise and participate in a plan of deception") *id.* ¶ 105

("Defendants conspired within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. §§

1962(c)").  Such allegations are insufficient to state a RICO conspiracy claim.  S*ee Hecht*, 897

F.2d at 25 (dismissing RICO claims because conspiracy allegations were conclusory); *Nat'l*

*Group for Commc'ns. & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272

(S.D.N.Y. 2006) (same); *Nasik Breeding & Research*, 165 F. Supp. 2d at 541 (same); *Dietrich v.*

---

[16]  Additionally, for RICO purposes, simply establishing the presence of an enterprise is not enough.  Plaintiffs must also allege that the defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  To satisfy that standard, Plaintiffs must allege facts demonstrating Defendants played "some part in directing [the enterprise's] affairs." *Satinwood*, *Inc.*, 385 F.3d at 176.  Here, Plaintiffs allege only conclusory facts of participation and control of the alleged enterprise consisting of the individual defendants.  That is not enough. *See Crab House of Douglaston, Inc. v. Newsday*, Inc., 418 F. Supp. 2d 193, 206 (E.D.N.Y. 2006).

*Bauer*, 76 F. Supp. 2d 312, 349 (S.D.N.Y. 1999) (same); *CPF Premium Funding, Inc. v. Ferrarini*, No. 95 Civ. 4621(CSH), 1997 WL 158361, at *6 (S.D.N.Y. Apr. 3, 1997) (same).[17]

Third, Defendants cannot conspire with one another as a matter of law. Plaintiffs allege each individual defendant is an employee and/or owner of the corporate defendants, and the corporate defendants are related to or wholly owned by one another. SAC ¶¶ 2-3, 25-35. Section 1962(d) does not apply to such related employees and corporate affiliates. *See Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097, at *5 (S.D.N.Y. Feb. 21, 2007) ("[A] corporation cannot conspire with its employees or attorneys."); *Skylon Corp.*, 1997 WL 88894, at *8 (noting, in combined discussion of §§ 1962(c) and (d), "impossibility of an intracorporate conspiracy in the context of a RICO claim"); *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 898 (8th Cir. 1999) ("[A]s a matter of law, a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another.").[18]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts I and II of Plaintiffs' Proposed Second Amended Complaint should be granted.

---

[17]  The September 14, 2007 deadline for Plaintiffs to amend their Complaint has passed. Consequently, Plaintiffs can further amend their Complaint only on a showing of good cause. *See* Fed. R. Civ. P. 16(b); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

[18] *But see Kirwin v. Price Comms. Corp.*, 391 F.3d 1323, 1326-27 (11th Cir. 2004) (recognizing circuit split on this issue).

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of September, 2007, I caused true and correct copies

of the foregoing to be served electronically via the Court's ECF system on the following counsel:

Lawrence S. Robbins, Esq.
Gary A. Orseck, Esq.
Daniel R. Walfish, Esq.
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500
(202) 775-4510 (telecopy)
lrobbins@robbinsrussell.com
gorseck@robbinsrussell.com
dwalfish@robbinsrussell.com

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169
(212) 883-6383
(212) 883-6388 (telecopy)
tpuccio@lotpp.com

*Attorneys for Plaintiffs*

_____/s/_____
Rachel R. Shanahan