UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

RITCHIE CAPITAL MANAGEMENT, L.L.C.,
RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND), LIMITED, RITCHIE
RISK-LINKED STRATEGIES TRADING
(IRELAND) II, LIMITED, WALKERS SPV             07 Civ. 3494 (DLC)
LIMITED, as trustee for Ritchie Risk-Linked
Life Strategies Trust I and Ritchie Life Strategies    ECF Case
Master Trust, and RITCHIE RISK-LINKED
STRATEGIES TRADING, LTD.,

                              Plaintiffs,

                v.

COVENTRY FIRST LLC, THE COVENTRY
GROUP, INC., MONTGOMERY CAPITAL,
INC., LST I LLC, ALAN BUERGER,
CONSTANCE BUERGER, REID S.
BUERGER, ANTONIO MUNIZ, ALEX
SELDIN, NEAL JACOBS, EILEEN SHOVLIN,
and JIM DODARO,
                              Defendants.
-------------------------------------------------------------x

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION
## FOR RECONSIDERATION AND FOR LEAVE TO FILE
## THEIR PROPOSED SECOND AMENDED COMPLAINT

Lawrence S. Robbins (LR-8917)                Thomas P. Puccio
Gary A. Orseck                               LAW OFFICES OF THOMAS P.
Daniel R. Walfish                               PUCCIO
Rachel S. Li Wai Suen                        230 Park Avenue
ROBBINS, RUSSELL, ENGLERT, ORSECK,           New York, NY 10169
   UNTEREINER & SAUBER LLP                   Tel: (212) 883-6383
1801 K Street, N.W., Suite 411               Fax: (212) 883-6388
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

Dated: September 28, 2007                     *Counsel for Plaintiffs*

**TABLE OF CONTENTS**

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  The Fraud And Fraudulent Inducement Claims Should Not Have Been Dismissed . . . . . 1

    A.  The Fraud And Fraudulent Inducement Claims Are Not Duplicative . . . . . . . . . . 1

    B.  The Fraudulent Inducement Claims Are Not Barred By The Merger
        Clause In The Policy Purchase Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.  The Fraud And Fraudulent Inducement Claims Are Properly Asserted By And
        Against Non-Contracting Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. Plaintiffs Properly Allege Breach Of Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. Plaintiffs Established General Personal Jurisdiction Over Montgomery Capital, Inc. . . 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85 (2d Cir. 2007) . . . . . . . . 5

*Abrams v. Donati*, 66 N.Y.2d 951 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 7

*Baker v. Dorfman*, 239 F.3d 415 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420 (KMW), 1997 WL 317343 (S.D.N.Y. 1997) . . 4

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) . . 1, 2, 3, 4

*Brunetti v. Musallam*, 783 N.Y.S.2d 347 (1st Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cassata v. Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552 (2d Dep't 1998) . . . . . . . . . . . . . . 9

*Ceribelli v. Elghanayan*, 990 F.2d 62 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Excimer Assocs., Inc. v. LCA Vision, Inc.*, 292 F.3d 134 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . 6

*Glenn v. Hoteltron Sys., Inc.*, 74 N.Y.2d 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931 (1st Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . 9

*Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997) . . . . . . . . . 3

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . 10

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*, No. 05-5129, __ F.3d __,
     2007 WL 2458411 (2d Cir. Aug. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*NCAS Realty Mgmt. Corp. v. Nat'l Corp. for Hous. P'ships*, 143 F.3d 38 (2d Cir. 1998) . . . . . . 8

*Secs. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000) . . . . . . . . . . . . . . . . . 7

*Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 2

*Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979) . . . . . . . . . . . . . . 3

*United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Xuchang Rihetai Human Hair Goods Co. v. Hanyu Int'l USA Inc.*,
   No. 00 Civ. 5585 (DLC), 2001 WL 8438 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## RULES

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 9(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (8th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MOORE'S FED. PRACTICE (3d ed. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5A WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 1310 . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Defendants contend that this Court correctly held that a fraud claim cannot arise out of the same facts as a claim for breach of contract. Since the Court's July 17, 2007 Opinion ("Opinion"), however, the Second Circuit decided *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, No. 05-5129, __ F.3d __, 2007 WL 2458411 (Aug. 31, 2007), which holds that, as Plaintiffs have argued, a fraud or fraudulent inducement *can* arise out of a misrepresentation that also constitutes a breach of contract. Defendants have no answer for this, or for the other flaws that Plaintiffs have identified in the Opinion. The tort claims in the amended complaint are sufficiently pled, and for all the reasons we have previously stated and set forth below, the Court should grant leave to file it.[1]

## I.    The Fraud And Fraudulent Inducement Claims Should Not Have Been Dismissed

There are three fundamental reasons why the Court should reconsider the dismissal with prejudice of the fraud and fraudulent inducement claims.[2]

### A.    The Fraud and Fraudulent Inducement Claims Are Not Duplicative

The Opinion accepted Defendants' argument that Plaintiffs' fraud and fraudulent inducement claims are barred by *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d

---

[1] The Opinion dismissed, without leave to replead, the fraud, fraudulent inducement, and fiduciary duty claims in the original Complaint. On August 1, Plaintiffs filed a timely motion for reconsideration and, at the same time, their First Amended Complaint ("FAC"). The FAC did not re-assert the tort claims, but, in an effort to demonstrate that a dismissal of those claims without prejudice would have been the appropriate remedy for some of the issues identified in the Opinion, Plaintiffs amended the factual predicates for those claims, as was their right under Rule 15(a). At a conference on August 10, the Court invited Plaintiffs to submit a new proposed amended complaint that would be complete as to the tort claims, and to revise their motion for reconsideration accordingly. The proposed Second Amended Complaint ("SAC") is virtually identical to the FAC save that it asserts the tort claims. In spite of this history, Defendants challenge our inclusion of new material in the amended pleadings. It is true that Plaintiffs cannot file the dismissed claims until the Court reconsiders the dismissal from Rule 59(e), but this case is an excellent candidate for Rule 59(e) reconsideration. *See* Pls. Rev. Mem. 1. Nor, contrary to Defendants' suggestion, is Rule 59(e) any kind of substantive *restriction* on the Court's *power* to amend a judgment in response to a timely motion made under that rule. "A district court has broad discretion in determining whether to grant a motion to alter or amend the judgment." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

[2] The Opinion indicated that the original Complaint "[did] not sufficiently identify speakers," Op. 17, 19, to satisfy Rule 9(b). Plaintiffs' amendments were designed (among other things) to cure potential Rule 9(b) difficulties, and Defendants have not renewed their Rule 9(b) challenge.

Cir. 1996), and *Telecom International America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir.

2001). Op. 17-18, 21. But as Plaintiffs have pointed out, simply because a misrepresentation of

present fact would also give rise to a claim for breach of a contractual warranty does not

automatically bar a claim for fraud or fraudulent inducement based on that misrepresentation.

*Bridgestone* and *Telecom International* stand only for the proposition, inapplicable here, that a

contract claim cannot be converted into a fraud claim merely by alleging that the defendant

misrepresented his intention to perform. In this case, by contrast, Defendants misrepresented

existing, external facts. Pls. Opp. to Mot. to Dismiss 15-16; Pls. Revised Mem. in Supp. of Mot. for

Reconsid. ("Pls. Rev. Mem.") 5.

The Second Circuit has now definitively ratified Plaintiffs' position. In *Merrill Lynch*, the

Court of Appeals rejected the argument that a fraudulent inducement claim was duplicative of a

contract claim even though both arose out of the same facts. 2007 WL 2458411, at *10-*11.

Clarifying *Bridgestone*, the Second Circuit explained that (*id.* (emphasis added)):

> New York distinguishes between a promissory statement of what will be done in the future
> that gives rise only to a breach of contract cause of action and a misrepresentation of a
> present fact that gives rise to a separate cause of action for fraudulent inducement. . . . [A]
> claim based on fraudulent inducement of a contract is separate and distinct from a breach of
> contract claim under New York law. . . . *Defendant's allegations in this case involve
> misstatements and omissions of present facts, not contractual promises regarding
> prospective performance. . . . That the alleged misrepresentations would represent, if proven,
> a breach of the contractual warranties as well does not alter the result. A plaintiff may elect
> to sue in fraud on the basis of misrepresentations that breach express warranties. . . . The
> Appellate Division has provided a convincing rationale: "A warranty is not a promise of
> performance, but a statement of present fact."*

The Second Circuit might as well have been addressing this case. The crucial

misrepresentations alleged here are not promissory statements of prospective performance but

warranties – "statement[s] of present fact" – about the Defendants' life insurance policies and

business practices, as well as the non-existence of any legal action.[3] The falsity of these representations, of course, "would represent, if proven, a breach of the contractual warranties," but that "does not alter the result." *Merrill Lynch*, 2007 WL 2458411, at *10-*11.[4] Plaintiffs' fraud and fraudulent inducement claims are not barred.

To whatever extent, moreover, that *Bridgestone* still applies, Plaintiffs easily satisfy each of its three conditions for bringing tandem fraud and contract claims. *See* 98 F.3d at 20. First, Plaintiffs have alleged duties of disclosure separate from the duty to perform under the contract. *See* page 5, *infra*. Second, Plaintiffs have alleged collateral and extraneous misrepresentations in the form of pre- and post-contractual statements. Pls. Rev. Mem. 6-7.[5] Finally, the Investing Plaintiffs sufficiently

---

[3] *See, e.g.*, SAC ¶ 55(d) (representing that all Life Settlement Policies had been acquired in "transactions that in all material respects were in accordance with and in compliance with all applicable . . . laws, rules and regulations"), ¶ 55(b) ("There is no action, suit or proceeding . . . now pending, or to the Seller's knowledge, threatened, against or affecting the Seller or its assets or properties . . . seeking any determination or ruling that might materially and adversely [a]ffect the performance by the Seller of its obligations under, or the validity and enforceability of, this Agreement.").

[4] Relying heavily on a single district-court case, *International CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997), Defendants insist that a false statement that appears in a contract can never ground a claim for fraud. Defs. Opp. 14, 15, 22. But *International CableTel* does not go so far, and indeed, the misrepresentation at issue there was the precise type distinguished in *Merrill Lynch*, namely a statement regarding the plaintiffs' future intention to perform the "principal obligation" of the contracts, not a statement of present fact. *See* Pls. Opp. to Mot. to Dismiss 16; 978 F. Supp. at 488 ("[T]he gravamen of the complaint is that defendant misrepresented that it would negotiate exclusively with plaintiff in order to induce plaintiff into entering an agreement whereby defendant was required to negotiate exclusively with plaintiff. . . . [D]efendants' allegedly false statements of future intent cannot support the present cause of action.").

[5] Defendants are quite wrong to argue (at 16) that the June 2006 misrepresentations about the New York Attorney General investigation are somehow "encompassed by" the MPPAs. Those misrepresentations appear nowhere in the MPPAs. And according to *Defendants*, "the MPPAs do not require LST I to provide any information, going forward, to any Ritchie entity regarding . . . lawsuits or proceedings." Defs. Mem. in Supp. of Mot. to Dismiss 16-17 & n.19. It is difficult to understand how a contract that does not contain a particular representation, and (if Defendants are to be believed) creates no obligation of disclosure with respect to the subject matter of the representation, "encompass[es]" that representation. Nor do Defendants address the Appellate Division's consistent holding that post-contractual misrepresentations about a subject covered by the contract are actionable in fraud. *See* Pls. Rev. Mem. 6. As for the pre-contractual representations, Defendants' arguments are squarely foreclosed by *Merrill Lynch. See also* Pls. Opp. to Mot. to Dismiss 16; *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979) ("The fraud Triangle alleges . . . consisted of independent false representations, made before there ever was a contract . . . , which led Triangle to enter into it. In other words, Triangle clearly alleges fraud that was extraneous to the contract . . . .");

3

allege special damages, *i.e.*, damages "caused by the misrepresentation and unrecoverable as contract damages," *Bridgestone*, 98 F.3d at 20, in the form of transaction costs incurred in connection with the Ritchie IV arrangement. SAC ¶¶ 93, 94, 110, 116.[6]

### B.    The Fraudulent Inducement Claims Are Not Barred By The Merger Clause In The Policy Purchase Agreements

A second reason for reconsideration is that the Opinion misapplied controlling New York law on whether and when an integration clause bars a claim of fraudulent inducement. *See* Pls. Rev. Mem. 8; Op. 19-20. Plaintiffs have explained that an integration clause does *not* usually bar a fraudulent inducement claim, except in the special situation (not present here) when the clause explicitly disclaims reliance on the representations in question. *See* Pls. Rev. Mem. 8; Pls. Opp. to Mot. to Dismiss 19-20 (both citing Second Circuit and New York Court of Appeals cases). Defendants' only response is to reiterate that a fraud claim based on a misrepresentation reflected in

---

*Xuchang Rihetai Human Hair Goods Co. v. Hanyu Int'l USA Inc.*, No. 00 Civ. 5585 (DLC), 2001 WL 8438, at *2 (S.D.N.Y. 2001) (misrepresentation is extraneous if "made before the formation of the contract" as an inducement to enter the contract) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994)).

[6] Defendants suggest (at 17) that Plaintiffs should recover those losses through a contract claim by the entity known as Ritchie IV, but that entirely misconceives Plaintiffs' claim for special damages, which is that the Investing Plaintiffs, not Ritchie IV, suffered out-of-pocket expenses (not contract damages) as a direct and proximate result of Defendants' fraudulent conduct (not as a result of a breach of any Ritchie IV policy purchase agreement). *See* note 8, *infra*. Defendants then assert that these damages must be stated specifically under Rule 9(g). But the "special damages" subject to Rule 9(g) are damages that "are unusual for the claim in question and not normally associated with the claim in question." *Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420 KMW, 1997 WL 317343, at *10 (S.D.N.Y. 1997) (quoting MOORE'S FED. PRACTICE ¶ 9.08 (3d ed. 1997)). (*Bridgestone* referred to "special damages" in the entirely different sense of damages that would not be recoverable *as contract damages*. Rule 9(g) was not at issue in that case.) It is hardly unusual that a party fraudulently induced to enter into a complex joint investment arrangement would incur substantial transaction costs. Moreover, the SAC would satisfy Rule 9(g) even if it did apply. The purpose of the rule is merely to prevent surprise at trial, and accordingly "[a] specific statement of special damages in the complaint" is sufficient. 5A WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 1310, at 349-350 (3d ed. 2004). The specific statement that the Investing Plaintiffs seek to recover the transaction costs associated with Ritchie IV fulfills that purpose. Finally, Defendants argue (at 20) that the Investing Plaintiffs' claim is deficient for failing to allege that the transaction costs were contemplated by the parties. *All* of the cases cited in support of this argument, however, are specifically addressed to the requirements for recovering *contract* damages. There is no such requirement for fraud claims.

a contract "may be pursued, if at all, only . . . under a breach of contract theory," *see* Defs. Opp. to

Mot. for Reconsid. ("Defs. Opp.") 22, but that is the very argument rejected by *Merrill Lynch*.

### C.    The Fraud And Fraudulent Inducement Claims Are Properly Asserted By And Against Non-Contracting Parties

The Opinion did not address most of the fraud and fraudulent inducement claims by and

against parties that did not sign the MPPAs. Defendants levy a barrage of arguments (some of them

new) in an effort to defuse this issue. None has merit.

Defendants first claim that this Court held "that Plaintiffs failed to allege a separate legal duty

owed to the non-contracting Plaintiffs." Defs. Opp. 11; *id.* at 12. But that is simply untrue. As

Plaintiffs have explained, *see* Pls. Rev. Mem. 5-6, 9, the Opinion – perhaps in part because of the

way Plaintiffs drafted the original Complaint – does not consider the representations and omissions

directed to and committed by parties that did not execute the MPPAs. Plaintiffs have alleged that the

Defendants not party to the MPPAs made misrepresentations to the Plaintiffs, including Plaintiffs not

party to the MPPAs, and also that the non-contracting Defendants fraudulently omitted to disclose

information that they had a duty to disclose. That duty arose either from a fiduciary relation (*see*

*infra*) or simply from Defendants' superior knowledge coupled with Plaintiffs' acting on the basis of

mistaken information. *See* Compl. ¶¶ 30-33, 38, 66; Pls. Rev. Mem. 6; Pls. Opp. to Mot. to Dismiss

16-18; *see also* SAC ¶¶ 45-54, 96.

In the face of these allegations, Defendants resort to an argument that any injury suffered by

the non-purchasing plaintiffs was derivative of the injury suffered by the purchasing plaintiffs. Defs.

Opp. 11-12, 24. That contention – which the Court ought to disregard because it appeared for the

first time only in Defendants' reply brief (at 8-9), *see, e.g.*, *ABN Amro Verzekeringen BV v.*

*Geologistics Ams., Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007) – is doubly flawed.

First, "[u]nder New York law,[7] a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action." *Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir. 1993) (citations omitted) (citing *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985)); *accord Excimer Assocs., Inc. v. LCA Vision, Inc.*, 292 F.3d 134, 140 (2d Cir. 2002). In this case, the non-purchasing Plaintiffs have valid allegations that Defendants breached independent duties of disclosure owed by virtue of Defendants' superior knowledge not readily available to Plaintiffs (*see supra*), or the fiduciary relation arising from, among other things, the joint investment (*see infra*). A breach of either duty is grounds for RCM and the Investing Plaintiffs to sue. *Ceribelli*, 990 F.2d at 64.

Second, the "derivative injury" rule has no application because where, as here, a plaintiff "sues in an individual capacity to recover damages resulting in harm, not to the corporation, but to individual shareholders, the suit is personal, not derivative, and it is appropriate for damages to be awarded directly to those shareholders." *Glenn v. Hoteltron Sys., Inc.*, 74 N.Y.2d 386, 392 (1989). RCM and the Investing Plaintiffs' fraud and fraudulent inducement claims rest on, among other things, the allegations that they would not have become stake-holders in the Ritchie IV vehicle,[8] or for that matter put their capital at risk in *any* of the transactions with Defendants, if Defendants had not made misrepresentations to them and omitted what they were obligated to disclose. *See, e.g.*,

---

[7] Plaintiffs assume for purposes of this motion that New York law applies to this issue.

[8] Defendants are wrong to say (at 17, 23) that "Ritchie IV" as defined in the complaints (*see* SAC ¶ 92) is merely "a euphemism" for a single policy purchase agreement. On the contrary, the agreement to which Defendants refer – which is not even properly before the Court on this motion, given that the SAC does not mention it at all, let alone rely so "heavily" on it as to make it "integral" to the complaint, *see Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) – was just one of fifteen separate but related contracts governing the Ritchie IV deal. Among the many important contracts that Defendants do not mention are the equity and debt securities of the Ritchie IV policy purchasing vehicle. The SAC fairly alleges that the Investing Plaintiffs were induced to purchase those securities by Coventry's fraudulent conduct. *See* SAC ¶¶ 80, 92, 113, 115.

SAC ¶¶ 110, 113, 115.[9] That was precisely the type of allegation at issue in *Ceribelli*, *supra*, in which Judge Newman held that as a matter of New York law, an allegation that the plaintiffs bought shares in reliance on fraudulent statements gave rise to a direct claim on the part of the shareholders.

Defendants also seek to rely on a disclaimer in the policy purchase agreements purporting to limit LST's duty to provide information to Plaintiffs. Defs. Opp. 12-13. But once again, this clause, like the general integration clause, applies only to the entities party to it. Pls. Rev. Mem. 9; Pls. Opp. to Mot. to Dismiss 18-19. The clause does not absolve LST's affiliates of any duty to provide Plaintiffs with information, and it cannot possibly bind the non-contracting plaintiffs. The clause has nothing to do with Plaintiffs' well-pled allegations that the overall relationship between the two sides gave rise to a duty on the part of Coventry First LLC, Montgomery Capital, Inc., and their officers to make full disclosure to the Ritchie Capital group about the circumstances in which the insurance policies were originated, and about the New York Attorney's General's investigation.

Finally, there is no merit to Defendants' suggestion (at 13) that the Investing Plaintiffs did not deal sufficiently directly with the fraud defendants. As a general rule, a "plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him." *Secs. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71 (2d Cir. 2000). That is this case. The SAC explains that RCM was fiduciary and adviser to the Investing Plaintiffs

---

[9] Defendants imply (at 23) that Plaintiffs must identify with particularity every instrument they were induced to execute. But Rule 9(b) surely does not require a fraudulent inducement plaintiff to put before the court an entire 1500-page "closing set," and the lone district-case cited by Defendants says nothing of the kind. Rather, a fraud plaintiff need only "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). Plaintiffs have described the Ritchie I, II, and IV arrangements in reasonably specific terms, and set forth the particularized misrepresentations and omissions that induced them to enter into those arrangements. That is all that is needed.

7

(SAC ¶ 4), that RCM in dealings with Defendants acted on behalf of the Investing Plaintiffs (*id.* ¶¶ 54, 55, 57, 71), and that Defendants made their misrepresentations with the intent (and result) that the Investing Plaintiffs would act on them. *Id.* ¶ 115 ("the misstatements . . . were intended to induce, and did induce, [the Investing] Plaintiffs to act to their detriment . . . ."). No more is needed.

## II.    Plaintiffs Properly Allege Breach of Fiduciary Duty

As Plaintiffs explained, the Court was incorrect to say that the non-contracting Plaintiffs had pleaded no bases for establishment of a fiduciary relationship absent one between LST and Ritchie I and II. *See* Pls. Rev. Mem. 2-3. The Complaint described – and it should be even clearer in the SAC – a relationship in which (1) the parties shared profits as joint investors in a close corporation; and (2) Plaintiffs, as investors, relied heavily on the special expertise and management of Defendants. Yet Defendants continue to maintain that the parties have only an "ordinary commercial relationship," Defs. Opp. 6.

They do not. What is described in the complaint is an ongoing joint investment by, on the one hand, the Investing Plaintiffs and RCM, and, on the other, Coventry, with both sides risking capital and sharing in the profits. *E.g.*, SAC ¶¶ 8, 42, 45. That is exactly the type of economic relation in which the law routinely imposes fiduciary obligations. *E.g.*, *NCAS Realty Mgmt. Corp. v. Nat'l Corp. for Hous. P'ships*, 143 F.3d 38, 39 (2d Cir. 1998). Defendants suggest (at 6) that when the format for this relation is a close corporation,[10] then the minority shareholder owes no fiduciary obligations to the majority shareholders. Defendants have the law wrong. The "relationship between *shareholders in a close corporation, vis a vis each other*, is akin to that between partners and

---

[10] Ritchie I and Ritchie II *are* close corporations. As the SAC fairly alleges (*see* ¶¶ 8, 45), their only investors are the Investing Plaintiffs and Coventry. Defendants assert that Ritchie I and Ritchie II are listed on the Irish Stock Exchange (Defs. Opp. 6), but this assertion of facts outside the pleadings is improper at the Rule 12(b)(6) stage, and is grossly misleading in any event. That listing is for international-tax purposes. No securities of Ritchie I and II are traded on that Exchange or anywhere else.

imposes a high degree of fidelity and good faith." *Brunetti v. Musallam*, 783 N.Y.S.2d 347, 349 (1st

Dep't 2004) (emphasis added); *accord In re T.J. Ronan Paint Corp.*, 469 N.Y.S.2d 931, 936 (1st

Dep't 1984). These duties apply to minority and majority shareholders alike. *E.g.*, *Cassata v.*

*Brewster-Allen-Wichert, Inc.*, 670 N.Y.S.2d 552, 553 (2d Dep't 1998).[11]

    Nor was Coventry a "mere stock[-holder]," Defs. Opp. at 4. Although Defendants are

incorrect to suggest (at 4-5) that "dominance" (as opposed to trust) is the *sine qua non* of a fiduciary

relation, in any event the Defendant entities had precisely the type of "de facto control and

dominance" that is frequently associated with a fiduciary obligation. *See United States v. Chestman*,

947 F.2d 551, 568 (2d Cir. 1991); BLACK'S LAW DICTIONARY 658 (8th ed. 2004) (defining

'fiduciary' as "one who must exercise a high standard of care in managing another's . . . property").

In various specific ways described in the SAC (*see* ¶¶ 47-51), Plaintiffs "reposed their trust and

confidence" – including the disposition of their invested funds (*see* SAC ¶¶ 49, 96) – "in Defendants,

who were in a position of superior knowledge and information with respect to the purchase of the

policies." *Id.* ¶ 53. Defendants, that is, took on managerial functions that put them in a controlling

position with respect to crucial aspects of the venture – the origination of the insurance policies, and

thus the investment of Plaintiffs' capital.

    The Opinion also overlooked that (1) the contractual disclaimer of an intent to create a

partnership or joint venture applied *at most to LST, not the other Defendants*, and (2) in any event the

clause was not a generalized repudiation of a fiduciary relation so much as a disclaimer of an intent

to create two *specific categories* of fiduciary relationships. Pls. Rev. Mem. 4; Pls. Opp. to Mot. to

Dismiss 21. Defendants do not even address these issues. Instead they raise a host of challenges to

---

[11] Defendants mis-describe this case. *See* Defs. Opp. 7 n.6. The "issue" referred to in Defendants' parenthetical description of the case was one of fact. There was no question that a minority shareholder owes majority

the factual accuracy of the SAC. Yet any questions about the intent of the parties, the nature of the profit-sharing arrangement, or the extent of Defendants' activities managing the enterprise should be addressed after discovery. And rather than separately parse in a vacuum, as Defendants do, limited excerpts from several of the dozens of contracts that governed the relationships here,[12] the Court at this early stage must accept the allegations as true and draw all reasonable inferences in Plaintiffs' favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## III. Plaintiffs Established General Personal Jurisdiction Over Montgomery Capital, Inc.

Defendants' reply brief in support of their motion to dismiss quite pointedly *dropped* the personal jurisdiction defense as to Montgomery Capital after defense counsel in this lawsuit became aware of Montgomery Capital's concession of personal jurisdiction in the New York Attorney General action, as well as Montgomery Capital's license to do business in New York. *See* Pls. Rev. Mem. 10. Montgomery Capital does not (and cannot) dispute that it is actually subject to general personal jurisdiction in New York; instead it makes an entirely new and hyper-technical challenge to the documents evidencing its license to do business in New York. Even if this argument were properly before the Court – which it is not, Defendant having deliberately omitted it from the previous round of briefing – it is meritless.[13] Montgomery Capital, moreover, does not challenge the authenticity of the brief to the New York Supreme Court in which the Defendant conceded general personal jurisdiction in New York.

---

shareholders a duty to act in good faith.

[12] The Court should disregard the excerpted agreements that Defendants have attempted to put before it. The SAC does not quote these agreements, much less rely heavily on their terms. *See* note 8, *supra*.

[13] The Declaration of Lawrence S. Robbins sets forth the declarant's personal knowledge that Exhibit 2 thereto consisted of "true and correct copies" of records retrieved from the Department of State of New York. *See* Robbins Decl. ¶ 3. To the extent the Court is nevertheless dissatisfied with the evidentiary submission, Plaintiffs are prepared to furnish whatever certifications are necessary to authenticate the New York Department of State's records.

Respectfully submitted,

ROBBINS, RUSSELL, ENGLERT, ORSECK,      LAW OFFICES OF THOMAS P. PUCCIO
   UNTEREINER & SAUBER LLP

By: /s Lawrence S. Robbins                     Thomas P. Puccio
   Lawrence S. Robbins (LR-8917)           230 Park Avenue
   Gary A. Orseck                          New York, NY 10169
   Daniel R. Walfish                       Tel: (212) 883-6383
   Rachel S. Li Wai Suen                   Fax: (212) 883-6388
1801 K Street, N.W., Suite 411
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

Dated: September 28, 2007                      *Counsel for Plaintiffs*

11