UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT LLC, ) | |
| RITCHIE RISK-LINKED STRATEGIES ) | |
| TRADING (IRELAND), LIMITED, RITCHIE ) | |
| RISK-LINKED STRATEGIES TRADING ) | |
| (IRELAND) II, LIMITED, WALKERS SPV ) | |
| LIMITED, as trustee for Ritchie Risk-Linked ) | Civil Action No. 07CV3494 (DLC) (DCF) |
| Life Strategies Trust I and Ritchie Life Strategies ) | |
| Master Trust, and RITCHIE RISK-LINKED ) | (ECF) |
| STRATEGIES TRADING, LTD., ) | |

Plaintiffs,

v.

COVENTRY FIRST LLC, THE COVENTRY
GROUP, INC., MONTGOMERY CAPITAL, INC.,
LST I LLC, ALAN BUERGER, CONSTANCE
BUERGER, REID S. BUERGER, ANTONIO
MUNIZ, ALEX SELDIN, NEAL JACOBS,
EILEEN SHOVLIN, and JIM DODARO,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COUNTS I & II OF PLAINTIFFS'
PROPOSED SECOND AMENDED COMPLAINT**

WILLIAMS & CONNOLLY LLP

_____/s/_____
Katherine G. Lindsey (KL-0902)
Dane H. Butswinkas
Robert M. Cary
David A. Forkner
Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

Dated: November 2, 2007          *Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

I.    THE COURT LACKS PERSONAL JURISIDCTION OVER INDIVIDUAL
      DEFENDANTS ......................................................................................................1

      A.    Individual Defendants Did Not Transact Business In New York ..............1

      B.    Individual Defendants Did Not Commit Tortious Acts Outside New York
            Causing Injury Within New York .............................................................2

      C.    Section 1965 Does Not Confer Jurisdiction Over Individual Defendants .................3

II.   PLAINTIFFS LACK STANDING TO ASSERT RICO CLAIMS ....................................4

III.  PLAINTIFFS FAIL TO ALLEGE A PATTERN OF RACKETEERING ........................6

IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(d) ....................10

CONCLUSION ..................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Am. Express Co. S'holders Litig.*, 39 F.3d 395  (2d Cir. 1994)................................4

*Am. Special Risk Ins. Co. v. Greyhound Dial Corp.*, No. 90 Civ. 2066 RPP,
    1997 WL 115637 (S.D.N.Y. Mar. 14, 1997) .......................................................8

*Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991 (2006) ....................................4, 7

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)...............................................................7

*Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) .........................................7, 8

*BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon*, 43 F. Supp. 2d 359
    (S.D.N.Y. 1999) ...........................................................................................................4

*Bozell Group, Inc. v. Carpet Co-op of Am. Ass'n, Inc.*, No. 00 Civ. 1248 (RWS),
    2000 WL 1523282 (S.D.N.Y. Oct. 11, 2000) ..................................................1, 2

*Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427 (S.D.N.Y. 2002) ......................6

*Burrows Paper Corp. v. R.G. Eng'g, Inc.*, 363 F. Supp. 2d 379 (S.D.N.Y. 2005).....................1, 2

*Caravella v. Hearthwood Homes Inc.*, No. 05-CV-1529 (DRH), 2007 WL 2886507
    (N.D.N.Y. Sept. 27, 2007) .....................................................................................10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir. 1999) .............9, 10

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .........................................6

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)...........................................2

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) ................10

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362 (E.D.N.Y. 2002) .............9, 10

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006)................................9

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ........................7, 9, 10

*Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006) ..........................................................10

*Goldfine v. Sichenzia*, 118 F. Supp. 2d 392 (S.D.N.Y. 2000) ........................................8

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ....................................5, 10

*Hypoxico, Inc. v. Col. Altitude Training LLC*, No. 02 Civ. 6191, 2003 WL 21649437
    (S.D.N.Y. July 14, 2003) ..........................................................................................1

*Int'l Customs Assocs. v. Ford Motor Co.*, 893 F.Supp. 1251 (S.D.N.Y. 1995) ...........................1

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ...........................................................................9

*Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005).................................................................4

*Kadouri v. Fox*, No. 03 CV 1725(NG), 2005 WL 783255 (E.D.N.Y. Jan. 24, 2005).................10

*Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319 (S.D.N.Y. 1998).....................................................2

*Karl Koch Erecting Co. v. New York Convention Ctr. Dev.*, 838 F.2d 656 (2d Cir. 1988)............4

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)..............................................................1

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ......................................................3

*LaSala v. v. E\*Trade Secs. LLC*, No. 05 Civ. 5869 (SAS), 2005 WL 2848853  (S.D.N.Y.
    Oct. 31, 2005) ........................................................................................................4

*Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798 (S.D.N.Y. 1975)..............................3

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ...........................................................5

*Leung v. Law*, 387 F. Supp. 2d 105 (E.D.N.Y. 2005)................................................................10

*M'Baye v. N.J. Sports Prod., Inc.*, No. 06 Civ.3439 DC, 2007 WL 431881
    (S.D.N.Y. Feb 7, 2007) ............................................................................................8

*Maranga v. Vira*, 386 F. Supp. 2d 299 (S.D.N.Y. 2005)............................................................2

*Mead v. Schaub*, 757 F. Supp. 319 (S.D.N.Y. 1991) ...............................................................10

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989)....................................................................8

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ..........................................................4

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514
    (S.D.N.Y. 2001)......................................................................................................10

*Nat'l Tele. Directory Consultants, Inc. v. Bellsouth Adver. & Pub. Corp.*, 25 F. Supp. 2d
    192 (S.D.N.Y. 1998)..................................................................................................3

*In re Parmalat Secs. Litig.*, 497 F. Supp. 2d 526 (S.D.N.Y. 2007) ............................................1, 7

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2d Cir. 1998)..................3

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC),
    2007 WL 2044656 ( S.D.N.Y. Jul. 17, 2007) ..................................................................6, 8

*Sathianathan v. Smith Barney, Inc.*, No. 04-7122, 2007 WL 576097
    (S.D.N.Y. Feb. 21, 2007) .........................................................................................7

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91 (2d Cir. 1997) .......................................9

*Sedima S.P.R.1 v. Imrex Co.*, 473 U.S. 479 (1985) ........................................................................4

*Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440 (S.D.N.Y. 1988) ...................................1

*Singh v. Parnes*, 199 F. Supp. 2d 152 (S.D.N.Y. 2002) .................................................................7

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100 (2d Cir. 2006) ..................2

*Studio A Entm't, Inc. v. Direct Distribs., LLC.*, No. 06 Civ. 02275SAS,
    2007 WL 437703, (S.D.N.Y. Feb. 8, 2007)...................................................................3

*In re Sumitomo Copper Litig.*, 995 F. Supp. 451 (S.D.N.Y. 1998) ................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ...........................................9

*In re Time Warner Inc. Secs.  Litig.*, 9 F.3d 259 (2d Cir. 1993)......................................................8

*Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256
    (2d Cir. 2002)............................................................................................................4

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606RWS,
    2004 WL 2187069 (S.D.N.Y. Sep. 29, 2004).....................................................................6

*Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219 (S.D.N.Y. 2003)...............................................7

*Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544 (E.D.N.Y. 2005) ........................................................10

*Wise/Contact US Optical Corp. v. Ifcher*, No. 92 Civ. 4312 (PNL), 1993 WL 258708
    (S.D.N.Y. Jul. 7, 1993) ...........................................................................................3

*Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276 (S.D.N.Y.1991).........................................6

*Zito v. Leasecomm Corp.,* No. 02 Civ.8074 GEL, 2004 WL 2211650 (S.D.N.Y., Sept. 30, 2004) ....................................................................................................................................3

## FEDERAL STATUTES

15 U.S.C. § 78c(a)(10) ...............................................................................................................6

15 U.S.C. § 78j(b) ......................................................................................................................6

18 U.S.C. § 1962(c) ...................................................................................................................4

18 U.S.C. § 1964(c) ...................................................................................................................6

18 U.S.C. § 1965 ........................................................................................................................1

Fed. R. Civ. P. 9(b) .................................................................................................................6, 7

Fed. R. Civ. P. 12 .......................................................................................................................1

## STATE STATUTES

N.Y. C.P.L.R. § 302(a) .......................................................................................................1, 2, 3

Jurisdictional and substantive defects preclude Plaintiffs from transforming a garden-variety breach of contract claim into a vehicle for treble damages.[1]

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS.

Plaintiffs fail to show personal jurisdiction over each Individual Defendant.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).  Instead, they refer to the Individual Defendants collectively and claim they are subject to personal jurisdiction under N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(3) and 18 U.S.C. § 1965.  Plaintiffs are wrong.

### A.    Individual Defendants Did Not Transact Business In New York.

First, Plaintiffs do not show Individual Defendants transacted business in New York in their individual capacities or that jurisdiction over Coventry First can be imputed to them under an agency theory.  *See Hypoxico, Inc. v. Col. Altitude Training LLC*, No. 02 Civ. 6191, 2003 WL 21649437, at *3 (S.D.N.Y. July 14, 2003) (citations omitted).  Instead, Plaintiffs claim one or more Individual Defendants met and communicated by telephone and e-mail with Plaintiffs' representatives in New York.  Opp. at 2.  While Plaintiffs suggest the Individual Defendants may have done so in their individual capacities, *see* Opp. at 4 n.9, their factual allegations undermine this argument.  *See, e.g.*, SAC ¶ 17 ("Coventry employees and executives frequently communicated by email and telephone with RCM employees in New York.").  In any event, a meeting and multiple telephone calls and e-mails sent into New York, by non-domiciliaries from outside New York, are insufficient to establish personal jurisdiction.  *See Burrows Paper Corp. v. R.G. Eng'g, Inc.*, 363 F. Supp. 2d 379, 386 (S.D.N.Y. 2005); *Bozell Group, Inc. v. Carpet Co-op of Am. Ass'n, Inc.*, No. 00 Civ. 1248 (RWS), 2000 WL 1523282, *6 (S.D.N.Y. Oct. 11, 2000); *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F.Supp. 1251, 1261-62 (S.D.N.Y. 1995).

Moreover, the alleged meeting and communications did not concern business dealings in New York.  To the contrary, they concerned contracts between LST I, a Delaware corporation,

---

[1] Rule 12 allows Defendants to identify such defects, even for the first time, in a successive motion to dismiss.  *See In re Parmalat Secs. Litig.*, 497 F. Supp. 2d 526, 530 (S.D.N.Y. 2007); *Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 444 (S.D.N.Y. 1988).

and Ritchie I and II, two "Irish corporations with offices in Ireland," for the purchase of life insurance policies from sellers across the country.  SAC ¶ 22; Opp. at 2 (citing SAC ¶¶ 17, 43, 54, 71, 73, 75, 76; Dkt. No. 24 ¶ 5);[2] *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (transaction must have center of gravity inside New York).  That Individual Defendants had some communications about these business dealings with Plaintiffs' personnel located in New York does not confer jurisdiction.  *See, e.g., Burrows*, 363 F. Supp. 2d at 386; *Bozell*, 2000 WL 1523282 at *6.  As to agency, Plaintiffs make only conclusory allegations of control, *see* SAC ¶¶ 18-19, and rely on Individual Defendants' title or position.  *See id.* ¶¶ 25, 30-35, 64.  Such allegations are insufficient as a matter of law.  *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324-26 (S.D.N.Y. 1998) (conclusory allegations and title of defendants are insufficient).

Second, Plaintiffs do not claim Individual Defendants personally purchased Policies from New York sellers or through New York brokers, Opp. at 2-3; SAC ¶¶ 59, 60, 61, 64, 66, 81 (Coventry First purchased Policies), or that Ritchie I and II purchased policies from Individual Defendants, SAC ¶ 6 (Ritchie I and II purchased policies from LST I).  Nor do Plaintiffs allege a "substantial nexus" between Policies allegedly procured by fraud from New York sellers or brokers and those sold to Ritchie I and II.  *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).  Indeed, the only New York Policies alleged in the SAC to be fraudulently procured were purchased by Coventry First in 2004 – one year before Ritchie I and II contracted with LST I.  *See* SAC ¶ 61(b), (c), SAC Ex. A §§ 30-31, 50-51.

### B.    Individual Defendants Did Not Commit Tortious Acts Outside New York Causing Injury Within New York.

First, Plaintiffs do not claim Individual Defendants committed tortious acts in their individual capacities or that jurisdiction over Coventry First can be imputed to them under an agency theory.  *See supra*.  Indeed, Plaintiffs do not – and cannot – allege they were injured in

---

[2]  Plaintiffs do not allege Individual Defendants (1) had on-going contractual relationships with a New York company; (2) had meetings in New York after contracts were signed; (3) were bound by a choice of law provision; (4) were obligated to send notices and payments into New York, or (5) were subject to supervision by a New York corporation. *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006).

New York.  *See* SAC ¶¶ 21-24.  Instead, they claim "Defendants systematically defrauded the insureds from whom Coventry First purchased policies."  *Id.* ¶ 59; Opp. at 5.  But, the New York Supreme Court dismissed the NYAG's claim of fraud against insureds "because the alleged injury to the policy sellers is too speculative."  Walfish Aff., Ex. B at 8.  Such speculative injuries do not satisfy § 302(a)(3).  *See Nat'l Tele. Directory Consultants, Inc. v. Bellsouth Adver. & Pub. Corp.*, 25 F. Supp. 2d 192, 198 (S.D.N.Y. 1998); *Wise/Contact US Optical Corp. v. Ifcher*, No. 92 Civ. 4312 (PNL), 1993 WL 258708, at *3 (S.D.N.Y. Jul. 7, 1993).

Second, Plaintiffs make no effort to quantify the Individual Defendants' personal business dealings in New York and do not allege the Individual Defendants made a "discernable effort to directly or indirectly serve the New York market" as required by § 302(a)(3)(i).  *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999); *Studio A Entm't, Inc. v. Direct Distribs., LLC.*, No. 06 Civ. 02275SAS, 2007 WL 437703, at *3 (S.D.N.Y. Feb. 8, 2007).

Third, Plaintiffs do not plead facts showing Individual Defendants derive revenue from goods or services rendered in New York, or that Individual Defendants derived substantial revenues from interstate commerce.  *See* C.P.L.R. § 302(a)(3)(i) & (ii).  A corporation's revenues from interstate commerce cannot be attributed to its non-domiciliary employees, regardless of their title.  *See also Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 805 (S.D.N.Y. 1975) (declining to attribute revenue derived by corporation to sole shareholder).

## C.    Section 1965 Does Not Confer Jurisdiction Over Individual Defendants.

To obtain personal jurisdiction over Individual Defendants under § 1965(b), Plaintiffs must show that no district court could exercise personal jurisdiction over all Defendants.  *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71-72 (2d Cir. 1998); *Zito v. Leasecomm Corp.,* No. 02 Civ. 8074 GEL, 2004 WL 2211650, at * 20 (S.D.N.Y., Sept. 30, 2004).  Here, Plaintiffs do not dispute the Eastern District of Pennsylvania has jurisdiction over all Defendants.  And, contrary to Plaintiffs' claim, a forum selection clause agreed to by Coventry First and LST I concerning their contractual relationships does not divest that court of

3

its jurisdiction.[3]

## II.    PLAINTIFFS LACK STANDING TO ASSERT RICO CLAIMS.

First, Plaintiffs' alleged injuries were not caused by predicate acts.  *See Sedima S.P.R.1 v. Imrex Co.*, 473 U.S. 479, 497 (1985) (predicate acts must cause harm under § 1962(c)).  The alleged predicates consist of wire and mail fraud against Policy sellers ("Acts against Sellers"), *see* SAC ¶¶ 84(e)-(q), coupled with alleged wire fraud against Plaintiffs ("Acts against Plaintiffs").  *See id.* ¶ 81, 84(a), 84(r), (s).[4]  As to the Acts against Sellers, Plaintiffs do not allege they purchased any of the Policies to which the predicate acts pertain, which were originated nearly one year before Ritchie I and II contracted with LST I.  *See* SAC ¶¶ 44, 84.  The SAC also belies the notion that Plaintiffs were intended targets or direct victims of Acts against Sellers.  *See id.* ¶ 53; Opp. at 10; *In re Am. Express Co. S'holders Litig.,* 39 F.3d 395, 400 n.3 (2d Cir. 1994) (cursory assertions that plaintiff was victim of racketeering insufficient).

Instead, Plaintiffs claim Acts against Sellers caused the NYAG to file suit, SAC ¶ 1, which, in turn, caused Moody's to withdraw its preliminary rating, *id.* ¶¶ 87-88 which, in turn, thwarted Plaintiffs' contemplated secured transaction.  *See id.* ¶ 90.  Under that theory, Plaintiffs were harmed by the filing of the NYAG action regardless of whether Defendants actually committed wire or mail fraud, and even if Plaintiffs did not purchase Policies originated through such acts.  *See* Opp. at 8, 9 (standing does not depend on the purchase of improperly originated Policies).  Such indirect harm is insufficient as a matter of law to establish proximate causation.

---

[3] Even a mandatory forum-selection clause does not divest a court of jurisdiction.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972); *Karl Koch Erecting Co. v. New York Convention Ctr. Dev.*, 838 F.2d 656, 658 (2d Cir. 1988).  Moreover, were the inclusion of Coventry First and LST I essential to the RICO dispute, the forum selection clause could be waived by the parties or disregarded by the Eastern District of Pennsylvania.  *See Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 261 n.2 (2d Cir. 2002); *LaSala v. E\*Trade Secs. LLC*, No. 05 Civ. 5869 (SAS), 2005 WL 2848853, at \* 6 (S.D.N.Y. Oct. 31, 2005).

[4] Plaintiffs' claims that Defendants had a preconceived purpose of harming them contradicts their claim of a partnership in with "profits and losses would be shared."  SAC ¶¶ 8, 45; *BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon*, 43 F. Supp. 2d 359, 365-66 (S.D.N.Y. 1999) (plaintiff must be "intended targets" and injury must be "preconceived purpose"); *Jeffreys v. City of N.Y.,* 426 F.3d 549, 554 (2d Cir. 2005) (contradictory allegations not plausible).

*See Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1998 (2006).

Nor were Plaintiffs' alleged injuries caused by Acts against Plaintiffs. These alleged acts consist of e-mailing draft and final MPPAs, *see* SAC ¶ 84(r), and teleconferences about Policy origination practices alleged by the NYAG. *See id.* ¶ 84(s); *see also id.* ¶ 59, 68, 72-73, 75, 79. But, these alleged acts, standing alone, do not support Plaintiffs' theory of racketeering. To the contrary, Plaintiffs claim the racketeering consisted of "induc[ing] policy owners to sell their policies in an unfairly rigged bidding process and to induce institutional investors, such as Plaintiffs, to partner with Defendants to obtain those policies." SAC ¶¶ 81, 84(a), 102. Having failed to allege Plaintiffs purchased policies obtained through Acts against Sellers, Plaintiffs cannot establish they were a target or intended victim of this alleged racketeering. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003) (standing limited to targets, competitors and intended victims of racketeering); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (RICO standing exists only where predicate acts cause harm).

Second, Plaintiffs fail to allege clear and definite RICO damages. Plaintiffs concede they are not entitled to recover their "anticipated profits" under RICO, *see* SAC ¶¶ 87, 95, Opp. at 10, and they do not claim the have sold Policies for a loss. *See* SAC ¶ 91. Nor do they dispute the Policies retain their death benefits. Instead, Plaintiffs claim all Policies purchased by Ritchie I and II diminished in value because the NYAG has sought a "rescission for all Sellers who entered Purchase Agreements with Coventry from 2001 to the present." Opp. at 8, 10. But, Plaintiffs do not claim any Policies have been rescinded, *see* SAC ¶ 37, only that they are subject to a claim of rescission. That is not enough. *See Hecht,* 897 F.2d at 25 (injury too speculative where plaintiff alleges "he would have lost commissions in the future, and not that he has lost any yet"). Moreover, the New York Supreme Court has determined the NYAG cannot rescind policies that do not involve unlawful activities against New York brokers or sellers. *See* Walfish Aff., Ex. B at 6-7. Plaintiffs, however, have identified only two alleged predicate acts involving New York brokers or sellers. *See* SAC ¶¶ 61(b), 66, 84(g), 84(e). These alleged acts pertain to Policies purchased in 2004 – nearly one year before Ritchie I and II contracted with LST I – and

are not alleged to have been purchased by Ritchie I or II.  Because Plaintiffs cannot establish

concrete damages stemming from these alleged predicate acts, their RICO claims fail.  *See*

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

Third, the "Investing Plaintiffs" lack standing to assert RICO claims.  The Investing

Plaintiffs concede they did not purchase Policies and lack standing under RICO to redress

alleged injuries to Ritchie I and II.  Opp. at 12; SAC ¶ 45.  Instead, they claim Defendants owed

them a separate duty and engaged in predicate acts directed toward them.[5]  Opp. at 13.  To that

end, the Investing Plaintiffs assert Defendants made material misrepresentations regarding Policy

origination practices and the NYAG investigation, with the intent and effect of inducing the

Investing Plaintiffs to purchase subordinated securities in Ritchie I and II.  *See* SAC ¶¶ 84(r), (s);

*see also id.* ¶ 45 (Investing Plaintiffs "became owners of subordinated securities"); *id.* ¶ 102

(Plaintiffs were "fraudulently induced to invest . . . in life insurance policies").  Importantly,

Plaintiffs do not dispute these alleged predicate acts relate to the purchase of securities and

would be actionable as fraud.  *See* 15 U.S.C. § 78c(a)(10); 15 U.S.C. § 78j(b); 17 C.F.R. §

240.10b-5; SAC ¶ 102; Opp. at 13.  As such, the PSLRA bars the Investing Plaintiffs from

relying on the alleged acts to maintain a RICO claim.  *See* 18 U.S.C. § 1964(c) (person may not

rely on conduct actionable as fraud in the purchase of securities to establish § 1962 claim).

## III.   PLAINTIFFS FAIL TO ALLEGE A PATTERN OF RACKETEERING.

First, Plaintiffs' alleged RICO pattern is limited to predicate acts identified in paragraphs

84(e)-(s) of the SAC.[6]  Because Plaintiffs claim these alleged acts constitute wire fraud, SAC ¶¶

---

[5] The Court previously concluded Plaintiffs "have not pointed to any separate legal duty to
support the fraud claim."  *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494
(DLC), 2007 WL 2044656, at * 7 ( S.D.N.Y. Jul. 17, 2007) ("*Ritchie*").

[6] Plaintiffs concede ¶¶ 84(a)-(d) do not plead predicate acts.  Opp. at 14-15.  Plaintiffs also do
not plead communications in the FOIR action are predicate acts.  *See* SAC ¶ 84.  Nor can such
communications be incorporated as predicate acts by reference.  *See* Opp. at 14; *W. 79th Street
Corp. v. Congregation Kahl Minchas Chinuch*, NO. 03 CIV. 8606RWS, 2004 WL 2187069,
**5-6 (S.D.N.Y. Sep. 29, 2004); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 284
(S.D.N.Y.1991).  Indeed, the FOIR action does not allege use of mail or interstate wire
communications, and Plaintiffs do not claim they received or relied on those communications.
*See Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 444 (S.D.N.Y. 2002).  Moreover, the

84(e)-(o), (r)-(s), Rule 9(b) prevents them from expanding the number of acts by claiming paragraph 84 is not "exhaustive," and that "Defendants used interstate wires and mail on numerous other occasions. . . ." *Id.* ¶ 85; *Singh v. Parnes*, 199 F. Supp. 2d 152, 162 (S.D.N.Y. 2002); *see also First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004) (acts of wire or mail fraud must satisfy Rule 9(b)).[7]

Second, Acts against Sellers do not establish a pattern. *See* ¶¶ 84(e)-(q). Under RICO, Plaintiffs must reasonably rely on the statements alleged to constitute predicate acts of wire and mail fraud. *See Bank of China v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004); *Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122(DAB)(FM), 2006 WL 538152, at *20 (S.D.N.Y. Feb. 24, 2006); *In re Parmalat*, 383 F. Supp. 2d at 604. Plaintiffs do not seriously contest this binding principle.[8] Nor do they dispute that they never received or relied on (and in fact have never seen) the transmissions that allegedly constitute fraud against sellers. *See* SAC ¶¶ 53, 84(e)-(q).

In addition, paragraphs 84(h)–(j), parts of (k), (l) and (o) fail to allege *interstate* wire transmissions. *See* Opp. at 18–19. And paragraphs 84(p) and (q) fail to satisfy Rule 9(b), as they assert mail or wire fraud "[t]o the extent" any co-broker payments or purchase agreements were transmitted by interstate wires or mail. But, the use of interstate wires or mail must be affirmatively pleaded. *See Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 226 n.10 (S.D.N.Y. 2003). Similarly, paragraph 84(g) states "Coventry First" e-mailed a falsified offer sheet. That statement likewise fails to satisfy Rule 9(b), as corporations do not send e-mails,

---

Florida matter has been resolved without a finding of liability. *See* http://www.floir.com/pdf/CoventryFirst88270-06-CO.pdf (last visited Nov. 1, 2007).

[7] Plaintiffs claim they need only describe with particularity the "circumstances constituting the overall fraudulent scheme." Opp. at 15. But when, like here, "plaintiff[s] claim[] specific statements or mailings were themselves fraudulent, . . . the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998); SAC ¶ 84(e)-(s).

[8] Plaintiffs' contrary assertion, *see* Opp. at 19 n.19, is based on a view of proximate causation rejected by *Anza*, 126 S. Ct. at 1998. Moreover, *Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003), did not address the reliance requirement established by *Bank of China*. Indeed, *Baisch* concerned mailings made directly to plaintiff on which he relied. *See id.* at 370, 374.

individuals do.  Plaintiffs do not identify the individual who allegedly e-mailed the offer sheet.
*See In re Time Warner Inc. Secs.  Litig.*, 9 F.3d 259, 265 (2d Cir. 1993) (Rule 9(b) prohibits
pleading fraud against corporation "through completely unattributed statements").

Third, Acts against Plaintiffs do not establish a pattern.  Paragraph 84(r) alleges
misrepresentations contained in the MPPAs, or drafts thereof.  *See id.* ¶ 84(r).  Paragraph 84(s)
alleges misrepresentations concerning the NYAG Action and policy origination practices
challenged therein.  *See id.* ¶ 84(s).  Both alleged misrepresentations form the basis of Plaintiffs'
breach of contract claims.  *See id.* ¶¶ 123-24.  But, ordinary breach of contract claims do not give
rise to RICO liability.  *See Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000); *Am.
Special Risk Ins. Co. v. Greyhound Dial Corp.*, No. 90 Civ. 2066 RPP, 1997 WL 115637, at *1
n.1 (S.D.N.Y. Mar. 14, 1997).  Moreover, in dismissing Plaintiffs' fraud claims, the Court noted
that Plaintiffs "expressly disclaimed reliance on the very representations they now claim were
fraudulent."  *Ritchie*, 2007 WL 2044656, at * 8 (citing MPPAs § 7.12); *Bank of China*, 359 F.3d
at 178 (RICO requires a showing of reasonable reliance).[9]  Where, as here, fraud claims fail for
lack of reliance, claims of wire and mail fraud based on the same fraudulent scheme also fail.
*See, e.g., M'Baye v. N.J. Sports Prod., Inc.*, No. 06 Civ.3439 DC, 2007 WL 431881, *7
(S.D.N.Y. Feb. 7, 2007); *Morin v. Trupin*, 711 F. Supp. 97, 105 (S.D.N.Y. 1989).

Additionally, paragraph 84(s) fails for an independent reason.  Plaintiffs contractually
agreed the NYAG action is not "an event of default . . . or termination event" under the MPPAs
or any other Transaction Documents.  *See* MPPAs § 6.01(a)(iii) (termination event includes "a
material breach of any representation, warranty or covenant of the Seller").  Plaintiffs cannot
plausibly suggest that representations, which do not breach the MPPAs, amount to fraud in

---

[9] Plaintiffs wrongly claim the integration clause "releases only LST."  Opp. at 17.  Section 7.12
is not a release.  Rather, it is a disclaimer by Plaintiffs of reliance on all pre- and post-contractual
representations.  *See* MPPAs § 7.12 (excluding only representations "set forth in the Transaction
Documents"); *Ritchie*, 2007 WL 2044656, at * 8 (disclaimer "sufficient to bind not just the
signatories but the other plaintiffs").  Thus, regardless of counterparties to the MPPAs, Plaintiffs
cannot establish reliance on such representations.  And in any event, Plaintiffs claim LST I is the
alter ego of "Montgomery Capital and the entire Coventry corporate family."  SAC ¶ 29.

inducing the MPPAs or the Policy purchases thereunder. *See* SAC ¶¶ 110, 115; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (claims must be plausible).[10]

Fourth, Plaintiffs fail to allege continuity. Closed-ended continuity requires predicate acts spanning at least two years. *Satinwood, Inc.*, 385 F.3d at 181. And, as is relevant here, open-ended continuity exists if Defendants regularly conducted business through mail and wire fraud. *See* Opp. at 20-21. Under either analysis, acts that fail to qualify as predicates are not considered. *See Satinwood, Inc.*, 385 F.3d at 182; *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999); *Leung v. Law*, 387 F. Supp. 2d 105, 124 (E.D.N.Y. 2005). Here, even were the Court to consider all interstate wire communications Plaintiffs allege with particularity, *see* SAC ¶¶ 84(e), (f), (k), (r), and (s), the alleged pattern lasted only 19 months, which is insufficient. *See* Mot. to Dismiss at 20-21.[11] Moreover, the only entities Plaintiffs identify as having purchased polices are Ritchie I and II. *See* SAC ¶¶ 45, 81 (failing to identify institutional investors). The alleged scheme directed against these entities involved two MPPAs, a handful of alleged predicate acts, and related Defendants, who allegedly sold Policies originated unlawfully to Ritchie I and II over a period of less than two years. *See* SAC ¶¶ 43, 56, 58. That does not show closed-ended continuity. *See Satinwood*, 385 F.3d at 173; *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97-98 (2d Cir. 1997); *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372-73 (E.D.N.Y. 2002).

Plaintiffs similarly fail to establish open-ended continuity. Even were the Court to consider every wire and mail communication mentioned anywhere in the SAC, *see* SAC ¶ 84; NYAG Compl. ¶¶ 27-45, 62, 64; FOIR Compl. ¶¶ 10-31, these communications concern only 19

---

[10] The SAC references the Intercreditor Agreement in a failed effort to establish a fiduciary duty. *See* SAC ¶ 45; Rev. Mot. Reconsid. at 3. Therefore, the Court may consider it in deciding this motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007); *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 198 (2d Cir. 2006).

[11] Plaintiffs claim the predicates span "at least three years." Opp. at 20-21. But, the paragraphs cited to support that assertion do not allege wire or mail communications, *see* SAC ¶¶ 60, 61(a), 62-65, NYAG Comp. ¶ 2, 4, 5, 25, 27, FOIR Compl. ¶¶ 15(a), 17(a), 21(a), 31(a); *see also* SAC ¶ 84(q), do not allege predicate acts, *see* SAC ¶ 69, or concern intra-office e-mails, which do not constitute wire fraud. *See* Motion to Dismiss at 20-21.

(or 1.4%) of the 1,318 Policies Defendants allegedly purchased by 2005. *See* SAC ¶ 40.[12]  *See*

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (acts may be

"neither isolated or sporadic"); *Mead v. Schaub*, 757 F. Supp. 319, 323 (S.D.N.Y. 1991) (no

open-ended continuity where business did not depend fraud to conduct day to day affairs).[13]

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(d).

Plaintiffs do not plead the most basic element of a conspiracy:  conscious agreement by

each Defendant to further a fraudulent scheme. *See Hecht,* 897 F.2d at 25-26.  To conceal this

deficiency, Plaintiffs cobble together a list of allegations concerning Defendants' legal

relationship or job title and specific acts taken by each of them.  But these allegations provide no

basis to infer the existence of an agreement between Defendants to violate the law and thus, the

conspiracy claim fails. *See Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F.

Supp. 2d 514, 541 (S.D.N.Y. 2001); *FD Property Holding, Inc.*, 206 F. Supp. 2d at 373.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Counts I and II of Plaintiffs'

Proposed Second Amended Complaint should be granted.

---

[12] These 19 Policies are described in: (1) SAC ¶ 84(e), NYAG Compl. ¶ 30; (2) SAC ¶ 84(f), NYAG Compl. ¶ 32; (3) SAC ¶ 84(g), NYAG Compl. ¶ 62; (4) SAC ¶ 84(h), NYAG Compl. ¶ 64; (5) SAC ¶ 84(i), NYAG Compl. ¶ 28; (6) SAC ¶ 84(j), NYAG Compl. ¶ 33; (7) SAC ¶ 84(k), NYAG Compl. ¶¶ 37-39; (8) SAC ¶ 84(l), NYAG Compl. ¶ 40; (9) SAC ¶¶ 84(m) and (n), NYAG Compl. ¶ 43; (10) SAC ¶ 84(o), NYAG Compl. ¶ 44; (11) SAC ¶¶ 84(p) and (q) (which also pertain to Policies (1) through (10)), NYAG Compl. ¶ 36; (12) FOIR Compl. ¶ 11; (13) *id.* ¶ 13; (14) *id.* ¶ 15; (15) *id.* ¶ 17; (16) *id.* ¶ 19; (17) *id.* ¶ 21; (18) *id.* ¶ 23; and (19) *id.* ¶ 25.

[13] Nor do Acts against Plaintiffs establish open-ended continuity.  Paragraph 84(r) involves the MPPAs, *see* SAC ¶¶ 55-58, 84(r), which are discrete agreements of limited duration.  *See Caravella v. Hearthwood Homes Inc.*, No. 05-CV-1529 (DRH), 2007 WL 2886507, at *10 (N.D.N.Y. Sept. 27, 2007); *Kadouri v. Fox*, No. 03 CV 1725(NG), 2005 WL 783255, at *4 (E.D.N.Y. Jan. 24, 2005).  Paragraph 84(s) alleges misrepresentations concerning the NYAG action, *see* SAC ¶¶ 70-79, 84(s), also a singular event. *See Gamboa v. Velez*, 457 F.3d 703, 709-710 (7th Cir. 2006).  These alleged misrepresentations were also directed solely at Plaintiffs and were "inherently terminable." *See* SAC ¶¶ 55-58, 70-79; *see also Cofacredit*, 187 F.3d at 244; *see also  Leung*, 387 F. Supp. 2d at 125 (scheme directed at one person inherently terminable). Under the MPPAs, "Expected Capital" is a fixed dollar amount.  That the parties could agree to increase Expected Capital does not alter the fixed duration of the MPPAs. *See, e.g.*, *GICC Capital Corp.*, 67 F.3d at 466.  Additionally, Plaintiffs claim the last predicate occurred in June 2006, *see* SAC ¶ 84(s), which likewise undermines any claim of open-ended continuity. *See Satinwood*, 385 F.3d at 181; *Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544, 551 (E.D.N.Y. 2005).

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 2nd day of November, 2007, I caused true and correct copies

of the foregoing to be served electronically via the Court's ECF system on the following counsel:

Lawrence S. Robbins, Esq.
Gary A. Orseck, Esq.
Daniel R. Walfish, Esq.
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500
(202) 775-4510 (telecopy)
lrobbins@robbinsrussell.com
gorseck@robbinsrussell.com
dwalfish@robbinsrussell.com

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169
(212) 883-6383
(212) 883-6388 (telecopy)
tpuccio@lotpp.com

*Attorneys for Plaintiffs*

_____/s/_____
Rachel R. Shanahan