```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
RITCHIE CAPITAL MANAGEMENT, L.L.C.,       :
RITCHIE RISK-LINKED STRATEGIES TRADING    :
(IRELAND), LIMITED, RITCHIE RISK-LINKED   :
STRATEGIES TRADING (IRELAND) II,          :
LIMITED, WALKERS SPV LIMITED, as          :
trustee for Ritchie Risk-Linked Life      :
Strategies Trust I and Ritchie Life       :   07 Civ. 3494 (DLC)
Strategies Master Trust, and RITCHIE      :
RISK-LINKED STRATEGIES TRADING, LTD.,     :   OPINION & ORDER
                         Plaintiffs,      :
                                          :
              -v-                         :
                                          :
COVENTRY FIRST LLC, THE COVENTRY GROUP,   :
INC., MONTGOMERY CAPITAL, INC., LST I     :
LLC, ALAN BUERGER, CONSTANCE BUERGER,     :
REID S. BUERGER, ANTONIO MUNIZ, ALEX      :
SELDIN, NEAL JACOBS, EILEEN SHOVLIN,      :
and JIM DODARO,                           :
                         Defendants.      :
                                          :
-----------------------------------------X
```

Appearances:

For Plaintiffs:
Lawrence S. Robbins
Gary A. Orseck
Daniel R. Walfish
Rachel S. Li Wai Suen
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W., Suite 411
Washington, DC 20006

Thomas P. Puccio
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169

For Defendants:
Katherine G. Lindsey
Dane H. Butswinkas
Robert M. Cary

David A. Forkner
Kenneth J. Brown
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

DENISE COTE, District Judge:

By Opinion dated July 17, 2007, defendants' motion to dismiss plaintiffs' complaint was granted as to all counts. See Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC, No. 07 Civ. 3494, 2007 WL 2044656 (DLC) (S.D.N.Y. July 17, 2007) (the "July 2007 Opinion"). This Court sua sponte granted plaintiffs leave to amend as to their RICO claims under 18 U.S.C. §§ 1962(c) and (d). Plaintiffs submitted a proposed second amended complaint ("SAC"), and defendants now move to dismiss the repleaded RICO claims.[1] This Opinion addresses plaintiffs' August 24, 2007 motion for reconsideration of the July 2007 Opinion as well as defendants' September 21, 2007 motion to dismiss the RICO claims contained in the proposed SAC. For the following reasons, plaintiffs' motion for reconsideration is denied and defendants' motion to dismiss is granted.

BACKGROUND

As described in the July 2007 Opinion, this action arises out of a contract dispute between two sophisticated players in

---

[1] Plaintiffs were also granted leave to replead their breach of contract claim, which they did in the SAC. In light of the instant partial motion to dismiss, defendants have not yet answered that claim. Discovery is proceeding, however, on the breach of contract claim.

the life settlements industry, a secondary market for life insurance policies. The July 2007 Opinion is incorporated by reference. The four corporate defendants, to which the plaintiffs refer collectively as "Coventry," created, and remain leaders in the industry. In the course of its business, Coventry purchases life insurance policies and either holds them, paying the applicable premiums and eventually collecting the death benefits, or sells them to third parties.

In brief, one or more of the plaintiffs contributed the bulk of the financing that was used to purchase life insurance policies based on an analysis conducted by the defendants. After the policies were transferred to certain of the plaintiffs, two of the plaintiffs provided the money to pay the monthly premiums on the policies, and the defendants arranged for those payments to be sent to the issuing life insurance companies. The parties executed two agreements that included warranties made by the defendants concerning, <u>inter alia</u>, the lawfulness of their acquisition of the insurance policies from the policyholders.

Both the original complaint and the proposed SAC turn on allegations that the defendants defrauded the insureds whose policies they purchased by bribing brokers not to act on higher bids for the policies placed by Coventry's competitors. The gravamen of each of the complaints is that the defendants

3

concealed their fraudulent conduct from the plaintiffs, and also repeatedly misrepresented an investigation of the fraud being conducted by the Attorney General of the State of New York ("Attorney General"). Plaintiffs allege that defendants repeatedly represented that Coventry was not engaged in precisely the conduct targeted by the Attorney General's investigation, and that the plaintiffs first learned of defendants' scheme when the Attorney General sued Coventry in October 2006.

Plaintiffs' theory of damages is that the value of the policies purchased by Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") diminished substantially due to the Attorney General's action against defendants. Specifically, plaintiffs contend that disclosure of the Attorney General's action led Moody's rating service to withdraw its rating on several of the policies purchased by plaintiffs, thereby interfering with the resale value of those policies. As a consequence, not only were Ritchie I and II harmed, but also the plaintiffs that own or are beneficially interested in Ritchie I and II were harmed.

The original complaint, filed on May 7, 2007, contained seven causes of action: three RICO claims pleaded against all of the defendants; a fraud claim and a fraudulent inducement claim

pleaded against Coventry, and certain individual defendants; and breach of fiduciary duty and breach of contract claims pleaded against Coventry.  Defendants moved to dismiss the original complaint and the July 2007 Opinion granted their motion.  Plaintiffs were granted leave to replead the RICO claims brought under Sections 1962(c) and (d) because, on the basis of the original complaint, it was "impossible to assess whether the complaint states a claim without having a more definite statement of the claim.  As currently formulated, these two claims fail to give the defendants fair notice."  July 2007 Opinion, at *10.  The July 2007 Opinion also ruled that the original complaint had not adequately pleaded personal jurisdiction for the RICO claims, but granted plaintiffs leave to replead the issue.

On August 24, 2007, plaintiffs filed a motion for reconsideration of the July 2007 Opinion, and also sought leave to file the proposed SAC, which repleaded certain claims pursuant to the directive contained in the July 2007 Opinion.[2]

---

[2]    On August 1, 2007, plaintiffs filed an Amended Complaint which, pursuant to the July 2007 Opinion, repleaded only the breach of contract and RICO claims, and made additional allegations concerning personal jurisdiction.  At an August 10 conference, plaintiffs explained that they intended to seek reconsideration of the July 2007 Opinion, and were consequently given leave to propose repleaded versions of their fraud, fraudulent inducement, and fiduciary duty claims.  On August 24, plaintiffs submitted their proposed SAC along with an amended motion for reconsideration, which addressed the basis for their

Defendants moved on September 21 to dismiss RICO counts I and II of the SAC, which are the claims repleaded under §§ 1962(c) and (d).

DISCUSSION

I.  Plaintiffs' Motion to Reconsider the July 17 Opinion

The standard for a motion for reconsideration is strict, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," nor may the moving party "advance new facts, issues or arguments not previously presented to the Court."  Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).  The decision to grant or deny the motion is within the sound discretion of the district court.  See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

In their motion for reconsideration the plaintiffs seek reinstatement of their claims for breach of fiduciary duty, fraud, and fraudulent inducement, acknowledging that the

---

repleaded fraud, fraudulent inducement, and fiduciary duty claims.  Plaintiffs' discussion of these claims would only be relevant if the motion for reconsideration were granted.

6

allegations in their original complaint "could have been more clearly drawn." Their proposed SAC includes repleaded versions of these claims, but the motion for reconsideration must be addressed to the submissions before the Court at the time the July 2007 Opinion was issued. That includes the pleading to which the motion to dismiss was addressed and the arguments made and authorities cited by the plaintiffs in opposition to that motion. That customary standard is particularly appropriate here because the plaintiffs never asked for leave to amend in connection with the underlying motion practice, and the Court sua sponte gave them permission to replead only two RICO claims and the breach of contract claim. As the Second Circuit has recognized, plaintiffs are generally "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007). Bearing this in mind, the motion must be denied.

The discussion that follows addresses the plaintiffs' principal arguments made in support of reconsideration. The remaining arguments for reconsideration have been considered and rejected. Even if the allegations in the proposed SAC were considered, however, plaintiffs have not shown that leave to amend is warranted. Specifically, plaintiffs have failed to

7

show that the proposed amendments would survive a motion to dismiss because they have not "provide[d] the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  See <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner that would survive dismissal, opportunity to replead is rightfully denied.").

A.   Breach of Fiduciary Duty Claim

Plaintiffs' breach of fiduciary duty claim was dismissed principally because the pleadings reflected an arms length commercial transaction between the parties.  July 2007 Opinion, at *6.  The motion for reconsideration does not identify any error in the analysis in the July 2007 Opinion or identify any argument or authority that the Court overlooked in rendering that Opinion.  The motion for reconsideration relies instead on allegations in the proposed SAC and citations to additional authority.  As a consequence, it may be swiftly rejected.

B.   Fraud and Fraudulent Inducement Claims

Plaintiffs' fraud claim was dismissed principally because it rested on the subjects covered in the representations and warranties contained in the parties' agreements and therefore

8

was not a misrepresentation collateral or extraneous to the contract. July 2007 Opinion, at *7. Relying largely on the Second Circuit Court of Appeals' decision in <u>Merrill Lynch & Co. v. Allegheny Energy, Inc.</u>, 500 F.3d 171 (2d Cir. 2007),[3] which was issued after the July 2007 Opinion, the plaintiffs contend that the representations that underlie their fraud claims were statements of present fact -- about the life insurance policies, the defendants' business practices, and the non-existence of any legal action -- and as such are the proper basis for a fraud claim.

In their original opposition to the motion to dismiss the fraud and fraudulent inducement claims, the plaintiffs pointed to two sets of misrepresentations: representations made in the draft and executed contracts, as described at paragraphs 34 to 37 of the original complaint, and statements in telephone calls on June 26 and 27, 2006,[4] as described at paragraphs 50 to 51 of the original complaint. The plaintiffs argued that, as a matter

---

[3] The <u>Merrill Lynch</u> decision was issued after the plaintiffs moved for reconsideration. In their reply, the plaintiffs argued that the decision strongly supported the reinstatement of the fraud and fraudulent inducement claims. The defendants were given an opportunity to submit a sur-reply addressed to the plaintiffs' contentions regarding the impact of the <u>Merrill Lynch</u> decision on the motion.

[4] Paragraphs 50 and 51 recite that Coventry did not "fully and accurately" describe a subpoena it had received from the Attorney General and did not disclose that it was engaged in the conduct targeted by the subpoena although it implied that it had not engaged in such conduct.

of law, a misrepresentation of an intention to perform under a contract can constitute a claim of fraud, but that in any event, the statements at issue in the draft and executed agreements misrepresented "existing, external facts." As for the agreements' integration clauses, the plaintiffs argued that those clauses did not bar signatories from making a claim for fraudulent inducement based on the representations made in the contracts.[5] According to the plaintiffs, the integration clauses only disclaimed responsibility for statements and warranties other than those set forth in the contracts themselves. The plaintiffs' opposition brief did not directly address the legal issues related to the June 26 and 27 conversations.

In support of reconsideration, plaintiffs concede that a misrepresentation of an intention to perform under a contract cannot convert a contract claim into a fraud claim. They continue to argue, however, that defendants misrepresented "existing, external facts" in their draft and executed agreements with the plaintiffs and that Merrill Lynch teaches that such misrepresentations, even when they are embodied in contractual warranties, may support a claim for fraudulent

---

[5] Plaintiffs' recognition of the import of merger clauses is entirely consistent with well-established principles of reliance. For instance, the Court of Appeals recently affirmed dismissal of a securities fraud claim based on pre-contractual misrepresentations where the plaintiff, a sophisticated investor, had executed an integrated agreement. See ATSI Commc'ns, 493 F.3d at 87.

10

inducement. The plaintiffs acknowledge that the July 2007 Opinion did not have to reach the right of the non-signatory plaintiffs to bring the fraudulent inducement and fraud claims "because of the way Plaintiffs drafted the original Complaint." As for the post-contractual misrepresentations and omissions in the June 26 and 27 telephone calls, plaintiffs argue for the first time that "post-contractual misrepresentations about a subject covered by the contract are actionable in fraud."

In Merrill Lynch, an energy company that acquired a commodities trading business from Merrill Lynch questioned the accuracy of financial information about the trading business that Merrill Lynch had provided in advance of the acquisition. Merrill Lynch, 500 F.3d at 175-76. The purchase agreement contained several warranties, including that the supplied financial data was true and complete and contained no material inaccuracies, and that the information which Merrill Lynch had provided included all information known to Merrill Lynch which in its judgment was "appropriate" for evaluation of the trading business. Id. at 177. The district court dismissed the fraud and fraudulent inducement claims brought by the energy company on several grounds, including the fact that they were duplicative of the energy company's breach of warranty claim. The Court of Appeals reversed, distinguishing between "a misrepresentation of a present fact," which may give rise to a

11

separate cause of action for fraudulent inducement, and a promissory statement of "what will be done in the future," which only gives rise to a breach of contract cause of action. Id. at 184. Because the financial information provided to the energy company involved "misstatement and omissions of present facts, not contractual promises regarding prospective performance", it was collateral to the contract and therefore could be brought as a fraudulent inducement claim. Id. That the misrepresentation could also constitute of breach of the contractual warranties "d[id] not alter" that result. Id.

The original complaint does not describe at paragraphs 34 to 37 any misrepresentation of a present fact that was collateral or extraneous to the contract and which induced the plaintiffs to enter the contract. Those paragraphs of the original complaint simply describe passages in the draft contracts which were incorporated into the final contracts. Passages in drafts of an agreement that is later executed are neither extraneous nor collateral to the executed contract, and Merrill Lynch does not begin to suggest otherwise. It is unnecessary to reach the plaintiffs' new arguments about the post-contractual July 25 and 26 conversations since they are beyond the scope of a motion for reconsideration. Accordingly, the motion for reconsideration is denied.

12

II.  Defendants' Motion to Dismiss the SAC RICO Counts

Defendants move to dismiss the SAC's two RICO counts on five grounds: (1) lack of personal jurisdiction over the individual defendants; (2) plaintiffs' lack of standing to assert RICO claims; (3) plaintiffs' failure to allege a pattern of two or more predicate acts; (4) the corporate defendants are not "persons" within the meaning of the RICO statute; and (5) plaintiffs' failure to state a claim under 18 U.S.C. § 1962(d). Because defendants' motion to dismiss must be granted due to plaintiffs' lack of standing to assert RICO claims, it is unnecessary to reach the merits of the defendants' remaining grounds for dismissal.

When considering a motion to dismiss, a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted).  It may "dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth therein.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (citation omitted).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through

13

factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, 493 F.3d at 98.

"A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation, and only when his or her actual loss becomes clear and definite." Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted). "[T]o have standing under RICO, the plaintiff must allege that the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994) (citation omitted). Where the RICO violation is premised on predicate acts that sound in fraud, proximate cause entails both "transaction and loss causation." Id. The defendants' misrepresentations must be shown to be "the reason the transaction turned out to be a losing one," and where there is an "intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." Id. Defendants claim that plaintiffs have failed to allege both causation and damages.

Plaintiffs' theory of the case is that the defendants' fraud on the life insurance policyholders led to an

14

investigation by the Attorney General, and, in turn, the public disclosure of that investigation caused Moody's Investor Services to withdraw a preliminary securitization rating for certain policies purchased by plaintiffs, thereby decreasing the salability and value of the policies.  This is too attenuated a causal connection to confer RICO standing on the plaintiffs. Essentially, plaintiffs plead two sets of predicate acts: (1) those oriented towards the policyholders who sold their policies to Coventry, which consist mainly of fraudulent bid-rigging practices, and (2) those oriented towards plaintiffs themselves, which consist of transmission to the plaintiffs of the parties' agreements and (mis)information about the nature of the Attorney General's investigation.

The first set of predicate acts only indirectly caused any alleged injury to plaintiffs and therefore does not confer RICO standing on them.  Moody's removal of its preliminary securitization rating on policies purchased by plaintiffs was not "reasonably foreseeable or anticipated as a natural consequence" of defendants' misrepresentations to policyholders. Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (citation omitted).

The predicate acts oriented toward the plaintiffs themselves did not give rise to any injury.  Plaintiffs' contention that they were harmed by the decrease in the

15

policies' salability, which came as a result of Moody's withdrawing its rating has nothing to do with the alleged predicate acts of wire and mail fraud visited upon plaintiffs by defendants, which uniformly concern transmission to the plaintiffs of the contracts between the parties and information about the Attorney General's investigation. Any misrepresentations to plaintiffs were not "a substantial factor in the sequence of responsible causation" of plaintiffs' alleged injury. Id. (citation omitted). Even if the alleged misrepresentations had never been made to the plaintiffs, the policies would still have lost value once the Attorney General's investigation became public.

Further, plaintiffs were injured by disclosure of the scheme described in the predicate acts, and not the acts themselves. As the Second Circuit has recognized, such an injury is not the "necessary result" of the predicate acts, and therefore does not give rise to RICO standing. In re Am. Express Co. Shareholder Litig., 39 F.3d 395, 400 (2d Cir. 1994) (citation omitted). Plaintiffs contend that In re Am. Express is inapposite because it holds "merely that third parties who suffer indirect and incidental injury as a result of violations targeted at others lack standing." While this reading of the case oversimplifies its teaching, even it does not support plaintiffs' argument. The injury to plaintiffs as a result of

16

defendants' misrepresentations to the policyholders is in fact indirect and incidental. And as for injury suffered by plaintiffs as a result of defendants' misrepresentations to them, plaintiffs have failed to allege any that was proximately caused by those misrepresentations. Neither Ritchie I and II, nor the other plaintiffs who invested in those instruments, has standing to prosecute a RICO action, and those counts are dismissed.

CONCLUSION

Plaintiffs' August 24, 2007 motion for reconsideration is denied, and defendants' September 21, 2007 motion to dismiss is granted. The Clerk of Court shall also dismiss plaintiffs' August 1, 2007 motion for reconsideration as moot.

SO ORDERED:

Dated:   New York, New York
         February 29, 2008

                                    _____
                                             DENISE COTE
                                    United States District Judge