UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RITCHIE CAPITAL MANAGEMENT, L.L.C.,                    Case No.: 07 Civ. 3494 (DLC)
RITCHIE RISK-LINKED STRATEGIES TRADING
(IRELAND), LIMITED, RITCHIE RISK-LINKED
STRATEGIES TRADING (IRELAND) II, LIMITED,
WALKERS SPV, LIMITED, as trustee for Ritchie
Risk-Linked Life Strategies Trust I and Ritchie Life          **NOTICE OF APPEAL**
Strategies Master Trust, and RITCHIE RISK-LINKED              **IN A CIVIL CASE**
STRATEGIES TRADING, LTD.,

                                        Plaintiffs,

v.

COVENTRY FIRST, LLC, THE COVENTRY
GROUP, INC., MONTGOMERY CAPITAL, INC.,
LST I LLC, ALAN BUERGER, CONSTANCE
BUERGER, REID S. BUERGER, ANTONIO MUNIZ,
ALEX SELDIN, NEAL JACOBS, EILEEN
SHOVLIN, and JIM DODARO,

                                        Defendants.

NOTICE IS HEREBY GIVEN that RITCHIE CAPITAL MANAGEMENT, L.L.C.,

WALKERS SPV, LIMITED, as trustee for Ritchie Risk-Linked Life Strategies Trust I and

Ritchie Life Strategies Master Trust, and RITCHIE RISK-LINKED STRATEGIES TRADING,

LTD., hereby appeal to the United States Court of Appeals for the Second Circuit from the

Court's Opinion and Order dated July 17, 2007 and Opinion and Order dated February 29, 2008.


                                        Yours, etc.

                                        LAW OFFICES OF THOMAS P. PUCCIO

                        By:     _Th. P. Puccio_____
                                        Thomas P. Puccio, Esq.
                                        Attorneys for Plaintiffs
                                        230 Park Avenue, Suite 301
                                        New York, NY 10169
                                        (212) 883-6383

Dated: March 31, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RITCHIE CAPITAL MANAGEMENT, L.L.C.,     :
RITCHIE RISK-LINKED STRATEGIES TRADING  :
(IRELAND), LIMITED, RITCHIE RISK-LINKED :
STRATEGIES TRADING (IRELAND) II,        :
LIMITED, WALKERS SPV LIMITED, as        :
trustee for Ritchie Risk-Linked Life    :
Strategies Trust I and Ritchie Life     :     07 Civ. 3494 (DLC)
Strategies Master Trust, and RITCHIE    :
RISK-LINKED STRATEGIES TRADING, LTD.,   :     OPINION & ORDER
                            Plaintiffs, :
                                        :
                                        :
              -v-                       :
                                        :
COVENTRY FIRST LLC, THE COVENTRY GROUP, :
INC., MONTGOMERY CAPITAL, INC., LST I   :
LLC, ALAN BUERGER, CONSTANCE BUERGER,   :
REID S. BUERGER, ANTONIO MUNIZ, ALEX    :
SELDIN, NEAL JACOBS, EILEEN SHOVLIN,    :
and JIM DODARO,                         :
                            Defendants. :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Lawrence S. Robbins
Gary A. Orseck
Daniel R. Walfish
Rachel S. Li Wai Suen
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W., Suite 411
Washington, DC 20006

Thomas P. Puccio
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169

For Defendants:
George A. Borden
Of Counsel
Dane H. Butswinkas

Robert M. Cary
David A. Forkner
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

DENISE COTE, District Judge:

The defendants have moved to dismiss this RICO complaint,
filed on May 2, 2007.  Their motion is granted, with a limited
leave to amend.  This is essentially a breach of contract claim
governed by two complex agreements negotiated between
sophisticated parties.  The plaintiffs' effort to add other
statutory and common law claims largely fails.

## Background

The following is drawn from the complaint and the two
contracts which underlie this lawsuit, each of which is integral
to the complaint.  The parties are engaged in the life
settlements industry, a secondary market for life insurance
policies.  The industry operates as follows.  Paying a sum of
money that is more than the price an owner of a life insurance
policy would receive if a policy were returned to the issuing
insurance company, and yet less than the death benefit, a buyer
acquires the policy and continues to pay premiums until the
insured's death.  The buyer then receives the death benefit, and

2

if the costs of paying premiums have been less than the death benefit, makes a profit.

The plaintiffs allege that the four corporate defendants, which they refer to collectively as Coventry, are leading players in the life settlements industry, having purchased over 1,300 life insurance policies representing more than $3 billion in death benefits between 2001 and 2005. Beginning in 2005, plaintiff Ritchie Capital Management, L.L.C. ("Ritchie Capital") entered into negotiations with Coventry to purchase policies. At some point it contributed the majority of the financing that Coventry used to purchase policies, while Coventry exercised its expertise in analyzing which policies should be purchased and in servicing purchased policies. Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") sent money to Coventry to buy the policies that Coventry acquired, and the policies were then transferred "to plaintiffs." After purchasing the policies, Ritchie I and II sent money to pay the monthly premiums in the amounts that Coventry determined were owed, and Coventry arranged for those funds to be disbursed to the issuing life insurance companies.

The first agreement between the parties governing this arrangement is the September 8, 2005 agreement between Ritchie I and defendant LST 1 LLC ("LST") signed by defendant Alex Seldin

3

("Seldin"). A second agreement dated December 15, 2005, was

executed between Richie II and LST, and signed again by Seldin.

The two agreements contain the following three representations,

among others, by the seller LST:

> The consummation of the transactions contemplated
> by this Agreement and the fulfillment of the terms
> hereof will not violate any United States federal,
> state or local law or regulation . . . .
>
> There is no action, suit or proceeding before or
> by any court, regulatory body, administrative agency
> or other governmental agency or body, domestic or
> foreign, now pending, or to the Seller's knowledge,
> threatened, against or affecting the Seller or its
> assets or properties: . . . seeking any determination
> or ruling that might materially and adversely effect
> [sic] the performance by the Seller of its obligations
> under . . . this Agreement.
>
>                . . . .
>
> All Life Settlement Policies . . . have been []
> Originated by the Seller . . . in one or more
> transactions that in all material respects were in
> accordance with and in compliance with all applicable
> United States federal, state and local laws, rules and
> regulations applicable to life settlement transactions
> and the purchase and resale of life insurance policies
> . . . .

Section 7.12 of each agreement contained the following

integration clause:

> . . . [T]his Agreement sets forth the entire
> understanding of the parties hereto relating to the
> subject matter hereof, and all prior understandings,

4

written or oral, are superseded by this Agreement. . .
. The Purchaser [Ritchie I or II] expressly
acknowledges that the Seller [LST] has not made any
representations and warranties other than as set forth
herein and in the other Transaction Documents.  The
Purchaser represents and warrants to the Seller that,
independently and without reliance upon the Seller
(other than its reliance on the Seller's
representations, warranties and covenants set forth in
the Transaction Documents) and based upon such
documents and information as it has deemed
appropriate, it has made and will continue . . . to
make its own appraisal of and investigation into the
business, operations, . . . financial and other
conditions . . . of the Seller, and its own decision
to enter into this Agreement and to take, or omit to
take, action under any Transaction Document.  Except
for items specifically required to be delivered
hereunder, the Seller shall not have any duty or
responsibility to provide the Purchaser or any of its
Affiliates any information that comes into the
possession of the Seller or any of its officers,
directors, employees . . . or Affiliates.

Finally, the agreements had New York choice of law and
forum selection clauses.  They also waived the right to a jury
trial for any action or cause of action "arising out of or in
any way related to this agreement."

The complaint alleges that the defendants engaged in fraud
by both defrauding the insureds, and concealing from the
plaintiffs that dishonesty and an ongoing investigation of the
fraud being conducted by the Attorney General of the State of

5

New York ("Attorney General").  Coventry defrauded the insureds by bribing brokers, who assisted Coventry in acquiring the policies from insureds, not to act on bids for the policies placed by Coventry's competitors.  Coventry also falsified documents to conceal from the insureds the amount paid in brokerage commissions.  The plaintiffs learned of this scheme in October 2006, when the Attorney General sued Coventry.  Coventry first revealed the existence of an investigation to the plaintiffs in June 2006.[1]  In conversations in June 2006, Seldin implied that Coventry was not engaged in precisely the conduct which was the target of an Attorney General's subpoena.

The plaintiffs allege that the defendants conspired with each other to defraud the insureds through acquiring policies in a rigged bidding process and to induce institutional investors like Ritchie Capital to acquire the policies.  They list purported violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343.  In addition to repeating allegations from the lawsuit filed by the Attorney General concerning the fraud on the insureds, the complaint contains two RICO predicate acts related to the deception of the plaintiffs.  The first asserts that during the negotiations of the two

---

[1] While the complaint alleges that Coventry disclosed the investigation in June 2007, it appears that the plaintiffs intended to allege that the disclosure was made to them in June 2006.

agreements with Ritchie I and II, defendants Seldin, Reid
Buerger, and Antonio Muniz ("Muniz") sent emails which contained
the following misrepresentations: that the transactions the
parties were about to enter would not violate federal or state
law; that no proceeding before any government agency was then
proceeding to "the Seller's knowledge" which would affect the
performance of the Seller under the contemplated agreements;
that the Seller had perfected ownership in each policy; and that
the purchases of the policies were in compliance with laws
applicable to life settlement transactions and the purchase and
resale of life insurance policies.  The second relevant
predicate act asserts that in June 2006, defendant Reid Buerger
misrepresented to plaintiffs the nature of the Attorney
General's investigation.

Insofar as damages are concerned, the complaint asserts
that the value of the policies purchased by Ritchie I and II has
greatly diminished "since the New York Attorney General's action
was commenced."  It contends that the plaintiffs had anticipated
profiting from the sale of the policies to others in a
securitization transaction, and for that purpose had obtained a
pre-sale report and rating from the Moody's service on a number
of the policies.  Moody's withdrew its rating because of the
Attorney General's investigation.  By interfering with the
resale value of the policies, the defendants harmed not only

7

Ritchie I and II, but the plaintiffs that own or are
beneficially interested in Ritchie I and II.  The complaint also
asserts that Coventry owed fiduciary duties to these other
plaintiffs.

The complaint contains seven causes of action.  The first
three are RICO claims pleaded against all of the defendants.  A
fraud claim and a fraudulent inducement claim are pleaded
against the Coventry defendants, Alan and Reid Buerger, Muniz,
and Seldin.  Finally, breach of fiduciary duty and breach of
contract claims are pleaded against the Coventry defendants.
The plaintiffs seek, inter alia, $700 million, and demand a jury
trial.  The October 26, 2006 complaint filed by the Attorney
General against Coventry First LLC, Montgomery Capital, Inc.,
the Coventry Group, Inc., and Reid Buerger is attached as an
exhibit.

## Discussion

The defendants seek dismissal of this lawsuit for failure
to state a claim and for lack of personal jurisdiction over each
of the individual defendants and two of the corporate
defendants.  They also move to strike the demand for a jury
trial. As of now it may be that only two of the plaintiffs --
Ritchie I and II -- will succeed in stating a claim, and that
claim is a breach of contract claim against the corporate

8

defendants.  It is therefore unnecessary at this time to reach
the issue of personal jurisdiction over the individual
defendants.  Moreover, since Ritchie I and II have waived their
right to a jury trial, it is unnecessary at this point to reach
the jury demand issue.[2]

Under the pleading standard set forth in Rule 8(a) of the
Federal Rules of Civil Procedure, complaints must include "a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]
plaintiff is required only to give a defendant fair notice of
what the claim is and the grounds upon which it rests."
Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).
Rule 8 is fashioned in the interest of fair and reasonable
notice, not technicality, and therefore is "not meant to impose
a great burden upon a plaintiff."  Dura Pharms., Inc. v. Broudo,
544 U.S. 336, 347 (2005).  When considering a motion to dismiss
under Rule 12(b)(6), a trial court must "accept as true all
factual statements alleged in the complaint and draw all
reasonable inferences in favor of the non-moving party."
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007) (citation omitted).  At the same time, "conclusory

---

[2] The plaintiffs have not asked for leave to amend their
complaint.  Nonetheless, they will be granted leave to amend in
those limited instances where it appears from the briefing that
the plaintiffs may be able to cure identified defects in their
pleading.

allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, --- F.3d ---, 2007 WL 1717803, at *9 (2d Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1968-69 (2007)).  Although the focus should be on the pleadings, a court may also consider any written instrument attached to the complaint as an exhibit, "or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  The Rule requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  Under Rule 9(b) "[m]alice,

10

intent, knowledge, and other condition of mind of a person may
be averred generally." Fed. R. Civ. P. 9(b). Nonetheless,
"plaintiffs must allege facts that give rise to a strong
inference of fraudulent intent." Lerner, 459 F.3d at 290
(citation omitted). The inference "may be established either
(a) by alleging facts to show that defendants had both motive
and opportunity to commit fraud, or (b) by alleging facts that
constitute strong circumstantial evidence of conscious
misbehavior or recklessness." Id. at 290-91 (citation omitted).

I. Breach of Contract

The complaint brings a breach of contract claim against
each of the four corporate defendants. LST signed the two
agreements at issue, and it is alleged to be a wholly owned
subsidiary of Coventry First LLC ("Coventry First"), and an
alter ego, agent, and instrumentality of the Coventry corporate
family. Montgomery Capital, Inc. ("Montgomery Capital") is the
sole member of Coventry First. The Coventry Group, Inc. is the
fourth corporate defendant, and is owned by Alan and Constance
Buerger, who with others also own Montgomery Capital.

The complaint alleges that the following contractual
commitments were breached by the four corporate defendants: that
Coventry's acquisition of polices complied with all laws, and
that no government body was seeking to prevent the transactions

11

contemplated by the agreements or seeking a determination that might affect the performance of Coventry under the agreements; that Coventry would take all reasonable actions under applicable law to perfect its ownership of the policies before conveying them to Ritchie I or II; and that in acquiring the policies, Coventry had complied with law.

The defendants contend that only plaintiffs Ritchie I and II have standing to bring this claim; that only LST is properly named as a defendant since the complaint does not plead facts sufficient to pierce the corporate veil; and that the claim must be dismissed in its entirety since it does not allege the satisfaction of a condition precedent, that is, the agreements' 30-day notice provision. The plaintiffs concede that only Ritchie I and II may bring the breach of contract claim.

In New York, "[q]uestions relating to the internal affairs of corporations . . . are generally decided in accordance with the law of the place of incorporation."[3] United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000). LST is a Delaware limited liability

_____

[3] Federal choice of law rules would most likely also require application of the place of incorporation to a determination of whether to disregard the corporate form, "[s]ince choice of law rules seek to insure that a case will be resolved under the same rules of conduct whatever the forum, and that rights of foreign sovereigns will be respected." Presbyterian Church of Sudan v. Talisman Energy, Inc., 453 F. Supp. 2d 633, 683 n.10 (S.D.N.Y. 2006) (citing Lauritzen v. Larsen, 345 U.S. 571, 578 (1953)).

company.  Therefore, the law of Delaware on piercing the corporate veil should be applied.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." <u>Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood</u>, 752 A.2d 1175, 1183 (Del. Ch. 1999) (citation omitted).  "Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice.  Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." <u>Id.</u> at 1184 (citation omitted).  "To prevail on an alter ego theory of liability, a plaintiff must show that the two corporations operated as a single economic entity such that it would be inequitable . . . to uphold a legal distinction between them." <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1458 (2d Cir. 1995) (citation omitted).  The plaintiffs have sufficiently alleged pursuant to Rule 8 their theories of liability for the three corporate defendants who did not sign the agreements.

The parties debate whether the agreements' notice provision, which waives the right to bring a claim if notice is not given of a breach within 30 days of knowledge of the breach, is a condition precedent or subsequent, whether it constitutes an affirmative defense, and whether a plaintiff has the obligation to plead satisfaction of the provision.  The

13

plaintiffs assert that they did comply with the notice provision and are prepared to prove that they did.

Rule 9(c) directs that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." Fed. R. Civ. P. 9(c). Some courts have found that this requires at least "a general averment of performance of a condition precedent." See, e.g., Udell v. Berkshire Life Ins. Co. of Am., No. CV032721SJFKAM, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005). On the other hand, Rule 9(c) "does not in terms require the plaintiff to allege the performance or occurrence of conditions precedent; it simply permits a plaintiff to do so generally and requires specificity in the denial of any such allegation." ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243 (S.D.N.Y. 1997). Since the plaintiffs will be given leave to amend in any event, plaintiffs will be permitted to file an amended breach of contract claim containing a general declaration that Ritchie I and II satisfied the notice requirement.


II. Breach of Fiduciary Duty

Each of the plaintiffs brings a breach of fiduciary duty claim against the four corporate defendants. The claim asserts

14

that the four defendants were partners, joint venturers, and co-
venturers of Ritchie Capital, which created a fiduciary duty to
each of the plaintiffs.  The defendants move to dismiss this
claim based on the agreements' express disclaimer of the
creation of such relationships.  Under the heading "Tax
Classification," the agreements provide that

> Nothing contained in this Agreement is intended to or
> shall be deemed or construed by the parties hereto or
> by any third person to create the relationship of
> principal and agent (including dependent agent) or of
> a partnership or joint venture.  The parties hereto
> agree that they will not take any action contrary to
> the foregoing intention and agree to report the
> transaction for all tax purposes consistent with the
> foregoing intention unless and until determined to the
> contrary by an applicable tax authority.

(Emphasis supplied.)

Where parties to a contract deal in an "arms length"
commercial transaction, a fiduciary relationship will not be
found "absent extraordinary circumstances."  Mid-Island Hosp.,
Inc. v. Empire Blue Cross & Blue Shield, 276 F.3d 123, 130 (2d
Cir. 2002) (citation omitted).[4]  Thus, a conventional business
relationship "without more" is not converted into a fiduciary
relationship "by mere allegation."  Oursler v. Women's Interart
Ctr., 566 N.Y.S.2d 295, 297 (App. Div. 1991); see also Northeast
General Corp. v. Wellington Advertising, Inc., 624 N.E.2d 129,

---

[4] Given the agreements' choice of New York law and the parties'
joint reliance on New York law in this briefing, New York law
will be applied to all common law claims unless there is a
specific reason to decline to do so.

132-33 (N.Y. 1993).  In fact, in this case, there was an express disclaimer of such a relationship.

The plaintiffs' effort to avoid the contractual denial of a partnership and joint venture fails.  They assert that the provision only applies to tax consequences since it is contained in a section of the agreements entitled "Tax Classification." As another provision of the agreements provides, however, the contract headings are "for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof."

The plaintiffs next assert that the contract bar only applies to the signatories Ritchie I and II and not to non-signatory plaintiffs.  The remaining plaintiffs, however, have pleaded no adequate bases for establishment of a fiduciary relationship absent one between the defendants and Ritchie I and II.

III. Fraud

A fraud claim is brought by all plaintiffs against the four corporate defendants as well as Alan and Reid Buerger, Muniz, and Seldin.  It asserts that these defendants made material misstatements or omissions regarding both the circumstances under which owners of life insurance policies were induced to part with their policies, and the existence and target of the

16

Attorney General's investigation.  The defendants move to dismiss this claim on the ground that the complaint largely fails to identify misrepresentations made by particular defendants as required by Rule 9(b), and is in any event barred by the agreements' integration clause.  Insofar as the fraud claim rests on omissions, the defendants argue that the complaint fails to plead a duty to disclose, particularly given the express bar in the agreements.  Finally, to the extent the fraud claim rests on misrepresentations or omissions concerning representations and warranties contained in the agreements, then these duplicate the breach of contract claim and are barred for that reason.

The defendants are correct that the complaint does not sufficiently identify speakers to survive scrutiny under Rule 9(b)'s standards.  If this were the only defect, however, the plaintiffs could be given an opportunity to cure.  The defects in this claim, however, extend further.

Under New York law, a fraud claim will not lie if it arises "out of the same facts as plaintiff's breach of contract claim." Telecom Intl. Am., Ltd. v. AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (citation omitted).  Even with the addition of the allegation that the "defendant never intended to perform" the contract, "the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."  Id.  In order to succeed on

17

a fraud claim arising from a breach of contract, a plaintiff must show: (1) "a legal duty separate from the duty to perform under the contract"; (2) "a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir. 1996). The plaintiffs have not pointed to any separate legal duty to support the fraud claim or any special damages. Nor have they identified a representation collateral to the contract. The fraud claim appears to rest entirely on the subjects covered in the representations and warranties contained in the agreements. To the extent that there was a misrepresentation or omission in connection with those contractual representations and commitments, then that conduct must be pleaded as a breach of contract claim. The fraud claim is dismissed.


IV. Fraudulent Inducement

    The plaintiffs bring a fraudulent inducement claim against the four corporate defendants as well as Alan and Reid Buerger, Muniz, and Seldin for their misleading statements and concealments regarding Coventry's practices in purchasing life insurance policies. The defendants make essentially the same

18

arguments in connection with this claim as they did in moving to dismiss the fraud claim.

The fraudulent inducement claim fails to meet the pleading requirements under Rule 9(b). Beyond that deficiency, however, the claim is explicitly barred by the agreements, in which Ritchie I and II acknowledge that LST had not made representations other than as set forth in the agreements. Under New York law, "a general merger clause is ineffective . . . . to preclude parol evidence that a party was induced to enter the contract by means of fraud." Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993). "When, however, the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." Id. "[W]here a party specifically disclaims reliance upon a particular representation in a contract, that party cannot, in a subsequent action for common law fraud, claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1996) (citing Danann Realty Corp. v. Harris, 157 N.E.2d 597, 599 (N.Y. 1959)).

The integration clause in the agreements that governed this commercial transaction bars the fraud claim; the plaintiffs

expressly disclaimed reliance on the very representations they now claim were fraudulent.  In that clause, Ritchie I and II "expressly acknowledge[] that the Seller has not made any representation and warranties other than as set forth herein and in the other Transaction Documents."[5]  The integration clause also specifically finds that "without reliance upon the Seller," the purchaser "has made and will continue . . . to make its own appraisal of and investigation into the business, operations, . . . financial and other conditions . . . of the Seller." Furthermore, although it is true that even without a fiduciary duty, "during the course of negotiations surrounding a business transaction, a duty to disclose may arise . . . where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge," Lerner, 459 F.3d at 292 (citation omitted), the clause specifically dispels any duty of the seller to "provide the Purchaser or any of its Affiliates any information."  Since the acts which the plaintiffs allege the fraud induced were the entry into the two agreements that Ritchie I and II executed, the acknowledgment in the agreements is sufficient to bind not just the signatories but the other plaintiffs.

---

[5] Transaction Documents are defined to include the Master Policy Purchase Agreement, the Servicing Agreement, and other documents to which the plaintiffs have not pointed in their complaint.

20

Finally, the alleged fraudulent statements and omissions on which this claim hinges are statements which the plaintiffs also contend are encompassed by the agreements themselves, that is, that the transaction in which LST purchased the policies "were in accordance with and in compliance with all applicable United States federal, state and local laws, rules and regulations applicable to life settlement transactions and the purchase and resale of life insurance policies." These representations or concealments are not extraneous to the contract, and therefore must be asserted as a breach of contract claim and not as a fraudulent inducement claim. See Bridgestone/Firestone, 98 F.3d at 20.

V. RICO

The first three claims are brought against all defendants under RICO, 18 U.S.C. § 1962. A claim under Section 1962(a) alleges that Ritchie I and II are enterprises, and that the defendants received income or proceeds derived directly or indirectly from a pattern of racketeering activity, and used or invested that income and proceeds in the acquisition of an interest in or the establishment or operation of Ritchie I and II. A claim under Section 1962(c) alleges that two or more of the individual defendants or any one of the corporate defendants

is an enterprise,[6] and that the defendants are distinct from that enterprise and conducted or participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity with one exception. To the extent the enterprise consists of one corporate defendant, then that defendant is not alleged to have violated this provision of the law by conducting its own affairs. Finally, a claim under Section 1962(d) alleges that the defendants conspired to violate Section 1962(c), that is, to conduct the enterprises' affairs through a pattern of racketeering activity. The definition of enterprise is taken from the Section 1962(c) claim except that, to the extent the enterprise consists solely of one corporate defendant, that corporate defendant is not charged with conspiring with others to conduct its own affairs.

The defendants proffer many grounds for dismissing the RICO claims. The complaint does not allege proximate causation since the harm it describes was caused by the disclosure of the policy origination practices to the market and not by the RICO violations. The plaintiffs have not alleged a clear and definite injury. Many of the plaintiffs seek to recover only because they had a beneficial interest in another plaintiff's investment, which is insufficient to confer standing. With

---

[6] The complaint asserts that there is an enterprise "consisting of all of the individual Defendants, or any combination thereof, or any of the corporate defendants alone."

22

respect to the Section 1962(a) claim, the complaint fails to allege an investment of income or proceeds in Ritchie I or II, which are the defined enterprises, or any investment by the individual defendants in the enterprises. The Section 1962(c) claim asserts tens of thousands of potential enterprises. Finally, no conspiracy can be alleged under Section 1962(d) since corporate employees and affiliates cannot conspire with each other.

The Section 1962(a) claim must be dismissed. Section 1962(a) reads in pertinent part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a) (emphasis supplied). The complaint alleges that LST sold the policies to Ritchie I and II. Assuming for the moment that the policies constitute "income" derived from racketeering activity, the issue becomes whether the complaint has adequately alleged that the policies were used or invested to "acquire an interest" in or to "establish or operate" either Ritchie I or II.

The plaintiffs do not contend that the sale of policies to Ritchie I and II constitutes the necessary acquisition of an

23

interest. "Under the plain language of this section, a violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering." Ouaknine v. MacFarlane, 897 F.2d 75, 82 (2d Cir. 1990). "[A] plaintiff must allege injury 'by reason of' defendants' investment of racketeering income in an enterprise." Id. at 82-83.

The plaintiffs point to the following set of allegations in the complaint to support the Section 1962(a) claim. The complaint alleges that Coventry, which it elsewhere defines as the four corporate defendants, "jointly committed capital to, and became owners of subordinated securities in, Ritchie I and Ritchie II, which entitled . . . Coventry to receive the profits of Ritchie I and Ritchie II after other debts have been paid."[7] This is insufficient to state a Section 1962(a) claim. The complaint alleges that the policies were acquired through the pattern of racketeering activity, and it is the policies or the proceeds from those policies that must be used to acquire an interest in the enterprise. The separate investment of capital

---

[7] This allegation would not support a claim against any of the individual defendants, and engages in impermissible group pleading as to the corporate defendants.

24

to acquire subordinated securities in the enterprise is insufficient. And, of course, the alleged RICO injury is not alleged to have arisen from the investment made to acquire subordinated securities of Ritchie I and II.

As for the remaining two RICO claims, the plaintiffs will be allowed to replead the Sections 1962(c) and (d) claims in order to identify with more specificity the enterprise or enterprises involved in those violations. The defendants estimate that the current formulation has about 40,000 permutations. It is impossible to assess whether the complaint states a claim without having a more definite statement of the claim. As currently formulated, these two claims fail to give the defendants fair notice.

VI. Personal Jurisdiction: Coventry Group, Inc. and Montgomery Capital, Inc.

Although defendants' motion to dismiss has been granted on all counts, leave to replead has been granted on the breach of contract and two of the RICO claims. In addition, plaintiffs have sufficiently pled facts to pierce the corporate veil. Therefore, personal jurisdiction as to the Coventry Group, Inc. and Montgomery Capital, Inc. is considered here.

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie

25

showing that jurisdiction exists." Best Van Lines, Inc. v. Walker, 04-3924-cv, slip op. at 5, --- F.3d ----, 2007 WL 1815511 (2d Cir. June 26, 2007) (citation omitted). Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).

Personal jurisdiction has been sufficiently pled over the two corporate defendants based on plaintiffs' claim for veil piercing. "It is true that the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation. . . . However, when the activities of the parent show a disregard for the separate corporate existence of the subsidiary, New York jurisdiction may be asserted." Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). Furthermore, the New York long-arm statute provides jurisdiction over acts committed "in person or through an agent," N.Y. C.P.L.R. 302(a).

Personal jurisdiction has not sufficiently been pled in the complaint as to the remaining RICO claims, but plaintiffs may replead on the personal jurisdiction issue under RICO as well. "[A] civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is

established as to at least one defendant." PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998). Then, jurisdiction can be obtained on a "showing that the 'ends of justice' so require." Id.

## Conclusion

The motion to dismiss is granted as to all counts. Leave to amend will be granted as to the breach of contract claim on behalf of Ritchie I and II and the Section 1962(b) and (c) RICO claims.

SO ORDERED:

Dated:    New York, New York
          July 17, 2007

_Denise Cote_
DENISE COTE
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RITCHIE CAPITAL MANAGEMENT, L.L.C.,     :
RITCHIE RISK-LINKED STRATEGIES TRADING  :
(IRELAND), LIMITED, RITCHIE RISK-LINKED :
STRATEGIES TRADING (IRELAND) II,        :
LIMITED, WALKERS SPV LIMITED, as        :
trustee for Ritchie Risk-Linked Life    :
Strategies Trust I and Ritchie Life     :     07 Civ. 3494 (DLC)
Strategies Master Trust, and RITCHIE    :
RISK-LINKED STRATEGIES TRADING, LTD.,   :     OPINION & ORDER
                           Plaintiffs,  :
                                        :
               -v-                      :
                                        :
COVENTRY FIRST LLC, THE COVENTRY GROUP, :
INC., MONTGOMERY CAPITAL, INC., LST I   :
LLC, ALAN BUERGER, CONSTANCE BUERGER,   :
REID S. BUERGER, ANTONIO MUNIZ, ALEX    :
SELDIN, NEAL JACOBS, EILEEN SHOVLIN,    :
and JIM DODARO,                         :
                           Defendants.  :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Lawrence S. Robbins
Gary A. Orseck
Daniel R. Walfish
Rachel S. Li Wai Suen
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W., Suite 411
Washington, DC 20006

Thomas P. Puccio
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169

For Defendants:
Katherine G. Lindsey
Dane H. Butswinkas
Robert M. Cary

David A. Forkner
Kenneth J. Brown
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

DENISE COTE, District Judge:

By Opinion dated July 17, 2007, defendants' motion to
dismiss plaintiffs' complaint was granted as to all counts.  See
Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC, No. 07 Civ.
3494, 2007 WL 2044656 (DLC) (S.D.N.Y. July 17, 2007) (the "July
2007 Opinion").  This Court sua sponte granted plaintiffs leave
to amend as to their RICO claims under 18 U.S.C. §§ 1962(c) and
(d).  Plaintiffs submitted a proposed second amended complaint
("SAC"), and defendants now move to dismiss the repleaded RICO
claims.[1]  This Opinion addresses plaintiffs' August 24, 2007
motion for reconsideration of the July 2007 Opinion as well as
defendants' September 21, 2007 motion to dismiss the RICO claims
contained in the proposed SAC.  For the following reasons,
plaintiffs' motion for reconsideration is denied and defendants'
motion to dismiss is granted.

BACKGROUND

As described in the July 2007 Opinion, this action arises
out of a contract dispute between two sophisticated players in

---

[1]    Plaintiffs were also granted leave to replead their breach
of contract claim, which they did in the SAC.  In light of the
instant partial motion to dismiss, defendants have not yet
answered that claim.  Discovery is proceeding, however, on the
breach of contract claim.

2

the life settlements industry, a secondary market for life
insurance policies.  The July 2007 Opinion is incorporated by
reference.  The four corporate defendants, to which the
plaintiffs refer collectively as "Coventry," created, and remain
leaders in the industry.  In the course of its business,
Coventry purchases life insurance policies and either holds
them, paying the applicable premiums and eventually collecting
the death benefits, or sells them to third parties.

     In brief, one or more of the plaintiffs contributed the
bulk of the financing that was used to purchase life insurance
policies based on an analysis conducted by the defendants.
After the policies were transferred to certain of the
plaintiffs, two of the plaintiffs provided the money to pay the
monthly premiums on the policies, and the defendants arranged
for those payments to be sent to the issuing life insurance
companies.  The parties executed two agreements that included
warranties made by the defendants concerning, inter alia, the
lawfulness of their acquisition of the insurance policies from
the policyholders.

     Both the original complaint and the proposed SAC turn on
allegations that the defendants defrauded the insureds whose
policies they purchased by bribing brokers not to act on higher
bids for the policies placed by Coventry's competitors.  The
gravamen of each of the complaints is that the defendants

                                 3

concealed their fraudulent conduct from the plaintiffs, and also repeatedly misrepresented an investigation of the fraud being conducted by the Attorney General of the State of New York ("Attorney General"). Plaintiffs allege that defendants repeatedly represented that Coventry was not engaged in precisely the conduct targeted by the Attorney General's investigation, and that the plaintiffs first learned of defendants' scheme when the Attorney General sued Coventry in October 2006.

Plaintiffs' theory of damages is that the value of the policies purchased by Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") diminished substantially due to the Attorney General's action against defendants. Specifically, plaintiffs contend that disclosure of the Attorney General's action led Moody's rating service to withdraw its rating on several of the policies purchased by plaintiffs, thereby interfering with the resale value of those policies. As a consequence, not only were Ritchie I and II harmed, but also the plaintiffs that own or are beneficially interested in Ritchie I and II were harmed.

The original complaint, filed on May 7, 2007, contained seven causes of action: three RICO claims pleaded against all of the defendants; a fraud claim and a fraudulent inducement claim

4

pleaded against Coventry, and certain individual defendants; and
breach of fiduciary duty and breach of contract claims pleaded
against Coventry.  Defendants moved to dismiss the original
complaint and the July 2007 Opinion granted their motion.
Plaintiffs were granted leave to replead the RICO claims brought
under Sections 1962(c) and (d) because, on the basis of the
original complaint, it was "impossible to assess whether the
complaint states a claim without having a more definite
statement of the claim.  As currently formulated, these two
claims fail to give the defendants fair notice."  July 2007
Opinion, at *10.  The July 2007 Opinion also ruled that the
original complaint had not adequately pleaded personal
jurisdiction for the RICO claims, but granted plaintiffs leave
to replead the issue.

On August 24, 2007, plaintiffs filed a motion for
reconsideration of the July 2007 Opinion, and also sought leave
to file the proposed SAC, which repleaded certain claims
pursuant to the directive contained in the July 2007 Opinion.[2]

---

[2]    On August 1, 2007, plaintiffs filed an Amended Complaint
which, pursuant to the July 2007 Opinion, repleaded only the
breach of contract and RICO claims, and made additional
allegations concerning personal jurisdiction.  At an August 10
conference, plaintiffs explained that they intended to seek
reconsideration of the July 2007 Opinion, and were consequently
given leave to propose repleaded versions of their fraud,
fraudulent inducement, and fiduciary duty claims.  On August 24,
plaintiffs submitted their proposed SAC along with an amended
motion for reconsideration, which addressed the basis for their

Defendants moved on September 21 to dismiss RICO counts I and II of the SAC, which are the claims repleaded under §§ 1962(c) and (d).

DISCUSSION

I.    Plaintiffs' Motion to Reconsider the July 17 Opinion

The standard for a motion for reconsideration is strict, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," nor may the moving party "advance new facts, issues or arguments not previously presented to the Court." Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). The decision to grant or deny the motion is within the sound discretion of the district court. See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

In their motion for reconsideration the plaintiffs seek reinstatement of their claims for breach of fiduciary duty, fraud, and fraudulent inducement, acknowledging that the

repleaded fraud, fraudulent inducement, and fiduciary duty claims.  Plaintiffs' discussion of these claims would only be relevant if the motion for reconsideration were granted.

6

allegations in their original complaint "could have been more clearly drawn." Their proposed SAC includes repleaded versions of these claims, but the motion for reconsideration must be addressed to the submissions before the Court at the time the July 2007 Opinion was issued. That includes the pleading to which the motion to dismiss was addressed and the arguments made and authorities cited by the plaintiffs in opposition to that motion. That customary standard is particularly appropriate here because the plaintiffs never asked for leave to amend in connection with the underlying motion practice, and the Court sua sponte gave them permission to replead only two RICO claims and the breach of contract claim. As the Second Circuit has recognized, plaintiffs are generally "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007). Bearing this in mind, the motion must be denied.

The discussion that follows addresses the plaintiffs' principal arguments made in support of reconsideration. The remaining arguments for reconsideration have been considered and rejected. Even if the allegations in the proposed SAC were considered, however, plaintiffs have not shown that leave to amend is warranted. Specifically, plaintiffs have failed to

show that the proposed amendments would survive a motion to
dismiss because they have not "provide[d] the grounds upon which
[their] claim rests through factual allegations sufficient to
raise a right to relief above the speculative level."  ATSI
Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.
2007) (citation omitted).  See Hayden v. County of Nassau, 180
F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable
to demonstrate that he would be able to amend his complaint in a
manner that would survive dismissal, opportunity to replead is
rightfully denied.").

A.    Breach of Fiduciary Duty Claim

    Plaintiffs' breach of fiduciary duty claim was dismissed
principally because the pleadings reflected an arms length
commercial transaction between the parties.  July 2007 Opinion,
at *6.  The motion for reconsideration does not identify any
error in the analysis in the July 2007 Opinion or identify any
argument or authority that the Court overlooked in rendering
that Opinion.  The motion for reconsideration relies instead on
allegations in the proposed SAC and citations to additional
authority.  As a consequence, it may be swiftly rejected.

B.    Fraud and Fraudulent Inducement Claims

    Plaintiffs' fraud claim was dismissed principally because
it rested on the subjects covered in the representations and
warranties contained in the parties' agreements and therefore

8

was not a misrepresentation collateral or extraneous to the

contract.  July 2007 Opinion, at *7.  Relying largely on the

Second Circuit Court of Appeals' decision in Merrill Lynch & Co.

v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007),[3] which

was issued after the July 2007 Opinion, the plaintiffs contend

that the representations that underlie their fraud claims were

statements of present fact -- about the life insurance policies,

the defendants' business practices, and the non-existence of any

legal action -- and as such are the proper basis for a fraud

claim.

In their original opposition to the motion to dismiss the

fraud and fraudulent inducement claims, the plaintiffs pointed

to two sets of misrepresentations:  representations made in the

draft and executed contracts, as described at paragraphs 34 to

37 of the original complaint, and statements in telephone calls

on June 26 and 27, 2006,[4] as described at paragraphs 50 to 51 of

the original complaint.  The plaintiffs argued that, as a matter

---

[3]    The Merrill Lynch decision was issued after the plaintiffs
moved for reconsideration.  In their reply, the plaintiffs
argued that the decision strongly supported the reinstatement of
the fraud and fraudulent inducement claims.  The defendants were
given an opportunity to submit a sur-reply addressed to the
plaintiffs' contentions regarding the impact of the Merrill
Lynch decision on the motion.

[4]    Paragraphs 50 and 51 recite that Coventry did not "fully
and accurately" describe a subpoena it had received from the
Attorney General and did not disclose that it was engaged in the
conduct targeted by the subpoena although it implied that it had
not engaged in such conduct.

9

of law, a misrepresentation of an intention to perform under a contract can constitute a claim of fraud, but that in any event, the statements at issue in the draft and executed agreements misrepresented "existing, external facts."  As for the agreements' integration clauses, the plaintiffs argued that those clauses did not bar signatories from making a claim for fraudulent inducement based on the representations made in the contracts.[5]  According to the plaintiffs, the integration clauses only disclaimed responsibility for statements and warranties other than those set forth in the contracts themselves.  The plaintiffs' opposition brief did not directly address the legal issues related to the June 26 and 27 conversations.

In support of reconsideration, plaintiffs concede that a misrepresentation of an intention to perform under a contract cannot convert a contract claim into a fraud claim.  They continue to argue, however, that defendants misrepresented "existing, external facts" in their draft and executed agreements with the plaintiffs and that Merrill Lynch teaches that such misrepresentations, even when they are embodied in contractual warranties, may support a claim for fraudulent

---

[5]    Plaintiffs' recognition of the import of merger clauses is entirely consistent with well-established principles of reliance.  For instance, the Court of Appeals recently affirmed dismissal of a securities fraud claim based on pre-contractual misrepresentations where the plaintiff, a sophisticated investor, had executed an integrated agreement.  See ATSI Commc'ns, 493 F.3d at 87.

10

inducement.  The plaintiffs acknowledge that the July 2007
Opinion did not have to reach the right of the non-signatory
plaintiffs to bring the fraudulent inducement and fraud claims
"because of the way Plaintiffs drafted the original Complaint."
As for the post-contractual misrepresentations and omissions in
the June 26 and 27 telephone calls, plaintiffs argue for the
first time that "post-contractual misrepresentations about a
subject covered by the contract are actionable in fraud."

In Merrill Lynch, an energy company that acquired a
commodities trading business from Merrill Lynch questioned the
accuracy of financial information about the trading business
that Merrill Lynch had provided in advance of the acquisition.
Merrill Lynch, 500 F.3d at 175-76.  The purchase agreement
contained several warranties, including that the supplied
financial data was true and complete and contained no material
inaccuracies, and that the information which Merrill Lynch had
provided included all information known to Merrill Lynch which
in its judgment was "appropriate" for evaluation of the trading
business.  Id. at 177.  The district court dismissed the fraud
and fraudulent inducement claims brought by the energy company
on several grounds, including the fact that they were
duplicative of the energy company's breach of warranty claim.
The Court of Appeals reversed, distinguishing between "a
misrepresentation of a present fact," which may give rise to a

11

separate cause of action for fraudulent inducement, and a promissory statement of "what will be done in the future," which only gives rise to a breach of contract cause of action.  Id. at 184.  Because the financial information provided to the energy company involved "misstatement and omissions of present facts, not contractual promises regarding prospective performance", it was collateral to the contract and therefore could be brought as a fraudulent inducement claim.  Id.  That the misrepresentation could also constitute of breach of the contractual warranties "d[id] not alter" that result.  Id.

The original complaint does not describe at paragraphs 34 to 37 any misrepresentation of a present fact that was collateral or extraneous to the contract and which induced the plaintiffs to enter the contract.  Those paragraphs of the original complaint simply describe passages in the draft contracts which were incorporated into the final contracts. Passages in drafts of an agreement that is later executed are neither extraneous nor collateral to the executed contract, and Merrill Lynch does not begin to suggest otherwise.  It is unnecessary to reach the plaintiffs' new arguments about the post-contractual July 25 and 26 conversations since they are beyond the scope of a motion for reconsideration.  Accordingly, the motion for reconsideration is denied.

II.   Defendants' Motion to Dismiss the SAC RICO Counts

Defendants move to dismiss the SAC's two RICO counts on
five grounds: (1) lack of personal jurisdiction over the
individual defendants; (2) plaintiffs' lack of standing to
assert RICO claims; (3) plaintiffs' failure to allege a pattern
of two or more predicate acts; (4) the corporate defendants are
not "persons" within the meaning of the RICO statute; and (5)
plaintiffs' failure to state a claim under 18 U.S.C. § 1962(d).
Because defendants' motion to dismiss must be granted due to
plaintiffs' lack of standing to assert RICO claims, it is
unnecessary to reach the merits of the defendants' remaining
grounds for dismissal.

When considering a motion to dismiss, a court must "accept
as true all factual statements alleged in the complaint and draw
all reasonable inferences in favor of the non-moving party."
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007) (citation omitted).  It may "dismiss a complaint only if
it is clear that no relief could be granted under any set of
facts that could be proved consistent with the allegations" set
forth therein.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514
(2002) (citation omitted).  "To survive dismissal, the plaintiff
must provide the grounds upon which his claim rests through

13

factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, 493 F.3d at 98.

"A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation, and only when his or her actual loss becomes clear and definite." Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted). "[T]o have standing under RICO, the plaintiff must allege that the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994) (citation omitted). Where the RICO violation is premised on predicate acts that sound in fraud, proximate cause entails both "transaction and loss causation." Id. The defendants' misrepresentations must be shown to be "the reason the transaction turned out to be a losing one," and where there is an "intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." Id. Defendants claim that plaintiffs have failed to allege both causation and damages.

Plaintiffs' theory of the case is that the defendants' fraud on the life insurance policyholders led to an

14

investigation by the Attorney General, and, in turn, the public disclosure of that investigation caused Moody's Investor Services to withdraw a preliminary securitization rating for certain policies purchased by plaintiffs, thereby decreasing the salability and value of the policies.  This is too attenuated a causal connection to confer RICO standing on the plaintiffs. Essentially, plaintiffs plead two sets of predicate acts: (1) those oriented towards the policyholders who sold their policies to Coventry, which consist mainly of fraudulent bid-rigging practices, and (2) those oriented towards plaintiffs themselves, which consist of transmission to the plaintiffs of the parties' agreements and (mis)information about the nature of the Attorney General's investigation.

The first set of predicate acts only indirectly caused any alleged injury to plaintiffs and therefore does not confer RICO standing on them.  Moody's removal of its preliminary securitization rating on policies purchased by plaintiffs was not "reasonably foreseeable or anticipated as a natural consequence" of defendants' misrepresentations to policyholders. Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (citation omitted).

The predicate acts oriented toward the plaintiffs themselves did not give rise to any injury.  Plaintiffs' contention that they were harmed by the decrease in the

15

policies' salability, which came as a result of Moody's
withdrawing its rating has nothing to do with the alleged
predicate acts of wire and mail fraud visited upon plaintiffs by
defendants, which uniformly concern transmission to the
plaintiffs of the contracts between the parties and information
about the Attorney General's investigation.  Any
misrepresentations to plaintiffs were not "a substantial factor
in the sequence of responsible causation" of plaintiffs' alleged
injury.  Id. (citation omitted).  Even if the alleged
misrepresentations had never been made to the plaintiffs, the
policies would still have lost value once the Attorney General's
investigation became public.

Further, plaintiffs were injured by disclosure of the
scheme described in the predicate acts, and not the acts
themselves.  As the Second Circuit has recognized, such an
injury is not the "necessary result" of the predicate acts, and
therefore does not give rise to RICO standing.  In re Am.
Express Co. Shareholder Litig., 39 F.3d 395, 400 (2d Cir. 1994)
(citation omitted).  Plaintiffs contend that In re Am. Express
is inapposite because it holds "merely that third parties who
suffer indirect and incidental injury as a result of violations
targeted at others lack standing."  While this reading of the
case oversimplifies its teaching, even it does not support
plaintiffs' argument.  The injury to plaintiffs as a result of

defendants' misrepresentations to the policyholders is in fact indirect and incidental. And as for injury suffered by plaintiffs as a result of defendants' misrepresentations to them, plaintiffs have failed to allege any that was proximately caused by those misrepresentations. Neither Ritchie I and II, nor the other plaintiffs who invested in those instruments, has standing to prosecute a RICO action, and those counts are dismissed.

CONCLUSION

Plaintiffs' August 24, 2007 motion for reconsideration is denied, and defendants' September 21, 2007 motion to dismiss is granted. The Clerk of Court shall also dismiss plaintiffs' August 1, 2007 motion for reconsideration as moot.

SO ORDERED:

Dated:    New York, New York
         February 29, 2008

DENISE COTE
United States District Judge

17